HERRICK

NEW YORK
NEWARK
PRINCETON

SCOTT E. MOLLEN
PARTNER
Direct Tel: 212.592.1505
Direct Fax: 212.545.3370
Email: smollen@herrick.com

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 8/14/08

August 6, 2008

AUG 06 2008

**VIA HAND DELIVERY**

Hon. Harold Baer, United States Magistrate District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 2230
New York, NY 10007

Re: *Edmonds v. Seavey, et al.*; Index No. 08-CV-5646-HB

Dear Judge Baer:

We respectfully write as counsel to Defendants Robert W. Seavey, Phyllis M. Seavey, Avery B. Seavey, Nealle B. Seavey, Ronald Dawley, Dalton Management Company, LLC, and the Seavey Organization (collectively, "the Seavey Defendants") in the above-captioned action. On June 24, 2008, the parties attended oral argument on Plaintiff's Application for Temporary Restraining Order in front of The Honorable Sidney H. Stein as Your Honor was unavailable. At the conclusion of the hearing, Judge Stein denied Plaintiff's application for a temporary restraining order and directed that the parties appear before Your Honor on September 12, 2008, on Plaintiff's Order to Show Cause seeking a preliminary injunction enjoining the Defendants from not complying with all requests from independent auditors retained by the Plaintiff. Judge Stein further directed that discovery in this matter may immediately commence. When we had appeared before Judge Stein, we had just been provided with the complaint that afternoon (June 24, 2008). Moreover, we had not been provided with a copy of the Plaintiff's motion for a Temporary Restraining Order until a few minutes before Judge Stein took the bench at approximately 5:00 p.m. Now that we have had an opportunity to review the complaint and the motion papers for a Temporary Restraining Order and with the understanding that the Seavey Defendants will provide a production and inspection of records relevant hereto, we ask that the Court stay further discovery until after the Court first determines whether this action belongs in the Federal Court. We believe that this action is essentially a dispute between two New York real estate investors, who had been involved in the subject venture since 1973, over access to books and records.

In 2001, the Plaintiff's counsel, as a partner of Plaintiff, has once before commenced a RICO action against the Seavey Defendants, only to withdraw it after a rapid resolution. The "pattern" of conduct between the parties is not of a classic civil RICO situation, but of a partner or business associate who tries to exact concessions from another by filing civil RICO actions. Thus, the Defendants intend to promptly move to dismiss the complaint within 30 days hereof.

**The Background**

Plaintiff John Edmonds ("Edmonds") and the Seaveys (or entities owned or controlled by the Seaveys) are partners in four Limited Partnerships (the "Partnerships"), each of which owns and operates a different housing project. The housing projects are managed by defendant Dalton Management Company. Edmonds alleges that Dalton was not properly managing the housing projects and commenced a review of the books and records of the Partnerships and Dalton. During the review, Edmonds claimed that some of the back-up documentation was not made available to him. Dalton Management advises that it requested that Edmonds compile a specific list of the information that he contended was missing and that Edmonds did not comply with the request. Rather, his auditors sent further piece-meal requests. When you are managing approximately 2000 residential units, many of which are city and state government sponsored and overseen, with day to day issues, it is disruptive to sporadically have employees track down information whenever the Plaintiff happens to think of a request. There are also financial burdens that the Partnerships cannot bear since government regulations do not allow for it.

Thereafter, when Dalton Management and the Partnership's accounting firm, Defendant Marks Paneth & Shron, a significant and well respected accounting firm, comprised of approximately 70 partners and principals, did not make the aforementioned piecemeal production as quickly as Edmonds apparently wanted— Edmonds commenced this action. Although the crux of Edmond's action is that he seeks access to the complete set of the Partnerships' books, records, and ledgers—to which the Seavey Defendants *agree* that he is entitled and have made, and continue to make, available to him—he has pled a claim for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. This is only as a jurisdictional basis to access the federal courts with classic state law claims for fraud and breach of contract.

After considering the Complaint, we agree with Judge Stein's observation made during the June 24, 2008 argument on the Temporary Restraining Order motion action, that this litigation seems like a typical dispute between "New York real estate partners." Since we believe that Judge Stein's observation was correct, as noted herein, the Seavey Defendants will file a Motion to Dismiss within 30 days seeking, at the very least, dismissal of the RICO claims.

As the Court is aware, to establish a claim for a civil RICO violation, "a plaintiff must show that he was injured by the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 495 (S.D.N.Y. 2007). Here, Edmonds did not plead the required elements of a RICO claim.

