Thomas R. Maniscro, Esq. (TM 8548)
William J. Kelly, Esq. (WK 5966)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for Defendants Marks, Paneth & Shron, LLP
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
(914) 323-7001 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN L. EDMONDS, individually and as a Managing General Partner of FIFTH AND 106TH STREET HOUSING COMPANY, INC., LOGAN PLAZA ASSOCIATES, LP CHARLES H. ASSOCIATES a/k/a CHARLES H. HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP,<br><br>Plaintiff,<br><br>- against -<br><br>ROBERT W. SEAVEY, individually and as a General Partner of FIFTH AND 106TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP and as a Limited Partner of CHURCH HOME ASSOCIATES, LP; PHYLLIS M. SEAVEY, individually and as owner, manager and member of DALTON MANAGEMENT COMPANY LLC; AVERY B. SEAVEY, individually and as a General Partner of LOGAN PLAZA ASSOCIATES, LP, CHURCH HOME ASSOCIATES and owner of DALTON MANAGEMENT COMPANY, LLC; and RONALD DAWLEY, as Chief Executive Officer of DALTON MANAGEMENT COMPANY, LLC; DALTON MANAGEMENT COMPANY, LLC, and THE SEAVEY ORGANIZATION; and MARKS, PANETH & SHRON, Auditors,<br><br>Defendants. | 08 – CV – 5646 (HB)<br><br>**DECLARATION OF WILLIAM J. KELLY, ESQ., IN SUPPORT OF DEFENDANT MARKS, PANETH & SHRON, LLP'S MOTION TO DISMISS THE COMPLAINT** |

2213777.1

William J. Kelly, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am associated with the law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for defendants Marks, Paneth & Shorn, LLP, sued here as "Marks, Paneth & Shron, Auditors" ("Marks Paneth").

2. I submit this declaration in support of Mark's Paneth's motion pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), for an order dismissing the action as against Marks Paneth in its entirety and with prejudice for the reasons set forth in the accompanying memorandum of law.

3. A true and correct copy of the Verified Complaint in this action is annexed as Exhibit A.

4. No previous application has been made for the relief requested herein.

Dated:    White Plains, New York
          December 12, 2008

William J. Kelly (WK 5966)

# Exhibit A

'08 CIV 5646

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. EDMONDS, INDIVIDUALLY
AND AS A MANAGING GENERAL
PARTNER OF FIFTH AND 106TH
STREET HOUSING COMPANY, INC.,
LOGAN PLAZA ASSOCIATES, LP,
CHARLES H. ASSOCIATES a/k/a
CHARLES H. HILL ASSOCIATES, LP
AND AS A LIMITED PARTNER OF
CHURCH HOME ASSOCIATES, LP,

Index No.

VERIFIED COMPLAINT

Plaintiff,

-against-

ROBERT W SEAVEY, INDIVIDUALLY
AND AS A GENERAL PARTNER OF
FIFTH AND 106TH STREET
ASSOCIATES, LP, LOGAN PLAZA
ASSOCIATES, LP, CHARLES HILL
ASSOCIATES, CHARLES HILL
ASSOCIATES, LP AND AS A LIMITED
PARTNER OF CHURCH HOME
ASSOCIATES, LP; PHYLLIS M. SEAVEY
INDIVIDUALLY AND AS OWNER,
MANAGER AND MEMBER OF DALTON
MANAGMETNT COMPANY LLC;
AVERY B. SEAVEY, INDIVIDUALLY
AND AS A GENERAL PARTNER OF
LOGAN PLAZA ASSOCIATES, LP,
CHURCH HOME ASSOCIATES AND
OWNER OF DALTON MANAGEMENT
COMIPANY, LLC; NEALE B. SEAVEY,
INDIVIDULLY AND AS OWNER,
MANAGER AND MEMBER OF DALTON
MANAGEMENT COMPANY, LLC; AND
RONALD DAWLEY AS CHIEF
EXECUTIVE OFFICER OF DALTON
MANAGEMENT COMPANY, LLC;
DALTON MANAGEMENT COMPANY,
LLC, THE SEAVEY ORGANIZATION,
and MARK PANETH & SHRON, Auditors,

Defendants.

1

Plaintiff, JOHN L. EDMONDS, Esq. by his attorney, M. Douglas Haywoode, Esq, as and for his Complaint against the Defendants, ROBERT W SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF FIFTH AND 106TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP; PHYLLIS M. SEAVEY INDIVIDUALLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGMETNT COMPANY LLC; AVERY B. SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF LOGAN PLAZA ASSOCIATES, LP, CHURCH HOME ASSOCIATES AND OWNER OF DALTON MANAGEMENT COMIPANY, LLC; NEALE B. SEAVEY, INDIVIDULLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGEMENT COMPANY, LLC; AND RONALD DAWLEY AS CHIEF EXECUTIVE OFFICER OF DALTON MANAGEMENT COMPANY, LLC; DALTON MANAGEMENT COMPANY, LLC, THE SEAVEY ORGANIZATION, and MARK PANETH & SHRON, Auditors, alleges as follows, upon information and belief:

1.    This is an action for racketeering, fraud, breach of contract, breach of fiduciary duty, unjust enrichment, conversion of property and other causes of action.

FIFTH AND 106TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES H ASSOCIATES a/k/a CHARLES HILL ASSOCIATES, LP, CHURCH HOME ASSOCIATES, LP; DALTON MANAGEMENT COMPANY, LLC; and MARK PANETH & SHRON, Auditors, are enterprises as the term is defined in 18 U.S.C. § 1961 engaged in activities that affect interstate commerce.

Such activities in and affecting interstate commerce include, among other things,

2

the purchase and sale of commodities involving interstate commerce; fraudulent financial
dealings injurious to federally subsidized small businesses; and the wrongful controlling
of properties whose mortgages are, or were, insured by HUD under Section 220 of the
National Housing Act as amended, 12 USC 1715k.

2.      From the time of this Plaintiff's associations with the Defendants in the
diverse enterprises, beginning in 1973, the parties engaged in the development, operation
and management of four substantial residential and commercial building developments,
all located in the Northern part of Manhattan. The individual Defendants have taken
control of the four residential developments by wrongfully utilizing the Dalton
Management (enterprise) to exclusively oversee their management operation and control
under the guise said enterprise and entity would collect administer and properly account
for the approximately FIFTEEN MILLION ($15,000,000) DOLLARS, paid to the
building entities on a yearly basis.

Defendants and each of them devised a scheme and artifice to deprive Plaintiff of
his property; and practiced a course of action that involved breach of their fiduciary and
other duties to plaintiff. These rendered false financial and accounting statistics that were
mailed to Plaintiff on a monthly basis; made business arrangements and unauthorized use
of the Partnerships' properties and assets such as cash garages, laundromats, and building
antennas for personal profit, purposefully depriving Plaintiff and the Partnership of their
financial interests.

Defendants have, *inter alia*, engaged in self dealing transactions, converting
certain business concessions within the property developments by way of "sweet heart"
leases to corporate entities, to which they later assumed personal interests; providing in

3

their dual capacities leases which pass on traditional and legitimate expenses of said corporations to the partnership, and this plaintiff, using and causing to be used the mails of the United States. Such use of the United States mails for purposes of effectuating the scheme to deprive Plaintiff of his property included, without limitation, the following:

(a.) the mailing of monthly statements of account from Defendants to the Plaintiff; and,

(b )the mailing of other documents from defendants to the plaintiff.

3.      Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale Seavey (the "Seavey Family") along with Defendant Ronald Dawley proceeded, through Defendant Dalton, the Managing Agent for the Partnerships' Housing Developments, (hereinafter "Housing Developments"), have received rental income, New York State and Federal subsidies and other benefits for the Partnerships' Housing Developments. have concealed profits received from the Partnerships' Housing Developments and have operated the Partnerships' Housing Developments in a manner contrary to customary practices and procedures for the operation of Housing Developments which receive State and Federal subsidies and other benefits as described in 12 USC 1715, et seq.

4.      Defendant Dalton Management and the other Defendants named herein have operated and managed the Partnerships Housing Developments in the improper and illegal manner described above so as to deceive Plaintiff and to defraud the Partnerships and their Housing Developments and the state and federal agencies that provide subsidies and other benefits to the Housing Developments.

5.      Additionally, Defendant Robert Seavey, in violation of his fiduciary duties to the Partnerships and to Plaintiff engaged in self-dealing and has defrauded and continues to defraud Plaintiff, the Partnerships and the creditors of the Partnerships'

4

Housing Developments in order to achieve enormous personal financial gains from his wrongful conduct.

6.      Additionally, Defendant Avery Seavey, in violation of his fiduciary duties to the Logan Plaza Partnership and Church Partnership has engaged in and continues to engage in self-dealing and has defrauded and continues to defraud Plaintiff, the Partnerships, and creditors of such Partnerships and their respective Housing Developments in order to achieve enormous personal financial gains from his wrongful conduct.

