EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. EDMONDS, INDIVIDUALLY AND AS A
MANAGING GENERAL PARTNER OF FIFTH AND
106TH STREET HOUSING COMPANY, INC.,
LOGAN PLAZA ASSOCIATES, LP, CHARLES H.
ASSOCIATES a/k/a CHARLES H. HILL
ASSOCIATES, LP AND CHURCH HOME
ASSOCIATES, LP;

Revised
5/31/08

                       Plaintiff,

DOCKET #

CIV

-against-

ROBERT W SEAVEY, INDIVIDUALLY AND AS A
GENERAL PARTNER OF FIFTH AND 106TH
STREET ASSOCIATES, LP, LOGAN PLAZA
ASSOCIATES, LP, CHARLES HILL ASSOCIATES,
CHARLES HILL ASSOCIATES, LP AND AS A
LIMITED PARTNER OF CHURCH HOME
ASSOCIATES, LP; PHYLLIS M. SEAVEY
INDIVIDUALLY AND AS OWNER, MANAGER
AND MEMBER OF DALTON MANAGEMENT
COMPANY LLC; AVERY B. SEAVEY,
INDIVIDUALLY AND AS A GENERAL PARTNER
OF LOGAN PLAZA ASSOCIATES, LP, CHURCH
HOME ASSOCIATES AND OWNER OF DALTON
MANAGEMENT COMPANY, LLC; NEALE B.
SEAVEY, INDIVIDUALLY AND AS OWNER,
MANAGER AND MEMBER OF DALTON
MANAGEMENT COMPANY, LLC; AND RONALD
DAWLEY AS CHIEF EXECUTIVE OFFICER OF
DALTON MANAGEMENT COMPANY, LLC;
DALTON MANAGEMENT COMPANY, LLC, THE
SEAVEY ORGANIZATION, and MARKS PANETH
& SHRON, Auditors,

AFFIDAVIT

                       Defendants.

I, ORLEY G. CAMERON, depose and say:

1.     I am a principal in the accounting firm of Cameron Griffiths Pryce, CPAs, LLC,

Independent Auditors. Neither my firm nor I am a party in this action. On or about March 27th,

2007 Deponent's firm was retained by John L. Edmonds, the Plaintiff in this matter, to conduct

an audit of the financial books and records maintained by Dalton Management for the Housing

Developments named herein and known as: Fifth and 106th Street Associates, LP (hereinafter

1

"Lakeview"), Logan Plaza Associates, LP (hereinafter "Logan"), Charles H. Hill Associates, LP (hereinafter "Charles Hill") and Church Homes Associates, LP (hereinafter "Church Homes") (hereinafter collectively the "Partnerships and Housing Developments"), in which John L. Edmonds, Esq. is a Managing General Partner and has substantial financial interests.

2.     In April 2007, Deponent and his Associates commenced the audit of the books and records of the Partnerships' Housing Developments for 2006, but the complete financial records and their supporting documents requested by us from Dalton Management were not provided, even though the information we requested from Dalton Management is basic accounting information required to be maintained by Dalton Management pursuant to HUD 9045 Management Plan, and its Management Agreements with the Partnerships.  Dalton Management then directed us to Marks Paneth & Shron, the auditors for the Partnerships' Housing Developments so as to obtain the information we requested from it, but for the most part our efforts to obtain this information from Marks Paneth & Shron were unsuccessful.

3.     Notwithstanding the above-described requirements and its obligations, Dalton Management responded to our requests for its financial and supporting documentary records by stating: (1) it does not have the information we requested, and (2) the information we requested is with its auditors, and that the Plaintiff named herein would have to pay a fee to obtain this information.

4.     On a separate occasion Deponent was advised by Ronald Dawley, the CEO of Dalton Management, that John L. Edmonds, the Plaintiff named herein, would have to obtain a court order directing Dalton Management to produce the personnel records of the employees who, the records indicate are not employees for the Partnerships' Housing Developments but are employed in Dalton Management's home office and are being paid by the Partnerships' rent revenues and not by Dalton Management, as required by paragraph 16 (i) of its Management

2

Agreements with the Partnerships. (See Exhibit G, pp. 6-8, para. 16(i))

5.     Dalton Management further protested that its software was unable to produce a "trial balance" from the entries made in its general ledgers which recorded the daily expenditures incurred by its management and operation of the Partnerships' Housing Developments.

6.     Pursuant to HUD Management Plan 9405 Dalton Management is mandated to utilize accounting systems of a contemporary nature and the most basic function of such equipment would allow its software to produce a "trial balance" from the entries made in its general ledgers. (See Exhibit H, pp 15 & 16)  The production of a "trial balance" by the managing company's software is a primary tool for reconciling the daily expenditures in the management company's general ledger.  Dalton Management's CEO, Ron Dawley, informed Deponent that his managing company's accounting system did not have this basis accounting tool.

