wear and tear, with hat previously noted on the move-in check list, and determine whether the resident is responsible for the reimbursement of repair costs. Prior to re-renting the unit, the Maintenance supervisor will take the check list, make all necessary repairs, have the unit painted, thoroughly cleaned, and check all equipment and appliances for proper operations.

D.  A comprehensive interior painting schedule will be maintained for the development. All apartments that have been continuously occupied by the same resident will be redecorated every three years, and all vacated apartments will normally be painted prior to re-occupancy. In addition to scheduling painting, the area surfaces are painted as necessary to maintain the development. The exterior of all buildings (when necessary) and all entrances, including the frames, doors and overhangs (when necessary) should be painted at least every three (3) years.

E.  Trash Removal

Trash removal will be handled by the sanitation Department of the city of New York.

F.  Major Repairs

Major Repairs that cannot be handled by the onsite maintenance staff will be contracted. Dalton Management Co. Executive will determine proper corrective action. Dalton Management will solicit bids from minority and other contractors who have proven cost, will be the criterion for approval of bids by Dalton Management.

All bids will be handled according to the requirement for the NYS Division of Housing.

G.  Exterior Cleaning

A schedule of cleaning of sidewalks and general grounds will be posted and adhere to. Daily cleaning three (3') from the curb will be implemented.

H.  Building and common areas

I.  Resident Request

All maintenance work repair request will be taking by the superintendent either by telephone or in person at the site during regular business hours. These will be recorded on a duplicated work ticket and a copy issued to the appropriated staff person or contractor. The original will remain in the on-site office. When the repairman completes the necessary repairs on this signed by him also, to the maintenance office. All repair orders will be picked up and returned to the superintendent daily.

The superintendent must file completed orders ans make sure a record is kept of incomplete orders, which will be followed up to assure the ordering of parts and maintenance service as needs.

Emergency maintenance calls during the time the maintenance office is closed will be taken by maintenance or security personnel on duty for that time, who will immediately take the appropriate action.

An emergency maintenance problem is on that if not corrected without delay, would clearly constitute a safety or health hazard or would cause damage. An emergency telephone list will be furnished to the Maintenance supervisor superintendent and Security staff.

It is also understood that in the event of fire, flood, personal injury, or other serious problems involving insurance, that the Owner and its insurance company will be advised immediately. So that the time of maintenance employees will be expended only on projects, which require their skills, Dalton Management will provide residents with a printed handout explaining procedures for care and cleaning of all appliances. In junctions with previously described maintenance plans, Dalton Management will institute a system of maintenance reporting and control which will identify excessive costs, faulty equipment, lost time or ineffective maintenance Personnel.

## IV.  FINANCIAL MANAGEMENT AND REPORTING

All accounting and bookkeeping functions will be handled by Dalton Management's accounting staff under the supervision of our controller Ronald C. Dawley. Dalton Management will maintain a Comprehensive set of books and records for the project

in a manner satisfactory to Owner, DHCR and HUD. Accounts payable/ accounts receivable and general ledger will also be handled out of our main office.

*Internal Control Framework*

Dalton Management has a comprehensive internal control system to ensure that operation and capital funds are only used for its intended purpose

Our current accounting software package is specifically designed to comply with generally accepted accounting principles ("GAAP"), DHCR and HUD compliance requirements. The internal control structure of Dalton Management is setup to achieve the following objectives:

- Reliability of financial reporting
- Effectiveness and efficiency of operations
- Compliance with applicable laws and regulations

These objectives will be achieved by having the following elements as key ingredients tour over all internal control structure: the control environment, the accounting system, and control procedures.

The control environment represents the collective effects of various factors on establishing, enhancing or mitigating the effectiveness of certain policies and procedures. Some these factor include:

- Management's philosophy and operating style
- Dalton Management organizational structure
- Method of assigning certain authority and responsibilities
- Management's control methods for monitoring and following up on performance
- External factors that affect Dalton managements operations and practices, such as HUD and DHCR.

Our control environment reflects management's overall attitude, awareness and actions to provide practical and top-quality service to the Owner.

Dalton Management's accounting system is designed to identify, assemble, analyze, classify, record, and report all transactions and to

maintain accountability for the related assets and liabilities. Our accounting system gives appropriate consideration to establishing method and records that will:

- Identify and record all valid transactions
- Describe on a timely basis the transactions in sufficient details to permit the proper classification for a financial reporting purposes.
- Measure the value of transactions in a manner that permits recording their proper monetary value in financial reports
- Determine the proper accounting period in which transaction should recorded
- Present accurate and timely financial reports to Owner, DHCR and HUD as required by the contracts, and regulations.

Control procedures are those policies and procedures that management has established to provide reasonable assurance that specific entity objectives will b e achieved. Our control procedures have various objective and are applied at various organizational and data processing levels. These procedures are integrated with specific components of the components of the environments and the accounting system. Generally, these procedures pertain to the following:

- The proper authorization of transactions and activities
- Segregation of duties that reduce and opportunities to allow any person be in a position to both perpetrate and conceal errors in irregularities in the normal course of his duties-assigning different people the responsibilities of authorizing transactions, recording transactions and maintaining custody of assets.
- Design and use of adequate documents and records to help ensue the of pre-numbered purchase orders
- Adequate safeguards over access to and use of assets and records, such as secured facilities and authorization for access to computer programs and data files independent checks on performance and proper valuation of recorded amount such as clerical checks reconciliation's comparison of assets with recorded accountability, computer programmed controls, management review of reports that summarize the details of account balances (for example, an aged trail balance of tenant receivables), and user review of computer generated report.

A system of financial budgeting and variance reporting is used as a major management tool.

Dalton Management plans to implement a fully automated accounting system. Our current system a Dell power edge 2300-server use by Murray software, which comes highly, recommended within the industry. The software is designed to comply with GAAP, HUD andDHCR and other regulatory financial reporting requirements. Our system and implementation approach is designed to address the significant accounting function that are relevant to producing the necessary compliance and reporting requirement in  accordance with the contract

We have identified the significant accounting functions as follows:

General Ledger Controls

1.    Cash disbursement controls
2.    Cash receipt controls

Our computer system is designed to  address these accounting functions. When properly implemented our system will meet all expectations of DHCR regulations and HUD Handbook 4370 "uniform system of accounts for cooperative Housing Corporations Using Manual and Computer Accounting System" and other regulator agreements.

3.    General ledger-The BJ Murray general ledge is a fully integrated software package that will enable users t perform their day to day functions in a most productive environment. Transactions posted to Sub-ledgers each will be automatically updated t the general ledge at the end of each business day. Appropriate backup and storage procedure will be implemented to ensure hi date files can be easily restored if loss or damaged. The Controller will to the general ledger are accurately done.

Each month the general ledge and all subsystems will be close in order to run and prepare financial reports as required by the Owner and DHCCR the projects accountants will run the necessary reports, review them and

then submit the reports to the accounting director for final review and approval. Unusual and material items that appear unreasonable will be investigated and resolved by each respective project accountant.

4.  Cash disbursement-we will implement a full purchase order ("PO") system to ensure that all goods and services are pre-approved before requested. An effective PO system, when utilized properly, provides management the necessary tools to monitor the operation budgeting better. Problem areas are quickly identified so that actions can take place.

All requests for goods/services must go through the PO system. A senior officer of Dalton Management will approve PO's before the goods/services are delivered or performed. Services provided by outside vendors must be reviewed and approved by site managers before billing is to occur and all necessary documents must be submitted to the site manager and Dalton Management Executive for approval. Once approved, they are sent to the accounting department for posting to accounting payable.

