*M. Douglas Haywoode*
*71 Maple Street*
*Brooklyn, NY, 11255*
*Attorney for Plaintiff John L. Edmonds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. EDMONDS, INDIVIDUALLY AND AS A MANAGING GENERAL PARTNER OF FIFTH AND 106TH STREET HOUSING COMPANY, INC., LOGAN PLAZA ASSOCIATES, LP, CHARLES H. ASSOCIATES a/k/a CHARLES H. HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP,

Index No.:   08 CIV 5646

Plaintiff,

-against-

**DECLARATION OF
M. DOUGLAS HAYWOODE**

ROBERT W SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF FIFTH AND l06TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP; PHYLLIS M. SEAVEY INDIVIDUALLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGMETNT COMPANY LLC; AVERY B. SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF LOGAN PLAZA ASSOCIATES, LP, CHURCH HOME ASSOCIATES AND OWNER OF DALTON MANAGEMENT COMIPANY, LLC; NEALE B. SEAVEY, INDIVIDULLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGEMENT COMPANY, LLC; AND RONALD DAWLEY AS CHIEF EXECUTIVE OFFICER OF DALTON MANAGEMENT COMPANY, LLC; DALTON MANAGEMENT COMPANY, LLC, THE SEAVEY ORGANIZATION, and MARK PANETH & SHRON, Auditors,

Defendants.

M. Douglas Haywoode, Esq., an Attorney admitted to practice in the Courts of the State of New York declares under the penalties of perjury the following:

1. That I am the attorney for the Plaintiff John L. Edmonds herein and submit this Declaration in Support of John L. Edmonds' Cross-Motion for Discovery Sanctions pursuant to FRCP 30g, based on Defendants failure to produce discovered documents and obstruction of the discovery process.

2. It is fair to say the discovery process has been virtually defeated by the total absence of the attorney for the defendants, M. Darren for several months at a time, since the original notice to take the deposition of the main Defendants in this action, Robert and Phyllis Seavey, which was November 10th, 2008. Attorney Traub's unavailability over those months stymied and virtually defeated the discovery process notwithstanding applications that were previously made by him to the Magistrate alleging insufficiencies in the discovery produced by Plaintiff.

3. Diverse questions in a document called Second Interrogatories Failures to Respond were articulated and pointed out to both Judge Harold Baer, Jr. and Magistrate James C. Francis as long ago as September 18th, 2008, but the Defendants have taken no opportunity to respond to these inquiries. They had previously stated the questions would be answered at the Depositions of the diverse parties, but in the deposition of Ronald Dawley it eventuated that when the questions reserved for that time at Traubs, request were put to him, he stated no one advised him of these issues, and he was not prepared to respond to them. It was only at the direction Magistrate Francis that the deposition of William Jennings of Marks Paneth & Shron was held on February 3rd, 2009 and the deposition of Ronald Dawley held on February 24th, 2009, the rare days in February when Attorney Traub and Attorney Kelly for Marks, Paneth & Shron were able to do so.

4.      The bulk of discovery was said to be planned for March and April of 2009, but in the final analysis motions to dismiss on behalf of Marks Paneth & Shron occupied the early part of March and, once again, Mr. Traub was unavailable for several days during that month. Subsequently, when April arrived, which was the last month under the existing scheduling order for depositions, Plaintiff was informed that only the 8th, 17th and 20th, were dates in which the Defendants' counsel could both be present for depositions, three days, and the 21st through the 27th were open, but this was a time in which Affirmant was scheduled to select a Jury in the Supreme Court of Bronx County.

5.      It was obvious any real discovery could not take place.

6.      Affirmant requested on March 25th, recognizing what was developing before us, that material be released by the Defendants pursuant to §41 of the Partnership Law, forthwith, rather than on the 30 day cycle of the FRCP, heretofore insisted upon by Mr. Traub, so as to allow a fulsome inquiry into the documents to be discovered in time for the depositions of Defendants Phyllis Seavey and Robert Seavey in April. The attached electronic communications between the parties show this request was first attacked as being burdensome, duplicative, and subject to Rule 11 sanction, but, when it was pointed out that we only sought the balance of the years materials which had never been provided before over the last several months Plaintiff was told by Mr. Traub he would take it under advisement and consult with Dalton as to whether Plaintiff, who is a Managing General Partner of the Corporation, could have such immediate access to the corporate business records, rather than be restricted to the procrustean bed of 30 days time for Defendants to respond.

