ELECTRONICALLY FILED VIA ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JOHN L. EDMONDS, INDIVIDUALLY AND AS A
MANAGING GENERAL PARTNER OF FIFTH AND
106TH STREET HOUSING COMPANY, INC.,
LOGAN PLAZA ASSOCIATES, LP, CHARLES H.
ASSOCIATES a/k/a CHARLES H. HILL
ASSOCIATES, LP AND AS A LIMITED PARTNER
OF CHURCH HOME ASSOCIATES, LP,

                 Plaintiffs,

       -against-

ROBERT W. SEAVEY, INDIVIDUALLY AND AS A
GENERAL PARTNER OF FIFTH AND 106TH
STREET ASSOCIATES, LP, LOGAN PLAZA
ASSOCIATES, LP, CHARLES HILL ASSOCIATES,
CHARLES HILL ASSOCIATES, LP AND AS A
LIMITED PARTNER OF CHURCH HOME
ASSOCIATES, LP; PHYLLIS M. SEAVEY
INDIVIDUALLY AND AS OWNER, MANAGER
AND MEMBER OF DALTON MANAGEMENT
COMPANY LLC; AVERY B. SEAVEY,
INDIVIDUALLY AND AS A GENERAL PARTNER
OF LOGAN PLAZA ASSOCIATES, LP, CHURCH
HOME ASSOCIATES AND OWNER OF DALTON
MANAGEMENT COMPANY, LLC; NEALLE B.
SEAVEY, INDIVIDUALLY AND AS OWNER,
MANAGER AND MEMBER OF DALTON
MANAGEMENT COMPANY, LLC; AND RONALD
DAWLEY AS CHIEF EXECUTIVE OFFICER OF
DALTON MANAGEMENT COMPANY, LLC;
DALTON MANAGEMENT COMPANY, LLC, THE
SEAVEY ORGANIZATION, and MARKS PANETH &
SHRON, Auditors,

                 Defendants.

------------------------------------------------------------- X

Case No.:  08 CIV 5646-HB

ECF CASE

**DECLARATION IN FURTHER
SUPPORT OF MOTION
FOR DISCOVERY SANCTIONS
AND IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION**

      M. Darren Traub, an attorney admitted to practice before the courts of the State of

New York, declares under the penalties of perjury as follows:

     1.     I am associated with the law firm Herrick, Feinstein LLP, attorneys for defendants

Robert W. Seavey, Phyllis M. Seavey, Avery B. Seavey, Nealle B. Seavey, Ronald Dawley,

Dalton Management Company, LLC, and the Seavey Organization (collectively, "the Seavey

Defendants") in the above-captioned action. I submit this Declaration in further support of the Seavey Defendants' motion for discovery sanctions, pursuant to Fed. R. Civ. P. 30(g), based on Plaintiff's failure to attend and proceed with the deposition of defendant Phyllis Seavey, and in opposition to Plaintiff's cross-motion for sanctions.

2.      As the old legal adage states:  When the facts are on your side, argue the facts; when the law is on your side, argue the law; and when you have neither, pound the table as hard as you can.  Here, Plaintiff admittedly has neither the facts nor the law, so he tries to distract the Court by "pounding the table."

3.      As the Court is aware, Plaintiff, a partner in four housing projects with various members of the Seavey family, has attempted to assert a $500 million claim for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, based on the alleged mail fraud that supposedly occurred when the Seavey Defendants mailed Plaintiff monthly financial statements that Plaintiff alleges are inaccurate and false.  Indeed, Plaintiff, in both his Verified Complaint and his Affidavit in support of his Order to Show Cause, claims, among other things, that the Seavey Defendants (i) have diverted monies from the partnerships to themselves; (ii) are receiving kick backs from vendors and tenants; (iii) are using Dalton Management to improperly pay Dalton's personnel from the partnerships' accounts; and (iv) are covering up all of their financial dealings, in conspiracy with the auditing firm Marks, Paneth, & Shron, by preparing fraudulent monthly statements and delivering them to Plaintiff.

4.      As stated in my moving Declaration, on Friday, April 17, 2009, we took the deposition of the Plaintiff.   During his deposition, Plaintiff made the following stunning admissions, among many others:

- He originally wanted to file this lawsuit because of his belief that the Defendants' were improperly paying their employees from the Partnership's assets.  When shown a copy of

the management agreement, approved by the NYS Division of Housing and Community Renewal (DHCR) that explicitly provided for such payments, Plaintiff opined that the Defendants were able to conspire with and assert undue influence over DHCR.

- He has not seen a single document evidencing, relating to, or referencing any funds that are missing or unaccounted for from the Partnership's accounts.

- He not personally aware of any missing or unaccounted for funds.

- He has no documents that demonstrate that he has received any false or misleading monthly reports.

- He is not personally aware of any witness who had seen a document or witnessed a conversation showing the defendants conspired to transfer monies away from himself to the defendants.

