ELECTRONICALLY FILED VIA ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JOHN L. EDMONDS, INDIVIDUALLY AND AS A :
MANAGING GENERAL PARTNER OF FIFTH AND
106TH STREET HOUSING COMPANY, INC., :
LOGAN PLAZA ASSOCIATES, LP, CHARLES H.   Case No.: 08 CIV 5646-HB
ASSOCIATES a/k/a CHARLES H. HILL :
ASSOCIATES, LP AND AS A LIMITED PARTNER
OF CHURCH HOME ASSOCIATES, LP, :

              Plaintiffs,   ECF CASE

       -against- :

ROBERT W. SEAVEY, INDIVIDUALLY AND AS A :
GENERAL PARTNER OF FIFTH AND 106TH
STREET ASSOCIATES, LP, LOGAN PLAZA :
ASSOCIATES, LP, CHARLES HILL ASSOCIATES,
CHARLES HILL ASSOCIATES, LP AND AS A :
LIMITED PARTNER OF CHURCH HOME
ASSOCIATES, LP; PHYLLIS M. SEAVEY :
INDIVIDUALLY AND AS OWNER, MANAGER
AND MEMBER OF DALTON MANAGEMENT :   **DECLARATION IN OPPOSITION**
COMPANY LLC; AVERY B. SEAVEY,                   **TO PLAINTIFF'S MOTION TO**
INDIVIDUALLY AND AS A GENERAL PARTNER :   **EXTEND THE TIME FOR**
OF LOGAN PLAZA ASSOCIATES, LP, CHURCH         **DISCOVERY**
HOME ASSOCIATES AND OWNER OF DALTON :
MANAGEMENT COMPANY, LLC; NEALLE B.
SEAVEY, INDIVIDUALLY AND AS OWNER, :
MANAGER AND MEMBER OF DALTON
MANAGEMENT COMPANY, LLC; AND RONALD :
DAWLEY AS CHIEF EXECUTIVE OFFICER OF
DALTON MANAGEMENT COMPANY, LLC; :
DALTON MANAGEMENT COMPANY, LLC, THE
SEAVEY ORGANIZATION, and MARKS PANETH & :
SHRON, Auditors,

             Defendants.   :
-------------------------------------------------------------- X

      M. Darren Traub, an attorney admitted to practice before the courts of the State of

New York, declares under the penalties of perjury as follows:

      1.    I am associated with the law firm Herrick, Feinstein LLP, attorneys for defendants

Robert W. Seavey, Phyllis M. Seavey, Avery B. Seavey, Nealle B. Seavey, Ronald Dawley,

Dalton Management Company, LLC, and the Seavey Organization (collectively, "the Seavey

Defendants") in the above-captioned action. I respectfully submit this Declaration in opposition to Plaintiff's motion to extend the discovery period for another 120 days.

2. As the Court is aware, Plaintiff, a partner in four housing projects with various members of the Seavey family, has attempted to assert a $500 million claim for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, based on the alleged mail fraud that supposedly occurred when the Seavey Defendants mailed Plaintiff monthly financial statements that Plaintiff alleges are inaccurate and false. Indeed, Plaintiff, in both his Verified Complaint and his Affidavit in support of his Order to Show Cause, claims, among other things, that the Seavey Defendants (i) have diverted monies from the partnerships to themselves; (ii) are receiving kick backs from vendors and tenants; (iii) are using Dalton Management to improperly pay Dalton's personnel from the partnerships' accounts; and (iv) are covering up all of their financial dealings, in conspiracy with the auditing firm Marks, Paneth, & Shron, by preparing fraudulent monthly statements and delivering them to Plaintiff.

4. Now, Plaintiff, after repeatedly abusing the discovery process by the conduct delineated herein, is seeking to extend discovery an additional 120 days, despite the fact that discovery has been on-going in this action <u>for more than nine months</u>, in addition to the six months of discovery that Plaintiff undertook even before this action was commenced by having unfettered access to review and audit the Partnerships' books and records. Indeed, in this action, Plaintiff has retained an accounting firm that had no experience in auditing large multi-family government subsidized housing projects and had actually been formed solely for the purpose of this dispute, has served three different document requests, all of which were timely and fully responded to, and took the depositions of two key witnesses. It was only because Plaintiff cancelled a third deposition — twice — on the evening before the deposition was scheduled, that

he did not take another deposition. One such evening was on a Sunday, before the Monday morning deposition that all other parties had planned to attend. Despite having had all of this discovery, Plaintiff has expressly admitted that he does not have any probative evidence or support for his claims. In essence, this substantial federal litigation has commenced based on Plaintiff's instinct, suspicion and surmise.

