M. Douglas Haywoode, Esq.
Attorney for Defendant John L. Edmonds
71 Maple Street
Brooklyn, New York 11225
(718) 940-8800
(718) 940-9574 (fax)

```
┌─────────────────────────┐
│ USDS SDNY               │
│ DOCUMENT                │
│ ELECTRONICALLY FILED    │
│ DOC #: _____           │
│ DATE FILED: 5/14/09     │
└─────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. EDMONDS, individually and as a
managing general partner of FIFTH AND
106TH STREET HOUSING COMPANY,
INC., LOGAN PLAZA ASSOCIATES, LP,
CHARLES H. ASSOCIATES a/k/a
CHARLES H. HILL ASSOCIATES, LP
AND AS A LIMITED PARTNER OF
CHURCH HOME ASSOCIATES, LP,

Index No.: 08-CV-5646

                                        Plaintiff,

                    -against-

ROBERT W SEAVEY, individually and as a
General Partner of FIFTH AND 106TH
STREET ASSOCIATES, LP, LOGAN
PLAZA ASSOCIATES, LP, CHARLES
HILL ASSOCIATES, CHARLES HILL
ASSOCIATES, LP and as a Limited Partner
of CHURCH HOME ASSOCIATES, LP;
PHYLLIS M. SEAVEY individually and as
owner, manager and member of DALTON
MANAGEMENT COMPANY LLC;
AVERY B. SEAVEY, individually and as a
General Partner of LOGAN PLAZA
ASSOCIATES, LP, CHURCH HOME
ASSOCIATES and owner of DALTON
MANAGEMENT COMIPANY, LLC;
NEALE B. SEAVEY, individully and as
owner, manager and member of DALTON
MANAGEMENT COMPANY, LLC; and
RONALD DAWLEY as Chief Executive
Officer of DALTON MANAGEMENT
COMPANY, LLC; DALTON
MANAGEMENT COMPANY, LLC, THE
SEAVEY ORGANIZATION, and MARK
PANETH & SHRON, Auditors,

**DECLARATION OF
M. DOUGLAS HAYWOODE, ESQ.,
IN SUPPORT OF PLAINTIFF'S
MOTION TO EXTEND THE TIME
FOR DISCOVERY**

                                      Defendants.

[handwritten annotations and signature across lower portion of page]

SO ORDERED

Harold Baer Jr., U.S.D.J.

Date: 5/14/09

I

M. Douglas Haywoode, an attorney admitted to practice before this Court,

declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.    I, M. Douglas Haywoode am the attorney for Plaintiff John L. Edmonds.

2.    I submit this declaration in support of John L. Edmonds' instant motion to
extend the time provided in the Court's scheduling Order for the completion of discovery
being conducted pursuant to FRCP 24, et al., based on Plaintiff's inability to obtain any
constructive and meaningful production of evidence from the inquiries conducted of
defendant Dalton Management, which purports to be the accountant for the development
partnerships in these premises.

3.    Plaintiff had retained the accountants firm of Cameron Griffith & Pryce,
LLP., as long ago as March of 2007 for the purpose of determining why distributions to
the members of the partnership had severely diminished over a number of years.  Several
companion suits have been brought in the State Courts by the limited partners first
against the Seavey Defendants, and most recently adding this Plaintiff as a party
defendant, alleging monies are being siphoned off from the project by the Seavey
defendants, and that both Managing General Partners have blocked a sale of the largest of
the developments, 5th & 106th Street Houses, Inc.

4.    We have been continuing advised by plaintiff's accountants, Cameron,
Griffith & Pryce since the inception of their audit the records of the Seavey owned and
controlled Dalton Management company do not contain the minimum detail and
information which are requisite to the performance of an audit by any accountant
utilizing the methods and acceptances of their profession.

2

5.    A more fulsome and detailed account of the difficulties encountered by these accountants is contained in the minutes and transcripts of the depositions conducted of two of them on April 21st and 22nd, 2009, conducted by M. Darren Traub, acting in behalf of the Seavey defendants, and William J. Kelly, the attorney for Marks Paneth & Shron.

6.    The accountant's testimony recites in summary an amount in excess of $15 million dollars yearly appears to have been received by the Partnership in fiscal year 2006, approximately 6.8 million of this sum being received by the flagship development, Fifth & 106th Street Houses, Inc., , which amounts are reflected in the general ledgers of the diverse partnerships but the financial statements generated at the end of the tax year by the defendant Marks Paneth & Shron, which are retained as the auditor of all the partnerships, show voluminous and excessive "journal entry adjustments" apparently directed by the auditing agency, without the usual proposal and acceptance pattern expected to exist in such circumstances. These arbitrary adjustments, and re-classifications of expenses appear to mask and conceal payments made to Marks Paneth & Shron, far in excess of the $34,000 allowable to this defendant under the HUD and DHCR regulated auditing contracts they maintain with the housing developments, and greatly enhance and increase the level of expenditures of the developments, there being no trail of support or evidence for these changes either in the Dalton general ledgers, or in any document produced to date by Marks Paneth & Shron.

