*M. Douglas Haywoode*
*71 Maple Street*
*Brooklyn, NY, 11255*
*Attorney for Plaintiff John L. Edmonds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN L. EDMONDS, INDIVIDUALLY AND AS A MANAGING GENERAL PARTNER OF FIFTH AND 106TH STREET HOUSING COMPANY, INC., LOGAN PLAZA ASSOCIATES, LP, CHARLES H. ASSOCIATES a/k/a CHARLES H. HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP, | Index No.:   08 CIV 5646 |
| Plaintiff, | |
| -against- | **DECLARATION OF M. DOUGLAS HAYWOODE** |
| ROBERT W SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF FIFTH AND l06TH STREET ASSOCIATES, LP, LOGAN PLAZA ASSOCIATES, LP, CHARLES HILL ASSOCIATES, CHARLES HILL ASSOCIATES, LP AND AS A LIMITED PARTNER OF CHURCH HOME ASSOCIATES, LP; PHYLLIS M. SEAVEY INDIVIDUALLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGMETNT COMPANY LLC; AVERY B. SEAVEY, INDIVIDUALLY AND AS A GENERAL PARTNER OF LOGAN PLAZA ASSOCIATES, LP, CHURCH HOME ASSOCIATES AND OWNER OF DALTON MANAGEMENT COMIPANY, LLC; NEALE B. SEAVEY, INDIVIDULLY AND AS OWNER, MANAGER AND MEMBER OF DALTON MANAGEMENT COMPANY, LLC; AND RONALD DAWLEY AS CHIEF EXECUTIVE OFFICER OF DALTON MANAGEMENT COMPANY, LLC; DALTON MANAGEMENT COMPANY, LLC, THE SEAVEY ORGANIZATION, and MARK PANETH & SHRON, Auditors, | |
| Defendants. | |

M. Douglas Haywoode, an attorney admitted to practice before the courts of the State of New York, declares under the penalties of perjury as follows:

1

1. I make this affirmation in response to the affirmation of of M. Darren Traub in regard to his affirmation for fees.

2. Opposing counsel's characterization of the substance of the conversations between him and me on the subject of the instant fee application must be viewed in the context of the underlying facts upon which the award of fees was based. In declining to proceed with the deposition, your declarant had to consider many factors, the most important of which was that the documents that attorney Traub withheld until considerably after the scheduled deposition time were absolutely essential to my proceeding with the deposition. It is possible that I was unclear on this point at the time I drafted my first declaration (the declaration of April 21, 2009) on this subject, because, at that time, opposing counsel was <u>still</u> withholding the documents. The documents had been verbally described to me by my associates in aching detail, but without the *bona fide* documents, themselves, I could not refer to their content. The documents were produced to me by E-mail on April 21st, 2009. Curiously, as has already been stated, I was sitting across a table from opposing counsel in his office when these documents were transmitted to me by way of e-mail, a method that ensured I would not become aware of them until I returned to my office and actually retrieved my e-mail. At this point, with the documents in hand, I would like to briefly revisit the subject of their essential nature.

3. The documents were first identified on Thursday, April 16, 2009, by certain of my associates who were inspecting documents in the offices of defendant Dalton Management. My associates informed defendant Ronald Dawley that they wished to obtain copies of the documents. Defendant Dawley then consulted with defendant Neale Seavey, who is an attorney, about whether the documents should be copied on the spot and provided or some other method would need to be employed. The number of pages requested was fewer than ten, and there was no reason that the documents could not be provided then and there. Nevertheless, the response formulated by defendants Dawley and Neale Seavey, was that the documents would need to be sent out to a "copy service" and would be provided the next day. On the next day, when the documents were requested, my representatives were told that the documents had not, in fact, been sent out, but the defendants had relied on the common sense expedient of making the small number of copies themselves; however, Defendant Dawley stated that although he had the copies in his possession, he would not surrender them until they had been vetted and approved by his attorneys.

4. On the very day that my representatives were rebuffed in this way, the very attorney to whom the documents were referred for vetting and approval was deposing Plaintiff. An extremely substantial portion of that attorney's questioning followed a line of attempting to imply that the Plaintiff, who was testifying, had failed to redeem a pledge of a portion of his interest in the partnerships which this

3

litigation involves, this assertion is unequivocally contradicted by the very documents that defendants were withholding at the time that they were making the assertion.

