**ELECTRONICALLY FILED VIA ECF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOHN L. EDMONDS, INDIVIDUALLY AND AS A :
MANAGING GENERAL PARTNER OF FIFTH AND
106TH STREET HOUSING COMPANY, INC., :
LOGAN PLAZA ASSOCIATES, LP, CHARLES H. :
ASSOCIATES a/k/a CHARLES H. HILL :
ASSOCIATES, LP AND AS A LIMITED PARTNER :
OF CHURCH HOME ASSOCIATES, LP,

                            Plaintiffs,

-against-

ROBERT W. SEAVEY, INDIVIDUALLY AND AS A :
GENERAL PARTNER OF FIFTH AND 106TH :
STREET ASSOCIATES, LP, LOGAN PLAZA
ASSOCIATES, LP, CHARLES HILL ASSOCIATES, :
CHARLES HILL ASSOCIATES, LP AND AS A
LIMITED PARTNER OF CHURCH HOME :
ASSOCIATES, LP; PHYLLIS M. SEAVEY
INDIVIDUALLY AND AS OWNER, MANAGER :
AND MEMBER OF DALTON MANAGEMENT
COMPANY LLC; AVERY B. SEAVEY, :
INDIVIDUALLY AND AS A GENERAL PARTNER
OF LOGAN PLAZA ASSOCIATES, LP, CHURCH :
HOME ASSOCIATES AND OWNER OF DALTON :
MANAGEMENT COMPANY, LLC; NEALLE B. :
SEAVEY, INDIVIDUALLY AND AS OWNER, :
MANAGER AND MEMBER OF DALTON
MANAGEMENT COMPANY, LLC; AND RONALD :
DAWLEY AS CHIEF EXECUTIVE OFFICER OF
DALTON MANAGEMENT COMPANY, LLC; :
DALTON MANAGEMENT COMPANY, LLC, THE
SEAVEY ORGANIZATION, and MARKS PANETH & :
SHRON, Auditors,

                          Defendants.     :
------------------------------------------------------------------ X

Case No.:  08 CIV 5646-HB


ECF CASE


**DECLARATION IN OPPOSITION
TO PLAINTIFF'S OBJECTIONS
TO MAY 5, 2009 ORDER**

        M. Darren Traub, an attorney admitted to practice before the courts of the State of

New York, declares under the penalties of perjury as follows:

        1.      I am associated with the law firm Herrick, Feinstein LLP, attorneys for defendants

Robert W. Seavey, Phyllis M. Seavey, Avery B. Seavey, Nealle B. Seavey, Ronald Dawley,

Dalton Management Company, LLC, and the Seavey Organization (collectively, "the Seavey

Defendants") in the above-captioned action. I respectfully submit this Declaration in opposition to Plaintiff's objections to the May 5, 2009 Order (the "Order") of the Honorable James C. Francis IV, which granted the Seavey Defendants' their costs, including attorneys' fees, due to Plaintiff's counsel's unjustified, last minute cancellation of the deposition of Phyllis Seavey.

2.    Plaintiff's counsel ignores the old adage that when you make a mistake, acknowledge it and move on. Don't make it worse by attempting to defend the indefensible. Instead, Mr. Haywoode continues to assert false, misleading, and/or exaggerated statements or, as Magistrate Judge Francis found, ones "made up out of whole cloth." Even in the face of documentary evidence to the contrary, Mr. Haywoode continues to argue that (1) Plaintiff's Third Requests for Production of Documents (the "Document Requests") were due before Mrs. Seavey's deposition; (2) the Seavey Defendants' counsel intentionally withheld the document production for an "inordinate" amount of time; and (3) Mrs. Seavey's deposition could not proceed without the introduction of the document production. As Magistrate Judge Francis already found, each of Mr. Haywoode's contentions are patently untrue.

**Background Facts[1]**

3.    This case arises out of the development and operation of four government-assisted commercial and residential building projects in upper Manhattan. The parties were jointly involved in the creation of these projects, but Mr. Edmonds alleges that the defendants have engaged in a scheme to defraud him of his financial stake. Accordingly, he commenced this litigation, charging the defendants with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, fraud, breach of contract, breach of fiduciary duty, and various other forms of misconduct and seeking $500,000,000 in damages.

---

[1] The background facts are set forth herein as determined and described in the Order.

