

**August 22, 2007**

# Lawyers Gear Up Grand New Fees

Hourly Rates Increasingly Hit $1,000,
Breaching a Level Once Seen as Taboo

By NATHAN KOPPEL
*August 22, 2007*

**DOW JONES REPRINTS**

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

The hourly rates of the country's top lawyers are increasingly coming with something new -- a comma.

A few attorneys crossed into $1,000-per-hour billing before this year, but recent moves to the four-figure mark in New York, which sets trends for legal markets around the country, are seen as a significant turning point.

On Sept. 1, New York's Simpson Thacher & Bartlett LLP will raise its top rate to more than $1,000 from $950. Firm partner Barry Ostrager, a litigator, says he will be one of the firm's thousand-dollar billers, along with private-equity specialist Richard Beattie and antitrust lawyer Kevin Arquit. The top biller at New York's Cadwalader, Wickersham & Taft LLP hit $1,000 per hour earlier this year. At Fried, Frank, Harris, Shriver & Jacobson LLP, also of New York, bankruptcy attorney Brad Scheler, now at $995 per hour, will likely soon charge $1,000.

At large firms, billable rates have climbed steadily over the years, since 2000 rising an average of 6% to 7% annually, according to the law-firm group of Citi Private Bank, a unit of **Citigroup** Inc. But for some time, the highest-billing partners at top big-city firms have hovered in the mid-to-high $900 range, hesitant to cross the four-figure threshold. "We have viewed $1,000 an hour as a possible vomit point for clients," says a partner at a New York firm. "Frankly, it's a little hard to think about anyone who doesn't save lives being worth this much money," says David Boies, one of the nation's best-known trial lawyers, at the Armonk, N.Y., office of Boies, Schiller & Flexner LLP.

A select group of attorneys began billing at that rate before this year, such as Stephen Susman, a founding partner of a Houston firm who has tried big-ticket cases around the country, and Benjamin Civiletti, a former U.S. Attorney General under President Carter and a senior partner at Washington, D.C-based Venable LLP. And in London, top attorneys bill at rates that, when converted, can hit almost $1,500 an hour.

As a critical mass develops around fees of $1,000 an hour in New York, though, more firms may feel comfortable going to that level and beyond. "One-thousand dollars per hour has symbolic significance," says Robert Rosenberg, a Latham & Watkins LLP partner who bills $925 an hour. "But like the year 2000, it's just a number."

Yet, many attorneys are still reluctant to charge $1,000 an hour. "There is a perception issue between $1,050 and $950," says Hugh Ray, a partner at Andrews Kurth LLP in Houston. "At

Case 1:08-cv-05646-HB-JCF    Document 65-3    Filed 06/25/2009    Page 2 of 9

some point, you look bad if you go too high." Mr. Boies says psychology in part has held him back from charging more than $880 per hour, noting, "When I started practicing law in 1966, my billing rate was considerably under $100."

Law firms also derive comfort from running with the pack. "We prefer not to be market leaders when it comes to rates," says J. Gregory Milmoe, a bankruptcy attorney at Skadden, Arps, Slate, Meagher & Flom LLP in New York. Mr. Milmoe says in September his hourly rate will climb to $950.

Firms' hesitation to breach the $1,000 mark shows that legal services aren't unlike other high-end products that sell at "just under" prices, like the $19,900 car, says Eric Anderson, a marketing professor at Northwestern University's Kellogg School of Management. "The sellers are worried that they will be perceived as extremely expensive."

Some clients' reactions bear that out. Brackett Denniston III, the general counsel of **General Electric** Co., says the company has paid $1,000 per hour for "specialized" legal advice. Still, "that's a line we'd rather not see crossed," Mr. Denniston says. "A thousand dollars per hour is emblematic of the high cost of major law firms," he says. "More than rates, my greater concern is the overall inflation level" in legal costs.

Thomas Sager, assistant general counsel of **DuPont** Co., says he recently balked when a New York lawyer cited $1,000 as his hourly rate. Instead, Mr. Sager says, he agreed to pay the attorney a flat monthly fee. "One-thousand dollars may be someone's choke point, but mine is actually a lot lower," he says.

Still, some lawyers are confident they're worth $1,000 per hour, and that now's the time to break the barrier. "I haven't personally experienced resistance to my billing rates," Mr. Ostrager says. "The legal marketplace is very sophisticated."

Law firms say the boosts aren't just about lining partners' pockets. They're partly a response to booming costs, which in recent years have included skyrocketing associate salaries -- first-year lawyers in many firms make $160,000 a year -- and expenses associated with geographic expansion.