First, Edmonds cannot show a "pattern" of racketeering activity because, at most, the alleged conspiracy lasted far short of the period needed to satisfy the "continuity" requirement to establish a pattern. Edmonds alleges that the conspiracy to defraud him only began in 2006, a period of less than two years. *See Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (recognizing that the Second Circuit has "never held a

period of less than two years to constitute a substantial period of time" sufficient to prove a RICO violation). Nor can he establish the required "enterprise" because there is no evidence of an organizational structure of a racketeering enterprise or an existence separate from the alleged pattern. Rather, Edmonds alleged that certain individuals, specifically the Seaveys, acted together to defraud Edmonds. His alleged "enterprise" claim fails because there is no claim of any organizational structure. Edmonds must show that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual and that there is a mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis. He cannot. Finally, Edmonds' Complaint is legally insufficient because he did not plead the activities of mail fraud or wire fraud with the requisite particularity. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). For these reasons, and others, the Seavey Defendants will move to dismiss Edmond's Complaint.

On July 7, 2008, we were served with a copy of Plaintiff's Notice to Produce with First Interrogatories ("Discovery Requests"), a copy of which is annexed hereto as Exhibit "A". The Discovery Requests seek production of the Partnerships' books, records and ledgers—the *exact same documents* that Edmonds seeks in his Order to Show Cause. Thus, the Discovery Requests do not assist Edmonds in preparing for the upcoming Order to Show Cause hearing. Rather, each of the Discovery Requests goes to the crux of the case. Accordingly, Edmonds is not prejudiced by waiting until after the Court is satisfied that it has jurisdiction over this matter. On the other hand, Defendants may be irreparably harmed by having to prematurely respond to the Discovery Requests in an improperly filed action. Because "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation," the Court should first determine whether or not it even has jurisdiction before allowing discovery to commence. *World Wrestling Entm't*, 530 F. Supp. 2d. at 496.

A cursory review of Edmond's Discovery Requests, Order to Show Cause for Preliminary Injunction, and Complaint, demonstrates that what Edmonds is merely seeking through this litigation is to inspect the Partnerships' books, records, and ledgers. The Seavey Defendants, however, do not dispute that Edmonds, as a partner in the Partnerships, is entitled to review these documents as he as already done. He need not need serve formal discovery, much less file a lawsuit to do so. In fact, the Seavey Defendants have made the information available to Edmonds and his auditors for inspection, which they did review over a period of several months, and the records remain available for inspection. Therefore, the Seavey Defendants, using the Discovery Requests as a guideline, will continue to make documents available to Edmonds for inspection on a date to be agreed upon by counsel, thereby alleviating the need to engage in formal discovery until after a ruling on the Seavey Defendants' forthcoming Motion to Dismiss.

On August 1, 2008, we contacted Plaintiff's counsel to schedule a date of the inspection. Plaintiff's counsel is currently contacting his client to obtain his availability so that the parties can schedule the inspection. This production and inspection should negate Edmonds' pending Order to Show Cause. The Seavey Defendants undertake this obligation reserving all of their objections, including privilege, to the Discovery Request.

* * *

For the reasons set forth above, we respectfully request that the Court bar Edmonds from engaging in further formal discovery until after the Court determines whether or not it has jurisdiction over this matter.

Should the Court have any additional questions, we are available at the Court's convenience. We are most grateful for Your Honor's consideration hereof.

Respectfully submitted,

Scott E. Mollen

8/12/08 I am not sure what this letter 'brief' is supposed to do for me, i.e. [illegible] stay discovery while [illegible] still [illegible] — certainly not document discovery — not yet fully [illegible] motion to dismiss is in the "offing". If you want to come in earlier & straighten [illegible] or try to [illegible] all this out call chambers but if not I'd [illegible] wait to 9/12 — this month & we will [illegible] prefer a PTC + [illegible] then we will see. My [illegible] "unique" rules is likely because of your [illegible] case otherwise discovery [illegible] will proceed in the normal pace + not be delayed. (which by the way is the only way motions are [illegible])

SO ORDERED
Harold Baer
USDJ

Enclosure

cc: M. Douglas Haywoode

Endorsement: I'm not sure what this letter "brief" is supposed to do for me, but the rule is I don't stay discovery, certainly not document discovery, while a motion to dismiss not yet fully briefed is in the "offing" (which by the way is the only way motions are argued). If you want to come in earlier and straighten or try to straighten all this out, call Chambers, but if not we will simply wait to 9/12. I'd prefer a pretrial conference and pretrial scheduling order this month and then we will see if any change in my rules is likely because of your "unique" case. Otherwise, discovery (document) will proceed in the normal pace and not be stayed.