7.      Defendant Dalton Management, which is managed and operated by Defendant Phyllis Seavey, and, upon information and belief, owned by Defendants Phyllis Seavey, Avery Seavey and Neale Seavey, was retained as the Managing Agent for the Partnerships' Housing Developments. Defendants Dalton Management, Phyllis Seavey, Avery Seavey, Neale Seavey and Dawley, conspired in a scheme to conceal their self dealings, thus defrauding Plaintiff, the Partnerships, and their Housing Developments and their creditors, and the other Limited Partners of the various Partnerships and the beneficiaries of New York State and Federal housing subsidies and other benefits.

8.      Defendants, Dalton Management, Phyllis Seavey, Avery Seavey, Neale Seavey and Dawley, maintain any and all the financial information and records of the Housing Developments and other assets in a manner to benefit the Seavey Organization and the Seavey Family utilizing these assets as if they constituted defendants own "piggy bank". In actuality Dalton does not perform the responsibilities of accounting and maintaining the records and books of the corporations but have ceded this responsibility to the Defendants Mark Paneth & Shron, who are ostensibly retained as financial auditors

of these accounts. All substantiating documents in support of Dalton's financial expenditures and accounts are not held or maintained by Dalton, but appear to be in the control and custody of the Defendant auditors. These enterprises all function lawfully with regard to a multiplicity of other accounts overseen by them, but are utilized by Defendants as the virtual tool for the extraction of wrongful gain from Plaintiff and the Partnerships.

9.    The improper and illegal actions of Defendants named herein, including but not limited to their fraudulent and deceitful conduct as alleged in this complaint, were not authorized, licensed, permitted or ratified by the Partnerships or Plaintiff or the State and Federal agencies which provide subsidies to the Partnerships' Housing Developments and their tenants.

10.    Defendants, for the purposes of executing the scheme to defraud Plaintiff of his property, transmitted and caused to be transmitted communications by means of wire or telephone in interstate commerce. Such interstate communications by wire or telephone included, without limitation, telephone calls between defendants and plaintiff and his agents.

11.    The use of the mails for the purposes of effectuating the above-mentioned scheme to defraud plaintiffs, which occurred on more than one occasion in the past ten years, the re-investment of the taken funds in the business of the continuing enterprises by said defendants, which occurred on more than one occasion in the past ten years, constitutes, for the purpose of this action, a pattern of racketeering activity in violation of 18 U.S.C. §1962, for which treble damages, costs of suit and attorney fees may be sought under 18 U.S.C. §1964 (c).

6

## THE PARTIES

12.    At all times relevant to this action, Plaintiff, John L. Edmonds, who is an Attorney, was and remains a resident of Queens County, New York. Upon information and belief, at all times relevant to this action, Defendant Robert Seavey, an Attorney, has been and is a Managing General Partner of the Lakeview and Charles Hill Partnerships. Defendant Robert Seavey is a Limited Partner of the Logan and Church Partnerships. Defendant Robert Seavey is the husband of Defendant Phyllis Seavey and father of Defendants Avery Seavey and Neale Seavey. MARK PANETH, & SHRON, are the Auditors retained herein.

13.    Upon information and belief, at all times relevant to this action, Defendant Avery Seavey, an Attorney, has been and is a Managing General Partner of the Church and Logan Partnerships. Defendant Avery Seavey is a Limited Partner of the Defendant Avery Seavey is one of the members of and has an ownership interest in Defendant Dalton Management. Defendant Avery Seavey is the son of Defendants Robert Seavey and Phyllis Seavey and the brother of Defendant Neale Seavey.

14.    Upon information and belief, at all times relevant to this action, Defendant Neale Seavey, an Attorney, is a Managing General Partner of the Logan Plaza and Church Partnerships. Defendant Neale Seavey is the President of Defendant Dalton Management and owns a 25% interest in said enterprise. Defendant Neale Seavey is the daughter of Defendants Robert Seavey and Phyllis Seavey and the sister of Defendant Avery Seavey.

15.    Upon information and belief and at all times relevant to this action, Defendant Phyllis Seavey, an Attorney, is the owner of Defendant Dalton Management

7

and owns 52% of its interest. Defendant Phyllis Seavey has been operating and continues to operate and control any and all of the affairs of Defendant Dalton Management. Defendant Phyllis Seavey is the wife of Defendant Robert Seavey and the mother of Defendants Avery Seavey and Neale Seavey.

16.    Upon information and belief and at all times relevant to this action, Defendant Dalton Management, is a New York State limited liability company, the members of which are Defendant Phyllis Seavey, who has a 52% ownership interest, Defendant Avery Seavey and Defendant Neale Seavey, both of whom own the balance of interest in Defendant Dalton Management. Defendant Dalton Management is the Managing Agent of the Housing Developments listed herein which are owned by the Partnerships.

17.    Upon information and belief at all times relevant to this action, Defendant Ronald Dawley is the Chief Executive Officer of Defendant Dalton Management. Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale Seavey manage and control the Partnerships' Housing Developments and other like public housing developments throughout New York City, both individually and through an enterprise known as the Seavey Organization, also named as a Defendant herein.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, and 1345, & 1391, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1964(a). Questions additionally present under the False Claims Act, 31 USC S. 3732(a), et seq.

8

19.    This Court has supplemental jurisdiction of all state statutory and common law claims pursuant to 28 U.S.C. 1364.

20.    This Court has personal jurisdiction over the named defendants pursuant to 18 U.S.C. 1965.

21.    Venue is proper in this district pursuant to 18 U.S.C. 1965; 28 U.S.C. 1391(b) and 47 U.S.C. 207 in that a substantial amount of the events giving rise to the claims occurred within this district and the defendants conduct a substantial amount of their business within the district or maintain residences or places of business in the district.

## FACTUAL BACKGROUND

Plaintiff Enters Into Partnership Agreements with Defendants

22.    Plaintiff entered into a number of Partnership Agreements with Defendants Robert Seavey, Avery Seavey, and Neale Seavey, to acquire and operate the above-described Housing Developments which are owned by the Partnerships.

23.    The Fifth and 106th Street Associates, LP ("Lakeview Partnership"), a New York Limited Partnership, owns a 446 unit apartment complex with six commercial spaces located at 1259 Fifth Avenue, 4 East 107th Street, 35 East 106th Street and 1590 Madison Avenue in New York County. This housing development is known as the "Lakeview Apartments." The Lakeview Partnership was formed in 1973 and a Partnership Agreement was entered into in 1973 in Nassau County with the Partnership's principal office in New York County. Plaintiff is a Managing General Partner of the Lakeview Partnership and owns a nine percent (9%) interest in that Partnership. Defendant Robert Seavey is a Managing General Partner of the Lakeview Partnership

9

and owns a nine percent (9%) interest in the Partnership. The balance of interest for the Partnership is owned by the Limited Partners.

24.    The Logan Plaza Associates, LP ("Logan Partnership") a New York Limited Liability Corporation, owns a 131-unit apartment building located on 1425 Amsterdam Avenue between 130th and 131st Streets in New York County. This housing development is known as "Logan Plaza." The Logan Partnership was formed in 1988 and a Partnership Agreement was entered into in 1988 with the Partnership's principal office in New York County. Plaintiff is a Managing General Partner of the Logan Partnership and has a fifty percent (50%) interest in that Partnership. Defendant Robert Seavey is a Limited Partner in the Logan Partnership. Defendant Avery Seavey, President of ANBS Development Corporation, a Limited Liability Corporation, is a Managing General Partner of the Logan Partnership. ANBS and Defendant Avery Seavey have a fifty percent (50 %) interest in the Logan Partnership. Defendant Neale Seavey is a Limited Partner of the Logan Partnership.

25.    The Charles H. Hill Associates, LP ("Charles Hill") a New York Limited Corporation, owns a 101-unit apartment building located at 2050 Fredrick Douglas Boulevard (8th Avenue) in New York County. This building development is known as the "Charles Hill Houses." The Charles Hill Partnership was formed in 1986 and a Partnership Agreement was entered into in 1986 with the Partnership's principal office in New York County. Plaintiff is a Managing General Partner of the Charles Hill Partnership and owns a twenty-five percent (25%) interest in that Partnership. Robert Seavey is a Managing General Partner in the Charles Hill Partnership and owns a twenty-five percent (25%) interest in that Partnership. The balance of the Charles Hill

10

Partnership interest is owned by the Limited Partners.

26.    The Church Home Associates, LP, ("Church Partnership") a New York Limited Partnership, owns an 161-unit apartment building located on 95 Lenox Avenue in New York County. This Partnership housing development is known as the "Church Home." This Partnership was formed in 1982 and a Partnership Agreement was entered into in 1982 with the Partnership's principal office in New York County. Plaintiff is a Limited Partner in the Church Partnership and owns an unspecified amount of interest in that Partnership. Defendant Robert Seavey is a Limited Partner in the Church Partnership and has an unspecified interest in that Partnership. Defendant Avery Seavey is the Managing General Partner of the Church Partnership and owns in excess of a fifty percent (50%) interest in the Church Partnership. Defendant Neale Seavey is also a Limited Partner in the Church Partnership with an unspecified interest in that Partnership.