7.     In our attempt to audit the financial records of the Partnerships' Housing Developments maintained by Dalton Management, Deponent noted several journal entries were generated by its auditors, Marks Paneth & Shron, without any evidence that these journal entries were approved by Dalton Management. (See Exhibits K & L) Dalton Management was unable to provide Deponent and his Associates with any explanation, and/or documentary support for the journal entries in its general ledgers. Dalton Management referred Deponent to its auditors, Marks, Paneth & Shron, for the explanation and/or documentary support in its general ledgers for such support or explanation. Section 3.16 of the rules and regulations for accountants and auditors promulgated by the United States General Accounting Office (Yellow Book) states that the auditor's independence is impaired when "concurrent or subsequent performance of an audit is done by the same individual who maintains the official accounting records". These Standards do allow for instances when an independent auditor is permitted to propose adjusting journal

3

entries, but such proposals must be approved and become the responsibility of the management company being audited.

8.    Based on Dalton Management's refusal to provide Deponent and his Associates with the records they repeatedly requested, Deponent and his Associates were restricted in their abilities to perform the audit. As a result, Deponent and His associates rendered to the Plaintiff a scope limitation report.

9.    I have read the Affidavit of the Plaintiff, John L. Edmonds, Esq., in this action, submitted herein, and am knowledgeable of the facts as developed by our audit.

Cameron Griffiths Pryce, CPAs, LLC

By: ORLEY G. CAMERON

Sworn to before me this
____ day of June, 2008

Notary Public

CLEMENT FRANCIS
Notary Public, State of New York
No. 1FP4955063
Qualified in Kings County
Commission Expires August 28, 200_

4

EXHIBIT A

**Cameron, Griffiths & Pryce, CPAs, LLC**
739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

## INDEPENDENT AUDITORS' REEPORT

We were engaged to audit the balance sheet of Logan Plaza Associates, Fifth and 106th Street Associates (Lakeview), Charles H Hill Housing, and Church Home Associates, New York State Limited Liability Corporations, as of December 31, 2006, and the related statements of income, retained earnings, and cash flows for the year then ended. These financial statements are the responsibility of the company's management.

We were unable to complete the audits because the company's management refused to provide documentation and/or explanation to substantiate items in the general ledger some of which include: several journal entries recorded in general ledgers of all four companies; the original document to support the Notes Payable to Seavey on Lakeview; support for the balances recorded in Lakeview's Money Market and investment accounts, among many others.

Because we were unable to obtain substantiation for several items recorded in the general ledger, and we were unable to apply alternative auditing procedures to the items listed and the others mentioned, as discussed in the preceding paragraph, the scope of our work was not sufficient to enable us to express, and we do not express an opinion on the financial statements referred to in the first paragraph.

*Cameron, Griffith & Pryce, CPAs, LLC*
Brooklyn, NY
*November 29, 2007*

EXHIBIT B

# Cameron, Griffiths & Pryce, CPAs, LLC

739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

## FAX COVER SHEET

The Circled items are the ones we received.

# Cameron, Griffiths & Pryce, CPAs, LLC
### 739 Utica Avenue, Brooklyn, New York, 11203
Phone: 718-467-8535

Fax: 718-953-8323

### Client Request Memo ⑤

May 16, 2007

To: Dalton Management Company, LLC
C/o Nealle B Seavey
3 Park Ave, 28th Floor
New York, NY 10016

### Re: Audit of Logan Plaza 2006

This is a follow up our request dated 5/10/07 and your response dated 5/15/07. Please note the items in bold. (The original request is left for easy reference):

1. Distribution - the basis and supporting documentation for the journal entries closing out the retained earnings account and adjusting partner capital account.
2. Deferred Income -- the information to support the cancelled debt reported in the financial statement. **To verify the disclosures and the calculation, we need the original mortgage notes. Also, based on your disclosures in note 5 of the financial statement, should the COD be amortized over 10 years?**
3. Mortgages- the loan agreements to support all three mortgages. **Same documentation is required as in item 2.**
4. Loan payable- the supporting documents for loan payable (account # 2340) **Same documentation is required as in item 2 and 3.**
5. Accounts payable – the detail to support accounts payable (account # 2110) **This account has an amount for $181,927, representing 93% of the total. This amount is due to the management company, but was not disclosed as related party . Are the related invoices available for inspection?**
6. Accrued expenses- the detail to support accrued expenses(account #2120)
7. Accumulated amortization cost - the supporting documentation/schedule. (account # 1535) **We need to verify the closing Statement which lists these costs**
8. Allowance for doubtful account- the supporting detail (account # 1131)



## Cameron, Griffiths & Pryce, CPAs, LLC

739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

### Client Request Memo

May 16, 2007

To: Dalton Management Company, LLC
C/o Nealle B Seavey
3 Park Ave, 28th Floor
New York, NY 10016

Re: Audit of Logan Plaza 2006

In order for us to complete the testing of payroll expenses charged to office salaried on Logan plaza, we need to review personnel files for the following individuals. These individuals wages were allocated to office salaries.