The project accountant will maintain cash position reports showing the available cash for each project. Checks are computer generated through the BJ Murray Software system by selecting which invoices are to be paid. Checks are then reviewed and approved by the controller. Items selected for payment without the proper documentation will be investigated further before the checks are issued to a vendor.

The controller is responsible for ensuring that bank statements are timely reconciled. Reconciling items that appear on a bank statement will be investigated and resolved before submitting for approval. The controller, at month end, should review all bank reconciliation for the reasonableness and completion.

Invoices paid will be properly canceled with check number, check amount and check dates, in order to avoid duplicate payments. Our computer system is designed to ensure that the accounts payable/cash disbursement systems are in compliance with regulatory agreements. We have developed appropriate internal

control procedures to ensure that transaction are recorded in accordance with DHCR and HUD regulations.

Cash Reception-
A billing file will be created ten to twelve days before the end of the month. The file will include all possible tenants to be billed. Rent bills will be generated and sent to the site manager where they will be distributed to the tenants. Tenants will send rent payments directly to a P.O. box.

*Variance Reports*

A budget variance report will be generated and will provided information on the projects income and expenses against the budgets, as well as year to date. In this way, the Owner and manager is provided with the information necessary to take appropriate action to manage the site within budget and Dalton Management can more easily monitor the budget.

V. Plans for resident / management relations

  A. We will hold regular meetings with the Owner, issue regular newsletters to keep the residents informed and insure that their concerns are promptly respond to.

  B. Rent Collection Policies & Eviction procedures

The rent collection policy for the development will be firm, yet understanding in its application, with a system of reminders and counseling. If Dalton Management is unsuccessful n securing rent payment, commencement of legal action leading to eviction will be taken. Policies and procedures regarding collection and payment of rents will be clearly communicated to all residents in compliance with all federal, state, and city regulation.

It is the policy of Dalton Management to promote full and prompt payment form each resident in an atmosphere of fairness to all resident. Only by promulgation and structured enforcement of such policy can rental income be kept at a level

sufficient to maintain the property and provide services to the project.

The rent collection policy will be applied evenly to all tenants it is a message a of fairness to everyone which enables Dalton management to ascertain when real individual problems exist for which help may be available. Management is aware that rent payment difficulties will happen and are anticipated.

Special problems of resident will be considered on an individual basis. Suitable arrangements will be made of handle them. In a manner consistent with a prompt payments policy to ensure continual financial viability of the project

VI.

All supplies are requisitioned by the maintenance supervisor and submitted to the site manager for approval. Approved requisition, re sent to the home office for final approval. The supplies are then ordered form a pre-approved list of vendors.

The Maintenance supervisor is responsible for matching the received supplies to the purchase order. Invoices are mailed directly to the home office and match to the receiver and approved by the site manager.

All invoices are reviewed by the assistant controller prior to being entered into the account payable journal. The outstanding accounts payable are review weekly by the controller and a Dalton Management Co owner for approval and payment.

All contracts re centrally administered. This assures that each submission to DHCR is proper and complete, minimizing delays in agency approval. Every step in the contracting process is supervised by a senior Dalton Management Executive. We work closely with the site staff to insure their knowledge of the housing company if fully utilized in developing specifications.

Inventory

A well-managed inventory is essential to a good maintenance process. A small inventory of supplies will be maintained on site. The minimum number of goods will be determined by calculating:

1. Lead time necessary from the decision to buy, through the ordering/purchasing processes, to actual delivery.
2. The amount of goods needed, per day, per week, etc., to cover lead time.
3. An extra margin for safety so there will be no chance that the development runs out.
4. Break points by quantity for price changes and then program the inventory and purchasing process so that a certain amount of goods necessary to current use, are ordered whenever that minimum is reached.

Dalton Management will make periodic spot checks on the inventory record.

Certain inventory items must be kept on hand at all times, for example:

- Plumbing parts
- Electrical equipment
- Stove
- Boilers parts
- Toilet parts
- Light bulbs
- Filters

## VIII. RENTAL OF VACANT APARTMENTS

Dalton Management will be responsible for the following activities:

1. Prepare a move-in checklist on each vacant apartment.
2. Maintenance supervisor will evaluate all make-ready needs.
3. Apartments will be thoroughly cleaned, freshly painted and all necessary repairs completed prior to new tenants' move-in.
4. Applicants will be pre-qualified, with credit and references verified.
5. Dalton Management will assistant new resident in all phases of their move-in.
6. Dalton management will sign and execute all required documents.
7. Dalton will complete and process occupant's affidavit of income as required on an annual basis.

8.  Dalton management will maintain an application list
    sufficient enough waiting to meet the anticipated vacancies
    based upon prior experience.

### IX.    CHANGES IN THE PLAN

All changes in the management plan, including changes in staff,
are subject to the approval of the Owner and DHCR, and HUD.

### X.    DHCR REQUIREMENTS

It is understood that a copy of the official compilation of
Codes Rules and Regulations of the state of new York, which
contain Article II of the private Housing finance Law Part 1700 of
9 executives C of the Codes, rules and Regulations will be kept on
site and in the home office. The agent id fully responsible for the
internationalization and the application of the contents of pars
1700 of 9 executives C.

### XI.    EQUAL OPPORTUNITY

It is the police of the management agent to interview and hire
members of its management team without regard to race, color,
creed or national origin, Form the community whenever possible.

Dalton Management is an equal opportunity employer and
complies with all federal, state, and city laws prohibiting
discriminatory practices in housing and employment as set forth in
the title VI of the Civil Rights Acts of 1964, anti-discrimination
regulation of Department of housing and Urban Development,
executive Order #11063

EXHIBIT I

Jun. 4 2008 1:51PM                          No. 71   P. 1

```
CHURCH HOME ASSOC.                    CUMULATIVE G/L - CASH BASIS              PAGE:   42    PERIOD ENDING: 12/31/2006
NEW YORK, NY        10326             FROM: 01/01/2006  TO: 12/31/2006                      RUN DATE:      04/04/2007
BLDG RANGE: 010 TO 010                FISCAL BEGINNING  1                                   RUN TIME:      11:58:35

L. ACCT     ACCOUNT NAME      POSTED              B.O.Y BAL              CURRENT      CURRENT     NET CHANGE   Y.T.D. BAL
                              DATE                                       DEBITS       CREDITS
```

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| PAYROLL W/E 10-22-06 | 10/31/06 | 16 J 5078 | 30.00 | | |
| PAYROLL W/E 10-29-06 | 11/30/06 | 16 J 5154 | 25.00 | | |
| PAYROLL W/E 11-5-06 | 11/30/06 | 16 J 5155 | 25.00 | | |
| PAYROLL W/E 11-12-06 | 11/30/06 | 16 J 5156 | 25.00 | | |
| PAYROLL W/E 11-19-06 | 11/30/06 | 16 J 5157 | 25.00 | | |
| PAYROLL W/E 11-26-06 | 11/30/06 | 16 J 5158 | 25.00 | | |
| PAYROLL W/E 12-3-06 | 12/31/06 | 16 J 5301 | 25.00 | | |
| PAYROLL W/E 12-10-06 | 12/31/06 | 16 J 5303 | 25.00 | | |
| PAYROLL W/E 12-17-06 | 12/31/06 | 16 J 5304 | 25.00 | | |
| PAYROLL W/E 12-24-06 | 12/31/06 | 16 J 5305 | 25.00 | | 1921.21 | 1921.21 |