7.      When it became apparent Defendants were not responding Plaintiff, caused a notice to be served to additional Defendants, Avery Seavey and Neale Seavey, which notice was returnable March 28th, 2009 merely to reserve our claim that we needed access to these records for business years 2005 back to 1999.

8. The Affirmation of M. Darren Traub suggests that this was some agreed upon date for the production of these records, but this is a total fabrication. Our demand was made pursuant to the Partnership Law and it was obvious that unless theses records could be looked into prior to the depositions, any deposition of the Defendants would be meaningless. Mr. Traub agreed in a conversation of April 13th, 2009 that he would make some documents available at the office of Defendant Dalton Management but the statements made by him that this was done as some professional courtesy in the acceptance of the parties that the documents were not due until March 28th, 2009 is a second fabrication. Plaintiff maintained we could not conduct any deposition without the allowance of some inquiry and it was on this basis that documents were made available commencing on the 15th, of April 2009.

9. On this occasion several of the personnel of my office attended to assist the accountants with their inquiries of the voluminous documents and on the evening of April 16th, 2009 several papers were observed by these which they requested to copy for reference to my attention. My assistants were told by Defendant Ronald Dawley that he would take these documents and send them out for copying and return them to the assistants the following morning, Friday the 17th of April.

10. The deposition of John L. Edmonds was taken on Friday the 17th throughout the entire day and Affirmant and Mr. Traub and Attorney Kelly, on behalf of Marks, Paneth & Shron ,were occupied in this manner. The documents were not provided to my assistants and the accountant on that Friday and when inquiries were made as to why this was not done Defendant Ronald Dawley disclosed, for the first time, that he would not release these documents until his attorneys had an opportunity to review and approve the release.

11. It should be born in mind that these were documents of a corporation of which the Plaintiff was the Managing General Partner, though his capacity and the percentage of his

interest have been questioned by the Defendants through the course of this and other recent litigation litigation.

12. The deposition of John L. Edmonds was completed on April 17th, 2009 and the Attorneys determined to proceed with the deposition of Phyllis Seavey on the following Monday, with the Accountants scheduled to be deposed on the Tuesday and Wednesday of that week.

13. On Sunday Afternoon, several of my young assistants called to advise me that documents observed by them which they thought relevant to the inquiries in progress were being withheld by Defendant Dawley on the pretext that his lawyers must first approve them.

14. Such prior exchange of Documents as had occurred were done without any such approval, and free and unrestricted access to the box loads of information had been provided to both sides without such an odious course of action.

15. This failure to allow the release of information so alarmed my assistants, that they communicated it to me directly, on Sunday April 19th, 2009, prior to the scheduled deposition of Phyllis Seavey. They were of the impression the information might be extremely vital to these depositions and that it was obviously being suppressed by Defendants.

16. Affirmant raised this issue by electronic communication with the Defendants Attorney and advised that we wish the matter resolved before the beginning of any deposition of any further defendants' witnesses. The attached electronic communications between the parties shows the history of what transpired and their insistence that Plaintiff proceed without benefit of such documents as were being secreted by them.

Affirmant protested this authoritarian assertion and was told that the Defendants would appear, notwithstanding the following morning and would seek sanctions if the Plaintiff did not agree to proceed blindly in the premises.

17. The attached electronic communications clearly shows that Plaintiff advised that we would not be so mistreated and would insist that the documents in question, which appear to

consist of only 3 or 4 pages be produced before any discovery. On the morning of the deposition, an electronic mail was sent, clearly narrowing this controversy to the issue of the production of the papers, which had so alarmed my "sentinels", as to cause these Sheppard's in the field to sound an alarm and cry foul and havoc of the discovery process. This memorandum was not answered in the morning but the instant application was electronically served on the evening of April 20th, 2009.

18. John L. Edmonds is a Managing General Partner of several developments, the largest of which is 5th & 106th Street This is a building which has an estimated income of approximately $7, 000, 000.00 yearly, the cost of which have been projected by past building managers to be approximately $3.2 Million Dollars. Notwithstanding, the building pays no profit to the Plaintiff Edmonds. It is totally managed by Dalton Management, which is a Defendant herein, and an organization solely owned and primarilystaffed by the Seavey Defendants and controlled and directed by Phyllis Seavey, though she has recently alleged she holds no position in this organization, an astounding revelation on the eve of the end of discovery, which management company receives in excess of $500,000.00 yearly by reason of its functioning, which funds are received only by the Seavey Defendants. The evidence shows the true management and accounting process for which Dalton Management is paid is actually performed by the defendants Marks, Paneth & Shron, who possess and maintain all of the books and records of the corporation and who direct the composition of all financial statements, apparently without consultation of any individual of Dalton Management. The evidence shows the same combination of Dalton Managements and Marks, Paneth & Shron function throughout approximately 12 other developments which the Seaveys are involved in and that the expenses of these development may be pulled together in such a manner that 5th & 106th, Street, the largest of the developments and some of the others maybe carrying payments in excess of any fair ratio that it ought to be addressing.