5.    On April 21st and 22nd, we took the depositions of Orley Cameron and Adam Pryce, two of the accountants in the accounting firm, Cameron, Griffiths & Pryce, that Plaintiff retained to conduct a financial audit of the partnerships' books and records for 2005 - 2006. It is important to note that the Seavey Defendants had previously asserted that they had provided reasonable disclosure and that numerous problems had arisen because Plaintiff had made requests that were duplicative and piecemeal. Moreover, it appeared that Plaintiff's accounting firm lacked experience in dealing with large, multi-family government, subsidize housing projects. During their depositions, they admitted the following additional facts:

- None of the accountants have had any prior experience in representing an owner, manager, or investor in connection with an audit of a multi-family housing development that is regulated by DHCR, Mitchell Llama, HDC, or HPC. Indeed, only Mr. Pryce has had prior experience with HUD, through being a controller for a company that owns HUD-regulated entities.

- The accounting firm of Cameron, Griffiths & Pryce was actually formed solely for the purpose of conducting the audit of the partnerships and has no other clients or projects (this is why the Seavey Defendants could not find a website for such firm).

- After reviewing tens of thousands of pages of documents since April 2007, they have not seen a single document evidencing, relating to, or referencing any funds that are missing or unaccounted for from the Partnership's accounts.

- They are not aware of any monies fraudulently paid directly to the Seavey Defendants rather than to Plaintiff.

- The only allegedly misleading item in the monthly reports is that the amount stated as partnership distributions for the Logan partnership, is cumulative of all years, rather than identifying only the amount distributed in that given year. When questioned further, Mr. Cameron admitted that the annual financial statements correctly show the amount that was distributed for each year and that the distributions were paid evenly among the partners, with no one partner receiving more than any other partner.

- That although Plaintiff claims that he did not receive "trial balances" for the partnerships, he did receive a detailed general ledger, which contains <u>more</u> information than is shown in a trial balance, and the accountants were able to produce their own trial balance, which is merely a summary of the information contained in the general ledger.

- That all "problems" identified in their audit investigation report relate to the way that some items are classified in the partnerships' books and records, but admit that the numbers and calculations are accurate.

In light of these admissions, Defendants will be promptly moving for summary judgment in this matter.

6.     Plaintiff now files a cross-motion for sanctions claiming that we did not timely produce documents in response to a request and that we intentionally withheld these documents to somehow thwart the deposition of Phyllis Seavey, which was to be conducted on April 20, 2009. Like Plaintiff's Complaint and Affidavit, his motion ignores and distorts the relevant facts and applicable law.

7.     Most telling is that Plaintiff filed his motion to compel the production of documents at 5:23 p.m. on April 21, 2009, notwithstanding the fact that more than seven hours before he filed his motion, defendant <u>had already produced the documents that his motion seeks to compel</u>. The documents had been sent to his office via electronic mail at 10:11 a.m. that very morning. *See* Exhibit "A."

8.     Giving Plaintiff's counsel the benefit of the doubt, after we received Plaintiff's cross-motion, I sent Plaintiff's counsel an e-mail to advise him that we had already produced the

4

very documents that are the subject of his cross-motion and asked that he withdraw his motion. *See* Exhibit "B." Nonetheless, Plaintiff has failed to withdraw his knowingly baseless motion.

9.     The remaining contentions in Plaintiff's motion should also be reviewed with a skeptical eye.

10.     For example, in Paragraph 3 of Mr. Haywoode's Declaration, he insinuates that the Seavey Defendants have acted inappropriately because Ronald Dawley was unable to answer certain questions at his deposition. As Plaintiff is aware, Mr. Dawley, a named defendant herein, was deposed pursuant to a notice of deposition addressed to him, individually. not as a Fed. R. Civ. P. 30(b)(6) witness. Thus, the Seavey Defendants did not have any obligation to prepare Mr. Dawley to answer specific lines of inquiry from Plaintiff.

11.     Similarly, Plaintiff claims that he can somehow circumvent the Federal Rules of Civil Procedure, specifically Fed. R. Civ. P. 34 governing the production of documents and the time provisions contained therein by merely sending an e-mail asking for documents pursuant to Partnership Law § 41. Although the Seavey Defendants are mindful of their obligations under the Partnership Law, Plaintiff, having chosen to litigate this matter in this forum, must now abide by its rules.

12.     As set forth in my moving Declaration, Plaintiff served his third requests for documents on March 31, 2009, which sought "all reserve and investment account statements from 1999 to present, and all general ledgers and financial statements from January 1999 to December 31st, 2005." The notice itself, served pursuant to Fed. R. Civ. P. 34, correctly provides that responses were due on or before April 28, 2009. Simply put, the Seavey Defendants' responses and production are not due until after that date.

13.    However, out of professional courtesy and in response to Mr. Haywoode's requests that Cameron, Griffiths & Pryce review these documents before their depositions, we made them available for inspection early.

14.    At all times in this matter, the production of documents in response to Plaintiff's document requests have been produced and controlled by Herrick, Feinstein as counsel to the Seavey Defendants. The documents produced in response to Plaintiff's first documents requests were reviewed by Plaintiff's representatives at our offices and reproduced by a vendor, Pitney Bowes, under our supervision. Although those documents were not Bates-stamped, we reviewed and catalogued the documents that were actually being photocopied and produced to Plaintiff.