5. On Friday, April 17, 2009, we took the deposition of the Plaintiff. During his deposition, Plaintiff made the following stunning admissions, among many others:

- He originally wanted to file this lawsuit because of his belief that the Defendants' were improperly paying their employees from the Partnership's assets. When shown a copy of the management agreement that explicitly provided for such payments, Plaintiff opined that the Defendants were somehow able to conspire with and assert undue influence over the approving government agencies.

- He has not seen a single document evidencing, relating to, or referencing any funds that are missing or unaccounted for from the Partnership's accounts.

- He is not personally aware of any missing or unaccounted for funds.

- He has no documents that demonstrate that he has received any false or misleading monthly reports.

- He is not personally aware of any witness who had seen a document or witnessed a conversation showing the defendants conspired to transfer monies away from himself to the defendants.

6. On April 21st and 22nd, we took the depositions of Orley Cameron and Adam Pryce, two of the accountants in the accounting firm, Cameron, Griffiths & Pryce, that Plaintiff retained to conduct a financial audit of the partnerships' books and records for 2005 - 2006. It is important to note that the Seavey Defendants had previously asserted that they had provided reasonable disclosure and that numerous problems had arisen because Plaintiff had made requests that were duplicative and piecemeal. Moreover, it appeared that Plaintiff's accounting

firm lacked experience in dealing with large, multi-family government, subsidize housing projects. During their depositions, they admitted the following additional facts:

- <u>None</u> of the accountants have had <u>any</u> prior experience in representing an owner, manager, or investor in connection with an audit of a multi-family housing development that is regulated by DHCR, Mitchell Llama, HDC, or HPC. Indeed, only Mr. Pryce has had prior experience with HUD, through being a controller for a company that owns HUD-regulated entities.

- The accounting firm of Cameron, Griffiths & Pryce was actually formed <u>solely</u> for the purpose of conducting the audit of the partnerships and has no other clients or projects (this is why the Seavey Defendants could not find a website for such firm).

- After reviewing tens of thousands of pages of documents since April 2007, they have not seen a single document evidencing, relating to, or referencing any funds that are missing or unaccounted for from the Partnership's accounts.

- They are not aware of any monies fraudulently paid directly to the Seavey Defendants rather than to Plaintiff.

- The only allegedly misleading item in the monthly reports is that the amount stated as partnership distributions for the Logan partnership, is cumulative of all years, rather than identifying only the amount distributed in that given year. When questioned further, Mr. Cameron admitted that the annual financial statements correctly show the amount that was distributed for each year and that the distributions were paid evenly among the partners, with no one partner receiving more than any other partner.

- That although Plaintiff claims that he did not receive "trial balances" for the partnerships, he did receive a detailed general ledger, which contains <u>more</u> information than is shown in a trial balance, and the accountants were able to produce their own trial balance, which is merely a summary of the information contained in the general ledger.

- That all "problems" identified in their audit investigation report relate to the way that some items are classified in the partnerships' books and records, but admit that the numbers and calculations are accurate and that all supporting documentation matches the amounts contained in the books and ledgers.

In light of these admissions, Defendants will be promptly moving for summary judgment in this matter.

7. Now that discovery is ending and the time has come for Plaintiff to prove his claims, Plaintiff recognizes — indeed, he has admitted — that even though he and his accounting

4

firm have reviewed thousands upon thousands of pages of books, records, bank statements, and other documents, he does not have even a single document to support any of his claims, much less the underlying RICO claim that forms the basis for Federal jurisdiction for this action. Accordingly, Plaintiff has requested that the Court extend the discovery period for another 120 days in the hopes that Plaintiff will discover something to support his claim. Plaintiff's request should be denied.