7.    In various samplings by the retained accountants the differential between expenses claimed in the Marks Paneth financial statements, and the supporting documentation produced in accordance with Government Approved Accounting

3

customarily submitted by an Auditing Agency, nor the corresponding acceptances of those proposals by Dalton Management, which would explain the excessive and multiple journal entry adjustments contained in these produced records. This phenomena clearly suggests to the most casual observer Dalton Management is not the accountant keeping and preparing the books and records of these developments. It further suggests this function is being performed in fact by the Auditors, Marks Paneth & Shron, at the same time they purport to be the "independent" auditors required by State and Federal Regulatory Agencies to review the work of the "management company accountants". In short, Marks Paneth & Shron are obviously auditing their own accounting in violation of all accounting standards. Defendant Dawley testified in his deposition of February 24th, 2009, he makes no effort to conform his general ledgers with the year end financial statements issued by Marks Paneth, which means that no audit or inspection of the Dalton books could ever provide information on the financial performances of the partnerships. All efforts to obtain such understanding are doomed from their inception.

11.      Marks Paneth & Shron produced no records in justification of the two to three million dollar discrepancies and the overall 7milolion dollar discrepancies which is not surprising as they claim to be auditors who merely sample work product produced by the management accountants and verify its bona fides. Notwithstanding, virtually every request of the Cameron firm, and this office for proof and documentation of the discovery process have been referred by defendant Dawley, the Chief Executive Officer of Dalton to the officials at Marks Paneth & Shron.

12.      It is uncontrovertible from the developed investigation Marks Paneth & Shron function as the true accountants of these affairs; that no understanding and

5

comprehension of the affairs of the partnerships can be attained without the production of whatever documents, evidence or records as are maintained by Marks Paneth, as would justify the claimed level of expenses and expenditures.

13.    As Marks Paneth & Shron are the true accountants of these records and in this circumstance clearly any audit purported to have be performed by them in 2006, or in any other year, is flawed in nature and no audit at all as the auditors, contrary to state and federal regulations in the governing of these public housing institutions would be engaged in the feigned audit of their own work product.

14.    The circumstances presented are most extraordinary. Plaintiffs have been further severely hampered by the unavailability and absence of M> Darren Traub, the lead attorney for Herrick Feinstein representing the Seavey Defendants for most of the last five months. Discovery requests were not responded to in less than the maximum time periods allowable under the FRCP, despite Affirmant's efforts to obtain release of some items pursuant to Section 41 of the Partnership law to expedite the process.

15.    Affirmant attaches, for the Court's information, copies of the papers in a most recent dispute presented to Magistrate James C. Francis, which is emblematic of the controversies and subtle, and not so subtle obstructions that have confronted and confounded the Plaintiffs efforts over the last many months. Here, documents observed by representatives of my office submitted to defendant Dawley for copying are redfused and suppressed "until they are reviewed by my attorneys" for over five days, then e-mailed to my office on the fifth day at a time when I was engaged in depositions in the office of the defendants attorneys, Herrick & Feinstein, and could have received them over the table, so to speak, to insure I could not use them during the scheduled

6

depositions. Herrick and Feinstein have maintained before the Magistrate and in diverse other litigation Plaintiff had pledged and surrendered to Seavey controlled interests his 7.5% Managing General Partnership interest in the developments, but deliberately withheld for five days, in the midst of their deposition with John L. Edmonds, admissions and declarations against interest made and sworn to by defendant Robert Seavey, observed by my operatives, which directly puts the lie to these contentions.

16.     Marks Paneth & Shron act in similar capacity with Dalton Management in 16 Housing Developments in the New York Metropolitan area. The evidence educed suggests the partnerships in this action, particularly Fifth & 106th Street Houses , Inc., may be bearing expense far beyond its individual obligations in this circumstance. Affirmant believes no commensurate delay in the trial schedule need be occasioned by the requested extension which would allow for a "maximum accounting effort" to comprehend the diverse manner in which the independence of the defendant's Marks Paneth & Shron is totally compromised by these multiple engagements with the Seavey defendants, and explore the re-classification of payments between the defendants to subvert and defeat HUD and DHCR regulations, and obscure the true disposition of funds.

17.     When a direct discovery requests was put to the Seavey defendants in July of 2008 as to the involvement of Dalton and Marks Paneth in the 16 developments referred to above, their response was not an answer to the inquiry, but a statement that they have produced sufficient documents for Plaintiff to discern the truth of this statement.

Nothing has been more exemplary of the resistance to disclosure provided.

7

WHEREFORE, Defendant prays a 120 day extension of the discovery process to

enable a full review of these records through the year 2000, with such other and further

relief as the Court deems proper.

Dated: Brooklyn, New York
April 27th$^d$, 2009

S/ m. Douglas Haywoode
M. DOUGLAS HAYWOODE (MH 1795)

8

Endorsement:

Generally because the Federal Rules mandate that I try cases on the merits I would provide some additional time for discovery but here where you have had 9 months and according to your adversary 6 additional month coupled with the allegations in the answering papers here and the decision by Magistrate Judge Francis your application for additional discovery is denied.

.