5. In all fairness, I cannot say that opposing counsel was aware of the documents and their content at the deposition of plaintiff, when he was making his assertion that the interest had not been redeemed, but they had been set *en route* to him from a location that was no more than a few steps from his office at approximately 3:00 PM on the previous day.

6. Certainly opposing counsel must have been aware of the documents and their contents when he asserted in his e-mail message of April 19, 7:58 PM that "none of these documents relate to or impact your ability to take the deposition of Phyllis Seavey." It is difficult to imagine how, after following his line of questioning which lasted for almost the entire day on Friday April 17, opposing counsel could not see the relevance of the documents, which absolutely invalidated that line of questioning. (Incidentally, this theory that the pledged interest was never redeemed is also a mainstay of the Seavey defendants affirmative defense, but the documents in question leave that theory with no possible foundation.) However, opposing counsel still maintains these affirmative defenses in this and several other pending judicial matters without regard to the fact that they are directly and incontrovertibly negatived by these documents.

7. The initial deposition of Phyliss Seavey was scheduled for November 10, 2008. That date was adjourned at the request of her counsel, who stated that he needed to be out of town through January, 2009, and contrary to the characterization that I had adjourned the previous deposition of Defendant Phyliss Seavey, the adjournment of that deposition date, February 4, 2009, was mutually proposed and mutually agreed to by counsel for all parties after the close of business on the eve of the deposition date after completion of the extensive Jennings deposition, which exhausted everyone. All attorneys agreed to adjourn the deposition of Phyllis Seavey at that time, *sine die*.

8. The timing of that cancellation was roughly the same as the timing of this one, except for the fact that, as is noted in the decision granting sanctions, this cancellation occurred "when it was impossible to seek Court intervention." I feel that in this vein, it might be worthwhile to imagine what might have occurred had such intervention been resorted to by the parties on April 19th, the day before the scheduled deposition day. Attorney Traub had a small number of documents in his possession which he could have instantaneously (by e-mail) provided or at least agreed to provide for the purpose of proceeding with the deposition, were he acting in good faith. How could he have possibly supported withholding the documents before the magistrate?

9. Plaintiffs could seek no advantage by delaying the deposition as the time for discovery would expire in 11 days. Atty. Traub had already indicated his

unavailability on April 28 and April 29 and the depositions of the auditors were scheduled for April 21 and April 22. This left only five days for the scheduling of the four major Seavey defendants remaining. He given the withering attack of April 17 against plaintiff John L. Edmonds on the very issue that the documents addressed, and in the light of these factors, Affirmant immediately contacted both attorneys and advised I could not proceed in the absence of the requested documents as this was the last opportunity to examine a major actor in the defendants' case, Robert Seavey having recently suffered some disability.

    10.    Furthermore, strong authorities support my position.  In the case of <u>Pine Lakes International Country Club v. Polo Ralph Lauren Corporation</u>, 127 F.R.D. 471; 1989 U.S. Dist. LEXIS 11817, Rule 30 (g) sanctions were upheld, but only because in leaving a telephone message with a receptionist at opposing counsel's office the day before the cancellation date, counsel merely requested a return telephone call.  Counsel did not even attempt to convey that he intended to cancel the deposition scheduled for the next day in the message left with the receptionist.  The District Court reasoned that noticing counsel "did not leave sufficient information from which McMorrow (his opposing counsel) could conclude that the deposition had been cancelled" (<u>Pine Lakes</u> at 472) and stated that noticing counsel "retained the burden of cancelling said deposition, and conveying this information to defendant in sufficient time to prevent defendant from incurring the expense of traveling to the site of the scheduled deposition."

6

*Ibid*.  See also <u>Delozier v. First National Bank of Gatlinburg</u>, 109 F.R.D. 161 (E.D.Tenn. 1986) where noticing counsel simply neglected to inform opposing counsel that the deposition had been cancelled <u>until</u> opposing counsel appeared at his office for the deposition after a drive of several hours.