4.      The deposition of Phyllis Seavey, one of the defendants, was originally scheduled for February 4, 2009.   However, one day prior to the deposition, plaintiff's counsel, Mr. Haywoode advised me that he wished to postpone the examination pending resolution of a discovery dispute. The deposition was subsequently rescheduled for April 20, 2009.

5.      On March 30, 2009, plaintiff served a third set of document requests on the Seavey Defendants seeking "all reserve and investment account statements from 1999 to present, and all general ledgers and financial statements from January 1999 to December 31st, 2005." Responses to the document requests were due on April 28, 2009.   However, the Seavey Defendants made the documents available for review on April 15, 16, and 17 at the offices of Dalton Management Company, one of the defendant entities.   Mr. Haywoode did not personally attend the inspection, but instead sent his son, two of his employees, and one of plaintiff's accountants.

6.      At the document inspection, apparently Mr. Haywoode's "operatives" identified 10 pages of documents for photocopying.  Accordingly, Ronald Dawley, Dalton's Chief Executive Officer, arranged for copying but declined to release the documents until they had been reviewed and Bates labeled by Herrick, Feinstein.  Indeed, at all times in this matter, the production of documents in response to each of plaintiff's document requests have been produced and controlled by Herrick, Feinstein as counsel to the Seavey Defendants.  The documents produced in response to plaintiff's first documents requests were reviewed by his representatives at our offices and reproduced by a vendor, Pitney Bowes, under our supervision.  Although those documents were not Bates labeled, we reviewed and catalogued the documents that were actually being photocopied and produced to plaintiff.

7.    Similarly, in response to plaintiff's second document requests, plaintiff's representatives went to Dalton's offices to review and inspect the documents and marked and segregated the documents that they actually wanted to have photocopied and reproduced. Pitney Bowes, under our supervision, photocopied those documents after Herrick, Feinstein was given the opportunity to review and catalogue the actual documents identified by plaintiff's representatives for reproduction.

8.    I was in a deposition all day on Friday, April 17, 2009, for this case and was not even aware that Mr. Haywoode's office had directly requested to our clients that they photocopy and produce documents. Indeed, at no time did Mr. Haywoode or anyone from his office ever notify Herrick, Feinstein of their request, which has been the protocol in this matter with respect to *all* prior document productions in this case. Moreover, on April 17, during the deposition of the plaintiff, Mr. Haywoode confirmed Mrs. Seavey's deposition for April 20.

9.    At 5:17 p.m. on Sunday, April 19, Mr. Haywoode sent me an e-mail purporting to cancel the deposition "due to obstructions in the discovery process." I immediately responded, refusing to cancel the deposition, and suggested that if Mr. Haywoode believed that he was unable to proceed with any line of questioning because he had been deprived of some discovery materials, he should make a statement on the record and proceed with the balance of the deposition. Nevertheless, Mr. Haywoode reaffirmed his intent to cancel, elaborating that he has been "advised Ron Dawley has seized upon multiple documents set aside for copying on Thursday, April 16, and states he will not release these until they are reviewed and approved for release by Herrick, Feinstein." I responded that I had never received prior complaints concerning these documents and that, in any event, because the document inspection related to reserve and investment account statements, they bore no relation to the

deposition of Mrs. Seavey. I again reiterated that the deposition would go forward in the morning as scheduled. William Kelly, counsel for Marks Paneth & Shron, also responded that he intended to appear at the deposition.

10.    The next morning, Mrs. Seavey, Mr. Kelley, and I appeared at my office for the scheduled deposition. Mr. Haywoode did not. Because a stenographer did not appear, we confirmed with Lex Court Reporters that Mr. Haywoode had left them a voicemail over the weekend cancelling the court reporter, and thus no court reporter showed up.

11.    Not only did Mr. Haywoode fail to show for the noticed deposition, but he wrote an e-mail the morning of April 20th, after the deposition was scheduled to commence, confirming that the reason he cancelled the deposition was that Ron Dawley had photocopied 10 pages on Thursday afternoon, after those 10 pages were identified by Mr. Haywoode's office, but had notified Mr. Haywoode's office that he would not produce them directly until they were first reviewed and Bates labeled by Herrick, Feinstein. Mr. Haywoode finds this reasonable and standard procedure to be "a most extraordinary construction of the discovery process under the FRCP."