While it's hard to raise prices on standard legal work, for matters such as bet-the-company deals, intricate patent disputes, huge bankruptcies or complex antitrust litigation, firms often feel they can raise fees for name-brand partners without upsetting clients.

Indeed, clients are often most cost-conscious about junior attorneys, believing they provide less value-per-dollar than senior counsel. Considering a major-league baseball player can make the equivalent of $15,000 per hour, "$1,000 for very seasoned lawyers who can solve complex problems doesn't seem to be inappropriate," says Mike Dillon, the general counsel of **Sun Microsystems** Inc.

Hourly rates, of course, tell just part of the fee story. Firms occasionally discount their stated rates for top clients. And companies sometimes prefer to pay their lawyers a flat fee for each case or deal, believing it encourages more efficiency than billing by the hour.

Plaintiffs trial lawyers often bill on a contingency-fee basis, earning a share of a settlement or verdict -- an amount that can dwarf top rates. "It represents an opportunity cost when I am

Westlaw

12/8/2008 NLJ S1, (Col. 1)                                                                              Page 1
12/8/2008 Nat'l L.J. S1, (Col. 1)

The National Law Journal
Vol. 31, No. 15
Copyright 2008 by American Lawyer Media, ALM, LLC

December 8, 2008
In Focus: Billing

# LAW FIRM **FEES** DEFY GRAVITY
## AS THE RECESSION GATHERED, LEGAL **FEES** GREW, AND ONE FIRM BROKE THE $1,200 PER HOUR BARRIER

Leigh Jones
Associate Editor

DESPITE THE RANCID economy of 2008, attorney billing rates continued their escalation trend, with nearly 71% of law firms reporting an increase in the amount that they charged clients compared with 2007. This figure represents law firms that increased their average and median billing rates firmwide.

Also this year, partner billing rates broke record highs, with one firm exceeding the $1,200 mark and another rising above $1,100 per hour.

This year's results of The National Law Journal 's annual billing survey indicate that, although law firms upped their rates at a slower pace compared with last year's increases, they still exacted a higher price for their labors from clients, even amid an unraveling economy.

The survey was based on information provided by 127 law firms that responded to billing questions submitted as part of the NLJ 250, The National Law Journal 's annual survey of the nation's largest law firms. Of those 127 law firms, 109 provided billing information both this year and last, from which year-over-year comparisons were derived. The survey period ran from Oct. 1, 2007, to Sept. 30, 2008.

The average of this years average firmwide billing rates, which include partner and associate rates, climbed by 4.3%.

The level of increase for average firmwide billing rates was lower than the increase last year of 7.7%, compared with 2006. At the same time, although 70.6% of firms increased their average and median billing rates this year, 75.2% increased those rates last year, compared with 2006.

The continued uptick in legal expenses means that law firms should expect cli-

Copyright © 2009 The New York Law Pub. Co.

12/8/2008 NLJ S1, (Col. 1)                                                        Page 2
12/8/2008 Nat'l L.J. S1, (Col. 1)

ents, especially in a worsening economy, to hire more attorneys in-house and to rely more heavily on 'flexible staffing,' said Pamela Woldow, general counsel and principal of Altman Weil Inc., a law firm consultancy. In addition, clients, such as pharmaceutical companies, that in the past did not demand alternative or varied fees will be 'negotiating harder' for better deals on legal services, Woldow said.

The average of the average firmwide billing rate for 2008 was $363 per hour, compared with $348 in 2007. The average of the median firmwide rate this year was $350 per hour, compared with $347 per hour last year.

$1,260 per hour

The most expensive hourly rate came from White & Case, which reported that the high end of its partner rate was $1,260 per hour. The firm's average partner billing rate was $747 per hour. With 2,205 attorneys, White & Case is ranked No. 6 on the NLJ 250.

In a written statement, White & Case said that the high end of its billing rates was 'representative of only two potential billing scenarios for clients ' and '[did] not take into account a number of key factors, including blended rates and rates negotiated with specific clients.'

Coming in second was Dorsey & Whitney, where the high end of the partner rate was $1,180. Dorsey's average partner rate was $505.

The top rates at Dorsey & Whitney were charged by two international tax partners practicing in London, said firm spokesman Bob Kleiber. The firm declined to identify the partners charging that rate.

The two law firms also reported the highest associate rates, with White & Case charging $920 per hour at the high end of the range and Dorsey & Whitney charging up to $820 per hour for associate work. The average associate rate at White & Case was $456 per hour. The average associate rate at Dorsey & Whitney was $301 per hour. The $820 fee charged at Dorsey & Whitney applied to one associate practicing in the firm's London office, Kleiber said.

Regarding average partner billing rates, 86.2% of the firms charged more this year than last year. The average of the average partner rate this year was $451 per hour, while the average of the median partner rate was $435 per hour.