### DEFENDANTS FRAUDULENT SCHEME

27.    Between 1996 and 2000 Plaintiff was persuaded by and induced by Defendant Robert Seavey to retain Defendant Dalton Management, as the Managing Agent for the Partnerships' Housing Developments. Defendant Dalton Management is owned by Defendant Phyllis Seavey, Defendant Robert Seavey's wife, and Defendant Dalton Management was retained to operate, administer and manage the Partnerships' Housing Developments. Upon Defendant Robert Seavey's insistence and repeated advice, since 1994 no other management companies were considered or interviewed to become the managing agent for the Partnerships' Housing Development.

28.    As a result of Defendant Robert Seavey's persuasion and insistence Defendant Dalton management was retained by the Partnerships to manage all of the

11

finances of the Partnerships' Housing Developments, to administer all third-party agreements in connection with the Partnerships' Housing Developments and to oversee the financial distributions to the Partners for each Partnership. Over the repeated objections of Plaintiff, Defendants Dalton Management, Phyllis Seavey and Ronald Dawley administered the finances of the Partnerships' Housing Developments in a manner that allowed Defendant Dalton Management to withhold profit participation payments to Plaintiff and avoided proper payments to the creditors of the Partnerships' Housing Developments, and submitting false documentation and claims to Plaintiff and diverse governmental regulatory agencies in violation of 31 USC S. 3729(a),(1)&(2).

29. Dalton Management is responsible for negotiating and contracting with third-parties to lease the commercial spaces of the Partnerships' Housing Developments and to negotiate and contract with third-party vendors to provide various services for the benefit of the Partnerships, all of their Partners and their Housing Developments and to properly service the tenants of each of the Partnerships' Housing Development. Upon information and belief, Defendants Phyllis Seavey and Dawley conspired with Defendants Robert Seavey, Avery Seavey and Neale Seavey through Defendant Dalton Management and abused their authority through deceit and self-dealing by entering into agreements on behalf of the Partnerships' Housing Developments to charge these Housing Developments above-market fees in connection with the maintenance and operations of the Partnerships' Housing Developments. Upon information and belief, the excessive fees obtained by Defendant Dalton Management, as a result of their deception and self-dealing, were conveyed personally to the other Defendants, Robert Seavey, Phyllis Seavey, Avery Seavey, Neale Seavey and Dawley.

12

30.    On or about the summer of 2005, reliable employees of the Partnerships' Housing Developments communicated to Plaintiff that excessive costs were being incurred by the Partnerships' Housing Developments as a result of the contracts that Defendant Dalton Management had entered into on behalf of the Partnerships' Housing Developments as well as to the improper management and operations of the Partnerships' Housing Developments by Defendant Dalton Management. Plaintiff continued to receive similar communications from various other reliable employees concerning Defendant Dalton Managements mismanagement of the Partnerships' Housing Developments.

31.    Plaintiff inquired from Defendants Robert Seavey, Avery Seavey and Neale Seavey about these allegations of mismanagement of the financial and other affairs of the Partnerships' Housing Developments by Defendant Dalton Management. In order to continue with their self-dealing, deception and scheme to defraud Plaintiff, the Partnerships and their Housing Developments, Defendants Robert Seavey and Phyllis Seavey repeatedly assured Plaintiff that these allegations were false.

32.    Pursuant to the terms of the Management Agreements between Defendant Dalton Management and the above listed Partnerships, Defendant Dalton Management is required to provide the respective Partnerships with a detailed monthly financial report for each of the Partnerships' Housing Developments (hereinafter "Monthly Financial Package"). Each Monthly Financial Package provides information as to income and profits received (rent, garage, on site laundromats, building antennas and parking spaces), vacancies, administrative expenses, utility expenses, operating and maintenance expenses, taxes and insurance expenses, payable mortgage interest and other relevant financial information for each of the Partnerships' Housing Developments. Plaintiff and

13

the Partnerships rely upon the Monthly Financial Package in order to review Defendant Dalton Management's management and operations of the Partnerships' Housing Developments and to determine Partnership distributions, tax payments and other financial obligations in connection with the Partnerships and their Housing Developments.

33.    Upon information and belief, Defendants conspired to funnel monies of the Partnerships' Housing Developments away from the Partnerships to the Seavey Organization and the Seavey Family and Defendant Dawley by entering into self-serving agreements with third parties (including, yet not limited to TMO Parent. LLC, Merit Parking, LLC, Macquarie New York Parking 3, LLC, Sebco Laundry, R&R Supplies and Smuggers Hardware) with respect to the lease and management of the resident parking garages, on-site laundromats, building antennas and other Housing Developments properties that are also assets of the above listed Partnerships and their Housing Developments.

34.    Upon information and belief, in order to defraud Plaintiff and the Partnerships, Defendants Phyllis Seavey and Dawley repeatedly and on a consistent basis purposefully provided false and misleading information in the Monthly Financial Package by not reporting amounts paid to the Partnerships pursuant to the self-serving agreements. The Monthly Financial Package embodying the fraudulent information was forwarded to Plaintiff via the United States Postal Service.

35.    Upon information and belief, Defendant Dalton Management contracted with R&R Supplies and Smuggers Hardware to provide janitorial and maintenance supplies at an increased cost and a significant portion of the monies paid to Defendant

14

Dalton Management, for the Partnerships' Housing Developments, was being delivered to Defendants Robert Seavey, Avery Seavey, Neale Seavey, the Seavey Organization and Dawley. These payments to the Defendants, named above, were concealed and not reported in the Monthly Financial Packages which were prepared by Defendant Dalton Management and forwarded to Plaintiff via the United States Postal Service.

36.     Upon information and belief, Defendant Dalton Management contracted with TMO Parent, LLC, Merit Parking, LLC, Macquarie New York Parking 3, LLC, Sebco Laundry to lease property of the Partnerships' Housing Developments and a portion of the monies paid to Defendant Dalton Management, for the Partnerships' Housing Developments, was delivered to the Seavey Family and the Seavey Organization. None of these payments Defendant Dalton Management made to the Seavey Family and the Seavey Organization from these third-party agreements were reported in the Monthly Financial Packages which were prepared by Defendant Dalton Management and forwarded to Plaintiff via United States Postal Service.

37.     The Monthly Financial Package prepared by Defendant Dalton Management was sent to Plaintiff during the following month, and Plaintiff relied totally upon the Monthly Financial Packages, as being true and accurate. The forwarding to Plaintiff of the Monthly Financial Package began when Defendant Dalton became the Managing Agent for the Partnerships' Housing Developments. Effective September 2007 Defendant Dalton Management has ceased sending to Plaintiff the Monthly Financial Package and has made the information in the Monthly Financial Package obscure for the purpose of further disguising and concealing the Seavey Family's and Defendant Seavey Organization's self-dealing and use of the Partnerships' properties for the enormous

15

personal and financial gain of Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale Seavey.

38.     Defendant Robert Seavey has breached his fiduciary duties as Managing General Partner and Limited Partner of the respective Partnerships by, on information and belief, conspiring with the other Defendants, named herein, to direct to the Seavey Family and the Seavey Organization and Dawley monies rightfully due to the Plaintiff and the Partnerships, which were paid to Defendant Dalton Management as the Managing Agent for the Partnerships' Housing Development.

39.     In particular, since December 2005, Defendants Phyllis Seavey and Avery Seavey have taken sole control of the bank accounts for the Partnerships and their Housing Developments, which action is contrary to the terms of the Partnership Agreements, and they have since set up new bank accounts which prevent Plaintiff from participating in material financial matters in connection with these Partnerships and their Housing Developments. Defendant Avery Seavey has, therefore, breached his fiduciary duties as Managing General Partner and Limited Partner of the respective Partnerships.

40.     Plaintiff recently retained an accounting firm and directed his accountants to audit the financial records and books maintained by Defendant Dalton Management with respect to its management and operation of the Partnerships' Housing Developments. Although Defendant Dalton Management did provide to Plaintiff and his accountants access to a limited amount of the financial and other information in connection with its management and operations of the Partnerships' Housing Developments, which they have been managing and operating for approximately a decade, it has refused Plaintiffs repeated requests for access to all the financial and other

16

information in its possession in connection with the Partnerships' Housing Developments.

41. Defendant Dalton Management has informed Plaintiffs accountants that Plaintiff would have to commence legal action in order to obtain the financial and other relevant information in connection with the Partnerships' Housing Developments, which he has requested repeatedly and which it has consistently and repeatedly denied him access to, or, to provide it to him and his accountants. On information and belief, Defendant Dalton Management continues to conceal from Plaintiff financial and other information. concerning the Partnerships and their Housing Developments, that would disclose to Plaintiff the self-dealings, deception and fraudulent schemes of the Defendants named herein in connection with their management and control of the operations of the Partnerships' Housing Developments.