1. Michael Hill
2. Joyce Murphy
3. Cheryl Labelle
4. Alonzo Rodgers
5. Joan Mondesir
6. David Givens
7. Ronald Dawley

20. Support for the following liabilities: Accounts payable of $19,143.(Account 100-2110); 100 A/P DHCR of $264,100(account 100-2113); Accrued Expenses of $383,872.00; Accrued Int Pay Senior Mo. of $33,523 (Account 100-2129) Accrued Int Pay. Junior Mo. of $55,973.37 (Account 100-2130); Accrued Mort Int. Payable of $102,884.88(account 100-2131); 100 Accrued Interest Paya of $71,261.01 (Account 100-2140); 100 Real Estate Taxes pay of $351,244.00 (100-2159)

21. Detail schedule for accrued operating expenses payable as of December 31, 2005.

## Logan Plaza:

22. Explanation of the difference between the cash disbursed distribution of $260,000 as recorded in the GL and the Accountants' proposed journal entry of $665,185.00-JE-1

23. Reconcile $306,681.91 in the prepaid account GL# 1520 and the closing costs per the settlement statement

# Cameron, Griffiths & Pryce, CPAs, LLC

739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

Date: August 14, 2007

### Request list for Client

To: Mark Paneth & Shron

Cc: Dalton Management Co, LLC

**Please provide the following items that we need as part of our audit:**

**Lakeview:**

1. Original agreement for the Note Payable to Seavey $29,915.16
2. 2006 Financial Statements and HUD report
3. Mortgage note(s).
4. The final general ledger/trial balance reflecting twelve months of transactions
5. Explanation and or support for the prepaid insurance of $154,742.00 (account # 1220)
6. Account statements for the Invest Solomon Smith of $800,000 listed on the general ledger in account 100-1214
7. Account statements for the Chase Money Market Account of $337,928 listed on the general ledger in account 100-1115
8. Account statements for the Cash Op A/C Ptrs -Citibank Account of $1,781 listed on the general ledger in account 100-1118.
9. Schedule for Allowance for Doubtful Account
10. Commercial lease contract for W & W Electric Corp.
11. Explanation and or support for the prepaid Expenses of $17,448.25 (account 100-1200)
12. Support for the prepaid R/ E of $443,810.76 (account 100-1200)
13. Support for the 100 Cash Operating Escrow of $6,906.60 (account # 100-1211)
14. Support for the prepaid Water/Sewer of $333,702.13 (account # 100-1230)
15. Fixed asset schedules with accumulated depreciation for the following accounts: Land (100-1410); Building (100-1420); Building Improvement (100-1430); Building Equipment Fixed (100-1440); Furn & furnishings (100-1470); Maintenance Equip (100-1480); Other fixed Assets (100-1490)
16. Inventories for Building Equipment – Portable –Account 100-1450
17. Explanation and support for the deferred operating expenses of $179,338.03 (Account 100-1540)
18. Explanation of difference of $24,697 between the general ledger ($74,631.23)and the JP Morgan Securities statement of ($99,330.00) (Account100-1213)
19. Support for Utility Deposit of $44,529.78 (Account 100-1590)
20. Support for the following liabilities: Accounts payable of $19,143.(Account 100-2110); 100 A/P DHCR of $264,100(account 100-2113); Accrued Expenses of $383,872.00; Accrued Int Pay Senior Mo. of $33,523 (Account 100-2129)

Accrued Int Pay. Junior Mo. of $55,973.37 (Account 100-2130); Accrued Mort Int. Payable of $102, 884.88(account 100-2131); 100 Accrued Interest Paya of $71,261.01 (Account 100-2140); 100 Real Estate Taxes pay of $351,244.00 (100-2159)

**Logan Plaza:**

# Cameron, Griffiths & Pryce, CPAs, LLC
### 739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535                                                    Fax: 718-953-8323

Date: August 14, 2007

**Request list for Client**

To: Neale Seavy
Cc: Dawlton Management Co, LLC

**Please provide the following items that we need as part of our audit:**

**Lakeview:**
1. General Liability and Commercial Property insurance policy and premium for June 2005 through June 2005.
2. Workers Compensation Insurance policy and premium for January 2006 through December 2006

**Logan Plaza**
3. Workers Compensation Insurance policy and premium for January 2006 through December 2006

**Cameron, Griffiths & Pryce, CPAs, LLC**
739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

First request date:     September 11, 2007
Second request date:   October 23, 2007