010-6520  REPAIR CONTRACTS   .00



|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| ALL ABOUT GLASS & WI | 2/17/06 | 11 R 4253 | DALT66 HALLWAYS 2ND 3RD FL | 869.22 | | |
| ALL ABOUT GLASS & WI | 2/17/06 | 11 R 4253 | DALT66 9F GLASS repair | 178.02 | | |
| ALL ABOUT GLASS & WI | 2/17/06 | 11 R 4253 | DALT66 HALLWAYS r | 335.96 | | |
| ALL ABOUT GLASS & WI | 2/17/06 | 11 R 4253 | DALT67 GLASS | 214.56 | | |
| ALL ABOUT GLASS & WI | 2/17/06 | 11 R 4253 | DALT66 | 70.44 | | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | 11 R 4268 | DAY | 362.39 | | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | 16 D 4253 | | | -869.22 | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | 11 R | | 0.00 | | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | | | | -178.02 | |
| ALL ABOUT GLASS & WI | 3/ | | | .76 | | |
| ALL ABOUT GLASS & WI | 3/ | | | | -335.96 | |
| ALL ABOUT GLASS & WI | 3/ 1/ | | | | -214.56 | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | | | | -70.44 | |
| E. TUNNEY INTERIOR C | 3/ /06 | | | | | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | 1 | | | | |
| ALL ABOUT GLASS & WI | 3/ 1/06 | 11 | | | | |
| ALL ABOUT GLASS & WI | 3/ /06 | 11 | | | | |
| VICTORIA RESTORATION | 6/16/06 | 11 R | | | | |
| VICTORIA RESTORATION | 6/16/06 | 11 R 4 | | | | |
| ATEC CONTRACTING | 7/25/06 | 11 R 44. | | 5.00 | | |
| SUPERIOR PROTECTION | 7/25/06 | 11 R 4431 | | 3625 65 | | |
| VICTORIA RESTORATION | 7/25/06 | 11 R 4434 | | 5960.00 | | |
| WEBSTER IRON WORKS | 7/25/06 | 11 R 4436 | | 406 41 | | |
| SUPERIOR PROTECTION | 7/25/06 | 11 R 4433 | 9, .R ALRM SYSTE | 346.80 | | |
| SUPERIOR PROTECTION | 9/ 1/06 | 11 R 4441 | 754   ALARM SERVICE | 509.36 | | |
| SUPERIOR PROTECTION | 10/16/06 | 11 R 4529 | 7616   SERVICE CALL SMOKE DET | 6063.58 | | |
| MULTI-PAK CORPORATIO | 10/16/06 | 11 R 4519 | 37047  REPAIR CHUTE DOOR | 4110.66 | | |
| RAEL SPRINKLER MAINT | 10/16/06 | 11 R 4525 | IV1348 PD 11/01/06-10/31/07 | 5516.84 | | |
| SUPERIOR PROTECTION | 11/17/06 | 11 R 4569 | 7619   FIRE ALARM SYSTEM REPR | 5277.98 | | |
| ALL ABOUT GLASS & WI | 11/17/06 | 11 R 4547 | DALT74 REPLACE 2 MIRRORS | 671.33 | | |
| ALL ABOUT GLASS & WI | 12/18/06 | 11 R 4589 | DALT74 18C BALANCES, 2760 | 1749.13 | | |
| SUPERIOR PROTECTION | 12/18/06 | 11 R 4593 | 7683   SVC CALL B | 1358.85 | | 61038.45 | 61038.45 |

010-6522  DECORATING CONTRACTS   00

|  |  |  |  |  |
|---|---|---|---|---|
| PORCELAIN REFINISHIN | 2/17/06 | 11 R 4261 | 15664  3L TUB REFINISHING | 270 04 |
| T-A- RESTORATION INC | 3/ 9/06 | 11 R 4282 | 3775   11C CYCLE PAINT | 617 94 |

Jan 4. 2008 1:51PM                                                                No. 1711  P. 2

```
CHURCH HOME 8600C.                    CUMULATIVE G/L - CASH BASIS              PAGE:  45   PERIOD ENDING: 12/31/2006
NEW YORK, NY        10026             FROM: 01/01/2006 TO: 12/31/2006                     RUN DATE:      04/04/2009
BLDG RANGE: 010 TO 010                       FISCAL BEGINNING  1                          RUN TIME:      11:58:36

N.  ACCT     ACCOUNT NAME         POSTED              B O Y BAL           CURRENT      CURRENT    NET CHANGE   Y.T.D.BAL
                                  DATE                                    DEBITS       CREDITS
```

| Account Name | Posted Date | | | Description | Current Debits |
|---|---|---|---|---|---|
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3798 | 3H 9H PAINT | 152.73 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3799 | 10F VACANT | 1357.93 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3779 | 4H PAINT | 295.03 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3775 | 10F REPAIR | 1910.11 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3791 | 3D decorating contract | 2601.00 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3790 | 9D decorating contract | 1609.37 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3792 | 3B decorating contract | 1334.48 |
| M-A- RESTORATION INC | 3/ 9/06 | 11 R 4202 | 3788 | 5D decorating contract | 896.69 |
| PORCELAIN REFINISH | 3/09/06 | 11 R 4204 | 15710 | 3H TUB REFINISH | 270.94 |
| M-A- RESTORATION INC | 3/23/06 | 11 R 4301 | 3840 | 4X decorating contract | 402.27 |
| M-A- RESTORATION INC | 3/23/06 | 11 R 4301 | 3841 | 6X decorating contract | 459.50 |
| M-A- RESTORATION INC | 3/23/06 | 11 R 4301 | 3642 | 9A decorating contract | 325.13 |
| M-A- RESTORATION INC | 3/23/06 | 11 R 4301 | 3862 | 5D decorating contract | 682.76 |
| M-A- RESTORATION INC | 3/23/06 | 11 R 4301 | 3863 | 4THFL HALLWAY | 276.94 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3895 | 6X decorating contract | 742.57 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3898 | decorating contracts | 935.99 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3891 | 9C decorating contract | 598.40 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3880 | 5D decorating contract | 650.00 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3889 | 10B decorating contract | 676.26 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3903 | 3D decorating contract | 558.13 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3887 | 1M decorating contract | 480.59 |
| M-A- RESTORATION INC | 5/ 1/06 | 11 R 4343 | 3886 | 3J decorating contract | 395.78 |
| PORCELAIN REFINISH | 5/ 1/06 | 11 R 4346 | 16643 | 1CF TUB REFINISHING | 270.94 |
| PORCELAIN REFINISH | 6/26/06 | 11 R 4404 | 16026 | 8J decorating contract | 270.51 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3915 | 5D decorating contract | 343.64 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3931 | 10F decorating contract | 514.78 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3923 | HALLWAY decorating con | 1295.41 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3922 | 3L decorating contract | 509.36 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3921 | 4N decorating contract | 254.68 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3920 | 5A decorating contract | 644.83 |
| M-A- RESTORATION INC | 6/26/06 | 11 P 4388 | 3926 | 10P decorating contract | 3980.31 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3944 | 1T decorating contract | 407.69 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3975 | 8G decorating contract | 534.78 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3973 | 11F decorating contract | 509.36 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3974 | 2L decorating contract | 189.64 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3972 | 6H decorating contract | 590.64 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3971 | 3D decorating contract | 113.79 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3970 | COMM ROOM decorating c | 4206.95 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3969 | 9P decorating contract | 726.11 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4388 | 3968 | 5D decorating contract | 2380.31 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4389 | 3976 | 7THFL PAINT | 352.22 |
| M-A- RESTORATION INC | 6/26/06 | 11 R 4389 | 3977 | COMM RM. PAINT | 293.05 |
| M-A- RESTORATION INC | 7/25/06 | 11 R 4423 | 3992 | 2C decorating contract | 2145.93 |
| M-A- RESTORATION INC | 7/25/06 | 11 R 4423 | 3995 | 11M decorating contrac | 2980.51 |
| M-A- RESTORATION INC | 7/25/06 | 11 R 4423 | 3994 | 7C decorating contract | 557.05 |
| M-A- RESTORATION INC | 9/18/06 | 11 R 4486 | 3999 | 2E PAINT | 460.01 |
| M-A- RESTORATION INC | 9/18/06 | 11 R 4486 | 4010 | 7B PAINT | 365.52 |
| M-A- RESTORATION INC | 9/18/06 | 11 R 4486 | 4011 | 10TH FLOOR HALLWAY PAI | 636.16 |
| M-A- RESTORATION INC | 9/18/06 | 11 R 4486 | 4006 | 3H PAINT | 1240.89 |
| M-A- RESTORATION INC | 9/18/06 | 11 R 4486 | 4009 | 9A PAINT | 834.49 |