19. A true picture of the dysfunctioning of this entity cannot be obtained without an inquiry into the financial affairs of the four developments of which the Plaintiff is a Partner and the other 12 developments where that Seaveys function with Marks, Paneth & Shron alone.

20. The crux of this matter are the handful of documents being suppressed by the Defendants. Affirmant made clear in the Memorandum of the morning of April 20th, 2009, that this entire matter is resolved by the production of those documents whereupon the deposition of the Seavey Defendants would ensue.

21. The response of the Defendant and Attorney M. Darren Traub was, not to produce the 3 or 4 pieces of paper suppressed by the Defendants but to produce 21 pages of the instant motion seeking a sanction for our failure to consent to their bullying attempts to compel Plaintiff to conduct a Deposition without essential discovery material.

22. It is interesting to know that in the 21 pages at paragraph 7 and 8 that contrary to the statements of Defendant Ronald Dawley on Thursday evening of April 16th, 2009 that these documents would be conveyed to Counsel for authorization to be released, Mr. Traub says he was not advised of this circumstance, allegedly, until receiving the communication from me on Sunday evening. It must either be presumed that Defendant Dawley lied about the circumstance or that the information was transmitted to his Attorneys and not acted upon from the evening of April 16th, through the deposition of John L. Edmonds on April 17th and the Monday morning in question.

23. The allegations of Mr. Traub in Paragraph 10 that some mention had been made to my young assistants of a necessity to quote "bates label" the 3 or 4 pages with which they were concerned, is nothing more than a recent fabrication. Thousands of pages of papers have been produced by both parties in this deposition, no one of which bears bates labeling. For what logical or rational reason would someone withhold 4 to 5 pieces of paper for "Bates Labeling".

The mere suggestion that this is a standard procedure is in defiance of Affirmants 48 years in the practice of Law.

24.     Attorney Traub in paragraph 11 of his moving papers advises us that he received the documents on the morning of the 20th, again suggesting they would be "bates labeled" ,and he describes them as a bank statement, three Limited Partnership resolutions signed by the Plaintiff, with a cover letter from Defendant Robert Seavey to the Chase Bank on January 8th, 2001, with a second amended Partnership Agreement of May 13, 2002 from Seavey to Solomon & Smith Barney. Mr. Traub suggests in paragraph 11 that Mrs. Seavey's name does not appear in this document though she is the guiding force of the organization in this litigation.

25.     Any suggestion that the parties were inconvenienced by the cancellation of the deposition at 5:00 PM of the date before is ludicrous. It is the experience of all practitioners that no deposition taken in the state of New York is confirmed until 5:00 pm of the day before without the dislocations claimed by the Defendants Attorney. Mrs. Seavey has always been a resident of the City of New York and resides within a mile and a half of her Attorneys offices.Affirmant had consented with her Attorneys to hold the depositions at this office as a convenience to the Seavey Defendants who I have known for many years. It is not true this deposition was originally scheduled two and a half months ago, ,It was originally noticed by Affirmant in November of 2008.

26.     The pronouncement at this time that miraculously, in the last two weeks of the litigation scheduled, that afterDefendant's Counsel had spent approximately 6 to 7 months of this time in Los Angeles that suddenly Mrs. Seavey is scheduled to be away for the balance of the period of the depositions is an announcement that they had no intention at anytime to produce any of the Seaveys under the existing depositions scheduled. Attorney Traub at paragraph 11 further goes on to state that Affirmant could have proceeded with the deposition without this information and made a record as to why I should be allowed to continue after its production,

but it is clear from what he is now telling the Court that those efforts would have been feckless as he knew the Seaveys intended to be absent for the balance of the discovery schedule. Defendants' Counsel has previously jealously guarded the seven hour limitation on discovery of his witnesses and to embark on such a process would have subjected us to the certain possibility that the segments addressed to the secreted documents would never occur. In further litigation of the circumstance Attorney Traub suggests that these are documents that "my office had already reviewed and that my client should have had in his possession custody or control, but, it is difficult to comprehend how a letter written by Defendant Robert Seavey to the Chase Bank in 2002 could be presumed to be in the possession of the Plaintiff John L. Edmonds." Additionally, it is the business of Dalton Management to maintain said records on behalf of Defendant Seavey and the Plaintiff John L. Edmonds. John L. Edmonds, of course, is under no duty to maintain such records, which appear to involve the intricate affairs of the Partnerships.