15.    Similarly, in response to Plaintiff's second document requests, Plaintiff's representatives went to Dalton's offices to review and inspect the documents. Plaintiff marked and segregated the documents that they actually wanted to have photocopied and reproduced. Pitney Bowes, under our supervision, photocopied the documents after Herrick, Feinstein, as counsel, was given the opportunity to review and catalogue the actual documents identified by Plaintiff's counsel for reproduction.

16.    Plaintiff's assertion that defense counsel should not be afforded the opportunity to review the actual documents that Plaintiff has identified for reproduction out of the thousands that were produced for review is disturbing. It would be irresponsible for counsel to not first review which documents are actually being reproduced and provided to a party in response to a discovery request.

17.    Moreover, I was in a deposition all day Friday for this case and was not even aware that Mr. Haywoode's office had requested directly to our clients that they photocopy and produce documents. Indeed, at no time did Mr. Haywoode or anyone from his office ever

request from Herrick, Feinstein that documents be photocopied and produced, which has been the protocol in this matter with respect to <u>all</u> prior document productions in this case, nor were we even notified that Mr. Haywoode's office had requested directly to our client that they photocopy and produce documents.

18.     Notably, in paragraph 17, Mr. Haywoode admits that "[o]n the morning of the deposition, an electronic mail was sent, clearly narrowing this controversy to the issue of the production of the papers." Mr. Haywoode, however, cannot refute the fact that he did not come to our office to conduct the deposition as scheduled and try to resolve this so-called "controversy" before the deposition. Instead, Mr. Haywoode made the calculated decision to cancel the deposition via electronic mail on the Sunday evening before the deposition and wait until after the deposition was to have commenced to "narrow this controversy."

19.     Plaintiff's claim that "[t]he crux of this matter are [sic] the handful of documents being suppressed by the Defendants" is specious. Indeed, a review of the documents themselves -- a May 31, 2000 bank statement, three limited partnership resolutions, a cover letter from Mr. Robert Seavey to Chase Bank on January 8, 2001, enclosing the Second Amended Partnership Agreement, and a May 13, 2002 letter from Mr. Seavey to Salomon Smith Barney asking that they send Plaintiff a copy of the then latest financial statement -- evidence that they do not involve Mrs. Seavey whatsoever, much less Plaintiff's claims of missing funds and falsified monthly statements statements. *See* Exhibit "A."

20.     Equally incredulous is Mr. Haywoode's claim in paragraph 25 that his last-minute cancellation is excusable because no deposition is taken in the State of New York unless it is confirmed at 5:00 p.m. the day before the deposition. Mr. Haywoode cannot cite to a single Federal Rule, case citation, or treatise to support such this position, which is contrary to my own

professional experience. Indeed, once a deposition is noticed and agreed upon by counsel, the deponent, counsel, and the court reporter all plan their schedules around the deposition. To allege that a deposition can be unilaterally cancelled at the last minute, a Sunday evening, without consequence simply flies in the face of the Federal Rules and accepted professional practices.

21.     Finally, Mr. Haywoode's allegation that the discovery process "has been virtually defeated" [Paragraph 2] because I "spent approximately 6 to 7 months of this time in Los Angeles" [Paragraph 26] further demonstrates the reckless mischaracterization of the facts that permeate Plaintiff's other pleadings in this action. Indeed, I was only in Los Angeles on business from January 3 through 30 and March 3 through 20.

22.     Moreover, at our preliminary conference with the Court in November, I informed the Court and all parties that I was required to be in Los Angeles during those weeks for a three-panel arbitration. For that very reason, the Court extended the discovery period in this matter until the end of April.

23.     William Kelly, Esq., defense counsel for Marks, Paneth & Shron, and I tried to schedule several depositions, including the deposition of Mrs. Seavey, during the month of February and throughout March. As previously noted, Mr. Haywoode cancelled Mrs. Seavey's deposition the day before her February 4, 2009 deposition date and could not confirm the attendance of his deponents in March.

24.     Moreover, Mr. Kelly and I proposed a deposition schedule to Mr. Haywoode for the month of April that would have resulted in the remaining depositions being conducted and finalized by month's end. Again, Mr. Haywoode delayed in returning our voice mails and e-mail inquiries. Simply put, Mr. Haywoode's own dilatory actions, including cancelling Mrs. Seavey's

deposition <u>twice</u> the day before her deposition was to occur, has resulted in unwarranted delay for which the Seavey Defendants' should not be penalized.

    25.      Accordingly, we respectfully reiterate our request that Court (a) pursuant to Fed. R. Civ. P. 30(g), order Plaintiff to reimburse the Seavey Defendants for their expenses, including attorney's fees, incurred in connection with today's depositions and (b) order that Mrs. Seavey does not have to appear for deposition on any date other than was already noticed and agreed upon by counsel.

Dated:    New York, New York
            April 27, 2009

                                      M. Darren Traub