8.   Plaintiff's admitted basis for bringing this action in the first place demonstrates the frivolousness of his pleadings. Plaintiff admitted that he first retained an accounting firm to conduct an audit of the Partnership's books and records because he believed that Dalton was wrongfully paying its employees using the Partnership's funds. However, the management agreements specifically state, in paragraph 13(b) that:

> [The Partnerships] will reimburse [Dalton] for compensation (including fringe benefits) payment to front line management employees, such as Project Manager, clerical and bookkeeping personnel . . . and for all local, state and federal taxes and assessments . . . incident to the employment of such personnel. Such reimbursement will be paid out of the Rental Agency Account and will be treated as Project expenses.

9.   Despite the plain language of Dalton's management agreement that provides for Dalton's payment of its employees, in March 2007, Plaintiff wrote a letter to the Seavey Defendants already threatening a RICO action and demanding that they make the Partnerships' books and records available to Plaintiff's accountants so that the accountants could conduct an audit to support his RICO claim. Indeed, Plaintiff and his accountants both admit that they were retained to conduct an audit of the 2005 - 2006 Partnership records to determine whether or not Plaintiff was due any additional distributions. Plaintiff also admitted that regardless of the outcome of the audit, he was going to file his RICO claim.

10. Now Plaintiff claims that he needs an extension of the discovery period because he has been prevented from obtaining evidence to support his claims. Nothing could be further from the truth.

11. Almost a year before this action was filed, Plaintiff and his admittedly inexperienced accountants were at Dalton's office for almost six months. During that time, they were given unfettered access to the Partnerships' books and records for inspection, review, and photocopying.

12. Thereafter, on July 11, 2008, Plaintiff filed this action and sought a temporary restraining order, which was cogently denied. However, the Court ordered that discovery was to commence immediately, which it did. Moreover, each time Plaintiff granted the Seavey Defendants an adjournment or extension to file an answer, Plaintiff's grant was premised on the condition that discovery deadlines and time frames would not be affected. Thus, discovery has been on-going unabated in this matter <u>for over nine months</u>.

13. During discovery, Plaintiff served three requests for production of documents on the Seavey Defendants, all of which were answered and documents produced timely pursuant to Federal Rule 34. Indeed, the Seavey Defendants have not withheld any of the requested documents from Plaintiff.

14. Additionally, Plaintiff took the deposition of Marks, Paneth & Shron, through William Jennings and Ron Dawley, the Chief Operating Officer of Dalton Management. Plaintiff had also twice scheduled the deposition of Phyllis Seavey, but cancelled her deposition each time on the evening before the deposition was to occur.

15. Plaintiff alleges that the Seavey Defendants' responses to his third document request and my appearance at an arbitration in Los Angeles have somehow delayed discovery. Both allegations are patently false.

16. First, Plaintiff served his third requests for documents on March 31, 2009, which sought "all reserve and investment account statements from 1999 to present, and all general ledgers and financial statements from January 1999 to December 31st, 2005." The notice itself, served pursuant to Fed. R. Civ. P. 34, correctly provides that responses were due on or before <u>April 28, 2009</u>. Simply put, the Seavey Defendants' responses and production are not due until after that date.

17. However, out of professional courtesy and in response to Mr. Haywoode's requests that Cameron, Griffiths & Pryce review these documents before their depositions, we made them available for inspection <u>early</u>.

18. At all times in this matter, the production of documents in response to Plaintiff's document requests have been produced and controlled by Herrick, Feinstein as counsel to the Seavey Defendants. The documents produced in response to Plaintiff's first documents requests were reviewed by Plaintiff's representatives at our offices and reproduced by a vendor, Pitney Bowes, under our supervision. Although those documents were not Bates-stamped, we reviewed and catalogued the documents that were actually being photocopied and produced to Plaintiff.

19. Similarly, in response to Plaintiff's second document requests, Plaintiff's representatives went to Dalton's offices to review and inspect the documents. Plaintiff marked and segregated the documents that they actually wanted to have photocopied and reproduced. Pitney Bowes, under our supervision, photocopied the documents after Herrick, Feinstein, as

counsel, was given the opportunity to review and catalogue the actual documents identified by Plaintiff's counsel for reproduction.