      11.    Contrast this case.  There was an extensive, electronically documented dialogue between counsel for all parties.  My message that I could not proceed with the deposition while attorney Traub continued to withhold the requested documents could not have been clearer.  I did my best to resolve the conflict without resort to the Court, but all of my entreaties to simply turn over the requested documents were summarily refused.  It would have been wasteful financially inadvisable procedure to bring a reporter on the 19th when I knew that I would need to go to the magistrate for a ruling.  See <u>Westmoreland v. CBS, Inc</u> 770 F.2d 1168 at 1177 where the court comments "both parties were aware in advance of the others' intransigence in the matter, yet went ahead to confrontation without first applying to the court…"

      12.    Rather than produce the document (produced following day by e-mail, while I was in their office) or accept my invitation to consult the Magistrate, Attorney Traub vexatiously chose to immediately seek sanctions with the clear understanding that the delay occasioned by his motion would run-out the clock on the time alloted for the discovery schedule.  All counsel had previously contemplated consent to a two week extension to be put before Judge Bear to allow

completion of the depositions of the defendants, but defendants attorneys reversed that position, once this motion was brought.

13. Withholding of the documents in question, which are nothing less than prior inconsistent statement made by Defendant Robert Seavey in 2002, to officers of the Chase bank, which are in diametric opposition to the postures and arguments presented by the defendant in this litigation previously argued to the magistrate in August of 2008, which positions they are presently additionally maintaining in at least two other law suits brought by the limited partners against the Seaveys and this plaintiff and another in the state Supreme Court.

14. Denial of this document on Friday Morning, the 17th created an enormous advantage in the deposition of John L. Edmonds, held that afternoon. This advantage could only be devastatingly compounded by its continual denial through the lawyer-arranged deposition of Phyllis Seavey on Monday April 19th. That deposition would have been rendered meaningless without plaintiff's ability to enquire into the motivation behind the documents being withheld.

15. Furthermore, I had even noticed the deposition in the office of opposing counsel for his convenience and that of Phyllis Seavey, the testifying witness who maintains an office almost directly across the street.

16. There is no question, all parties knew of plaintiff's intention not to proceed without the document at 5PM on Sunday te 18th. The night before. Cite

case the court indicated that notice the day before is sufficient when it is properly communicated.

17.  In <u>Weatherspoon v. Nissan North America, Inc.</u>, No. 3:07 CV 24, 2008 WL 5104234,(S.D. Miss. Dec. 1, 2008) cited in the instant decision, the Court clearly looked to all of the circumstances surrounding the cancellation in deciding that "the necessity of preparing a foreign witness to testify as to a wide variety of issues rendered the one day notice of cancellation untimely and insufficient." <u>Weatherspoon</u> at 5 in the original.  Here the witness, who is also an attorney of considerable development and experience, was only required to travel across the street, and she would only have been questioned on matters which have been her day-to-day business for decades.

18.  Attorney Traub's billing records admit that only 1.3 hours was spent preparing the witness to testify (although, as will be discussed below, this amout of time seems excessive and in any event, could not be said to have been wasted).  Contrast this 1.3 (possibly excessive) hours with the extensive preparation cited by the Court in <u>Weatherspoon</u> in assessing a sanction.

19.  It is in this context that I opined to Attorney Traub that I should not bear the cost of the cancelled deposition.  It was he who withheld the critical document, and his cause that ultimately overwhelmingly benefited from that withholding.  It is in this framework that I would like to respectfully request that the Magistrate, whose reputation for fair and thoughtful adjudication is well

9

known, *sua sponte* revisit the issues of the original application for sanctions and reconsider them.

20. All of the cited decisions, <u>Pine Lakes</u>, <u>Delozier</u>, <u>Westmoreland</u> and <u>Weatherspoon</u>, cited *Supra*, seem to rest on the quality of the notice of cancellation and whether it was properly communicated. The Magistrate's opinion, itself, suggests no sanctions could apply if notice is well and fully provided to the participants. Since the deposition was only arranged on Friday 17th, and knowledge of the withheld document only received on Sunday, it would seem that given the circumstances, notice was clearly provided and the defendants presented with an obvious resolution of the situation had they been acting in good faith.

21. Rather than pursue this simple resolution, this vexatious motion was brought for the purpose of derailing the balance of the discovery schedule and the new assertion added that none of the remaining defendants would be available to be deposed by virtue of their direction.