12.    I received the documents, for the first time, the morning of April 20th for review and Bates labeling. The documents consist of a May 31, 2000 bank statement, three limited partnership bank resolutions (all signed by Mr. Edmonds), a cover letter from Mr. Robert Seavey to Chase Bank on January 8, 2001, enclosing the Second Amended Partnership Agreement, and a May 13, 2002 letter from Mr. Seavey to Salomon Smith Barney asking that it send Mr. Edmonds a copy of the then latest financial statement. Notably, Phyllis Seavey's name, much less her signature, does not appear once on any of these documents.

13.    After I reviewed the documents, they were Bates labeled, photocopied, and produced to Mr. Haywoode's office via electronic delivery at 10:11 a.m. on April 21, 2009, less than 24 hours after I received them.

14.    In light of these events, which Magistrate Judge Francis found to be accurate, the Court entered the Order and, pursuant to Fed R. Civ. P. 30(g), ordered Mr. Haywoode to pay the costs, including attorneys' fees, incurred by the Seavey Defendants as a result of Mr. Haywoode's unjustified, last-minute cancellation of Mrs. Seavey's deposition.    Rather than pay those costs, Mr. Haywoode filed objections to the Order.

**Standard of Review**

15.    28 U.S.C. § 636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court" except for certain specified dispositive motions. *In re Rivastigimine Patent Litigation*, 239 F.R.D. 351, 356 (S.D.N.Y.,2006) (Baer, J) (upholding an Order by Magistrate Judge Francis finding that he did not abuse his direction).    Fed R. Civ. P. 72(a) allows a judge to reconsider any pretrial matter assigned to a magistrate "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*  Rule 72(a) provides for "a highly deferential standard of review." *Wynder v. McMahon*, No. 99-CV-772, 2008 U.S. Dist. LEXIS 1945, at *2, (E.D.N.Y. Jan. 9, 2008). This standard "imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion." *Cadet v. Miller*, No. 05-CV-5042, 2007 U.S. Dist. LEXIS 90337, at *2 (E.D.N.Y. Dec. 7, 2007).

16.    A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir.2004).  An order is

"contrary to law" when it fails to apply or misapplies relevant statutes, case law or rules of

procedure. *See In re Rivastigimine Patent Litigation*, 239 F.R.D. at 356. Accordingly,

"magistrate judges are afforded broad discretion in resolving non-dispositive disputes and

reversal is appropriate only if their discretion is abused." *Id.*

> Under the clearly erroneous standard of review of Rule 72(a), the magistrate
> judge's findings should not be rejected merely because the court would have
> decided the matter differently. Rather, the district court must affirm the decision
> of the magistrate judge unless the district court on the entire evidence is left with
> the definite and firm conviction that a mistake has been committed.

*Nielsen v. New York City Dep't of Educ.*, No. 04-CV-2182, 2007 U.S. Dist. LEXIS

48637, at *3 (E.D.N.Y. July 5, 2007).

17.    Here, Mr. Haywoode fails to carry his heavy burden because the Order is based

on the record evidence and decided under settled law.

**Plaintiff's Document Requests Were Served Pursuant to**
**Fed R. Civ. P. 34.  Therefore, Responses Were Not Due Until April 28, 2009**

18.    First, Mr. Haywoode continues to argue, without any support in fact or law, that

Plaintiff's Document Requests were served under New York Partnership Law § 41 rather than

Fed. R. Civ. P. 34, and, thus, the document responses were due sometime before April 20, 2009.[2]

This is simply untrue.

19.    On March 30, 2009, plaintiff served his Document Requests on the Seavey

Defendants seeking "all reserve and investment account statements from 1999 to present, and all

general ledgers and financial statements from January 1999 to December 31st, 2005." A copy of

the Document Requests is attached at Exhibit A.  As set forth in the Document Requests, they

---

[2]  This argument is a red herring since, as Magistrate Judge Francis recognized, even if the requests were served
pursuant to Partnership Law § 41, that section merely requires that any partner have access to the partnership books
at all times; it sets no temporal requirements for making those records available.  Therefore, even if that law, rather
than the Federal Rules, governed discovery here, it would not dictate a different result, since the Seavey Defendants
made the documents available within a reasonable time.

were served "pursuant to Rule [sic] 33 and 34 of the FRCP." Accordingly, the production was to take place on April 28th, 2009 at 10:00 a.m., at the offices of M. Douglas Haywoode 71 Maple Street, Brooklyn, New York 11225. Therefore, Mr. Heywood, who signed the document requests, cannot reasonably contend that he was entitled to responsive documents anytime earlier.