Regarding associate rates, 80.7% of the law firms responding to the billing survey both in 2007 and 2008 raised the high end of associate rates. The average of the average associate rate for these firms was $282 per hour. The average of the median associate rate was $274.

Other high fliers

Two law firms besides Dorsey & Whitney and White & Case reported partners who

Copyright © 2009 The New York Law Pub. Co.

12/8/2008 NLJ S1, (Col. 1)                                                                Page 3
12/8/2008 Nat'l L.J. S1, (Col. 1)

charged four-figure rates. They were Pittsburgh-based Buchanan Ingersoll & Rooney, at $1,020, and Chicago-based Jenner & Block, at $1,000.

Several law firms came close to the $1,000 mark on the high end of the partner rate range. They were **New York**-based McKee Nelson, at $995; Washington-based Patton Boggs, at $990; Cooley Godward Kronish of Palo Alto, Calif., at $980; Locke Lord Bissell & Liddell, at $975; Chicago-based Winston & Strawn, at $975; Venable of Washington, at $950; Loeb & Loeb, at $925; Washington-based Hogan & Hartson, at $900; and Reed Smith, at $900.

Alternative and variant billing systems were popular among many law firms. Of the 127 firms that responded to billing questions, 66 reported that they received at least a portion of their revenue from alternatives and variations. Variations' to the billable hour mean discounted fees or blended hourly rates, while 'alternatives' include fixed or flat fees.

Many law firms derived most of their revenue via variations. They included Husch Blackwell Sanders, at 98%; Ogletree, Deakins, Nash, Smoak & Stewart, at 92%; and Akerman Senterfitt, at 90%.

Law firms relied on alternatives for a smaller portion of revenue, compared with variations. Firms with high percentages of revenue derived from alternative billing included Denver-based Holland & Hart, which reported 33%, and McKenna Long & Aldridge, at 30%.

12/8/2008 NLJ S1, (Col. 1)

END OF DOCUMENT

Copyright © 2009 The New York Law Pub. Co.

Westlaw.                                                              NewsRoom
1/31/09 INTLHT 11                                                     Page 1

1/31/09 Int'l Herald Trib. 11
2009 WLNR 1912623

                    International Herald Tribune
       Copyright 2009 the International Herald Tribune.  All Rights Reserved.

                           January 31, 2009


                          Section: Finance

In sick U.S. economy, resistance rises to legal fee system

Jonathan D. Glater

**NEW YORK** U.S. lawyers are having trouble defending the most basic yardstick of the legal business - the billable hour.

Clients have complained for years that the practice of billing for each hour worked can encourage a law **firm** to prolong a client's problem rather than solve it. But the rough economic climate is making clients more demanding, leading many law **firms** to rethink their business model.

''This is the time to get rid of the billable hour,'' said Evan Chesler, presiding partner at Cravath, Swain & Moore in **New York**, one of a number of **large firms** whose most senior lawyers bill more than $800 an hour.

''Clients are concerned about the budgets - more so than perhaps a year or two ago,'' he added.

Big law **firms** are worried about their budgets, too. Deals are drying up, and only the bankruptcy business is thriving. Two top **firms**, Heller Ehrman and Thelen, have collapsed in recent months. Others have laid off lawyers and staff members. So cost-conscious clients may now be able to sway long-reluctant partners to accept alternatives.

The evidence of a shift away from billable hours is, for now, anecdotal, as few surveys exist. But partners at a half-dozen other bellwether firms and lawyers at companies, who sometimes engage outside counsel, say they are more often seeing different pay arrangements.

Chesler, an advocate of the new billing practices, said that instead of paying for hours worked, more clients were paying Cravath flat fees for handling transactions and success fees for positive outcomes, as well as payments for meeting other benchmarks. He said that such arrangements were still a relatively small part of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

his **firm's** total business, but he declined to discuss billable rates and prices in detail.

The system of billing by the hour has been **firmly** in place since the 1960s; keeping track of time spent provided a rationale for the amount charged. In earlier, perhaps more trusting times, **firms** stated a price ''for services rendered,'' without explanation.

But one has only to eavesdrop on a table of law associates comparing their workloads to get a sense of how entrenched the billable hour is, creating a pecking order among lawyers, identifying the best as the busiest and the most costly.

With a sigh that is simultaneously proud and pained, lawyers will talk about charging clients for 3,000 or more hours in a year - a figure that means a lawyer spent about 12 hours a day of every weekday drafting motions or contracts and reviewing other lawyers' motions and contracts.