42. Defendant Dalton Management, which is owned in part or in whole by the Seavey Family and the Seavey Organization, is the Managing Agent for all of the Partnerships' Housing Developments, and in its role as Managing Agent has been controlling all the finances and decisions relating to the administration of the Partnerships' Housing Developments, including but not limited to the collection of federal and state subsidies with respect to the payment of rent and collection of monies from various tenants. The manner in which Defendant Dalton Management has carried out its duties as the Managing Agent has given sole control of the Partnerships and their Housing Developments to the Seavey Family, the Seavey Organization and Ronald Dawley, who are also named as Defendants in this action. This control has prevented Plaintiff's financial and other decision-making participation in connection with the Partnerships' Housing Developments, businesses and other matters and this control has

17

persisted and continued over Plaintiffs vigorous and repeated objections.

Defendats Marks Paneth & Shron were retained by the Partnership to conduct periodic independent audits of Defendant Dalton Management's financial records in connection with its management and operation of the Housing Developments named herein at the instance of Defendant Robert W. Seavey. Independent auditing is required under the federal HUD governing guidelines. Marks Paneth & Shron has not acted in accordance with the auditing standards prescribed herein, or in accordance with generally accepted standards in the United States and Western world.

Over a period of one year in which Plaintiff's auditors attempted to review the accounts for business tax year 2006, Dalton was unable to supply fundamental support information for the revenues or expenditures of that year from the information contained in its General Ledgers. Plaintiff's auditors found Dalton Management and Marks Paneth & Shron's financial records for the Housing Developments disclosed an approximately $4,000,000.00 discrepancy between claimed expenses, and any documented support from which these figures could be verified in 2006. Despite multiple requests for this information nothing was supplied over the space of the year. Several adjustments of entries appeared in the Shron financial statement that did not appear in Dalton Managements general ledgers, which should have been the "bible" dictating such changes. The Shron Agency acted as auditors only, yet Marks Paneth & Shron showed multiple journal entries, made by them as auditors, with no explanation for these changes. No support for these appeared in the general ledgers of Dalton, which is paid to do all auditing, nor did any documented support appear in the ledgers of Marks Paneth & Shron. Plaintiff was at last told he must pay the alleged auditors for their time in

18

supplying any "back up" documentation which Dalton claimed it did not have. Fees paid to Marks Paneth & Shron have far exceeded contractual amounts, and questionable charges for previous years work appear, without explanation, in the 2006 audit report.

This anomaly clearly suggests Dalton Management acts as a "cut out" operation in this scheme, and is not the entity maintaining any books and records, but that the bookkeeping and accounting for the Partnerships' Housing Developments are being performed by Marks Paneth & Shron, notwithstanding that this practice violates Section 3.16 of the Government Auditing Standards, as it conflates the independent function of the auditors, impermissibly rendering them auditors of their own accounting.

Dalton Management is the entity paid for these services but this role reversal creates an unacceptable conflict as a result of which it is clear the accounting work on these developments is not being audited at all in violation of federal and state regulations governing management and operations of the various Housing Developments.

FIRST COUNT & CAUSE OF ACTION
(Violations of RICO, 18 U.S.C. 1962(d))
(Conspiracy to violate 18 U.S.C. 1962(c))

43.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

THE ENTERPRISE

44.   At all times relevant hereto, Defendants were members of and/or were employed by or associated-in-fact with an enterprise engaged in or the activities of which affected interstate or foreign commerce, as that term is defined by 18 U.S.C. 1961(4).

45.   The RICO enterprise includes all persons and entities who were or are associated-in-fact in the management and control of the Building Developments and the

19

SEAVEY ORGANIZATION. The members of the Enterprise include but are not limited

to each of the Defendants.

46. The Enterprise shared the common purpose of operating the building

developments.

47. The Enterprise also has had an existence and economic goal separate from

the pattern of racketeering activity, in that:

> (a) the defendants were engaged in the legitimate business
> and legal activity of leasing apartments to both tenants who
> were eligible to receive the New York State and Federal
> Subsidies and other benefits and to tenants who were not
> eligible;
>
> (b) the defendants conducted the otherwise legitimate and
> lawful operations and affairs of the Enterprise in an unlawful
> manner designed to fraudulently avoid paying Plaintiff and
> others the monies rightly due them.

48. Defendants abused their positions in the Enterprise, and operated the

affairs of the Enterprise, through a pattern of racketeering activity in order to accomplish

their fraudulent scheme.

49. The Enterprise had an ascertainable structure, and a continuity of structure

and personnel.

### THE ROLE OF THE DEFENDANTS IN THE ENTERPRISE

50. At all times material hereto, each Defendant was and remains a "person,"

as that term is defined by Title 18, United State Code, 1963(3). At all times material

hereto, each Defendant was employed by or associated with the Enterprise and conducted

or participated in the conduct of the affairs of said Enterprise. As such, each Defendant

worked and/or participated with and/or endorsed the actions and decisions and orders of

Defendants and other persons associated with the Enterprise in order to accomplish the

20

common purpose of the Enterprise. Further, each of the Defendants who did not participate directly in any of the acts complained of herein, either by way of action, direction, or approval, aided, abetted, counseled, induced the commission of said acts by other Defendants or other persons associated in fact with the Enterprise, in violation of Title 18, United States Code, Section 2.

## THE PATTERN OF RACKETEERING ACTIVITY

51.    Defendants pattern of racketeering activity, as defined in Title 18, U.S.C. 1961 (1) and 1961 (5), consisted of the acts hereinafter set forth, each of which was related to the common purpose of the Enterprise to accomplish their deceitful and fraudulent scheme.

52.    It was part of the pattern of racketeering activity that from on or about January 1994 to the present time that Defendants and their co-conspirators and agents unlawfully, willfully and knowingly devised and intended to devise a scheme and plan for obtaining and withholding monies and financial information and records from Plaintiff and the Partnerships by means of false and fraudulent pretenses, misrepresentations, promises and through the concealment of material facts relating to, *inter alia,* the financial records of the Partnerships' Housing Developments which are in the Defendants possession and control.

53.    From on or about January 1, 1994 to the present, Defendants and their co-conspirators and agents unlawfully, willfully and knowingly. and for purposes of executing and attempting to execute, the scheme and artifice to defraud the Plaintiff, the Partnerships' and their Housing Developments, as more fully described above, and for concealing monies and profits obtained from their improper and illegal management and

21

operations of the Partnerships' Housing Developments, did place and cause to be placed in post offices and authorized depositories for mail matter. and did cause to be delivered by mail, according to the directions thereon, certain mail matter to be sent to Plaintiff and delivered by the United States Postal Services, in violation of Title 18, U.S.C. § 1341 (Mail Fraud.)

54.    Each of the aforesaid mailings and use of the wires was in furtherance of the scheme to deceive and defraud Plaintiff and the Partnerships' Housing Development. Defendants knew of and authorized such mailings for the purpose of executing and perpetrating their fraudulent scheme and Defendants knew that such mailings were the natural and probable consequences of an essential part of their fraudulent scheme.

55.    Defendants also used the wires in furtherance of their scheme to defraud Plaintiff and the Partnerships in violation of 18 USC S.1343 and to prevent Plaintiff and the Partnerships from obtaining accurate financial records and other business matters under their management and control.

56.    Plaintiff was unable to discover the facts constituting Defendants pattern of illegal and improper conduct until in or about August 2007, or thereafter, because of Defendants fraudulent concealment and misrepresentations.

57.    Each of the aforesaid mailings and use of the wires was in furtherance of the scheme to deceive and defraud Plaintiff, the Partnerships and Defendants knew of and authorized such mailings for the purpose of executing their unlawful and fraudulent scheme Defendants knew that such mailings to Plaintiff were the natural and probable consequences of an essential part of their fraudulent scheme and deceitful actions perpetrated on Plaintiff, and that Plaintiff relied upon their information and

22

representations and believed they were true.

## THE NATURE AND EXTENT OF DAMAGES

58.     By engaging in the conduct set forth above and conspiring to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of Title 18, U.S.C. § 1962 (d), Defendants and each of them, both directly and indirectly, caused Plaintiff, the Limited Partners, the Partnerships' and their Housing Developments to be injured in their businesses and properties.

59.     By reason of the foregoing, Plaintiff has been damaged in the sum of not less than FIVE HUNDRED MILLION ($500,000,000.00) DOLLARS, before trebling, the exact amount to be determined at trial.

## SECOND COUNT & CAUSE OF ACTION
(Violations of RICO, 18 U.S.C. § 1962 (c)

60.     The allegations of paragraphs 1 through 59 are repeated and re-alleged as though fully set forth herein.

61.     By engaging in the conduct described in the paragraphs incorporated by reference herein, Defendants and each of them, both directly and indirectly, conducted and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, all in violation of Title 18, U.S.C. § 1962 (c).