Request list for Client

To: Mark Paneth & Shron

Cc: Dalton Management Co, LLC

Please provide the following items that we need as part of our audit:
Charles Hill:

1. Detail schedule fixed assets and accumulated depreciation-Accounts 1410 through 1521.
2. Security Payroll contract ($100,368.00 paid in 2006-Account # 6530)
3. contracts with M & A Restoration ($39,586.88 paid on 5/1/06
4. Workers Compensation insurance policy (12,476.03 paid in 2006)
5. Building and liability insurance policy

6. Support for the amounts in the following account:

| Account | | Amount |
|---|---|---|
| 040-1590 | Utility Deposit | $4,205.00 |
| 040-1900 | Other Assets | $261,639.00 |
| 040-2150 | Accrued Real Estate Tax Payable-(Calculations) | $37,038.63 |
| 040-2320 | Mor Pay Senior Mortgage Payable-(Mort. Note) | $6,447,650.80 |
| 040-1900 | Accum Amortization-Finance fee (Closing Stmt) | $142,508.00 |
| 040-2110 | Accounts payable | $6,747.00 |
| 040-2120 | Accrued Expenses-Other | $51,201.00 |
| 040-2129 | Accrued Interest Pay Senior Mor. | $24,483.00 |

**Cameron, Griffiths & Pryce, CPAs, LLC**
739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535                                              Fax: 718-953-8323

October 25, 2007

Dalton Management, LLC
Attention: Ronald Dawley
3 Park Ave, 28th Floor
New York, NY 10916

> **Re: Follow-up Audit Requests to Dalton Management for Financial Records of Logan Plaza Associates, Fifth and 106th Street Associates (Lakeview), Charles H Hill Housing, and Church Home Associates**

As you are aware, we are retained by John Edmonds, Esq. to audit Dalton Management's financial records for the Housing Developments listed above. As early as May 16, 2007, we requested from your organization the information and items on the enclosed lists which are necessary for us to complete our audits. During our audits, you instructed us to submit some of our audit request through you to your auditors, Mark Paneth & Shron.

The enclosed list detailed the information we have requested but have not yet received. We must, therefore, ask you to provide us with ALL of the information, items and supporting documents on the enclosed lists on or before Friday, November 1, 2007 by 5:00 p.m. This will allow us to proceed with the audits of the financial statements. Please note that if we do not receive the information and supporting documents on the enclosed list, we would then be forced to inform our client, that we are unable to complete the audits. In addition, we must inform our client that information is either not available or you have refused to make them available to us.

Also, enclosed is our request for information and supporting documents for Church Homes Associates, which was not previously submitted. Kindly, make available to us on or before November 2, 2007.

We need to schedule a meeting with Mr. William Jennings of Mark, Paneth & Shron, on or before November 9, 2007, in order to obtain explanation and support for journal entries that Mr. Dawley was unable to clarify for us. Therefore, it is imperative that we receive from your organization, in a timely manner, the information and supporting documents requested.

Thank you for your cooperation in this matter.

Orley G. Cameron
Cc: John Edmond, ESQ

## Cameron, Griffiths & Pryce, CPAs, LLC
### 739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

First request date:        October 23, 2007

### Request list for Church Homes

To: Mark Paneth & Shron
Cc: Dalton Management Co, LLC

Please provide the following items that we need as part of our audit.

1. All twelve months Money market statements for 2006. General Ledger Account # 1115. Also provide the confirmation contact (the bank address, contact name, and telephone number).

2. The detail schedule for the Distribution of the $322,221.

3. The Allowance for Doubtful Debts schedule.

4. The fixed assets and accumulated depreciation schedule with dates.

5. The 2006 audited financial statement disclosed management fees earned of $76,588. The GL on the other hand, recorded cash disbursed totaling $103,323. Please explain and provide documentation to support the journal entries for the difference.

6. The 2006 audited financial statement reported audit expense of $24000. The GL on the other hand, recorded cash disbursed totaling $39,769. Please explain and provide documentation for the adjusted journal entries.

7. The mortgage note and the closing statement supporting the mortgage costs.

O~ Received 11/6/07

## Cameron, Griffiths & Pryce, CPAs, LLC
### 739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

November 15, 2007

Dalton Management, LLC
Attention: Ronald Dawley
3 Park Ave, 28th Floor
New York, NY 10016

**Re: Follow-up Audit Requests to Dalton Management for Financial Records of Logan Plaza Associates, Fifth and 106th Street Associates (Lakeview), Charles H Hill Housing, and Church Home Associates**

The purpose of this letter is to summarize the telephone conversation today (11/15/07) with you, Sandra and me. Your call was to respond to our October 25, 2007 request for information for the referenced audit.

In the conversation, you told us that the accountant said that the time needed to respond to the request is not included in the audit fees. You further said that DHCR would have to approve the additional fees, or the requesting partner would need to pay for the time.