Jun. 4. 2008  1:52PM                                                                                          No. 1711   P. 3

```
CHURCH HOME ASSOC.                          CUMULATIVE G/L - CASH BASIS                      PAGE:   44    PERIOD ENDING: 12/31/2006
NEW YORK, NY          10026                 FROM: 01/01/2006  TO: 12/31/2006                            RUN DATE:   04/06/2007
GLOS RANGE: 010 TO 010                      FISCAL BEGINNING  1                                         RUN TIME:   11:58:35

L. ACCT    ACCOUNT NAME         POSTED              B.O.Y BAL              CURRENT    CURRENT   NET CHANGE   Y.T.D.BAL
                                DATE                                       DEBITS     CREDITS
```

|  |  | POSTED DATE | B.O.Y BAL |  |  |  | CURRENT DEBITS |
|---|---|---|---|---|---|---|---|
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4006 | 6L PAINT | | 525.69 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4005 | 11K PAINT | | 652.43 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4004 | 10P VACANT PAINT | | 125.47 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4003 | 10L PAINT | | 925.86 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4002 | 8F VACANT PAINT | | 863.26 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4001 | 10G BATH TILSE GROUTIN | | 301.45 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4000 | 2B PAINT | | 574.39 |
| M-A- | RESTORATION INC | 9/18/06 | 11 R 4480 | 4009 | | | 381.78 |
| M-A- | RESTORATION INC | 10/16/06 | 11 R 4513 | 4055 | 9A REPAIR REPLACE TILE | | 373.73 |
| M-A- | RESTORATION INC | 10/16/06 | 11 R 4513 | 4055 | 6B PRIME/PLASTER | | 704.44 |
| M-A- | RESTORATION INC | 10/16/06 | 11 R 4518 | 4055 | SUPER SHOP @ DOORS | | 325.13 |
| PRO CONCRETE CONTRAC | | 10/16/06 | 11 R 4523 | 9582 | PARK LOT/SINK HOLES | | 2900.00 |
| PRO CONCRETE CONTRAC | | 11/28/06 | 11 R 4569 | 5611 | REMOVE TRIP HAZARD | | 1500.00 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4117 | 9? PLAST PATTERN | | 526.62 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4112 | 11E ROOF LEAK REPAIR | | 812.82 (?) |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4113 | 8J PAINT/PLAST/PRIME | | 340.30 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4114 | 5N PAINT/PLAST/PRIME | | 375.31 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4116 | 5W CYCLE PAINT APT | | 460.59 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4116 | 8B REPL SNET/ROCK/TILE | | 812.93 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4117 | 10F CYCLE PAINT APT | | 460.59 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4118 | 7L REPLA CNET/ROCK/TIL | | 812.93 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4121 | 11B REPL APT FLOOR TIL | | 1700.19 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4121 | 5R PAINT/PLAST BEDRM | | 677.34 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4122 | SUPER SHOP PAINT/GRAFT | | 370.94 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4123 | ALL HALLWAYS PAINT/PLA | | 2576.38 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4124 | LDRYRM PAINT/PLAST/PRI | | 1498.20 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4125 | 9M PAINT/PLAST/PRIME | | 783.55 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4126 | 9P PAINT/PLAST PRIME | | 291.53 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4127 | 9D PAINT BDRM/XTCB/HAL | | 952.32 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4128 | 6H PAINT/PLAST/STUCCO | | 752.12 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4129 | 7A PAINT/PLAST/PRIME | | 344.60 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4130 | 2D PAINT PRIME | | 536.46 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4130 | 6R PAINT/PLAST REPAIR | | 240.84 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4131 | 11TH FL PAINT/PLAST | | 254.60 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4138 | 6A PAINT/PLAST | | 723.35 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4139 | 4H PAINT/PLAS/PRIM/STU | | 322.96 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4140 | 11C PAINT/PLAST/STUCCO | | 496.41 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4141 | 1Q PAINT/PLAST/PRIME | | 276.36 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4142 | 1R PAINT/PLA/PRI/STUCC | | 249.71 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4143 | 10D PAINT/PLAST/PRIME | | 352.27 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4144 | 10C PAINT/PLAST/PRIME | | 296.99 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4145 | 9N CYCLE PAINT | | 758.63 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4146 | 9A PAINT/PLAST PRIME | | 367.39 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4147 | 9M BDRM PLAS/PRIM/STUC | | 1036.31 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4148 | 2F PAINT/PLAST | | 503.94 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4149 | 9F PAINT/PLAST/PRIME | | 189.44 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4150 | 8L PAINT/PLAST/PRIME | | 325.13 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4151 | 8,9 FL PAINT/PLAS/PRIM | | 456.28 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4152 | 8A PAINT/PLAS/PRIM/STU | | 747.79 |
| M-A- | RESTORATION INC | 11/17/06 | 11 R 4556 | 4153 | 5A PAINT/PLAST/STUCCO | | 839.91 |

Jun. 4. 2008  1:52PM                                                    No. 171  P. 4

CHURCH HOME ASSOC.                    CUMULATIVE G/L - CASH BASIS              PAGE:   45    PERIOD ENDING: 12/31/2006
NEW YORK, NY        10026             FROM: 01/01/2006 TO 12/31/2006                        RUN DATE:     04/04/2007
BLDG RANGE: 010 TO 010                FISCAL BEGINNING  1                                   RUN TIME:     11:58:35