27. Mr. Traub assures us that these documents are meaningless and of no effect. Mr. Traub does everything but show us the actual documents. He has produced 21 pages in defense of their suppression but no one of these pages sets forth a copy of the documents that alarmed my young Assistants.

28. Affirmant asks this Court to direct the immediate production of these documents so that some meaningful objective analysis can be made of the intent and import of these pages, which Mr. Traub suggests are irrelevant to this matter.

29. M. Darren Traub attempts to subject this controversy to the light of Judicial scrutiny without any presentation of the very papers which are the center and focus of this episode, expecting not just Affirmant, but now, the Court, to accept his ipsa dixit the matters lack materiality, an astounding attempt at prestidigitation.

WHEREFORE, Affirmant prays an immediate conference with the Court to derail this attempted travesty, and an Order directing the production of the documents so that the implications can be assessed and the depositions herein, at last completed, and appropriate sanctions be imposed on the Attorney for the Defendants for the bizarre undertakings herein with such other and further relief as the Court deems proper.

Dated: Brooklyn, New York
April 21st, 2009

Yours, etc.,

S/M. Douglas Haywoode
M. DOUGLAS HAYWOODE, ESQ. (MH 1795)
*Attorney for Plaintiff*
71 Maple Street
Brooklyn, NY 11225
(718) 940-8800

To: Wilson Elser Moskowitz Edelman & Dicker, LLP
3 Gannett Drive
White Plains, NY 10604-3407
Attn: William J. Kelly, Esq.
(914) 323-7000

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Attn: Scott E. Mollen, Esq.
(212) 592-1505

*M. Douglas Haywoode*
*71 Maple Street*
*Brooklyn, NY, 11255*
*Attorney for Plaintiff John L. Edmonds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. EDMONDS, INDIVIDUALLY AND AS A MANAGING GENERAL PARTNER OF FIFTH AND 106TH STREET HOUSING COMPANY, INC., LOGAN PLAZA ASSOCIATES, LP, CHARLES H. ASSOCIATES a/k/a CHARLES H. HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP,

Index No.:   08 CIV 5646

Plaintiff,

-against-

**DECLARATION OF
M. DOUGLAS HAYWOODE**

ROBERT W SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF FIFTH AND l06TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP; PHYLLIS M. SEAVEY INDIVIDUALLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGMETNT COMPANY LLC; AVERY B. SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF LOGAN PLAZA ASSOCIATES, LP, CHURCH HOME ASSOCIATES AND OWNER OF DALTON MANAGEMENT COMIPANY, LLC; NEALE B. SEAVEY, INDIVIDULLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGEMENT COMPANY, LLC; AND RONALD DAWLEY AS CHIEF EXECUTIVE OFFICER OF DALTON MANAGEMENT COMPANY, LLC; DALTON MANAGEMENT COMPANY, LLC, THE SEAVEY ORGANIZATION, and MARK PANETH & SHRON, Auditors,

Defendants.

M. Douglas Haywoode, Esq., an Attorney admitted to practice in the Courts of the State of New York declares under the penalties of perjury the following:

1. That I am the attorney for the Plaintiff John L. Edmonds herein and submit this Declaration in Support of John L. Edmonds' Cross-Motion for Discovery Sanctions pursuant to FRCP 30g, based on Defendants failure to produce discovered documents and obstruction of the discovery process.

2. It is fair to say the discovery process has been virtually defeated by the total absence of the attorney for the defendants, M. Darren for several months at a time, since the original notice to take the deposition of the main Defendants in this action, Robert and Phyllis Seavey, which was November 10th, 2008. Attorney Traub's unavailability over those months stymied and virtually defeated the discovery process notwithstanding applications that were previously made by him to the Magistrate alleging insufficiencies in the discovery produced by Plaintiff.