20. Plaintiff's assertion that defense counsel should not be afforded the opportunity to review the actual documents that Plaintiff has identified for reproduction out of the thousands that were produced for review is disturbing. It would be irresponsible for counsel to not first review which documents are actually being reproduced and provided to a party in response to a discovery request.

21. Moreover, I was in a deposition all day Friday, April 17, 2009, for this case and was not even aware that Mr. Haywoode's office had requested directly to our clients that they photocopy and produce documents. Indeed, at no time did Mr. Haywoode or anyone from his office ever request from Herrick, Feinstein that documents be photocopied and produced, which has been the protocol in this matter with respect to all prior document productions in this case, nor were we even notified that Mr. Haywoode's office had requested directly to our client that they photocopy and produce documents.

22. Accordingly, on Monday, April 20, 2009 — eight days before the documents were due — I reviewed the documents and Bates labeled them. The next day, I produced the documents to Mr. Haywoode's office via electronic delivery at 10:11 a.m.

23. Incredibly, Mr. Haywoode declares to the Court that they were produced so that he "could not use them during the scheduled deposition." [Haywoode Dec. ¶ 15.] What Mr. Haywoode fails to advise the Court is that he unilaterally failed to show for the deposition of Mrs. Seavey, on April 20, 2009, which was to be held at our offices, and conduct Mrs. Seavey's deposition or even attempt to resolve the "issue" resolving the production of 19 pages of documents, wholly unrelated to Mrs. Seavey or her deposition. Instead, Mr. Haywoode made the

8

calculated decision to cancel the deposition via electronic mail on the Sunday evening before the deposition and wait until after the deposition was to have commenced to request the specific documents.

24.     Finally, Mr. Haywoode's allegation that the discovery process has been "severely hampered by the unavailability and absence of M. Darren Traub, the lead attorney for Herrick, Feinstein representing the Seavey Defendants for most of the last five months" further demonstrates the reckless mischaracterization of the facts that permeate Plaintiff's other pleadings in this action. [Haywoode Dec. ¶ 14.] Indeed, I was only in Los Angeles on business from January 3 through 30 and March 3 through 20.

25.      Moreover, at our preliminary conference with the Court in November, I informed the Court and all parties that I was required to be in Los Angeles during those weeks for a three-panel arbitration. For that very reason, the Court extended the discovery period in this matter until the end of April.

26.     William Kelly, Esq., defense counsel for Marks, Paneth & Shron, and I tried to schedule several depositions, including the deposition of Mrs. Seavey, during the month of February and throughout March. As previously noted, Mr. Haywoode cancelled Mrs. Seavey's deposition the day before her February 4, 2009 deposition date and could not confirm the attendance of his deponents in March.

27.     Moreover, Mr. Kelly and I proposed a deposition schedule to Mr. Haywoode for the month of April that would have resulted in the remaining depositions being conducted and finalized by month's end. Again, Mr. Haywoode delayed in returning our voice mails and e-mail inquiries. Simply put, Mr. Haywoode's own dilatory actions, including cancelling Mrs. Seavey's

9

deposition <u>twice</u> the day before her deposition was to occur, has resulted in unwarranted delay for which the Seavey Defendants' should not be penalized.

28.     The real reason behind Plaintiff's request for a 120-day extension came to light during my April 28, 2009 telephone call with Mr. Haywoode. During that call, Mr. Haywoode informed me that Plaintiff wants to conduct additional audits of the Partnerships' books and records for the years 2000 through 2005. Additionally, despite not having even a scintilla of evidence of wrongdoing by the Seavey Defendants, much less of missing or unaccounted for money, Plaintiff now wants to audit other partnerships for which Dalton provides management services even though Plaintiff is not a member of partner in those entities.

29.     Simply put, Plaintiff is abusing this federal civil litigation and seeking to use the discovery process to conduct a fishing expedition and harass the defendants by holding a $500,000,000.00 baseless and frivolous RICO lawsuit over their heads. Enough is enough. The time has come for Plaintiff to prove its claims.

30.     Accordingly, we respectfully reiterate our request that Court deny Plaintiff's request to extend the discovery period.

Dated:   New York, New York
         April 30, 2009

                                                /s/ M. Darren Traub
                                                M. Darren Traub