22. The Electronic communication of Sunday the 18th discloses Attorney Traub's knowledge and awareness of the documents. He stated they had no relevance to the deposition of the defendants. Contrary to his claim the ongoing discovery was not due until April 28th, Attorney Traub admits in his questioning of Plaintiff John L. Edmonds, his recognition that the documents were being developed pursuant to plaintiffs requests under section 41 of the General Partnership Law. See page 170 of that transcript. The Documents were presented

to Defendants Dawley and Neale Seavey on February 16, and promised to the auditors for the following morning. The auditors were told Dawley had copied the documents Plaintiff was a managing general partner, so no privilege could apply. Nonetheless, the auditors were told the documents would not be released until further notice. Questions present as to whether Defendants Neale Seavey and Dawley communicated with Attorney Traub on Thursday, Friday or Saturday. Traub questioned Edmonds with no reference to the documents on Friday, the 17th. It must be presumed he learned of it some time after Friday evening, the 17th. We can certainly say that he stated in E-mail on the evening of the 19th that he had read the documents and they were not relevant, leaving a question as to whether the documents were suppressed by Defendants Ronald Dawley and Attorney Neale Seavey from Thursday, April 16th, or by counsel, to obtain the clear advantage that Phyllis Seaveyand the other Seavey Defendants, should not need to respond to this issue.

23.    Counsel is aware of the excellent reputation for fundamental fairness of the Magistrate over the several decades your Honor has functioned and means no disrespect to the Court by the statements reported by Traub in his declaration that it is affirmant's feeling we should pay nothing in the circumstance. The facts of what has transpired here, however, given the misreading or misapprehension reflected in the present ruling which this office seeks review, and respectfully

invites the Magistrate, *sua sponte*, to revisit arguably present a compelling picture as to why this posture is assumed.

24. As to the details of the hourly bill presented by counsel for defendants, I would initially like to note that the hourly rates cited seem <u>high</u>. Attorney Traub was only admitted in the year 2000 and seems to specialize in intellectual property disputes. Attorney Mollen is obviously well seasoned, but I find it difficult to accept that the "billing rates" of $475 per hour for Attorney Traub and $795[1] per hour for Attorney Mollen are the actual rates being paid by the Seavey Defendants. We would ask that the movants provide some information with regard to how the Seavey's are actually billed and what they actually pay.

25. As has already been stated, Phyllis Seavey, the individual who was to be deposed, is an attorney, and the information upon which she was to be deposed has been her day-to-day business for over thirty years. Attorney Phyliss Seavey is more than capable of understanding the RICO allegations that are at issue here, and either she will implicate herself or she will not.

26. Obviously, the one hour of time spent at the deposition was entirely wasted with no justification. If nothing else, I made clear to Attorney Traub that I would not appear for the deposition, and he admits that he knew that the transcriptionist who was to create the record of the deposition would also not be attending, so no record of the proceeding could be made. At some point before the

---

[1] By contrast, an associate Justice of the United States Supreme Court earns only slightly more than $100.00 per hour.

12

scheduled time, a duty to mitigate damages should have attached. There was no reason for Attorney Traub to attend a deposition that he knew, and it was clear to all involved, would not go forward.

27. The Situation presented merely a discovery dispute, the schedule of the deposition was set by consent of the attorneys on after 5PM, friday, April 17. It was not set by Court order.

28. It is clear, however, that this circumstance presents merely a discovery dispute over the presentation of a document discovered on April 16, by plaintiff, but inexplicably not produced by defendants. A good-faith resolution of this matter would have been an appeal to the Magistrate by both attorneys to discuss the impasse on the morning of April 20, whereupon the deposition might have proceeded. Rather than do this, the attorneys for the Seavey Defendants brought an immediate motion based on Affirmant's cancellation, which cancellation with appropriate notice does not appear to violate Rule 30(g), and caused a series of unnecessary and vexatious responses using these as an excuse to run out the clock and to prevent any further deposition of his major witnesses.

WHEREFORE, Declarant prays that the Magistrate, *sua sponte* reconsider his decision awarding sanctions, or, in the alternative perform some examination of the actual rates or other methods by which defendants are actually billed and which

items of alleged damages might have been mitigated, conserved or reduced, with such other and further relief as the Court deems proper.

Dated:     Brooklyn, New York
           May28th, 2009

                                    Yours, etc.,
                                    M. DOUGLAS HAYWOODE, ESQ.

                                    s/M. Douglas Haywoode
                                    *Attorney for Plaintiff*
                                    71 Maple Street
                                    Brooklyn, NY 11225
                                    (718) 940-8800