20.    Mr. Haywoode asserts that the Seavey Defendants' document responses could not have been due on April 28, 2009, since, as he claims, I was out of town that day. Notwithstanding the fact that the Seavey Defendants produced their responsive documents on April 21, 2009 — seven days before they were due — Mr. Haywoode's assertion is simply untrue. I was not out of town on April 28, 2009.

21.    Mr. Haywoode's claim appears to be based on an e-mail that I sent to all counsel in this matter when we were scheduling deposition dates. In my e-mail, I informed counsel that I could not attend a deposition on either April 28 or 29. I never stated that I was out of town. Indeed, I had court appearances in other civil actions on those dates. Mr. Haywoode, as appears his predilection, has simply made up his own interpretation of my e-mail.

22.    Mr. Haywoode's predilection is further evidenced by his claim that during the deposition of John Edmonds, on April 17, 2009, I "acknowledged that the inquiries proceeding across the street at Dalton management, where the Seavey Attorneys office is also located, were pursuant to our demands under the partnership law to allow for expeditious review of the documents." [Haywoode Decl. ¶ 16.] A reading of the transcript shows that Mr. Haywoode has again given his own interpretation to the actual testimony.

23.    During my examination of Mr. Edmonds, I asked Mr. Edmonds about his claim that the Seavey Defendants has refused to provide him access to the partnerships' books and

records.  As part of my inquiries, I asked Mr. Edmonds to acknowledge that, during this lawsuit, the defendants had, in fact, produced over 20 bankers' boxes full of documents in responses to his various document requests.  [Edmonds Tr. p. 200, lns. 17-19.]  Additionally, I asked Mr. Edmonds "[a]nd in fact, you made a partnership demand under the New York partnership laws to come to Dalton and do an inspection of the books and records, did you not?" [Edmonds Tr. p. 202, lns. 5-8.]  Mr. Edmonds responded, "I may have.  I probably did." [*Id.* at ln. 9.]  My question referred to Mr. Haywoode's October 23, 2008 letter in which he specifically demanded that, pursuant to Partnership Law § 41, Mr. Edmonds be given the "opportunity to make a full review of the records of all bank accounts maintained by each development, together with the checkbooks and register for each account" on November 5, 2008.  *See* Exhibit B.

24.    In response to plaintiff's October 23, 2008 demand, the Seavey Defendants opened their offices to Mr. Edmonds and his representatives on November 5, 2008, and provided access to the Partnerships' records.  However, after being at the offices for less than ten minutes, plaintiff's counsel requested that rather than inspect all of the documents and records, which is what is provided for under Partnership Law § 41, he wanted specific documents to be produced. I informed him that if he wanted specific documents, he needed to request them in a formal document request served pursuant to the Federal Rules of Civil Procedure.  He agreed. Accordingly, on November 6, 2008, Plaintiff served his second document requests requesting the specific documents that Plaintiff identified during the November 5th inspection.  *See* Exhibit C.

25.    Therefore, during Mr. Edmonds' deposition, not only did I not acknowledge that the April 16th inspection was conducted pursuant to Partnership Law § 41 — because it was not — but, Mr. Haywoode is fully aware that if his client sought the inspection of specific documents, as opposed to access to *all* of the Partnerships' books and records, he was required to

serve a document request, pursuant to Fed. R. Civ. P. 34. Indeed, that is why he served the document request on March 30, 2009, to which responses were not due until April 28, 2009.

**The Seavey Defendants Produced the Responsive**
**Documents Within the Time Required by Rule 34**

26.    Second, Mr. Haywoode accuses me of "consciously and tactically" withholding the responsive documents for an "inordinate" amount of time with "the intention to destroy the papers out of hand or deny their existence." [Haywoode Decl. ¶¶ 9 and 10.] Mr. Haywoode levies these serious charges without any basis or support. Rather, the uncontroverted record evidence directly belies his accusations.

27.    As stated in my prior declarations submitted to this Court, when Mr. Haywoode first contacted me to improperly cancel the deposition of Mrs. Seavey, on April 19, 2009, I was not even aware that Mr. Haywoode's office had allegedly requested that certain documents identified in their inspection be photocopied, much less had actual possession of those documents. Indeed, neither Mr. Haywoode, who I was with all day on Friday, April 17, 2009, nor anyone of his "operatives" notified Herrick, Feinstein that they wanted certain documents photocopied. I was first made aware of this issue by Mr. Haywoode's e-mail on at 7:43 p.m. on Sunday April 19, 2009, wherein he claimed that certain documents were set aside for photocopying by Mr. Dawley but would not be released until they were reviewed and approved by Herrick, Feinstein.