''Does this make any sense?'' said David Wilkins, a professor of legal ethics and director of the program on the legal profession at Harvard Law School. ''It makes as much sense as any other kind of effort to measure your value by some kind of objective, extrinsic measure. Which is not much.''

To be sure, lawyers may be talking a good game but secretly hoping that the economy will bounce back and everything will return to normal, said Frederick Krebs, president of the Association of Corporate Counsel, whose members work in the legal departments of companies and other organizations. He said that lawyers cheerfully lamented the bad incentives created by billable time for years, even as they grew rich from the practice.

''I like to paraphrase Churchill,'' Krebs said. ''In all these conversations, never has so little been accomplished by so many for so long. It just hasn't happened.''

But the crashing economy may achieve what client complaints could not, Krebs added. ''We may well be at a tipping point here.''

Greed may also encourage lawyers to change their payment plans. Law firms are fast running out of hours that they can bill in a single year, said Scott Turow, best-selling author of legal thrillers and a partner at Sonnenschein Nath & Rosenthal in Chicago.

''Firms are approaching the limit of how hard they can ask lawyers to work,'' he wrote in an e-mail response to a query. ''Without alternative billing schemes, lawyers will not be able to maintain the rapid escalation in incomes that big firms have seen.''

A recent study released last year by the Association of Corporate Counsel showed a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

rise in the number of companies paying by the hour - but that covered the spring and summer, before the worst of the downturn.

Many smaller firms and solo practitioners have long offered to perform services, like mortgage closings, for flat fees. Plaintiffs' lawyers also often work on a contingency basis, receiving a percentage of any awards.

''What we do in our business litigation is charge clients some kind of monthly retainer, which gets credited against an eventual recovery,'' said John Balestriere, a partner at Balestriere Lanza, a **New York firm** with five lawyers. ''It's a lot easier for us to tell a client, 'We want to do this, we want to push for summary judgment,''' and so avoid a lengthy, costly trial.

When lawyers are not paid by the hour, their approaches to their work change, said Carl Leonard, a former chairman of Morrison & Foerster and now a senior consultant at Hildebrandt International, which advises professional services firms.

In one case, he said, Morrison & Foerster negotiated a fixed fee for defending a company in court, up to the point of a motion for summary judgment.

On top of the fee, if the case settled for less than what the company feared having to pay if it lost in court, the law firm got a percentage of the amount saved. It was an arrangement that might not have worked if the client had been determined to fight the lawsuit at all costs, Leonard said, but it made sense when the goal was to resolve the dispute quickly.

Lawyers on the case negotiated a settlement for much less than the client's worst-case number, Leonard said. ''The effective hourly rate was something like 150 percent of our hourly rates. We made money; the client was happy.''

In litigation, **firms** that charge by the hour can suffer if they are too successful and end a lawsuit - and the stream of payments from continuing work - too quickly. One law **firm** that recently collapsed, Heller Ehrman, was hurt in part because a number of cases had settled.

That collapse highlights the risk to law **firms** of experimenting with other payment arrangements: If lawyers set too low a price, they lose money. Many lawyers may not be good enough businessmen to pick the right price, Krebs, of the Association of Corporate Counsel, said.

''The difficulty is, we don't really know what it costs us to do something,'' he said of his profession. But the biggest stumbling block to alternative fee structures may be the managing partners at law **firms**, who will have to overhaul compensation structures to reward partners and associates for something other than taking a long time to do something.

''I don't think law **firms** have completely come to grips with that issue,'' said J.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Stephen Poor, managing partner at Seyfarth Shaw in Chicago. ''But they need to start coming to grips with it very quickly.''

---- INDEX REFERENCES ----

COMPANY: ASSOCIATION OF CORPORATE COUNSEL; SONNENSCHEIN NATH AND ROSENTHAL

NEWS SUBJECT: (Economics & Trade (1EC26))

INDUSTRY: (Legal Services Regulatory (1LE16); Legal Services (1LE31); Accounting, Consulting & Legal Services (1AC73))

REGION: (North America (1NO39); **New York** (1NE72); Americas (1AM92); Illinois (1IL01); USA (1US73))

Language: EN

OTHER INDEXING: (ASSOCIATION OF CORPORATE COUNSEL; HARVARD LAW SCHOOL; HILDEBRANDT INTL; MORRISON FOERSTER; SONNENSCHEIN NATH ROSENTHAL) (Balestriere Lanza; Carl Leonard; Chesler; David Wilkins; Evan Chesler; Frederick Krebs; Greed; Heller Ehrman; J. Stephen Poor; John Balestriere; Krebs; Leonard; Plaintiffs; Scott Turow; Thelen)

EDITION: 3

Word Count: 1384
1/31/09 INTLHT 11
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.