62.     By reason of the foregoing, Defendants and each of them, both directly and indirectly, caused Plaintiff, the Partnerships and their Housing Developments to be injured in their businesses and properties and has damaged Plaintiff in the sum of not less than FIVE HUNDRED MILLION ($500,000,000.00) DOLLARS, before trebling, the exact amount to be determined at trial.

23

THIRD COUNT & CAUSE OF ACTION
(Violation of RICO, 18 U.S.C. § 1962 (d)
Conspiracy to violate 18 U.S.C. § 1962 (b))

63.     The allegations of paragraphs 1 through 62 are repeated and re-alleged as though fully set forth herein.

64.     From on or about January 1, 1994 through the present time, Defendants, being persons in control of and associated with the Enterprise, which Enterprise was engaged in, activities which affected interstate commerce, did unlawfully, willfully and knowingly combine confederate, conspire and agree together with each other to violate Title 18 U.S.C. § 1962 (b), both directly and indirectly, to acquire and/or maintain an interest in or control of the Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, U.C.S. § 1961(1) and 1961(5), by the commission of multiple racketeering acts, as set forth above, all in violation of Title 18, U.S.C. §1962(d).

65.     By engaging in the conduct described in the paragraphs incorporated by reference herein, and conspiring to acquire and/or maintain, both directly and indirectly an interest in or control of the Enterprise, through a pattern of racketeering activity Defendants, and each of them, caused Plaintiff, the Partnerships' and their Housing Developments to be injured in their businesses and properties in the sum of not less than FIVE HUNDRED MILLION ($500,000,000) DOLLARS, before trebling, the exact amount to be determined at trial, all in violation of Title 18, U.S.C. § 1962(d).

FOURTH COUNT & CAUSE OF ACTION
(Fraud in the Inducement as against Defendants)

66.     Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 65 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

24

67.    Plaintiff, by and through the Partnerships and Defendant Dalton Management are parties to agreements, ("Management Agreements") the terms of which require Defendant Dalton Management to properly manage and operate the Partnerships' Housing Developments and account and report to Plaintiff and the Partnerships. Prior to the Partnerships and Defendant Dalton Management entering into the Agreements to manage and operate the Partnerships Housing Developments, Defendants Robert Seavey and Phyllis Seavey fraudulently represented to Plaintiff that they were capable and knowledgeable to manage and operate the Partnerships' Housing Developments, listed above, pursuant to the terms of the Management Agreements.

68.    Plaintiff, by and through the Partnerships, in reliance on Defendants representations, entered into the Management Agreements with Defendant Dalton Management for its management and operation of the Partnerships' Housing Developments which are listed above.

69.    At all times relevant, Defendants knew of their intention not to perform under the terms of its Management Agreements with the Partnerships and knew that it intended to act in a manner to misuse the revenue and profits of the Partnerships' Housing Developments and other assets of the Partnerships.

70.    Defendants' fraudulent statements have caused Plaintiff and the Partnerships and their Housing Developments substantial injury.

71.    By reason of the foregoing, Plaintiff has suffered damage, in an amount to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

FIFTH COUNT & CAUSE OF ACTION
(Fraud as against Defendants)

72.    Plaintiff now repeats and re-alleges each and every allegation contained in

25

paragraphs 1 through 71 as set forth above, and hereby incorporates same by reference as if all were set forth fully herein.

73.    Plaintiff and Defendants, entered into various Management Agreements at various times with respect to their management and operations of the Partnerships' Housing Developments.

74.    When Defendant Dalton Management entered into the Management Agreements to manage and operate the Partnerships' Housing Developments, it was aware of its intention to misuse the monies and profits it will collect in connection with its management and operations of the Partnerships' Housing Developments and other Partnerships' assets.

75.    When Defendant Dalton Management entered into the Agreements with the Partnerships to manage and operate their Housing Developments, it was aware of its intention to deceive Plaintiff by misrepresenting to him that it intended to adhere to the terms of their Management Agreements with the Partnerships.

76.    Defendant Dalton Management, its owners, managers and members have continued to misrepresent their qualifications and experience to Plaintiff from the execution of the Management Agreements up to the present time.

77.    Plaintiff reasonably relied upon the misrepresentations that Defendants made to him.

78.    Upon information and belief, Defendants continue to receive revenues and profits as a result of their improper and illegal acts and their misuse of revenues and profits from the Partnerships Housing Developments and other assets, and have re-invested said proceeds in violation of USC 1344(2) in banks in furtherance of the

26

continuing criminous enterprise constituting bank fraud.

79.    By reason of the foregoing, Plaintiff has suffered damage, in the amount, to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

### SIXTH COUNT & CAUSE OF ACTION
#### (New York General Business Law Violation)

80.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 79 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

81.    Defendants' fraudulent statements and acts were misleading in material respect and constituted deceptive acts and practices in the management and operations of Partnerships' business in the State of New York in violation of N.Y. Gen. Bus. Law § 349.

82.    Defendants' improper and illegal acts and practices have a broad impact on the general public in the State of New York as their acts and practices affect New York State and Federal subsidies and other benefit programs in which the Partnerships' Housing Developments are involved and that are for the purpose of furthering the interest of the general public.

83.    As a result of Defendants improper, illegal and deceptive practices, Plaintiff has been damaged, in an amount, to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

### SEVENTH COUNT & CAUSE OF ACTION
#### (Breach of Management Agreements
#### as against Defendants Dalton Management,
#### Phyllis Seavey and Dawley)

27

84.     Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 83 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

85.     Plaintiff, by and through the Partnerships and Defendant Dalton Management are parties to (1) various Management Agreements with the Partnerships, the terms of which require Defendant Dalton Management to properly manage and operate the Partnerships' Housing Developments, (2) account to Plaintiff and the Partnerships and (3) to provide Plaintiff and the Partnerships with accurate financial information records for the Partnerships' Housing Developments and other assets.

86.     Plaintiff has performed his obligations successfully and fully under the Management Agreements as did the Partnerships and he complied with the terms of the Management Agreements with Defendant Dalton Management.

87.     Defendants Dalton Management, Phyllis Seavey and Dawley materially breached their Management Agreements with the Partnerships, by among other things, deliberately providing misleading and erroneous information in the financial statements they prepared for the Partnerships' Housing Developments and other Partnerships' assets; and refusing to provide proper formal accountings under the Management Agreements which would allow the Partnerships to make authorized and accurate Partnership distributions to Plaintiff which are due and owing. Defendants have paid themselves in excess of contract limits and concealed said payments in financial reports.

88.     By reason of the foregoing, Plaintiff has been damaged, in an amount, to be determined at trial but, not less than ($500,000,000.00) Dollars.

EIGHTH COUNT & CAUSE OF ACTION
(Anticipatory Breach of Management Agreements as against Defendants Dalton

28

Management, Phyllis Seavey and Dawley)

89.     Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 88 as set forth above, and hereby incorporates same by references. as if all were set forth fully herein.

90.     Plaintiff, by and through the Partnerships, and Defendant Dalton Management entered into Management Agreements for the management and operations of the Partnerships' Housing Developments and negotiated the terms of the accounting provisions.

91.     Plaintiff, by and through the Partnerships, complied and performed all of his obligations under the Management Agreements, however, Defendants Phyllis Seavey and Dawley have failed to give Plaintiff and the Partnerships the proper accounting under the terms of the accounting provisions of the Management and Partnership Agreements.

92.     Upon information and belief, Defendants Dalton Management and Phyllis Seavey received notices sent to them by Plaintiff requesting a proper accounting and demanding all monies due and owing to him, under the Management Agreements, to the Partnerships and to Plaintiffs partnership distributions.

93.     Defendants Dalton Management, Phyllis Seavey and Dawley have failed to provide an accurate accounting and continue to refuse to provide an accurate accounting to Plaintiff and the Partnerships for the monies they collect from their management and operations of the Partnerships' Housing Developments and other assets.

94.     Defendants Dalton Management, Phyllis Seavey and Dawley's failure to provide Plaintiff with an accurate accounting, pursuant to their Management Agreements with the Partnerships. is a clear indication that Defendants Dalton Management, Phyllis

29

Seavey and Dawley would continue to breach the terms of the Management Agreements with Plaintiff and the Partnerships and would continue to use the monies they collect from the Partnerships' Housing Developments and other assets as a personal bank account by virtue of their taking large sums of money from the Partnerships' Housing Developments and other assets for financial manipulations by the Seavey Family and the Seavey Organization.

95.    Defendants Dalton Management, Phyllis Seavey and Dawley's wrongful expression of intent (i) not to provide Plaintiff and the Partnerships with proper and accurate accounting of the monies and fees they collect from their management and operations of the Partnerships' Housing Developments and other assets and (ii) not to pay to Plaintiff partnerships' distributions due and owing to him pursuant to the Partnerships and Management Agreements constitute an anticipatory repudiation of their Management Agreements with Plaintiff and the Partnerships, has rendered Defendants Dalton Management, Phyllis Seavey and Dawley in breach of the terms and conditions of the Management Agreements between it Plaintiff and the Partnerships.