We reminded you that we requested the information from Dalton Management Company and not from the audit firm. We further reminded you that the items requested are to support information recorded in the general ledger, information that is the responsibility of the management company.

You acknowledged that that may be so but we (the Management Company) do not have (the support for the general ledger) for them, and the auditor must be paid to provide them.

Orley G. Cameron

Cc: John L. Edmonds, ESQ



# John L. Edmonds

Attorney & Counselor-at-Law
187-20 Grand Central Parkway
Jamaica, New York 11432
(718) 454-5768
(917) 797-3330

## FAX COVER

To: Phyllis Seavey, Esq.
    Dalton Management, LLC
    Via Fax: 212-679-2111

Date: June 20, 2007

From: John L. Edmonds

No. of pgs. Inc. Cover Sheet: 5

Re: Audit of Logan Plaza, Lakeview,
    Charles Hill and Canaan IV

Message:

Attached is my letter to you regarding Dalton Management refusal to provide my accountants with the financial records that will allow them to proceed with a full and complete audit of the housing complexes known as Logan Plaza, Lakeview, Charles Hill and Canaan IV.

---

Confidentiality Notice: The documents accompanying the telecopy transmission may contain confidential information belonging to the sender which is legally privileged. The information is intended only for use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copy, distribution or the taking of any action in reliance on the contents of this telecopies information is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange for return.

# John L. Edmonds

### Attorney & Counselor-at-Law
187-20 Grand Central Parkway
Jamaica, New York 11432
Tel. No. (718) 454-5768
Cell No. (917) 797-3330

June 20, 2007
COPY

Robert Seavey, Esq.
Phyllis Seavey, Esq.
Dalton Management, LLC
3 Park Avenue, 31st floor
New York, New York 10016

Re:  Audit of Logan Plaza, Lakeview,
     Charles Hill and Canaan IV

Dear MESSRS:

In a letter to you dated March 27, 2007 I informed you that I have retained the accounting firm of Cameron, Griffiths & Pryce, CPAs, LLC to conduct an examination of the financial records of the above-referenced properties, which are under the management of Dalton Management, LLC (See attached copy of March 27, 2007 letter). The accountants I have retained for this examination have informed me that they have been experiencing difficulties in obtaining from Dalton Management the financial records and supporting documentation necessary to conduct the examination pursuant not only to standard accounting principles but the agreements between the Partnerships, of which I am a partner, and Dalton Management.

In their memo dated May 16, 2007 to Dalton Management the accountants, I have hired to conduct the audit, requested a number of items, which were not provided to them in their May 16, 2007 request to Dalton Management for financial records in connection with the above-described properties. To date, which is more than one month since their May 16, 2007 follow up request to Dalton Management, their request has been ignored, hence, they have received NONE of the records they have requested in their May 16, 2007 memo to Dalton Management. For your convenience I have enclosed my accountants' May 16, 2007 memo to Dalton Management, which lists the items they have requested in order to proceed with their audit for the subject properties.

The accountants I have hired to conduct the above-described audit have also informed me that for the past two (2) weeks they have not been able to conduct their examination because Ron Dawley was on vacation. As you are aware, your deliberate

*John L. Edmonds, Esq.*
June 20, 2007
Page 2
To: Robert Seavey, Phyllis Seavey

and unwarranted refusal to provide my accountants with the financial records necessary to conduct a full audit of these properties is not only seriously delaying the audit but is resulting in additional and unnecessary fees and costs in connection with the full examination of the financial records for these properties.

Please be advised that I will not continue to tolerate the delaying tactics you have been employing, which are designed to frustrate and prevent the complete examination of the financial records of the above-stated properties. I assure you that I will take the necessary actions that will cause you to be held financially and criminally responsible for your misconduct and attempts to prevent a full audit of the above-referenced properties as provided under the Partnership agreements and the law.

Sincerely Yours,

John L. Edmonds

Encs.

# Cameron, Griffiths & Pryce, CPAs, LLC

739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535                                                           Fax: 718-953-8323

### Client Request Memo 

May 16, 2007

To: Dalton Management Company, LLC
C/o Nealle B Seavey
3 Park Ave. 28th Floor
New York, NY 10016

Re: Audit of Logan Plaza 2006

This is a follow up our request dated 5/10/07 and your response dated 5/15/07. Please note the items in bold. (The original request is left for easy reference):

1. Distribution – the basis and supporting documentation for the journal entries closing out the retained earnings account and adjusting partner capital account.
2. Deferred Income – the information to support the cancelled debt reported in the financial statement. **To verify the disclosures and the calculation, we need the original mortgage notes. Also, based on your disclosures in note 5 of the financial statement, should the COD be amortized over 10 years?**
3. Mortgages- the loan agreements to support all three mortgages. **Same documentation is required as in item 2.**
4. Loan payable- the supporting documents for loan payable (account # 2340) **Same documentation is required as in item 2 and 3.**
5. Accounts payable – the detail to support accounts payable (account # 2110) This account has an amount for $181,927, **representing 93% of the total .This amount is due to the management company, but was not disclosed  as related party . Are the related invoices available for inspection?**
6. Accrued expenses- the detail to support accrued expenses(account #2120)
7. Accumulated amortization cost – the supporting documentation/schedule. (account # 1535) **We need to verify the closing Statement which lists these costs**
8. Allowance for doubtful account- the supporting detail (account # 1131)



JOHN L. EDMONDS, ESQ.