| #. ACCT | ACCOUNT NAME | POSTED DATE | R O Y BAL | | CURRENT DEBITS | CURRENT CREDITS | NET CHANGE | Y T D BAL |
|---|---|---|---|---|---|---|---|---|
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4154 | 10G PAINT/PLAST/PRIME | 738.33 | | |
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4155 | 10H PAINT/PLAST/STUCCO | 799.81 | | |
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4260 | 7G PAINT 2 BDRM APT | 346.80 | | |
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4161 | 2N PAINT/PLAS/PRI/STUC | 683.50 | | |
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4162 | 1M PAINT/PLAST APT | 461.09 | | |
| | M-A- RESTORATION INC | 11/17/06 | 11 R 4556 | 4163 | 2J PAINT/PLAST | 601.48 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4173 | 6E PAINT/PLAST SHE/ROC | 383.65 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4174 | 1T PAINT APT | 541.88 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4175 | 8F PAINT APT | 541.88 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4176 | 9A SHE/ROCK-TILES-PLAS | 541.90 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4177 | 5Z PAINT/PLAST/PLUMB | 807.19 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4178 | 5B PAINT/PLAST | 243.94 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4179 | 7F PAINT/PLUMB/TILES | 726.11 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4180 | 10TH HALL CLOSET/PLUMB | 318.26 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4181 | 1K PAINT/PRIME/PLAST | 1154.19 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4182 | 11A PAINT/PLAST | 989.13 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4183 | 9E PAINT/PLAST | 200.43 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4586 | 4204 | 5N TILE SHE/ROCK PAINT | 1086.17 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4214 | PAINT AB&C STAIRWAYS | 1584.63 | | |
| | PRO CONCRETE CONTRAC | 12/18/06 | 11 R 4555 | 3687 | INSTALL CONCRETE | 6500.00 | | |
| | M-A- RESTORATION INC | 12/18/06 | 11 R 4588 | 4213 | HALLWAY CEIL/WALL/DOOR | 23897.50 | | |
| | PRO CONCRETE CONTRAC | 12/18/06 | 11 R 4585 | 3682 | DRAIN AREA PER PROPOSA | 6900.00 | | 133277.44 | 133277.44 |
| F  5930 | EXTERMINATING CONTRACTS | | | .00 | | | | |
| | ONE SOURCE PEST CONT | 2/17/06 | 11 R 4259 | 400763 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 2/17/06 | 11 R 4259 | 407892 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 3/23/06 | 11 R 4302 | 415253 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 3/23/06 | 11 R 4302 | 411108 | 98BUGS 4M/SERVICE | 921.19 | | |
| | ONE SOURCE PEST CONT | 6/ 1/06 | 11 R 4404 | 423034 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 6/18/06 | 11 R 4358 | 430354 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 7/26/06 | 11 R 4424 | 447979 | exterminating contract | 980.69 | | |
| | ONE SOURCE PEST CONT | 7/28/06 | 11 R 4424 | 448212 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 8/25/06 | 11 R 4462 | 453173 | exterminating contract | 280.69 | | |
| | ONE SOURCE PEST CONT | 8/25/06 | 11 R 4462 | 460396 | FUEL SURCHARGE | 2.71 | | |
| | ONE SOURCE PEST CONT | 9/18/06 | 11 R 4489 | 466344 | EXTERMINATING CONTRACT | 283.46 | | |
| | ONE SOURCE PEST CONT | 10/18/06 | 11 R 4520 | 473045 | EXTERMINATING CONTRACT | 283.40 | | |
| | ONE SOURCE PEST CONT | 11/17/06 | 11 R 4558 | 434571 | SVC FOR 13 APTS | 162.86 | | |
| | ONE SOURCE PEST CONT | 11/17/06 | 11 R 4558 | 435829 | SVC TO ALL FLOORS | 894.69 | | |
| | ONE SOURCE PEST CONT | 11/17/06 | 11 R 4558 | 482601 | SVC 2X PER MONTH | 283.40 | | |
| | ONE SOURCE PEST CONT | 12/18/06 | 11 R 4590 | 491159 | 2X PEST MGMT SVC | 283.40 | | 5359.67 | 5359.67 |
| 010-5934 | ELEVATOR CONTRACTS | | | .00 | | | | |
| | CONSOLIDATED ELEVATO | 3/23/06 | 11 R 4330 | APPLE1 APPL1 3/08/06 | | 27698.95 | | |
| | NEW YORK ELEVATOR | 4/ 6/06 | 11 R 4319 | 585694 | elevator contracts | 851.82 | | |
| | NEW YORK ELEVATOR | 4/ 6/06 | 11 R 4319 | 664279 | elevator contracts | 851.83 | | |
| | NEW YORK ELEVATOR | 4/ 6/06 | 11 R 4319 | 668348 | elevator contracts | 851.83 | | |
| | NEW YORK ELEVATOR | 4/ 6/06 | 11 R 4319 | 667881 | 04/06 MAINTENANCE | 851.83 | | |
| | NEW YORK ELEVATOR | 4/ 6/06 | 11 R 4319 | 668791 | SERVICE CALL | 256.50 | | |
| | NEW YORK ELEVATOR | 6/26/06 | 11 R 4407 | 670593 | ELEVATOR SERVICE | 770.55 | | |
| | CONSOLIDATED ELEVATO | 7/26/06 | 11 R 4419 | 505889 | elevator contracts | 433.50 | | |



# Dalton Management Company, LLC

P O Box 1763
New York, NY 10356-1763
212-679-9800 Phone
212-679-2111    Fax

May 4, 2005

Merrill Lynch Funds
P. O. Box 8118
Boston, MA  02266-8118

Re:  Fifth & 106th St. Assoc.
     Acct. #278-2483010-4

To Whom It May Concern:

Please deposit the enclosed check #04373, dated May 1, 2005 in the amount of
$82,720.00 into Fifth & 106th St. Associates Account #278-2483010-4.

If you have any questions please call me at (212) 679-9800 extension 103.

Yours truly,

Ronald C. Dawley
Chief Operating Officer

RCD/jm
Encl.

# FIFTH AND 106TH ST ASSOCIATES

CHECK NO. 04373

| INV.DATE | BUILDING ADDRESS | DESCRIPTION | INVOICE | VENDOR-BLD | G/L ACCT | AMOUNT |
|---|---|---|---|---|---|---|
| 050105 | 4 EAST 107TH STREE | 05/05 TRANSFER | 05/05 | 03MS-100 | 1215 | 82720.00 |

| | | | | | |
|---|---|---|---|---|---|
| TO: MERRILL LYNCH FUNDS | | | DATE:  5/ 1/05 | | 82720.00 |

## FIFTH AND 106TH ST ASSOCIATES

CHECK NO. 04373

DAYTONE MGMT CO. LLC AS AGENT 4 PARK AVENUE SOUTH 2000 NEW YORK NY 10016

CHASE MANHATTAN BANK
1001 MADISON AVENUE
NEW YORK          0017

DATE: 05/01/2005

PAY TO THE
ORDER OF:

MERRILL LYNCH FUNDS
4 DAVIS DRIVE
44 BEAVER STREET
NEW YORK, NY 1000

$***82720.00

VOID VOID
VOID VOID
VOID VOID

⑈004373⑈ ⑈021000021⑈ 2303838 23⑈



#6

| Client: | Fifth & 106th Street Associates |
|---------|--------------------------------|
| Engagement: | Fifth & 106th Street Associates |
| Period Ending: | 12/31/2008 |
| Workpaper: | Financial Statement - JE |

| Account | Description | Debit | Credit |
|---------|-------------|-------|--------|
| 6131 | SITE MGR FEE | | |
| 8337 | 100 CONTRACT SERV. O | 2,667.00 | |
| 6515 | JANITORIAL SUPPLIES | 156.00 | |
| 2110 | ACCOUNTS PAYABLE | 2,198.00 | |
| Total | | 27,377.00 | 27,377.00 |
| | | 27,377.00 | 27,377.00 |

**Adjusting Journal Entries JE # 6**
To adjust commercial income

| 1132 | COMMERCIAL A/R | | |
| 5140 | RENT INCOME-COMMERCIAL | 3,417.00 | |
| 1132 | COMMERCIAL A/R | 70,648.00 | |
| 5170 | RENT INCOME-PARKING | | 3,458.00 |
| 5910 | LAUNDRY INCOME | | 67,190.00 |
| Total | | | 3,417.00 |
| | | 74,065.00 | 74,065.00 |

**Adjusting Journal Entries JE # 7**
To reclass rental concessions

| 5250 | RENTAL CONCESSIONS | | |
| 1130 | TENANTS ACC RECEIVABLE | 11,709.00 | |
| Total | | | 11,709.00 |
| | | 11,709.00 | 11,709.00 |