3. Diverse questions in a document called Second Interrogatories Failures to Respond were articulated and pointed out to both Judge Harold Baer, Jr. and Magistrate James C. Francis as long ago as September 18th, 2008, but the Defendants have taken no opportunity to respond to these inquiries. They had previously stated the questions would be answered at the Depositions of the diverse parties, but in the deposition of Ronald Dawley it eventuated that when the questions reserved for that time at Traubs, request were put to him, he stated no one advised him of these issues, and he was not prepared to respond to them. It was only at the direction Magistrate Francis that the deposition of William Jennings of Marks Paneth & Shron was held on February 3rd, 2009 and the deposition of Ronald Dawley held on February 24th, 2009, the rare days in February when Attorney Traub and Attorney Kelly for Marks, Paneth & Shron were able to do so.

4. The bulk of discovery was said to be planned for March and April of 2009, but in the final analysis motions to dismiss on behalf of Marks Paneth & Shron occupied the early part of March and, once again, Mr. Traub was unavailable for several days during that month. Subsequently, when April arrived, which was the last month under the existing scheduling order for depositions, Plaintiff was informed that only the 8th, 17th and 20th, were dates in which the Defendants' counsel could both be present for depositions, three days, and the 21st through the 27th were open, but this was a time in which Affirmant was scheduled to select a Jury in the Supreme Court of Bronx County.

5. It was obvious any real discovery could not take place.

6. Affirmant requested on March 25th, recognizing what was developing before us, that material be released by the Defendants pursuant to §41 of the Partnership Law, forthwith, rather than on the 30 day cycle of the FRCP, heretofore insisted upon by Mr. Traub, so as to allow a fulsome inquiry into the documents to be discovered in time for the depositions of Defendants Phyllis Seavey and Robert Seavey in April. The attached electronic communications between the parties show this request was first attacked as being burdensome, duplicative, and subject to Rule 11 sanction, but, when it was pointed out that we only sought the balance of the years materials which had never been provided before over the last several months Plaintiff was told by Mr. Traub he would take it under advisement and consult with Dalton as to whether Plaintiff, who is a Managing General Partner of the Corporation, could have such immediate access to the corporate business records, rather than be restricted to the procrustean bed of 30 days time for Defendants to respond.

7. When it became apparent Defendants were not responding Plaintiff, caused a notice to be served to additional Defendants, Avery Seavey and Neale Seavey, which notice was returnable March 28th, 2009 merely to reserve our claim that we needed access to these records for business years 2005 back to 1999.

8.      The Affirmation of M. Darren Traub suggests that this was some agreed upon date for the production of these records, but this is a total fabrication. Our demand was made pursuant to the Partnership Law and it was obvious that unless theses records could be looked into prior to the depositions, any deposition of the Defendants would be meaningless. Mr. Traub agreed in a conversation of April 13th, 2009 that he would make some documents available at the office of Defendant Dalton Management but the statements made by him that this was done as some professional courtesy in the acceptance of the parties that the documents were not due until March 28th, 2009 is a second fabrication. Plaintiff maintained we could not conduct any deposition without the allowance of some inquiry and it was on this basis that documents were made available commencing on the 15th, of April 2009.

9.      On this occasion several of the personnel of my office attended to assist the accountants with their inquiries of the voluminous documents and on the evening of April 16th, 2009 several papers were observed by these which they requested to copy for reference to my attention. My assistants were told by Defendant Ronald Dawley that he would take these documents and send them out for copying and return them to the assistants the following morning, Friday the 17th of April.

10.     The deposition of John L. Edmonds was taken on Friday the 17th throughout the entire day and Affirmant and Mr. Traub and Attorney Kelly, on behalf of Marks, Paneth & Shron ,were occupied in this manner. The documents were not provided to my assistants and the accountant on that Friday and when inquiries were made as to why this was not done Defendant Ronald Dawley disclosed, for the first time, that he would not release these documents until his attorneys had an opportunity to review and approve the release.

11.     It should be born in mind that these were documents of a corporation of which the Plaintiff was the Managing General Partner, though his capacity and the percentage of his

interest have been questioned by the Defendants through the course of this and other recent litigation litigation.

12.     The deposition of John L. Edmonds was completed on April 17th, 2009 and the Attorneys determined to proceed with the deposition of Phyllis Seavey on the following Monday, with the Accountants scheduled to be deposed on the Tuesday and Wednesday of that week.