28.    Upon learning of the request, on Monday, April 20th, I contacted Mr. Dawley about this issue; he then sent the documents to my office for review around 11:00 a.m. that same day. I reviewed them, had them Bates labeled, photocopied, and then electronically sent to Mr. Haywoode's office at 10:11 a.m. on April 21, 2009 — less than 24 hours after I first received the documents.

29.     Nonetheless, without any basis, Mr. Haywoode asserts that I was withholding these documents for an "inordinate time" with an "intention to destroy the papers out of hand or deny their existence." [Haywoode Decl. ¶ 10.] The very fact that we produced the documents less than 24 hours after receipt belies that very serious charge.

30.     Further, Mr. Haywoode alleges that my April 19th e-mail, in which I state that the documents did not relate to Mrs. Seavey's deposition, discloses that I had possession of the documents and read them over that weekend. [*Id.* ¶¶ 11-12.] Again, this is untrue. In my e-mail, I advised Mr. Haywoode that:

> The documents that we made available for inspection by your team (which consisted of your son Arthur, Aimme and Oxana, and one of the accountants from CG&P) were due to be produced on April 28th, long after the deposition of Phyllis Seavey. Nonetheless, because you wanted them to be reviewed before the depositions of CG&P, we made them available on Wednesday and Thursday of last week as a professional courtesy. And, as I had informed you prior to the review, the documents were available for inspection at Dalton and, after you decided which documents, if any, you wanted to copy, we would discuss how to photocopy the documents. Not once did you or anyone from your firm contact me about making photocopies or reproductions. Moreover, none of these documents relate to or impact your ability to take the deposition of Phyllis Seavey.

*See* Exhibit D.

31.     My statement that the documents were unrelated to Mrs. Seavey's deposition was not based on having read the documents, but by there mere fact that the document request, and thus the documents that were produced in response, sought reserve and investment account statements from 1999 to present, and all general ledgers and financial statements from January 1999 to December 31st, 2005. Having met with Mrs. Seavey several times and having an intimate working knowledge of this matter, I know that those documents do not relate to Mrs. Seavey. Indeed, none of the documents even have her name or signature in them.

32.    Contrary to Mr. Haywoode's claim that Mrs. Seavey owns Dalton Management and exercised "full and total authority" over their affairs, we have made plaintiff aware of the fact, in both the Seavey Defendants' Answer and their discovery responses, that Mrs. Sevey *does not* own or control Dalton Management or any of the Partnerships.

33.    Moreover, as I informed Mr. Haywoode, if he believed that, during the deposition, he could not proceed with a certain line of questioning, he could make a statement on the record at that time and continue with the remainder of the deposition.    *See Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535, 537 (N.D. Ill. 2005).    He ignored my statement and, instead, unilaterally failed to show for the scheduled deposition.

**None of the Documents Related to Mrs. Seavey's Deposition**

34.    As Magistrate Judge Francis held, after reviewing the documents, there is no link between "those documents and the potential subject matter of Mrs. Seavey's testimony." [Order at 6.]  Nonetheless, Mr. Haywoode continues to claim, although without any specific articulation as to why, that he could not proceed with Mrs. Seavey's deposition without the documents.

35.    Rather, Mr. Haywoode asserts that the documents relate to the issue of Mr. Edmonds' percentage of ownership in one of the four partnerships, Lakeview.  Contrary to Mr. Haywoode's insinuations, this issue is but a mere minor factual contention and is unrelated to the claims in this matter —whether or not the defendants committed mail fraud giving rise to a cause of action sounding in RICO.

36.    Mr. Haywoode claims that I spent a "significant" and "considerable" portion of Mr. Edmonds' deposition on this topic. [Haywoode Decl. ¶¶ 2 and 12.]  However, as reflected by the transcript itself, only 5 pages out of 249 were spent discussing this issue.  And my

questions related to a sale agreement and the Second Amended Partnership Agreement, in which Mr. Edmonds sold his interest in the Lakeview, retaining only a 1.2% interest.

37.     Tellingly, not a single document that Mr. Haywoode claims he needed for Mrs. Seavey's deposition discusses percentage of ownership.  Rather, the documents to which Mr. Haywoode refers are Chase Investment Services Corp.'s Investment Resolution for a Limited Partnership in which Messrs. Edmonds and Seavey indicate that they are general partners in Lakeview and are authorized to "act on behalf of the Partnership in connection with the Partnership's ownership of investments to be purchased through Chase."  Not only do these documents not relate to plaintiff's claims, but they are wholly unrelated to Mrs. Seavey and her role, if any, in this matter.  Thus, as Magistrate Judge Francis found, "the brouhaha over the documents was merely a pretext for cancelling the deposition." [Order at 6.]