96.    By reason of the foregoing, Plaintiff has suffered damage, in an amount to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

NINTH COUNT & CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing as against Defendants Dalton Management, Phyllis Seavey and Dawley)

97.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 96 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

98.    Plaintiff, by and through the Partnerships, and Defendant Dalton

30

Management entered into legally binding Managements Agreements with respect to their management and operations of each of the Partnerships' Housing Developments and other assets.

99.    Plaintiff, by and through the Partnerships, has successfully and fully performed his obligations under the Management Agreements and has complied with the terms pursuant to the Management Agreements.

100.    Defendants Dalton Management, Phyllis Seavey and Dawley have breached the implied covenant of good faith and fair dealing by depriving Plaintiff and the Partnerships of the benefit of the Management Agreements.

101.    By reasons of the foregoing, Plaintiff has suffered damages, in an amount, to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

TENTH COUNT & CAUSE OF ACTION (Unjust Enrichment)

102.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 101 as set forth above, and hereby incorporates it by references, as if all were set forth fully herein.

103.    As a result of the conduct described above, Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale Seavey have premeditatedly and continuously orchestrated for personal enrichment the monies they collected and continue to collect from their management and operations of the Partnerships' Housing Developments and assets under the guise and oversight of public officials to the detriment of Plaintiff, the Partnerships and their Housing Developments and assets and the general public.

104.    Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale

31

Seavey have been and continue to be unjustly enriched at the expense of Plaintiff, the Partnerships and their Housing Developments. Specifically Defendants unfair and illegal actions, as described above, have enabled Defendants to receive revenue without proper accounting and have failed to pay to Plaintiff partnership distributions pursuant to the terms of the Partnership and Management Agreements, thus unjustly enriching Defendants Robert Seavey, Phyllis Seavey, Avery Seavey and Neale Seavey in an amount to be proven at a trial. Defendants should be required to disgorge this unjust enrichment.

105.    By reason of the foregoing, Plaintiff has suffered damage, in an amount, to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

ELEVENTH COUNT & CAUSE OF ACTION (Conversion)

106.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 as set forth above, and hereby incorporates same by reference. as if all were set forth fully herein.

107.    That a sum as yet to be determined was withheld and/or withdrawn by Defendants Phyllis Seavey and Dalton Management from the Partnership bank accounts for non-Partnership business and without the knowledge and consent of Plaintiff.

108.    That the withholding and/or withdrawal of such funds from Partnership bank accounts for non-Partnership business and without the knowledge and consent of Plaintiff, and the failure to find or otherwise make said funds available to and for the Partnerships businesses and for Plaintiff amounted to conversion.

109.    Defendants Dalton Management and Phyllis Seavey have failed and refused to return the converted funds back to the accounts of the Partnerships and to

32

allow the Partnerships to make Partnership distributions to the Plaintiff pursuant to their Management Agreements with the Partnerships.

110.    As a result of Defendants Dalton Management and Phyllis Seavey's improper and illegal acts, the Partnerships and Plaintiff have suffered damages, in an amount, to be determined at a trial but, not less than Five Million ($5,000,000) Dollars.

TWELFTH COUNT & CAUSE OF ACTION
(Defendant Robert Seavey's Breach
of His Fiduciary Duty to the Partnerships)

111.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 110 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

112.    At all times mentioned herein, Defendant Robert Seavey, as a Managing General Partner of the Lakeview and Charles Hill Partnerships had a fiduciary duty to each such Partnership to perform his duties and to act in good faith and in the best interests of each of these Partnerships. Defendant Robert Seavey's fiduciary duty to the Partnerships continues to exist and apply to each Partnership at the present time.

113.    Defendant Robert Seavey's fiduciary duty has also required and continues to require him to avoid performing any acts detrimental to the best interests of the Partnerships and to avoid performing any acts which would make it impossible to carry on the ordinary purposes of each such Partnership.

114.    On or prior to the date of this Verified Complaint, and continuing to the present date, Defendant Robert Seavey performed a number of improper and illegal acts which have been and continue to be detrimental to the best interest of each such

115.    Partnership, and which have made it impossible for each such Partnership .

33

to carry on the ordinary purposes of it business.

116.    These illegal and detrimental acts include, but are not limited to:

(a)    Upon information and belief, and as required by law for each Partnership, Defendant Robert Seavey has failed to complete all required filing with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and has filed false information with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and other appropriate authorities;

(b)    Defendant Robert Seavey has conspired with the other Defendants named herein, to prevent Plaintiff, a Managing General and Limited Partner, of the respective Partnerships, from gaining access to the financial records for the Partnerships which records have used and are being used in furtherance of the businesses of the Partnerships;

(c)    Upon information and belief, Defendant Robert Seavey has failed to direct Defendant Dalton Management to provide Plaintiff, a Managing General and Limited Partner of the respective Partnerships, with just and proper financial distributions pursuant to the Partnership Agreement;

(d)    Defendant Robert Seavey has abandoned and continue to abandon and has neglected the review of the daily operations of Defendant Dalton Management, thus granting total of control all Partnerships' assets to Defendant Dalton Management its owners, managers and members and Defendant, The Seavey Organization.

(e)    Defendant Robert Seavey has cooperated willfully with Defendants Dalton Management and Phyllis Seavey in the changing of the Partnerships' bank accounts, bank signature cards and/or credit accounts so as to prevent Plaintiff, a Managing General and Limited Partner of the respective Partnerships, from accessing funds and/or bank accounts to which he rightfully has access to for the businesses of the Partnerships, their Housing Developments and other assets;

(f)    Upon information and belief, Defendant Robert

34

Seavey has assisted Defendant Dalton Management's management and operations of the Partnerships' Housing Developments and other assets in a manner which is in direct contravention to the covenants contained in the Agreements of each Partnership and the Management Agreements with Defendant Dalton Management for each Partnership.

(g) Defendant Robert Seavey has refused willfully, to assist Plaintiff, a Managing General and Limited Partner of the respective Partnerships with the termination of the improper and illegal services of Defendant Dalton Management, on behalf of the Partnerships;

(h) Defendant Robert Seavey has concealed willfully the improper and illegal acts of Defendant Dalton Management, its owners, managers and members with respect to their administration, management and operations of the Partnerships' Housing Developments and other assets and its improper and illegal acts with respect to the financial records and accountings for the Partnerships' Housing Developments and other assets;

(i) Upon information and belief, Defendant Robert Seavey has authorized and continues to authorize Defendant Dalton Management to enter into self-serving third-party agreements for the lease and use of Partnerships' assets, which self-serving third party agreements have been and continue to be detrimental to Plaintiff, the Partnerships, their Housing Developments and other assets.

(j) Upon information and belief, Defendant Robert Seavey has assisted and authorized Defendants Dalton Management and Phyllis Seavey in concealing information as to the terms of the self-serving third-party agreements with respect to the use and lease of Partnerships' Housing Developments and other assets and has assisted and authorized Defendants Dalton Management and Phyllis Seavey with concealing from Plaintiff, the financial records and income received from the use and lease of the Partnerships' assets.

117. Defendant Robert Seavey's performance of these illegal and improper acts was and continues to be willful, wanton, and done in bad faith, and continues to be a wrongful taking of the Partnerships' profits and assets. Defendant Robert Seavey's improper

35

and illegal conduct has caused and continues to cause injury and damage to the Partnerships and to the Plaintiff in an amount, to be determined at trial but, not less than Five Million ($5,000,000) Dollars.

## THIRTEENTH COUNT & CAUSE OF ACTION
### (Defendant Robert Seavey's
### Breach of Fiduciary Duty to Plaintiff)

118. Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 117 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

119. At all times mentioned herein, Defendant Robert Seavey, as a Managing General Partner of the Lakeview and Charles Hill Partnerships had a fiduciary duty to each such Partnership and to Plaintiff to perform his duties in a professional manner and to act in good faith and in the best interests of the Partnerships and its General and Limited Partners. Defendant Robert Seavey's fiduciary duty to Plaintiff continues to apply to the present time.

120. Defendant Robert Seavey's fiduciary duty has also required and continues to require him to avoid performing any acts detrimental to the best interests of the Partnerships and to Plaintiff, which acts would make it impossible for the Partnerships to carryon the ordinary purposes of their businesses.

121. On or prior to the date of this Verified Complaint, and continuing to the present time, Defendant Robert Seavey has performed a number of improper and illegal acts which have been detrimental to the best interests of Plaintiff and the Partnerships and such improper and illegal acts have made it impossible for the Partnerships to carryon the ordinary purposes of their businesses.