Counselor-at-Law
187-10 Grand Central Parkway
Jamaica, New York 11432

Tel. No. (718) 264-9200                    Cell No. (917) 797-3330

Fax No. (718) 264-9500

March 27, 2007

Robert Seavey
Philip Seavey
Dalton Management
3 Park Avenue, 31st Floor
New York, NY 10016

Ref:     Lakeview
         Logan Plaza
         Charles Hill
         Carman IV

Dear MESSRS:

I have retained the accounting firm of Cameron, Griffiths & Pryce, CPAs LLC to conduct an examination of the referenced properties under the management of Dalton Management, LLC.

Please make available to the auditors the financial records for the years 1996 through 2006 inclusive, and all supporting documentation. The expected commencement of the examination is on or about April 3, 2007.

Please allow the examination to be done on premises so that requested documents will be readily accessible without the need to remove them from the premises.

Thanks in advance for your co-operation in this matter.

Sincerely,


_____
JOHN EDMONDS

SEAVEY & SEAVEY

THREE PARK AVENUE
NEW YORK, N.Y. 10016

TEL (212) 592-0833
FAX (212) 481-3380

June 21, 2007

John L. Edmonds, Esq.
187-20 Grand Central Parkway
Jamaica, New York 11432

Dear Mr. Edmonds:

Please be advised that Robert and Phyllis Seavey are out of the country until
June 27, 2007. However, we are able to respond to your letter by telling you that Ron
Dawley has previously transmitted to your accountants a memo by William H. Jennings
(dated May 15, 2007) that responds to their inquiries set forth in their memo dated
May 10, 2007 concerning Logan Plaza. A subsequent memo from your accountants
dated May 16, 2007 suggests that there are three remaining questions. We have asked
Mr. Jennings to respond and will forward his response as soon as it is received. Regarding
the underlying notes and mortgages, we have recovered these documents from
storage (remember, they date back to November 2002) and are forwarding them to your
accountants simultaneously herewith.

Finally, as to Mr. Dawley's availability, contrary to the assertion in your letter, he
was out of the office for the two days preceding Memorial Day and again, out of the
office from May 29th through June 30th. Otherwise, he has been ready, willing and able
to meet with your accountants and has done so regularly. Please note that on at least two
(2) occasions your accountants have cancelled appointments.

Very truly yours,

AVERY B. SEAVEY

ABS:eg

cc:  Robert W. Seavey, Esq.
     Phyllis M. Seavey, Esq.
     Mr. Ron Dawley, Dalton Management Co.

# F A C S I M I L E

Avery B. Seavey
Three Park Avenue, Suite  2800
New York, NY 10016
(212) 532 - 0333 Fax (212) 481 - 3390

Date :        5  /  21  /  07        Total Pages :        - 2 -

To :          JOHN L. EDMONDS, ESQ.

Organization :

Fax Number :   ( 718  )  264 - 9800

From :         Avery Seavey

Subject :

Message :

# JOHN L. EDMONDS, ESQ.
### Counselor-at-Law
187-20 Grand Central Parkway
Jamaica, New York 11432

Tel. No. (718) 454-5768                          Cell No. (917) 797-3330
                    Fax No. (718) 264-9600

June 25, 2007

Mr. Avery B. Seavey
Seavey & Seavey
Three Park Avenue
New York, New York   i0016

Dear Mr. Seavey:

I wish to thank you for your correspondence dated June 21, 2007 received by myself at approximately 4:30 pm on said date, in which correspondence you state that except for two (2) occasions, Mr. Ron Dawley, which I understand is the Chief Operating Officer of Dalton Management, was absent and continues to be absent.

As you indicate in your letter, he will not return to the office until on or about June 30th. You further state that other than these two (2) occasions, Mr. Dawley has always been available. Kindly be informed that the Partnership documents as it relates to each of the properties in which the Seaveys are Managing General Partners, gives myself as a Managing General Partner, the right to examine all books and records that are the property of the Partnership.

Believe it or not, the property, including the moneys collected, are the property of the various Partnerships, **not** Dalton Management Co. Any review of the Partnership Agreements by yourself will reflect for you the accuracy of these statements. I have directed my accountants to continue their examination and as always, I look to the Courts to determine the rights of a Managing General Partner in a Limited Partnership.