**Adjusting Journal Entries JE # 8**
To reclassify

| 5120 | GROSS RENT INCOME | | |
| 6110 | MISC SELLING AND RENTING | 11,103.00 | |
| 6204 | MANAGEMENT CONSULTANT | 500.00 | |
| 6206 | MANAGEMENT CONSULTANT | 2,465.00 | |
| 6210 | ADVERTISING & MKTG | 82,908.00 | |
| 6340 | LEGAL - RETAINER | 12,433.00 | |
| 6341 | LEGAL - COLLECTION | 10,200.00 | |
| 6341 | LEGAL - COLLECTION | 30,167.00 | |
| 6342 | LEGAL - OTHER | 60,899.00 | |
| 6450 | ELECTRICITY | 39,884.00 | |
| 6522 | DECORATING CONTRACTS | 59,817.00 | |
| 6546 | ELECTRIC REPAIRS | 25,408.00 | |
| 6790 | LICENSES,PERMITS,& INSP | 1,800.00 | |
| 1131 | ALLOWANCE FOR BAD DEBTS | 3,500.00 | |
| 6120 | MANAGEMENT FEE | | 11,103.00 |
| 6210 | ADVERTISING & MKTG | | 500.00 |
| 6320 | AUDIT | | 40,367.00 |
| 6331 | SUPERS APARTMENT | | 82,908.00 |
| 6332 | 100 CONTRACT SERV. P | | 2,465.00 |
| 6340 | LEGAL - RETAINER | | 1,800.00 |
| 6390 | MISC ADMIN EXP. | | 104,183.00 |
| 6452 | GAS-COOKING | | 2,163.00 |
| 6520 | REPAIR CONTRACT | | 59,817.00 |
| | | | 25,408.00 |

EXHIBIT L

#6

FIFTH & 106TH ST ASSOC            CUMULATIVE G/L - CASH BASIS                PAGE:   91   PERIOD ENDING: 12/31/2006
NEW YORK, NY       10029             FROM: 01/01/2006 TO: 12/31/2006                          RUN DATE:   11/05/2007
BLDG RANGE: 100 TO 100           FISCAL BEGINNING 1                                  RUN TIME:   13:32:14

| BLD-ACCT | ACCOUNT NAME | POSTED DATE | R/C Y PAI | CURRENT DEBITS | CURRENT CREDITS | NET CHANGE | Y.T.D. BAL |
|---|---|---|---|---|---|---|---|
| | MARKS PANETH & SHRON | 9/21/06 | 11 R 5383 172980 QUARTERLY RETAINER | 8538.75 | | | |
| | MARKS PANETH & SHRON | 10/18/06 | 11 R 5384 146832 2001-2004 TAX ANALYSIS | 25000.00 | | | |
| | MARKS PANETH & SHRON | 11/17/06 | 11 R 5391 139923 2005 TAX PREP | 7800.00 | | | |
| | MARKS PANETH & SHRON | 11/17/06 | 11 R 5391 175330 07/06-10/06 VARIOUS PR | 9509.20 | | | |
| | MARKS PANETH & SHRON | 11/17/06 | 11 R 5391 103312 10/00-07/03 VARIOUS PR | 15000.00 | | | |
| | MARKS PANETH & SHRON | 12/18/06 | 11 R 5431 170956 IRS TAX EXAMINATION | 25000.00 | | | |
| | MARKS PANETH & SHRON | 12/18/06 | 11 R 5431 183292 9/06 QTRLY RETAINER | 8538.75 | | | 109525.45 |
| 100-6230 | 100 PROFESSIONAL FEE OTHE | | .00 | | | .00 | .00 |
| 100-6250 | OTHER RENTING EXPENSE | | .00 | | | | |
| | FIRST ADVANTAGE SAFE | 2/17/06 | 11 R 4881 12/05 12/05 CREDIT CHK | 84.04 | | | |
| | FIRST ADVANTAGE SAFE | 3/ 9/06 | 11 D 4881 12/05 ** VOID NO: 4881 ** | | -84.04 | | |
| | FIRST ADVANTAGE SAFE | 3/17/06 | 11 R 4946 02/06 02/06 CREDIT CHECK | 735.43 | | | |
| | FIRST ADVANTAGE SAFE | 7/10/06 | 11 R 5176 04/06 04/06 CREDIT CHK | 863.49 | | | |
| | FIRST ADVANTAGE SAFE | 7/10/06 | 11 R 5176 05/06 05/06 CREDIT CHK | 237.37 | | | |
| | FIRST ADVANTAGE SAFE | 7/10/06 | 11 R 5176 06/06 06/06 CREDIT CHK | 1125.47 | | | |
| | FIRST ADVANTAGE SAFE | 8/15/06 | 11 R 5241 07/06 07/06 credit check | 148.45 | | | |
| | FIRST ADVANTAGE SAFE | 10/ 6/06 | 11 R 5304 08/06 08/06 CREDIT CHECK | 936.31 | | | |
| | FIRST ADVANTAGE SAFE | 12/ 8/06 | 11 R 5410 11/06 11/06 CR/CK MM345 | 536.31 | | 4629.58 | 4629.58 |
| 100-6311 | OFFICE EXPENSE | | .00 | | | | |
| | ADP, INC. | 5/17/06 | 14 D06/18 W/E 5/14/06 | 72.67 | | | |
| | ADP, INC. | 5/23/06 | 14 D05/28 W/E 5/21/06 | 79.54 | | | |
| | BONY CK CHARGE | 5/31/06 | 16 J 4703 | 68.70 | | | |
| | ADP, INC. | 6/ 1/06 | 14 D06/04 W/E 5/28/06 | 75.79 | | | |
| | ADP, INC. | 6/ 7/06 | 14 D06/08 W/E 6/04/06 | 76.79 | | | |
| | ADP, INC. | 6/13/06 | 14 D06/15 W/E 6/10/06 | 80.32 | | | |
| | ADP, INC. | 6/14/06 | 14 D06/15 W/E 6/11/06 | 59.44 | | | |
| | ADP, INC. | 6/23/06 | 14 D06/29 w/e05/ w/e06/23 | 76.79 | | | |
| | ADP, INC. | 6/29/06 | 14 D06/29 w/e05/ w/e06/25 | 78.17 | | | |
| | ADP | 6/30/06 | 16 J 4801 | 165.32 | | | |
| | ADP, INC. | 7/ 6/06 | 14 D07/03 W/E 7/01/06 | 86.54 | | | |
| | ADP, INC. | 7/12/06 | 14 D07/13 W/E 7/03/06 | 77.54 | | | |
| | ADP, INC. | 7/18/06 | 14 D07/20 W/E 7/15/06 | 76.17 | | | |
| | ADP, INC. | 7/25/06 | 14 D07/27 W/E 7/23/06 | 74.80 | | | |
| | ADP, INC. | 8/ 2/06 | 14 D08/03 W/E 7/30/06 | 76.17 | | | |
| | ADP, INC. | 8/ 2/06 | 14 D08/01 W/E 7/30/06 | 51.85 | | | |
| | ADP, INC. | 8/ 9/06 | 14 D08/10 W/E 8/06/06 | 61.65 | | | |
| | ADP, INC | 8/ 9/06 | 14 D08/03 W/E 8/06/06 | 51.85 | | | |
| | ADP, INC. | 8/ 9/06 | 14 D08/03 W/E 8/05/06 | 50.43 | | | |
| | ADP, INC | 8/28/06 | 14 D08/17 W/E 8/13/06 | 74.80 | | | |
| | ADP, INC. | 8/29/06 | 14 D08/31 W/E 8/27/06 | 74.80 | | | |
| | ADP | 8/31/06 | 16 J 4950 | | | -169.91 | |
| | ADP, INC. | 9/ 5/06 | 14 D09/06 W/E 9/03/06 | 72.06 | | | |
| | ADP, INC. | 9/19/06 | 14 D09/20 W/E 9/17/06 | 73.43 | | | |
| | ADP, INC. | 9/26/06 | 14 D09/27 W/E 9/24/06 | 74.80 | | | |
| | ADP FEE | 9/30/06 | 16 J 5072 | 78.91 | | | |
| | ADP, INC. | 10/ 1/06 | 14 D10/04 W/E 10/01/06 | 78.69 | | | |
| | ADP, INC. | 10/10/06 | 14 D10/11 W/E 10/08/06 | 74.80 | | | |