13.     On Sunday Afternoon, several of my young assistants called to advise me that documents observed by them which they thought relevant to the inquiries in progress were being withheld by Defendant Dawley on the pretext that his lawyers must first approve them.

14.     Such prior exchange of Documents as had occurred were done without any such approval, and free and unrestricted access to the box loads of information had been provided to both sides without such an odious course of action.

15.     This failure to allow the release of information so alarmed my assistants, that they communicated it to me directly, on Sunday April 19th, 2009, prior to the scheduled deposition of Phyllis Seavey. They were of the impression the information might be extremely vital to these depositions and that it was obviously being suppressed by Defendants.

16.     Affirmant raised this issue by electronic communication with the Defendants Attorney and advised that we wish the matter resolved before the beginning of any deposition of any further defendants' witnesses. The attached electronic communications between the parties shows the history of what transpired and their insistence that Plaintiff proceed without benefit of such documents as were being secreted by them.

Affirmant protested this authoritarian assertion and was told that the Defendants would appear, notwithstanding the following morning and would seek sanctions if the Plaintiff did not agree to proceed blindly in the premises.

17.     The attached electronic communications clearly shows that Plaintiff advised that we would not be so mistreated and would insist that the documents in question, which appear to

consist of only 3 or 4 pages be produced before any discovery. On the morning of the deposition, an electronic mail was sent, clearly narrowing this controversy to the issue of the production of the papers, which had so alarmed my "sentinels", as to cause these Sheppard's in the field to sound an alarm and cry foul and havoc of the discovery process. This memorandum was not answered in the morning but the instant application was electronically served on the evening of April 20th, 2009.

18.　John L. Edmonds is a Managing General Partner of several developments, the largest of which is 5th &106th Street  This is a building which has an estimated income of approximately $7, 000, 000.00 yearly, the cost of which have been projected by past building managers to be approximately $3.2 Million Dollars. Notwithstanding, the building pays no profit to the Plaintiff Edmonds. It is totally managed by Dalton Management, which is a Defendant herein, and an organization solely owned and primarilystaffed by the Seavey Defendants and controlled and directed by Phyllis Seavey, though she has recently alleged she holds no position in this organization, an astounding revelation on the eve of the end of discovery, which management company receives in excess of $500,000.00 yearly by reason of its functioning, which funds are received only by the Seavey Defendants. The evidence shows the true management and accounting process for which Dalton Management is paid is actually performed by the defendants Marks, Paneth & Shron, who possess and maintain all of the books and records of the corporation and who direct the composition of all financial statements, apparently without consultation of any individual of Dalton Management. The evidence shows the same combination of Dalton Managements and Marks, Paneth & Shron function throughout approximately 12 other developments which the Seaveys are involved in and that the expenses of these development may be pulled together in such a manner that 5th & 106th, Street, the largest of the developments and some of the others  maybe carrying payments in excess of any fair ratio that it ought to be addressing.

19. A true picture of the dysfunctioning of this entity cannot be obtained without an inquiry into the financial affairs of the four developments of which the Plaintiff is a Partner and the other 12 developments where that Seaveys function with Marks, Paneth & Shron alone.

20. The crux of this matter are the handful of documents being suppressed by the Defendants. Affirmant made clear in the Memorandum of the morning of April 20th, 2009, that this entire matter is resolved by the production of those documents whereupon the deposition of the Seavey Defendants would ensue.

21. The response of the Defendant and Attorney M. Darren Traub was, not to produce the 3 or 4 pieces of paper suppressed by the Defendants but to produce 21 pages of the instant motion seeking a sanction for our failure to consent to their bullying attempts to compel Plaintiff to conduct a Deposition without essential discovery material.

22. It is interesting to know that in the 21 pages at paragraph 7 and 8 that contrary to the statements of Defendant Ronald Dawley on Thursday evening of April 16th, 2009 that these documents would be conveyed to Counsel for authorization to be released, Mr. Traub says he was not advised of this circumstance, allegedly, until receiving the communication from me on Sunday evening. It must either be presumed that Defendant Dawley lied about the circumstance or that the information was transmitted to his Attorneys and not acted upon from the evening of April 16th, through the deposition of John L. Edmonds on April 17th and the Monday morning in question.

23. The allegations of Mr. Traub in Paragraph 10 that some mention had been made to my young assistants of a necessity to quote "bates label" the 3 or 4 pages with which they were concerned, is nothing more than a recent fabrication. Thousands of pages of papers have been produced by both parties in this deposition, no one of which bears bates labeling. For what logical or rational reason would someone withhold 4 to 5 pieces of paper for "Bates Labeling".