**The Order Was Predicated on Undisputed Facts and Settled Law**

38.     Shockingly, Mr. Haywoode objects to the Order claiming that "no formal hearing or opportunity to be heard was had," "no opportunity to confront and examine opposing counsel or other witness was provided" and "no dialectic of contending positions occurred."[3] [Haywoode Decl. ¶ 6.]  Again, Mr. Haywoode is incorrect.

39.     As shown by the ECF docket in this action, on April 20, Herrick, Feinstein filed, on behalf of the Seavey Defendants, a motion for sanctions [docket 40] and a supporting, declaration [docket 41].  In response, on April 22, Mr. Haywoode filed a cross-motion for sanctions [docket 42] and his declaration with exhibits [docket 43].  Thereafter, on April 27,

---

[3] Mr. Haywoode also claims that he requested to submit minutes of the depositions to Ms. Franken of the Magistrate's office on or about April 28, 2009. [Haywoode Decl. ¶ 6.]  It appears that Mr. Haywoode is having *ex parte* communications regarding this issue as we were not a party to any such conference nor were we provided with any letter to the Magistrate's office requesting such submission.

Herrick, Feinstein filed a reply declaration [docket 45] and Mr. Haywoode, getting the last word, filed his reply declaration [docket 48].

40.    What more does Mr. Haywoode want?  Each of the declarations sets forth the parties' contending positions and confronted the opposition's arguments and contentions. Nothing more is required.  Indeed, the Order specifically states that Magistrate Judge Francis reviewed the declarations and even cites to specific paragraphs, evidence and exhibits.

41.    Even more shocking is Mr. Haywoode's contention that he could cancel the deposition on April 19th because "it was set down by the attorneys the last thing on Friday evening April 17, 2009." [Haywoode Decl. ¶ 18.] Mr. Haywoode's statement is patently false.

42.    On March 31, 2009, after several conversations regarding scheduling of depositions, Mr. Haywoode requested that Mrs. Seavey's deposition be held on April 20, 2009. *See* Exhibit E.  Although I confirmed the date for Mrs. Seavey's deposition, the other deposition dates did not work. Accordingly, counsel continued to negotiate those dates and, by letter dated April 15, 2009, Mr. Haywoode confirmed the dates of all depositions, including Mrs. Seavey's. *See* Exhibit F.  Rather, the only item related to Mrs. Seavey's deposition that was discussed on April 17th was the location, which was changed from the Courthouse to Herrick, Feinstein's offices.

43.    Therefore, because the deposition had been scheduled for several weeks and, on the Sunday evening before the deposition, when it was impossible to seek court intervention, Mr. Haywoode used the production of unrelated documents that were not even due for anther one week, as an excuse to cancel the deposition, the Seavey Defendants are entitled to an award of costs, including attorneys' fees, pursuant to Fed. R. Civ. P. 30(g). *See Weatherspoon v. Nissan North America, Inc.*, No. 3:07 CV 24, 2008 WL 5104234, *2-3 (S.D. Miss. Dec. 1, 2008)

15

(upholding an award of costs where the noticing party sought to cancel the day before the scheduled deposition).

44.    We attempted to meet our obligation to confer with counsel by asking Mr. Haywoode to resolve this motion by reaching a mutually acceptable settlement. Mr. Haywoode has a right to pursue his objection. He does not have a right to proffer even more false and misleading statements as to both the facts and the law. Accordingly, we respectfully ask that additional sanctions be imposed. Absent such relief, given Mr. Haywoode's record herein, our client will be compelled to incur even more legal costs. We simply have an adversary who is willing to play fast and loose with a Federal Magistrate Judge and a United States District Court Judge and our client is incurring thousands of dollars in unnecessary legal fees as a result thereof.

WHEREFORE, pursuant to the Order, we respectfully request that the Court affirm the May 6, 2009 Order and, pursuant to our application for costs [docket 58], order Mr. Haywoode to pay the amount of $4,183 to the Seavey Defendants to reimburse them for the costs and fees incurred as a result of his actions.

Dated:    New York, New York
          May 29, 2009

M. Darren Traub