36

122.   These improper and illegal detrimental acts include, but are not limited to:

(a)       Upon information and belief, and as required by law for each Partnership, Defendant Robert Seavey has failed to complete all required filing with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and has filed false information with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and other appropriate authorities;

(b)       Defendant Robert Seavey has assisted and cooperated with Defendants Dalton Management, Phyllis Seavey, its owners, managers and members in preventing Plaintiff from gaining access to any and all financial records and information for the Partnerships' Housing Developments and other assets, which are being used in furtherance of the businesses of the Partnerships, their Housing Developments and their other assets;

(c)       Upon information and belief, Defendant Robert Seavey has willfully failed and continues to fail to direct Defendants Dalton Management and Phyllis Seavey to provide Plaintiff with the just and proper Partnership financial distributions despite Plaintiffs repeated requests to Defendant Robert Seavey to direct Defendants Dalton Management and Phyllis Seavey to make such payments to Plaintiff pursuant to the various Partnership Agreements;

(d)       Defendant Robert Seavey has abandoned and/or otherwise has neglected the review of Defendant Dalton Management's daily administration, management and operations of the Partnerships' Housing Developments and other assets, thus granting total control of all Partnerships' assets and businesses to Defendants Phyllis Seavey, Dalton Management, its owners, managers and members and Defendant Seavey Organization;

(e)       Defendant Robert Seavey has been cooperating fully with Defendants Dalton Management and Phyllis Seavey in the changing of Partnerships' bank accounts, bank signature cards and/or credit accounts, so as to prevent Plaintiff from accessing funds, credit accounts and other financial information that he rightfully has access to under New York law and the respective Partnership Agreements;

37

(f)    Upon information and belief, Defendant Robert
Seavey has assisted Defendant Dalton Management's
administration, management and operations of the
Partnerships' Housing Developments and other Partnership
assets in a manner which is in direct contravention of the
covenants contained in each of the Partnerships' Agreements;

(g)    Defendant Robert Seavey has refused to assist
Plaintiff, on behalf of the Partnerships, in terminating the
improper and illegal services of Defendants Phyllis Seavey,
Dalton Management, its owners, managers and members.

123.    Defendant Robert Seavey's performance of these improper and illegal acts

was and continues to be willful, wanton, and done in bad faith and continues to be a

wrongful taking of the Partnerships' profits and assets. Defendant Robert Seavey's

improper and illegal acts have caused and continue to cause injury and damage to

Plaintiff, in an amount, to be determined at trial but, not less than Five Hundred Million

($500,000,000.00) Dollars.

### FOURTEENTH COUNT & CAUSE OF ACTION
(Defendant Avery Seavey's Breach of
Fiduciary Duty to the Partnerships)

124.    Plaintiff now repeats and re-alleges each and every allegation contained in

paragraphs 1 through 123 as set forth above, and hereby incorporates same by reference,

as if all were set forth fully herein.

125.    At all times mentioned herein, Defendant Avery Seavey, President of

ANBS Development Corporation, a Limited Liability Corporation, and as a Managing

General Partner of Logan Partnership and a Managing General Partner of the Church

Home Partnership and a Limited Partner of Charles Hill Partnership, has a fiduciary duty

to these Partnerships to perform his duties and to act in good faith and in the best interests

of these Partnerships. Defendant Avery Seavey's fiduciary duty to these Partnerships

38

continues to be applicable to the present time.

126.    Defendant Avery Seavey's fiduciary duty has also required and continues to require him to avoid performing any acts detrimental to the best interests of the Logan Church Home and Charles Hill Partnerships which acts would make it impossible for the Partnerships to carryon the ordinary purposes for which they were formed.

127.    On or prior to the date of this Verified Complaint and continuing to the present date, Defendant Avery Seavey performed a number of improper and illegal acts which have been detrimental to the best interests of these Partnerships and which have made it impossible for these Partnerships to carryon the ordinary purposes for which they were formed.

128.    These improper, illegal and detrimental acts include, but are not limited to:

(a)    Upon information and belief, and as required by law for each Partnership, Defendant Avery Seavey has failed to complete all required filing with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and has filed false information with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and other appropriate authorities;

(b)    Defendant Avery Seavey has prevented Plaintiff, a Managing General and Limited Partner of the respective Partnerships from gaining access to all financial records and information for the Partnerships which are used and continues to be used in furtherance of the businesses of the Partnerships;

(c)    Upon information and belief, Defendant Avery Seavey has failed to direct Defendant Dalton Management to provide Plaintiff, a Managing General and Limited Partner of the respective Partnerships, with the just and proper Partnerships' distributions in accordance with each Partnership Agreements:

39

(d)      Defendant Avery Seavey has abandoned and/or otherwise neglected the review of Defendant Dalton Management's daily management and operations of the Partnerships' Housing Developments and other assets thus granting total control of the Partnerships' Housing Development and other assets, to Defendants Dalton Management, Phyllis Seavey and the Seavey Organization;

(e)      Defendant Avery Seavey has cooperated fully with Defendants Dalton Management and Phyllis Seavey in the changing of Partnerships' bank accounts, bank signature cards and/or credit accounts, so as to prevent Plaintiff, a Managing General and Limited Partner of the respective Partnerships, from accessing Partnership funds, bank accounts and/or other Partnerships' financial and credit accounts, that he rightly has access to under New York Law and the respective Partnership Agreements;

(f)      Upon information and belief, Defendant Avery Seavey has assisted Defendant Dalton Management's management and operations of the Partnerships' Housing Developments in a manner in direct contravention to the covenants contained in the Partnerships' Agreements and the Partnerships'      Agreement      with      Defendant      Dalton Management;

(g)      Defendant Avery Seavey's willful refusal to assist Plaintiff. a Managing General and Limited Partner of the respective Partnerships, with the termination of the improper and illegal services of Defendant Dalton Management;

(h)      Defendant Avery Seavey has concealed willfully the improper and illegal acts of Defendant Dalton Management with respect to its administration, management and operations of the Partnerships' Housing Developments and its improper and illegal the financial records and accountings for the Partnerships' Housing Developments and other assets;

(i)      Upon information and belief, Defendant Avery Seavey has authorized Defendant Dalton Management to enter into self serving third-party agreements for the leasing and use of Partnerships' assets, which self-serving third-party agreements have been and continue to be detrimental to Plaintiff. the Partnerships, their Housing Developments and other assets;

(j)     Upon information and belief, Defendant Avery
Seavey has assisted and authorized Defendants Dalton
Management and Phyllis Seavey in concealing information as
to the terms of the self serving third-party agreements with
respect to the use and leasing of Partnerships' properties and
assets and he has assisted and authorized Defendants Dalton
Management and Phyllis Seavey with concealing from
Plaintiff, the financial records and income and profits
received from the use and lease of the Partnerships'
properties and assets.

129.    Defendant Avery Seavey's performance of these improper and illegal acts

was and continues to be willful, wanton, and done in bad faith, and otherwise was and

continues to be a wrongful taking of the Partnerships' funds and profits to the detriment

of Plaintiff, the Partnerships, their Housing Developments and other assets. Defendant

Avery Seavey's improper and illegal acts have caused and continue to cause injury and

damage to the Logan, Church Home and Charles Hill Partnerships, in an amount, to be

determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

### FIFTEENTH COUNT & CAUSE OF ACTION
(Defendant Avery Seavey's Breach
of Fiduciary Duty to Plaintiff)

130.    Plaintiff now repeats and re-alleges each and every allegation contained in

paragraphs 1 through 129 as set forth above, and hereby incorporates same by reference,

as if all were set forth fully herein.

131.    At all times mentioned herein, Defendant Avery Seavey, President of

ANBS Development Corporation, a Limited Liability Corporation, and as a Managing

General Partner of Logan Partnership, Managing General Partner of the Church Home

Partnership and as a Limited Partner of Charles Hill Partnership had a fiduciary duty to

these Partnerships to perform his duties and to act in a manner which is in the best

interests of these Partnerships. Defendant Avery Seavey's fiduciary duty to the

41

Partnerships continues to exist and apply to each Partnership at the present time.

132.    Defendant Avery Seavey's fiduciary duty also required him to avoid performing any acts detrimental to the best interests of Logan, Church Home and Charles Hill Partnerships, which would make it impossible for these Partnerships to carry on the ordinary purposes for which they were formed. On or prior to the date of this Verified Complaint, and continuing to the present time, Defendant Avery Seavey performed a number of improper and illegal acts which have been detrimental to the best interests of the Logan, Church Home and Charles Hill Partnerships, and which has made it impossible for each Partnership to carry on the ordinary business and purpose for which they were formed.