Further, absence of any employee is not a basis for attempting to avoid my examination of the books and records of the various Partnerships.

Thank you for your correspondence and I will use it on behalf of the Partnership.

Respectfully,

JOHN L. EDMONDS

GARAGE LEASE
IN EXHIBIT D
9 (NINE) PAGES

REQUEST FOR LEASE APPROVAL (Non-Housing Space)

76-91

INSTRUCTIONS FOR COMPLETION BY PROJECT: Prepare in six (6) copies. Mail original and four (4) copies to the Division (DHCR). Project should retain one copy.

To: Director, DHCR Bureau of Housing Management

From: FIFTH AND 106TH ST ASSOCIATES Housing Authority/Housing Company, Project # UDC-86

Subject: Request for Approval of:

☐ Lease    ☐ Lease Assignment and Assumption Agreement
☐ Amendment of Lease    ☒ Extension of Lease
☐

1. Identification of space Garage Building                    1a. Size (Sq. Ft.)
2. Street Address 1214 Fifth Avenue, New York, NY 10029
3. Name of present tenant Merit Parking Corp.    3a. Lease expir. date 3/31/1998
4. Name of prospective tenant Merit Parking Corp.    4a. Lease expir. date 7/31/2003 Extended
5. Present rent $55,000 per annum    5a. Proposed rent $62,190 (retroactive to 5/1/98)
6. Present lease escalations:    6a. Proposed lease escalations:

Date: 4/1/93 Rent: $40,000    Date: 5/1/96    Rent: $62,190 2
     4/1/98      $55,000         5/1/03         $67,190 2
                                 5/1/08         $72,190 2

7. Additional charges — present lease:    7a. Additional charges — proposed lease:

Item: Electric Charge: $300 per month, et Item: Electric Charge: See Footnote 3

8. Utilities:    Electric    Gas    Cold Water    Hot Water    Sewer Charge
   Included in rent ☐         ☐         ☐              ☐              ☐
   Paid by tenant ☐          ☐         ☐              ☐              ☐

9. Escalation clause: Taxes Yes    Electric Yes    Gas No    Water No    Sewer No
   (Indicate Yes or No)

10. Cost of living increase clause attached?    ☐ Yes    ☒ No
11. Prospective tenant credit report attached?    ☐ Yes    ☒ No
12. Copies of subject documents attached?    ☒ Yes    ☐ No
13. Other attachments (describe):
14. Special lease clauses (describe): See Lease Agreement attached hereto
15. Remarks (continue on reverse if necessary):

EXAMINED AND APPROVED BY ME AS TO CONTENT:

(Counsel for Housing Authority/Housing Company)

Date: 12-12-96

I CERTIFY THAT THE ABOVE STATEMENTS ARE TRUE TO MY KNOWLEDGE.

(Name and Title, Authorized by and Acting for the above Housing Authority/Housing Company)

Date: 12-11-96

FOR COMPLETION BY DHCR

The Management Bureau recommends the following action:

☒ Approval of above application subject to comments below, if any.

☐ Disapproval of above application for the following reasons:

increasing liability insurance requirement to two million dollars
(Continue on reverse if necessary)

Reviewed by Management Bureau:

Reviewed by Law Bureau:
Patricia Hess
Approved By:
Daniel Offer

Unit Supervisor    12-16-96
(Title)              (Date)

LEASE EXTENSION AGREEMENT


This Agreement made the 26ᵗʰ day of _____, 1996 between Fifth And 106th St. Associates having an office c/o Seavey & Seavey, Three Park Avenue, New York, N.Y. 10016 ("Landlord"); and Merit Parking Corp. having an office c/o The Mallah Parking Organization, a New York corporation having an office at 211 East 38th Street, New York, N.Y. 10016 ("Tenant").


W I T N E S S E T H:


WHEREAS, by Lease dated April 1, 1983, Landlord and Tenant entered into a Lease with options to renew which have been exercised so that the Lease now terminates on the 31st day of March 1998; and

WHEREAS, the said Lease is for a garage building located on Landlord's premises on East 107th Street between Madison and Park Avenues and contiguous with Landlord's building known as 1590 Madison Avenue, New York, N.Y.

WHEREAS, Tenant is now paying to Landlord as rent the sum of Fifty-Five Thousand ($55,000.00) Dollars per annum; and

WHEREAS, the parties hereto desire to amend the Lease so as to provide increased rent to Landlord during the balance of the present term of the Lease and to provide an extension of the Lease term to Tenant at a further additional rent during the extension period.