EXHIBIT M

NEW YORK STATE DIVISION OF HOUSING AND
COMMUNITY RENEWAL
25 BEAVER STREET
NEW YORK, NEW YORK   10004

## RETAINER AGREEMENT FOR AUDITING SERVICES

Between:   Fifth and 106th Street Associates                     DH 14-88
           *Housing Company*                                      *Project Number*

And:       Marks Paneth & Shron, LLP
           *Accounting Firm*

           622 Third Avenue, 7th Floor, New York, NY 10017
           *Address of Accounting Firm*

For the Fiscal Year Ending December 31, 2004

The purpose of this agreement is to confirm our understanding of the scope of services to be provided by our firm for the above housing company for the fiscal year noted above.

Our responsibility will be to audit and express an opinion on the annual financial statements. We shall also compile quarterly financial statements.  These financial statements will be the responsibility of the housing company.

The nature and manner of services to be performed for each aspect of the engagement are detailed below:

1.  Auditing and Reporting on the Certified Annual Financial and Operating Report

    Our audit will be conducted in accordance with current American Institute of Certified Public Accountants' (AICPA) Statements on Auditing Standards (SAS).  We will include all procedures we consider necessary to be able to render an opinion on the fairness of the financial statements and schedules presented in conformity with generally accepted accounting principles and reporting guidelines of DHCR's chart of accounts, Form HAA-91a, for limited profit housing companies.

    We will express an opinion on the Comparative Balance Sheet, Statement of Income and Expense and Partners' Equity (Deficit).  We will also attach and express an opinion on a Statement of Cash Flows.  All other information in the Annual Report will be considered supplemental, unless otherwise stated in the opinion.

    We will forward directly to DHCR an original and two copies of the DHCR Annual Report, with all required attachments, within sixty (60) days after the close of the fiscal year.

-2-

1a. Government Auditing Standards (Required for Companies with Section 236 Subsidy Contracts, Section 223f Insured Mortgages, 100% Section 8 New Construction and Substantial Rehabilitation and Recommended for All Other Companies)

In addition to the AICPA Statements on Auditing Standards, we will also follow Government Auditing Standards, issued by the Comptroller General of the United States, and the Consolidated Audit Guide for Audits of HUD Programs as they pertain to financial compliance audits. Those audits and the Guide require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement and about whether the Partnership complied with laws and regulations, non-compliance with which would be material to a major HUD assisted program. Appropriate reports on compliance and on the internal control structure will be prepared and submitted together with the DHCR Annual Report, within the time limit specified in section 1 above.

2. Tax Returns

We shall prepare the Federal, State and local tax returns of the housing company in accordance with applicable tax laws.

3. Report on Non-Compliance, Errors, Illegal Acts, Irregularities and Significant Deficiencies or Failures in Internal Control.

During the course of the audit, certain matters may come to our attention concerning illegal acts, irregularities, errors, or significant deficiencies or failures in the design or operation of the internal control structure. Also during the course of the audit, certain matters may come to our attention concerning instances of non-compliance with applicable statues, government regulations, or loan, subsidy or grant agreements with federal, state and/or local governments.

We will immediately notify DHCR, in writing, of any indication of non-compliance, illegal acts or irregularities with respect to the operation of this housing company. Further, we will provide DHCR with copies of any correspondence issued concerning errors, or significant deficiencies or failures in the design or operation of the internal control structure. Written notification to DHCR will also be made of oral communication to the housing company or its representatives concerning any of these matters. However, notification to DHCR need not be made for matters clearly inconsequential to the sound financial operation of the housing company.

4. Quarterly Financial and Operating Reports (unaudited), Form HAA-243 (Quarterly Report for Rentals) or Form HAA-243a (Quarterly Report for Cooperatives)

We shall compile the quarterly reports in accordance with standards established by the AICPA. We will transmit an original and two copies of each quarterly report together with the compilation report, directly to DHCR within forty-five (45) days after the close of each quarter. Since these accounting services do not constitute an audit of the above housing company, we will not be in a position to express an opinion or any other form of assurance on these quarterly reports.

-3-

If the Division form HAA-243 is not used, the quarterly reports shall, at a minimum, contain the same information in the same order as detailed in the Division's format. Category classification, account descriptions and format must be the same.

5.  Extension of Time

In the event an extension of time may be required because the books and records are deemed not to be in satisfactory condition for performing an audit or completing and filing any of the above reports, such deficiency, other than those covered in Section 3, will be disclosed in writing to both the housing company and DHCR not later than twenty (20) days after the end of the quarter. If the company cannot correct such deficiencies within fifteen (15) days after such notification, we will again notify the company and DHCR, in writing, of our inability to perform the audit, or to complete and file any of the above reports. Prior written Division approval will be obtained for any additional work required to prepare the books and records for the audit.

6.  Audit Working Papers and Records

Our working papers, records, copies of tax returns, audit related correspondence and other evidence of audit will be retained by us for a period of not less than six years and, upon request, will be made available in the State of New York during normal working hours, to authorized representatives of DHCR, and/or UDC, MLC, PFA or HFA, as applicable.

7.  Affirmation

We affirm that we are certified (licensed) public accountants in the State of New York and are able to render an impartial opinion in accordance with AICPA general standards on auditing and Governmental Auditing Standards, if applicable.

8.  Accounting Services Not Covered

It is understood that this retainer does not cover services such as initial set-up work, other special work in connection with Budget/Rent Determinations or extensions in scope related to poor internal controls. Prior written DHCR approval will be requested for any accounting services rendered to the housing company.

9.  Fee

The total fee for this engagement will not exceed $34,155 inclusive of all costs and expenses. The fee is based on hours worked by all levels of staff, at our standard rate applicable to each, forming a composite rate of $621 per day for 55 person days.

We shall render billings for our professional services, as performed. The total of the billings will not exceed the maximum above.

-4-

After the conclusion of each yearly audit we will provide to the housing company and to DHCR upon request, a schedule of actual hours worked and the fees that would be obtained by application of our normal billing rates for services in connection with the retainer.

## 10. DHCR and Housing Company Approvals

The retainer agreement will be effective upon written approval by DHCR and will be automatically extended, unless notification is given by either party. Written approval by the managing general partner (if a limited partnership) will be transmitted to DHCR along with this executed agreement.

Any change in fee or other changes to this Retainer Agreement shall be submitted in writing to and shall be; subject to written approval by the Division of Housing and Community Renewal.