The mere suggestion that this is a standard procedure is in defiance of Affirmants 48 years in the practice of Law.

24. Attorney Traub in paragraph 11 of his moving papers advises us that he received the documents on the morning of the 20th, again suggesting they would be "bates labeled" ,and he describes them as a bank statement, three Limited Partnership resolutions signed by the Plaintiff, with a cover letter from Defendant Robert Seavey to the Chase Bank on January 8th, 2001, with a second amended Partnership Agreement of May 13, 2002 from Seavey to Solomon & Smith Barney. Mr. Traub suggests in paragraph 11 that Mrs. Seavey's name does not appear in this document though she is the guiding force of the organization in this litigation.

25. Any suggestion that the parties were inconvenienced by the cancellation of the deposition at 5:00 PM of the date before is ludicrous. It is the experience of all practitioners that no deposition taken in the state of New York is confirmed until 5:00 pm of the day before without the dislocations claimed by the Defendants Attorney. Mrs. Seavey has always been a resident of the City of New York and resides within a mile and a half of her Attorneys offices.Affirmant had consented with her Attorneys to hold the depositions at this office as a convenience to the Seavey Defendants who I have known for many years. It is not true this deposition was originally scheduled two and a half months ago, ,It was originally noticed by Affirmant in November of 2008.

26. The pronouncement at this time that miraculously, in the last two weeks of the litigation scheduled, that afterDefendant's Counsel had spent approximately 6 to 7 months of this time in Los Angeles that suddenly Mrs. Seavey is scheduled to be away for the balance of the period of the depositions is an announcement that they had no intention at anytime to produce any of the Seaveys under the existing depositions scheduled. Attorney Traub at paragraph 11 further goes on to state that Affirmant could have proceeded with the deposition without this information and made a record as to why I should be allowed to continue after its production,

but it is clear from what he is now telling the Court that those efforts would have been feckless as he knew the Seaveys intended to be absent for the balance of the discovery schedule. Defendants' Counsel has previously jealously guarded the seven hour limitation on discovery of his witnesses and to embark on such a process would have subjected us to the certain possibility that the segments addressed to the secreted documents would never occur. In further litigation of the circumstance Attorney Traub suggests that these are documents that "my office had already reviewed and that my client should have had in his possession custody or control, but, it is difficult to comprehend how a letter written by Defendant Robert Seavey to the Chase Bank in 2002 could be presumed to be in the possession of the Plaintiff John L. Edmonds." Additionally, it is the business of Dalton Management to maintain said records on behalf of Defendant Seavey and the Plaintiff John L. Edmonds. John L. Edmonds, of course, is under no duty to maintain such records, which appear to involve the intricate affairs of the Partnerships.

27. Mr. Traub assures us that these documents are meaningless and of no effect. Mr. Traub does everything but show us the actual documents. He has produced 21 pages in defense of their suppression but no one of these pages sets forth a copy of the documents that alarmed my young Assistants.

28. Affirmant asks this Court to direct the immediate production of these documents so that some meaningful objective analysis can be made of the intent and import of these pages, which Mr. Traub suggests are irrelevant to this matter.

29. M. Darren Traub attempts to subject this controversy to the light of Judicial scrutiny without any presentation of the very papers which are the center and focus of this episode, expecting not just Affirmant, but now, the Court, to accept his ipsa dixit the matters lack materiality, an astounding attempt at prestidigitation.

WHEREFORE, Affirmant prays an immediate conference with the Court to derail this attempted travesty, and an Order directing the production of the documents so that the implications can be assessed and the depositions herein, at last completed, and appropriate sanctions be imposed on the Attorney for the Defendants for the bizarre undertakings herein with such other and further relief as the Court deems proper.

Dated: Brooklyn, New York
April 21st, 2009

Yours, etc.,

S/M. Douglas Haywoode
M. DOUGLAS HAYWOODE, ESQ. (MH 1795)
*Attorney for Plaintiff*
71 Maple Street
Brooklyn, NY 11225
(718) 940-8800

To: Wilson Elser Moskowitz Edelman & Dicker, LLP
3 Gannett Drive
White Plains, NY 10604-3407
Attn: William J. Kelly, Esq.
(914) 323-7000

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Attn: Scott E. Mollen, Esq.
(212) 592-1505