133.    These improper, illegal and detrimental acts include, but are not limited to:

(a)    Upon information and belief, and as required by law for each Partnership, Defendant Avery Seavey has failed to complete all required filing with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and has filed false information with the Internal Revenue Service, the New York State Department of Finance and Taxation and the New York State Department of State and other appropriate authorities;

(b)    Defendant Avery Seavey has prevented Plaintiff, a Managing General and Limited Partner of the respective Partnerships from gaining access to the financial records and critical financial information for the Partnerships, which have been and continue to be used in furtherance of the businesses of the Partnerships;

(c)    Upon information and belief, Defendant Avery Seavey has failed to direct Defendant Dalton Management to provide Plaintiff, a Managing General and Limited Partner of the Partnerships with the just and proper Partnerships' distributions in accordance with the Agreement for each of the respective Partnerships;

42

(d)        Defendant Avery Seavey has abandoned and/or otherwise neglected the review of Defendant Dalton Management's daily management and operations of the Partnerships Housing Developments and other assets, thus granting total control of Partnerships' assets and properties to Defendants Dalton Management, Phyllis Seavey and the Seavey Organization;

(e)        Defendant Avery Seavey has cooperated willfully with Defendants Dalton Management and Phyllis Seavey in the changing of Partnerships' bank accounts, bank signature cards and/or the Partnerships' credit accounts so as to prevent Plaintiff, a Managing General and Limited Partner of the respective Partnerships, from accessing Partnership funds, bank accounts and/or other Partnerships' accounts, that he rightly has access to under New York Law and the respective Partnership Agreements;

(f)        Upon information and belief. Defendant Avery Seavey has assisted Defendant Dalton Management's management and operations of the Partnerships' Housing Developments in a manner in direct contravention to the covenants contained in the Partnerships' Agreements and the Partnerships' Agreement with Defendant Dalton Management;

(g)        Defendant Avery Seavey's willful refusal to assist Plaintiff, a Managing General and Limited Partner of the respective Partnerships, with the termination of the improper and illegal services of Defendant Dalton Management on behalf of the Partnerships;

(h)        Defendant Avery Seavey has concealed willfully the improper and illegal acts of Defendant Dalton Management with respect to its administration, management and operations of the Partnerships' Housing Developments and its improper and illegal acts with respect to the financial records and accountings for the Partnerships' Housing Developments and other assets;

(i)        Upon information and belief, Defendant Avery Seavey has authorized and continues to authorize Defendant Dalton Management to enter into self-serving third-party agreements for the leasing and use of Partnerships' assets for the financial benefits of the Seavey Family and Defendant Seavey Organization and these third-party agents have been

43

and continue to be detrimental to Plaintiff, the Partnerships, their Housing Developments and other assets;

(j)        Upon information and belief Defendant Avery Seavey has assisted and authorized Defendants Dalton Management and Phyllis Seavey to conceal information as to the terms of the third-party agreements with respect to the use and leasing of Partnerships' assets and has assisted and authorized Defendants Dalton Management and Phyllis Seavey with concealing from Plaintiff, the financial records, income and profits received from the use and lease of the Partnerships' assets.

134.    Defendant Avery Seavey's performance of these improper and illegal acts was and continues to be willful, wanton, and done in bad faith, and otherwise was and continues to be a wrongful taking of the Partnerships' profits and funds to the detriment of Plaintiff, the Partnerships, their Housing Developments and other assets. Defendant Avery Seavey's improper and illegal acts have caused and continue to cause injury and damage to the Plaintiff, in an amount, to be determined at trial but, not less than Five Hundred Million ($500,000,000.00) Dollars.

SIXTEENTH COUNT & CAUSE OF ACTION (Accounting)

135.    Plaintiff now repeats and re-alleges each and every allegation contained in paragraphs 1 through 134 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

136.    Pursuant to its Management Agreements with Plaintiff and the Partnerships, Defendant Dalton Management is required to provide Plaintiff and the Partnerships with an accurate formal accounting and to make Partnership distributions payments to Plaintiff on a regular basis.

137.    Defendant Dalton Management, its owners, managers and members have refused repeatedly and have failed repeatedly to render accurate formal accountings to

44

Plaintiff and the Partnerships and have failed repeatedly to make full and accurate payments due to Plaintiff for his share of the Partnerships' distributions in accordance with the Partnerships' Agreements.

138.   Defendants Dalton Management, Phyllis Seavey, Avery Seavey, Neale Seavey and Dawley have taken possession, custody and control of money to which Plaintiff is entitled and have failed to remit such money to Plaintiff. despite Plaintiffs repeated demand for these payments.

139.   The improper and illegal acts committed by Defendants Dalton Management, Phyllis Seavey and Dawley have caused financial harm to the Partnerships. their Housing Developments and to Plaintiff.

140.   Pursuant to Defendant Dalton Management Agreement with Plaintiff and the Partnerships, the best interests of each Partnership and Plaintiff require that Defendants Dalton Management, Phyllis Seavey and Dawley make an immediate, full accounting to Plaintiff for each of the Partnerships' Housing Development and their assets and upon the completion of such full and accurate accountings, make full and accurate recovery of all damages that Plaintiff and the Partnerships have suffered, as a result of Defendants Dalton Management, Phyllis Seavey and Dawley's misconduct, deliberate and repeated refusal to provide Plaintiff and the Partnerships with a full and accurate accounting.

On or about March 27th, 2007, Plaintiff John L. Edmonds retained the firm of Cameron, Griffiths & Pryce, CPA's LLC to conduct an audit of Dalton Management's financial records in connection with its management and operations of the Housing Developments. These auditors repeatedly requested such records as are traditionally

45

maintained by such accountants in the ordinary course of business to establish monthly "trial balances" from which its computations might be reconciled. Dalton's managers were unable to produce the standard data necessary for this audit. They stated their software was incapable of producing the required "trial balances" from entries made in their general ledgers which recorded daily expenditures. Plaintiff's Accountants were finally advised the data in support of their journal entries were, inexplicably, in the possession of the Defendant Auditors, and that Plaintiff must go to court if he wishes to obtain the names of Dalton employees whose salaries had been paid by the Partnership when the applicable contract suggested these monies should have been paid by Defendant Dalton Management. More importantly, the financial records which Dalton did provide were inadequate in that it did not support the revenues or expenditures in Dalton's general ledgers and showed several million dollars in expenses for which Dalton failed and refused to provide supporting records and/or documents concerning. Astonishingly, adjustments of entries appeared in the Defendant Auditors records that did not appear in Dalton's journals, and Dalton had no supporting data, or explanation for these changes, apparently made by the Defendant Auditors. This fact ineluctably suggests Defendant Dalton is not the party preparing the account journals, but that the work is being performed by the Auditors, MARK PANETH & SHRON, notwithstanding Dalton is paid to perform this responsibility and this role reversal creates an unacceptable conflict, and makes clear, contrary to standard practice and state and federal regulations, the affairs of these developments are not being audited.

141.    Plaintiff has no adequate remedy at law for a full and accurate accounting other than the equitable relief sought herein.

46

By reason of the foregoing, Plaintiff and the Partnerships are entitled to an accounting of any and all net monies received by Defendants pursuant to the agreement of Defendant Dalton Management and the Partnerships.

WHEREFORE, Plaintiff prays judgment against Defendants jointly and individually as follows:

A.    That Defendants be compelled to account for their official misconduct, including their neglect or failure to faithfully perform their duties, avoiding wasting of assets committed to their charge.

B.    That Defendants be compelled to pay the Corporation all money and the value of all property which they have acquired for themselves or transferred to others, or lost or wasted by or through their neglect or failure to perform or other violation of their duties, and that the Attorneys take no fees or profits by virtue of their acts herein, but, under the provisions of section 487 of the New York Judiciary Law forfeit treble damages of the sums lost by Plaintiff and the Corporation, and that disgorgement be otherwise directed of all defendants wrongfully acquired gains.

C.    That Defendants be suspended and permanently enjoined from exercising the offices held by them on the ground that they have abused their trust.

D.    That Defendants be removed from their offices, or any association with the Corporation on account of their misconduct.

E.    All transfers and alienation of property of the Corporation made by Defendants contrary to law, or for purposes foreign to the lawful business and objects of the Corporation be set aside.

F.    Granting Plaintiff Judgment for all reasonable expenses incurred by Plaintiff in the institution and prosecution of this action, including reasonable Attorney fees, and,

G.    Money damages in an amount not yet determined (as such damages are increasing) but in no event less than $500,000,000.00 together with costs and Attorneys fees and such other and further relief as this Court deems proper.

Dated: Brooklyn, New York
       March 7th, 2008

47

Yours, etc.,

M. DOUGLAS HAYWOODE
Attorney for Plaintiff
71 Maple Street
Brooklyn, New York 11225
1(718) 940-8800

48

STATE OF NEW YORK    )
                                         SS:
COUNTY OF KINGS       )

I, John L. Edmonds, have read the foregoing Summons and Complaint and know the

contents thereof; and the same is true to my own knowledge, except as to the matters

therein stated to be true on information and belief, and as to those matters, I believe it to

be true.

JOHN L. EDMONDS

Sworn to before me this
10ᵗʰ day of June, 2008

MELVYN DOUGLAS HAYWOODE
Notary Public, State of New York
No. 24-6820825
Qualified in Kings County
Commission Expires Aug. 31, 2010