NOW, THEREFORE, in consideration of the foregoing and the mutual and independent covenants and agreements herein contained, the parties covenant and agree as follows:

1.  Effective retroactive to and commencing on May 1, 1996 and terminating on March 31, 1998, the present termination date of the Lease, the annual rent is Sixty-Two Thousand One Hundred Ninety ($62,190.00) Dollars.

(b) It is recognized by the parties hereto that the base rent of Sixty-Two Thousand One Hundred Ninety ($62,190.00) Dollars effective June 1, 1996, has been calculated so that the sum of Two Thousand One Hundred Ninety ($2,190.00) Dollars of the $62,190.00 arises from a calculation made by utilizing the formula stated in Paragraph "3 (a)" above as if (i) the formula had been in effect on April 1, 1996; and (ii) the rent increase which became effective on May 1, 1996, became effective on April 1, 1996.

4.    The term of the Lease is extended from the 1st day of April 1998 until March 31, 2003.

5.    The Tenant has two (2) renewal options under which Tenant shall have the right to renew and extend the term of this Lease for two (2) successive renewal periods:

(i)    The first renewal period shall commence immediately following the expiration of the term of this Lease as extended by this Extension Agreement;

(ii)    The second renewal period shall commence immediately following the expiration of the first renewal period agreed upon in this Extension Agreement.

-4-

Each renewal period shall be for a five (5) year period upon the following terms and conditions:

a)    With respect to each renewal option, Tenant shall give written notice to Landlord of Tenant's exercise of such option not less than 180 days nor more than 360 days prior to the expiration of the then term of this Lease.  If Tenant shall fail to exercise the option described hereinabove within the prescribed time period, said option shall nevertheless continue until thirty (30) days after Landlord shall notify Tenant of Tenant's failure to exercise said option and Tenant may still exercise said option at any time up to the expiration of said thirty (30) day period.

b)    Each renewal option may be exercised only if at the time of exercise of such option and on the date of the commencement of the particular renewal period covered by such option, this Lease is in full force and effect under the initial term, the extended term or any immediately preceding renewal term, as the case may be, and Tenant is not then in default in the performance of any of the terms or provisions of this Lease.

c)    Any termination of this Lease shall terminate all rights of renewal under this Lease.

d)    The annual base rate of rent to be paid by Tenant to Landlord during each of the renewal terms shall be as follows:

-5-

(i) For the first 5-year renewal term - the sum
of $67,190.00 per annum to be paid in equal monthly
installments. In addition thereto, Tenant shall pay
and continue to pay all Additional Rent accruing pur-
suant to the tems of this Extension Agreement from on
and after June 1, 1998, in the amounts calculated as
set forth in Paragraph "3" above; and

(ii) For the second 5-year renewal term - the sum
of $72,190.00 per annum to be paid in equal monthly
installments. In addition thereto, Tenant shall pay
and continue to pay any Additional Rent accruing during
the term of this Lease from on and after June 1, 1998
in amounts calculated as set forth in Paragraph "3"
above.

6. Paragraph "48" of the Rider to the Lease made as of the
1st day of April 1983 by and between the parties hereto is
amended to read as follows:

"Tenant shall pay to Landlord as additional rent,
quarterly upon rendition of bills by Landlord, its
proportionate share of increases in real property taxes
assessed against the business and commercial areas in
Fifth Avenue Lakeview Apartments (Block 1612, Lot 1,
New York County Tax Map) in excess of taxes levied
against said areas for 1996-97. In no event shall such
additional rent exceed seven and one-half (7-1/2%)
percent of the taxes levied against said business and
commercial areas."

-6-

7.   Effective April 1, 1998, Tenant shall pay to Landlord for electric current supplied to Tenant the sum of $300.00 per month until March 31, 2003.  Thereafter, during the first renewal option, if exercised by Tenant, Tenant shall pay to Landlord the sum of $325.00 per month for electric current supplied by Landlord to Tenant; and should there be a second renewal option exercised by Tenant, Tenant shall pay to Landlord during said second renewal option period, the sum of $350.00 per month for the aforesaid electric current supplied by Landlord to Tenant.

8.   The Agreement of Lease made as of the 1st day of April 1983 between the parties hereto and all its terms and convenants excepting as herein specifically modified remains in full force and effect during the extended term of this Lease including any renewal period.

9.   All understandings and agreements heretofore had between the parties with respect to the subject matter of this Agreement are merged into this Agreement, which alone fully and completely expresses the agreement of the parties.

10.   This Agreement shall not be modified or terminated orally.

11.   This Agreement shall not be effective until approval
of same is given by the NYS Division of Housing and Community
Renewal.

12.   This Agreement shall apply to and be binding upon the
successors and assigns of the respective parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement on the day and year first above written.

FIFTH AND 106TH ST. ASSOCIATES

BY: _____

MERIT PARKING CORP.

BY: _____

LAUNDROMAT LEASE
IN EXHIBIT D
7 (SEVEN) PAGES