For: ___Marks Paneth & Shron, LLP___     By: _____
        Name of Accounting Firm                 (Signature) for Accounting Firm      Date

For     ___Fifth & 106th Street Assoc.___     By: _____
        Name of Housing Company              Robert W. Soprov,                    Date
                                             Managing General Partner
                                             Fifth & 106th St. Associates


Approved by DHCR                          By: _____
                                             Signature                            Date


                                             _____
                                             Title



Marks Paneth
&Shron LLP

*Certified Public Accountants
and Consultants*

December 31, 2004

Heywood Towers Associates
Phylis Seavey, Esq.
Seavey & Seavey
Three Park Avenue
New York, New York 10016

Dear Madam,

We are pleased to confirm our understanding of the services we are to provide for Heywood Towers Associates for the year ended December 31, 2004. We will audit the balance sheet of Heywood Towers Associates as of December 31, 2004, and the related statements of operations, changes in partners' capital (deficiency), and cash flows for the year then ended.

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with accounting principles generally accepted in the United States of America. Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement.

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of receivables and certain other assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity. Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform you of any material errors that come to our attention, and we will inform you of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform you of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors are limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing, and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions, that is, significant deficiencies in

622 Third Avenue
New York, NY 10017-6701
Telephone  212 503 8800
Facsimile   212 370 3759

88 Froehlich Farm Boulevard
Woodbury, NY 11797-2921
Telephone  516 992 5900
Facsimile   516 992 5800

Website  www.markspaneth.com


*Associated worldwide with
Jeffreys Henry International*

December 31, 2004
Page 2

the design or operation of internal control. However, during the audit, if we become aware of such reportable conditions, we will communicate them to you.

You are responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. We will advise you about appropriate accounting principles and their application and will assist in the preparation of your financial statements, but the responsibility for the financial statements remains with you. This responsibility includes the establishment and maintenance of adequate records and effective internal controls over financial reporting, the selection and application of accounting principles, and the safeguarding of assets. You are responsible for adjusting the financial statements to correct material misstatements and for confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. You are also responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

We understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

Our fees for these services will be based on the actual time spent at our standard hourly rates. Our standard hourly rates vary according to the degree of responsibility involved and the experience level of the personnel assigned to your audit. Our invoices for these fees will be rendered as work progresses and are payable upon presentation. Based on our preliminary estimates, the fee should not exceed $16,800, plus out-of-pocket costs such as report production, tax return processing, typing, postage, etc. This fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the audit. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

Marks Paneth & Shron LLP

RESPONSE:

This letter correctly sets forth the understanding of Heywood Towers Associates

By: _____

Title: _____

Date: _____

EXHIBIT N

#6



**Marks Paneth & Shron**

Certified Public Accountants
and Consultants

Fifth and 106th Street Associates
c/o Delton Management
3 Park Avenue
28th Floor
New York, NY 10016

Invoice No.   139923
Date          ~~06/15/04~~
Client No.    0018700.0003

FOR PROFESSIONAL SERVICES RENDERED:

2003 tax prep.                                                    $   7,800.00

HL 94056

## FIFTH & 106TH STREET ASSOCIATES                    CHECK NO. 05391

| INV.DATE | BUILDING ADDRESS | DESCRIPTION | INVOICE | VENDOR-BLD | G/L ACCT | AMOUNT |
|---|---|---|---|---|---|---|
| 082802 | 4 EAST 107TH STREE | 10/00-07/02 VARIOU | 103442 | 04MA-100 | 6220 | |
| 060404 | 4 EAST 107TH STREE | 2003 TAX PREP | 139923 | 04MA-100 | 6220 | |
| 062106 | 4 EAST 107TH STREE | 07/05-06/06 VARIOU | 179390 | 04MA-100 | 6220 | 9509.20 |
| | | | | | | |
| TO: MARKS PANETH & SHRON, LLP | | | 11/17/06 NO. 5391 | | | 32309.20 |

EXHIBIT O

Certified Annual Financial and Operating Report

#6

Fees

UDC #86
Development Number

Schedule 14:

| Name | Basis (Contract, Percentage, Other) | Management | Legal | ~~Accounting?~~ | Other |
|------|------|------|------|------|------|
| Seavey & Seavey | Retainer | $ - | $ 10,200 | $ - | $ - |
| ~~███████████~~ | Retainer | | | ~~██████~~ | |
| Dalton Management Co. | Contract - Mgmt | 239,580 | | | - |
| Dalton Management Co. | Contract - Admin | - | - | - | 28,692 |
| Dalton Management Co. | Contract - Site | - | - | - | 32,012 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Totals** | | $ 239,580 | $ 10,200 | $ 34,155 | $ 60,704 |

EXHIBIT P

ROBERT W. SEAVEY

THREE PARK AVENUE
NEW YORK, N.Y. 10016

(212) 532-0333
FAX (212) 481-3390

April 18, 2007

Mars Normel, A Joint Venture
2200 Fletcher Avenue - 5th Fl
Fort Lee, NJ 07024

-And-

Mr. George Kleinman
15 Governors Lane
Princeton, NJ 08540

-And-

John L. Edmonds, Esq.
187-20 Grand Central Parkway
Jamaica, New York 11432

Gentlemen:

The IRS has completed their review of our IRS return for the year ending
December 31, 2003. They have not proposed any adjustment to the return and
for that reason they will not issue a Notice of Final Adjustment.

I am sending you this letter in accordance with Federal law.

Very truly yours,

ROBERT W. SEAVEY

EXHIBIT Q

**Cameron, Griffiths & Pryce, CPAs, LLC**
739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535

Fax: 718-953-8323

**Client Request Memo**

May 16, 2007

To: Dalton Management Company, LLC
C/o Nealle B Seavey
3 Park Ave, 28th Floor
New York, NY 10016

Re: Audit of Logan Plaza 2006

In order for us to complete the testing of payroll expenses charged to office salaried on Logan plaza, we need to review personnel files for the following individuals. These individuals wages were allocated to office salaries.

1.  Michael Hill
2.  Joyce Murphy
3.  Cheryl Labelle
4.  Alonzo Rodgers
5.  Joan Mondesir
6.  David Givens
7.  Ronald Dawley

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Index No.:                     Year: 2007

JOHN L. EDMONDS, INDIVIDUALLY AND AS A MANAGING GENERAL PARTNER OF FIFTH AND 106TH STREET HOUSING COMPANY, INC., LOGAN PLAZA ASSOCIATES, LP, CHARLES H. ASSOCIATES a/k/a CHARLES H. HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP,

Plaintiff,

-against-

ROBERT W SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF FIFTH AND 106TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES et ano.

ORDER TO SHOW CAUSE

M. DOUGLAS HAYWOODE
Attorney for Plaintiff
Office and Post Office Address, Telephone
71 MAPLE STREET
BROOKLYN, NEW YORK 11225-5001
(718) 940-8800
Fax (718)-940-9574

To:

Service of a copy of the within                    is hereby admitted.

Dated,

.....................................................

.....................................................
Attorney(s) for Defendant

To:

---

NOTICE OF ENTRY

Sir:- Please take notice that the within is a (certified) true copy of an

duly entered in the office of the clerk of the within named court on

Dated,

Yours, etc.,

M. DOUGLAS HAYWOODE
Attorney for Plaintiff
Office and Post Office Address
71 MAPLE STREET
BROOKLYN, NEW YORK 11225-5001
(718) 940-8800
Fax (718) 940-9574

To:

Attorneys

NOTICE OF SETTLEMENT

Sir: Please take notice of an

of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at on.

Dated,

Yours, etc.,

M. DOUGLAS HAYWOODE
Attorney for Plaintiff
Office and Post Office Address
71 MAPLE STREET
BROOKLYN, NEW YORK 11225-5001
(718) 940-8800
Fax (718)-940-9574

To: