Dawley

201

Shron.

Q    Did they suggest to you that this journal entry and adjustments be accepted by Dalton?

A    What do you mean suggest?

Q    Well, they were the auditors, right?

A    That's correct.

Q    They looked at your general ledger report of $108,000.00 for 2006, is that correct?

A    Yes.

Q    Is it fair to say then that they suggested to you that the $108,000.00 be reclassified as to $82,000.00 and that the report to DHCR show $34,000.00?

MR. TRAUB:  Objection to form.

A    The $34,000.00 was the retainer that we paid out for the audit.  The other items were not for the audit and shouldn't have -- should not appear under audit expenses.  They should appear under the proper classification.  They were for taxes and a

LEX REPORTING SERVICE
800-608-6085

Dawley

202

couple of various.  I would have to look and see, but I would presume they were possibly for a rent increase that we had.

Q    They were for accrued monies, which had accumulated over several years, isn't it correct the $82,000.00?

MR. TRAUB:  Objection to form.

Q    That wasn't money from one year that was accrued going backwards, I think you testified to 2001, is that correct?

MR. TRAUB:  Objection to form.

MR. KELLY:  Joined.

A    That's not what I said.

Q    Tell us please what you said.

A    I read off the description of the work that was done for prior years that was paid in the year 2006.  If we had monies available we would have paid it currently.  We wouldn't have accrued it for four or five years if we had funds available.  I'd have to look at the invoices to see exactly what dates they were dated in order to give you an answer

LEX REPORTING SERVICE
800-608-6085

Dawley

203

as to what period in time those amounts were generated for.

Q    Is it fair to say that if someone at DHCR, had received that document reporting the $34,000.00 that they might conclude that the only monies received by Marks, Paneth & Shron in 2006 was $34,000.00?

MR. TRAUB:  Objection to the form.

MR. KELLY:  Objection to the form.

A    If you recall our representative for DHCR comes in a couple of times a year to review our financial information and looks at every check we generate.  So they were well aware of how many checks we wrote and the amount that we wrote for Marks, Paneth & Shron.  When they also come in they will ask us for a copy of our expenditures for a period in time, say the first six months of the year.  We would generate the activity for those six months, which would show every category and expense for that six months.  The form that they would have gotten would have been on a

LEX REPORTING SERVICE
800-608-6085

Dawley

204

cash basis and would have shown for the first six months how much we paid Marks, Paneth & Shron without reclassification.

Q    Mr. Dawley, whenever there is a lot of accrued expense on any accounting going back several years, if you were auditing would that suggest to you the possibility that some of the sums accrued would need to be strongly verified before they were credited at face value?

MR. KELLY:  Objection to the form.

A    If you'll note that the journal entry that was made for the $82,000.00 was reclassified not from a payable from prior years.  It was reclassified as an expense of the current year.  That would indicate that it was an expense of that year, not prior years.

Q    Wouldn't that tend to reduce income to the partnership in 2006 if that reclassification was made and the deduction was taken all in one year?  Under the accrual system it was probably deducted as an account payable in the previous year.  I mean wouldn't

LEX REPORTING SERVICE
800-608-6085

Dawley

205

2  there be some confusion there?
3          MR. KELLY:  Objection to
4      form.
5          MR. TRAUB:  Objection to
6      form.
7      A    No, no.
8          If the amount was due to a prior
9  year it would have been accrued and expensed
10  in the prior year.
11      Q    Now, shouldn't this schedule
12  report actual fees paid to Marks, Paneth &
13  Shron and anybody else in that year in the
14  given year, shouldn't the schedule show that?
15      A    Not that I am aware of.
16      Q    So the answer is no?
17      A    No.
18      Q    Whose responsibility is it
19  eventually to do the financial statements?
20  Whose responsibility is that; is that the
21  auditor's responsibility or --
22      A    The auditors.
23          MR. TRAUB:  Objection to the
24      form.
25          MR. KELLY:  Joined.

Dawley

206

2      A    The auditors prepare the financial
3  statement based on the DHCR financial
4  statement classification and form.  The forms
5  are specified by DHCR.  They not something
6  that the accounting firm, you know, decides
7  what they want to do or Gapp or anything else.
8  It's done according to DHCR rules.  They
9  provide the outline.  They provide the forms
10  that have to be prepared and that's what was
11  prepared.
12      Q    DHCR tells you how to fill out
13  those forms?
14      A    DHCR has instructions as to what
15  has to go on each form.
16      Q    DHCR indicates that only the
17  $34,000.00, should be reported on the
18  financial statement when $108,000.00 was
19  actually received?
20          MR. KELLY:  Objection to
21      form.
22          MR. TRAUB:  Objection to
23      form.
24      A    We would have to look at the
25  specific instructions that DHCR provides along

Dawley

207

2  with the form, in order to determine how we
3  have to classify our item, because they are
4  very specific.
5      Q    There is no question that the
6  $82,000.00 that is on that Exhibit is
7  generated at least in part from invoice number
8  103442, which bears the date August 28th of
9  2002?
10      A    Where is the Exhibit?
11      Q    I am going to show you the bill.
12  I am not going to mark it at this point if you
13  agree that that money is coming from 2002.
14          MR. TRAUB:  Objection to the
15      form.
16          MR. KELLY:  Joined.
17          MR. TRAUB:  I think we
18      should mark this as an Exhibit.
19      Q    Let's get the witness's answer to
20  the question?
21          MR. TRAUB:  Let's mark it as
22      an Exhibit first.
23          (Invoice number 103442 was
24          marked as Plaintiff's
25          Exhibit 12, for

Dawley

208

2          identification, as of this
3          date.)
4      A    What this shows is that there was
5  a payment made of $125,000.00 in the year 2006
6  and I don't see any of our Dalton codes that
7  would show that this was in fact paid, 'cause
8  usually there is a code on the invoice that
9  would correspond to the code of 103442.  I
10  question that so I couldn't tell you it's the
11  same amount.
12          MR. HAYWOODE:  I am going to
13      ask that we mark this as
14      Plaintiff's Exhibit 13.
15          (A document showing a check
16          being paid for $15,000.00
17          was marked as Plaintiff's
18          Exhibit 13, for
19          identification, as of this
20          date.)
21      Q    My question will be does that
22  inform your opinion?
23      A    No.
24          No, all this says is that we paid
25  a check for $15,000.00 invoice 103442.

Dawley

209

2  Usually I see -- even though it corresponds I
3  usually get an item, but it appears to be the
4  same amount. The question that I also noticed
5  was there seems to be some other adjustments,
6  which we are not seeing, because when I take
7  $108,000.00 and take away 83 from that I only
8  come up with 25 and the audit fee that's shown
9  is 34, so there is another adjustment that we
10  are not seeing.
11      Q      I ask again whose responsibility
12  is the financial statement, is it the
13  responsibility of Dalton or the responsibility
14  of Marks, Paneth & Shron?
15              MR. TRAUB:  Objection to
16          form.
17              MR. KELLY:  Objection to
18          form.
19      A    Dalton Management produces the --
20  produces the information, gives it to Marks,
21  Paneth & Shron.  They convert it to accrual
22  and produce the financial statement.
23      Q      But who has the responsibility,
24  sir, in your opinion for the financial
25  statement?

LEX REPORTING SERVICE
800-608-6085

---

Dawley

210

2              MR. TRAUB:  Objection to
3          form.
4              MR. KELLY:  Objection to
5          form.
6      Q      Between the two?
7      A    The financial statement is
8  produced by Marks, Paneth & Shron in their
9  audit procedures and submitted to us and then
10  distributed.
11      Q      I am going to show you a document,
12  an independent auditors report for Marks,
13  Paneth & Shron to Fifth and 106th Street
14  Corporation and read you from the first
15  paragraph?
16              The comments, these financial
17  statements are the responsibilities of the
18  partnership management.  Our responsibility is
19  to express an opinion on these financial
20  statements based on our audits?
21              Have you read that representation
22  in the independent auditor's report by Marks,
   Paneth & Shron?
24      A    No.
25      Q      Would it change your opinion as to

LEX REPORTING SERVICE
800-608-6085

---

Dawley

211

2  whose responsibility it is?  I am just showing
3  the item to you, it's not marked at this time,
4  to insure what's in the financial statement.
5              MR. TRAUB:  Objection to
6          form.
7              MR. KELLY:  Objection to
8          form.
9      Q      Would that change your opinion as
10  to whose responsibility it is?
11              MR. KELLY:  Objection to
12          form.
13              MR. TRAUB:  Objection to
14          form.
15              I think you have two
16          different questions that you
17          asked.
18              Do you want to stick with
19          your last one?
20      Q      If the witness understands let him
21  answer.
22              MR. TRAUB:  I want to make
23          sure that he's answering the
24          question.  You asked two in a
25          row.

LEX REPORTING SERVICE
800-608-6085

---

Dawley

212

2              MR. HAYWOODE:  Let him
3          explain if he doesn't understand
4          it.
5      A    The financial statement is audited
6  by Marks, Paneth & Shron.  They then produce
7  the financial statement in the form required
8  by the various agencies.  Dalton provided them
9  with the information to produce that, which we
10  do.
11      Q      Did you ever tell Marks, Paneth &
12  Shron, "Okay, I agree with your
13  characterization, with your adjustments to
14  change the $180,000 we put in the general
15  ledger to $34,000.00 and send it to DHCR?"
16  Did you ever sign off or to consent to that in
17  writing or orally or in any other way.
18              MR. KELLY:  Objection to
19          form.
20              MR. TRAUB:  Objection to
21          form.
22      Q      Did you ever consent to that?
23      A    Not that I recall.
24      Q      Were you ever asked to consent to
25  that?

LEX REPORTING SERVICE
800-608-6085

Dawley

213

2  A   I don't remember if I was
3  specifically on that item.
4      Q   Were you asked to consent to any
5  of these journal adjustments that were coming
6  from Marks, Paneth & Shron in great numbers
7  and great volumes?
8           MR. TRAUB:  Objection to
9      form.
10          MR. KELLY:  Objection to
11     form.
12     A   The reclassifications that they
13 made were acceptable to us and were booked by
14 us.
15     Q   Where you said you didn't put them
16 in your he general ledger?
17          MR. KELLY:  Objection to
18     form.
19          MR. TRAUB:  Objection to
20     form.
21     A   That is not what I said.
22         I said we booked the required
23 adjustments that I needed to make to put my
24 books in agreement, my balance sheet items in
25 agreement with what they had in their audit,

LEX REPORTING SERVICE
800-608-6085

---

Dawley

214

2  in their final audit.
3      Q   Do you have any piece of paper or
4  communication or back and forth between you
5  and Marks, Paneth & Shron, to show that as an
6  auditor that they suggested these changes to
7  Dalton and that Dalton accepted them?
8           MR. TRAUB:  Objection to the
9      form.
10          MR. KELLY:  Join.
11     Q   Do you have any type of paper
12 trail or any other record to show that they
13 were suggesting it to you and you were
14 acquiescing to it?
15          MR. KELLY:  Objection to
16     form.
17     A   Not that I recall.
18          MR. TRAUB:  And in point of
19     fact --
20          MR. HAYWOODE:  Break, break.
21         Are you testifying now for
22     him?  He said he doesn't recall.
23     Don't put words in his mouth?
24          MR. TRAUB:  The answer was I
25     don't recall.  Your answer was

LEX REPORTING SERVICE
800-608-6085

---

Dawley

215

2  no.
3           MR. HAYWOODE:  Ms.
4      Torregrossa is not going to
5      record my answer she is going to
6      record his answer.
7           MR. TRAUB:  You don't need
8      to clarify his answer.
9           Maybe we should take a break
10     at this point.  Let's take a
11     quick break.
12          (Whereupon, a recess was
13     taken at this time.)
14          (A 2006 financial statement
15     was marked as Plaintiff's
16     Exhibit 14, for
17     identification, as of this
18     date.)
19     Q   Exhibit 14 is?
20     A   2006 financial statement.
21          MR. KELLY:  For what entity?
22          THE WITNESS:  Fifth and
23     106th Street Associates.
24          MR. TRAUB:  You had asked
25     the question about that letter

LEX REPORTING SERVICE
800-608-6085

---

Dawley

216

2  and then we said we would mark it
3  over the break.
4           MR. HAYWOODE:  And this was
5      the statement.
6           MR. TRAUB:  About
7      responsibilities.
8           MR. HAYWOODE:  About
9      responsibilities of management
10     okay.
11     Q   This $15,000.00 that came from
12 2001, the deduction was taken in 2006, is that
13 correct?
14          MR. TRAUB:  Objection to
15     form.
16          MR. KELLY:  Objection to
17     form.
18     A   Well, I just glanced through and
19 we are going to have to look at the final
20 trial balance and all the adjustments in order
21 to make that determination, because when you
22 take 108 less the 83 you come up with about
23 $23,000.00 or $24,000.00 of audit fees in
24 accounting.  Yet there is $34,000.00 in the
25 financial statement, which is a $10,000.00

LEX REPORTING SERVICE
800-608-6085

Dawley

217

2  difference. If you also look under management
3  consulting $82,900.00, the financials come up
4  to about $59,000.00, so there has got to be
5  another adjustment to that amount as well, so
6  I really can't answer that question.
7      Q    Is there a reason why the 2001
8  expense wouldn't have been accrued?
9      A    That's what I am telling you.
10          MR. KELLY:  Objection to
11      form.
12      A    I can't make that determination
13  without seeing the rest of the adjustments. I
14  have to look at all adjustments to all of
15  those accounts in order to make the
16  determination as to whether it was expensed in
17  this year or it was previously expensed and
18  not paid for until now, which includes
19  accounts payable.
20      Q    But if your financial statements
21  are on an accrual basis, then it would be
22  reasonable to expect that that expense would
23  have been accrued, would it not?
24          MR. TRAUB:  Objection to
25      form.

LEX REPORTING SERVICE
800-608-6085

---

Dawley

218

2          MR. KELLY:  Objection to
3      form.
4      A    That expense could very well have
5  been expensed and accrued in the year
6  2002/2003.
7      Q    Then deducted again in 2006?
8          MR. KELLY:  Objection to
9      form.
10      A    That is what I am telling you is
11  that we can't determine from the information
12  you provided.
13          MR. HAYWOODE:
14      Unfortunately, we don't provide
15      the information.
16      May I ask that if your
17      counsel feels that it desirable
18      that you look into this and see
19      if we can get some answer as to
20      whether it was in fact accrued in
21      2001 and then billed in total
22      again in 2006.  I would ask that
        you make that inquiry.
24          MR. TRAUB:  We will take it
25      under advisement.

LEX REPORTING SERVICE
800-608-6085

---

Dawley

219

2          MR. KELLY:  And I am
3      objecting to it.
4      Q    Looking at the journal entries
5  none of them say anything about accrual, do
6  they?
7      A    If you look at the financial, the
8  trial balance as adjusted for management
9  consultant fees.
10      Q    State the page number for the
11  record.
12      A    Page number it's three of five the
13  management consultant fees on the unadjusted,
14  means the amount we had under consultant
15  $23,899.00 to that figure there was several
16  adjustments.  Adjustment number 8, adjustment
17  number 23 -- adjustment number 23 and number
18  25, which changed the balance from $23,899.00
19  to $59,977.00.  Part of the $32,999 was taken
20  out.  Somehow I'd have to look back and
21  examine all the journal entries, as well as
22  accounts payable, which we don't have all that
23  information here to come up with the amount
24  whether or not that $15,000.00 was indeed
25  expensed in the year 2006.

LEX REPORTING SERVICE
800-608-6085

---

Dawley

220

2      Q    Are those accrual adjustments?
3      A    Those are all accrual adjustments.
4      Q    Now, looking at Plaintiff's 12
5  again, there is a bill that was paid in 2006.
6  I am looking at the series of charges.
7  1/25/2000 and special project, 11/6/2000
8  audit, 1/17/2000 work paper review, field
9  work, field work, work paper, work paper, work
10  paper, work paper, field work, work paper and
11  audit planning.
12          Is there any way that in 2006 when
13  this these charges, which are Plaintiff's 12
14  of February 24th, were presented?  Is there
15  any way that anybody could determine the bona
16  fides of such claims?
17          MR. TRAUB:  Objection to
18      form.
19          MR. KELLY:  Objection to
20      form
21      A    What do you mean, I don't
22  understand?
23      Q    I mean if I showed up at Dalton
24  tomorrow and said back in 1999 and '98 and '97
25  I have billings, as I well might, that are not

LEX REPORTING SERVICE
800-608-6085

---

Dawley

221

2  addressed and I gave categorizations like that
3  would there be any way that anyone could tell
4  six, seven, eight years later that anyone
5  could make a judgment as to is this real or
6  what?
7          MR. TRAUB:  Objection to
8      form.
9          MR. KELLY:  Objection to
10     form.
11     **A    This is a bill that's usually done**
12  **by professionals that have a list of**
13  **categories of what they do.  You don't put**
14  **down 50,000 categories, because it's too hard**
15  **to work with, so you try to pare it down to**
16  **the major things you do and you come up with a**
17  **few -- a lot fewer categories and you make**
18  **your work and you charge them under one of**
19  **those categories.  That is what they are doing**
20  **here.  I am assuming that, but I know how**
21  **accounting is billed and I am sure Cameron and**
22  **his crew do the same thing.  They don't put**
23  **down the dissertation of every half hour.**
24  **They put down as to exactly what they did**
25  **reconcile journal number 17 on the client's**

LEX REPORTING SERVICE
800-608-6085

---

Dawley

222

2  **books.  It's not going to happen they take**
3  **more time in doing their billing then they**
4  **ever get done.  You have to look at the**
5  **billing of a lot more than $15,000, which**
6  **indicates a lot was already paid in prior**
7  **years, so this Exhibit 12 is not just for**
8  **$15,000.00 it's for more than that.  So you'd**
9  **have to look at what their categories mean and**
10  **you would be able to go ahead.  I'm sure**
11  **Marks, Paneth & Shron has got some category**
12  **description of what they like to have and what**
13  **they like to charge it under and go from**
14  **there.  I don't know it for a fact, but that's**
15  **usually the way accountants do their billing.**
16     **Q**    But the balance was not accrued?
17         MR. TRAUB:  Objection to the
18     form.
19         MR. KELLY:  Join.
20     **A    I don't know that.**
21         MR. HAYWOODE:  I am going to
22     ask Ms. Torregrossa to mark
23     former Exhibits 7 and 8 as
24     Plaintiff's Exhibits 15 and 16.
25         (A mortgage closing and a

LEX REPORTING SERVICE
800-608-6085

---

Dawley

223

2          billing invoice was marked
3          as Plaintiff's Exhibits 15
4          and 16, for identification,
5          as of this date.)
6      **Q**    Sir, I just want to go back with
7  regard to the last question.
8          Shouldn't you have known that this
9  amount was not accrued?
10         MR. TRAUB:  Objection.
11         MR. KELLY:  Objection to
12     form.
13     **A    I don't remember every account**
14  **that was accrued for ten companies that**
15  **includes thousands in transactions a year.**
16  **I'm not going to remember that.**
17         MR. HAYWOODE:  Let's start
18     with 7.  That's 15.  It refers to
19     a mortgage closing consultation
20     and professional fees, which
21     would be item 3 and item 8 there
22     and payable in 2006 and I am
23     going to admit another document
24     as Plaintiff's Exhibit 17.
25         (A Gray Stone Fannie May

LEX REPORTING SERVICE
800-608-6085

---

Dawley

224

2          settlement was marked as
3          Plaintiff's Exhibit 17, for
4          identification, as of this
5          date.)
6      **Q**    That document 15 and that
7  accounting and 16 that billing, what is the
8  date on it?
9      **A    June the 9, 2005.**
10     **Q**    June 9, 20005 appears to assert a
11  bill for $23,000.00 reduced by $1,000.00 to
12  $22,000.00 pertaining to a closing, which took
13  place March 30, of 2004.
14     **A    Okay.**
15         MR. TRAUB:  Objection to
16     form.
17     **Q**    Can you tell from those Exhibits
18  what the $22,000.00 was paid for?
19     **A    First of all, I was not included**
20  **or did I attend the refinancing.**
21
22     **Q**    Go ahead.
23     **A    Number 2, the billing I don't**
24  **remember any of these -- seeing any of the**
25  **Exhibits that you indicated here.  The first**

LEX REPORTING SERVICE
800-608-6085

---

Dawley

225

1 one Exhibit 15 I would assume that in the
2 refinancing the cost that you incur in
3 refinancing can't be expensed in the first
4 year. They have to be over a period of time,
5 usually the length of the loan so that is what
6 I would assume the first Exhibit 15 indicates.
7           The second is an invoice looks
8 like they originally billed us $32,588.00.
9 They have nonbillable $3,811.00 and then they
10 also gave us a discount. They wrote down
11 another $7,555.00, which left a balance of
12 $23,022.00 and there is a note down below that
13 there is a reversal of prior year management
14 consultant accrual of $1,000.00 that I would
15 presume was for some work that was done prior
16 to the year 2005 and 2004 in regard to the
17 refinancing. The Gray Stone Fannie May
18 settlement statement never seen that. It's a
19 settlement statement of the Logan refinancing.
20 That is all I can tell you about that.
21     Q     But it refers to the $22,000.00,
22 does it not?
23     A     Where?
24           I don't find it. Somebody is

Dawley

226

1 going to have to point it out.
2     Q     But the question is how does a
3 closing that's consulted in 2004 wind up being
4 addressed a year later in 2005?
5           MR. TRAUB: Objection to
6           form.
7           MR. KELLY: Objection to
8           form.
9           MR. TRAUB: Are you
10           withdrawing your statement about
11           the $22,000.00 appearing in
12           Exhibit 17?
13     Q     Well, I can't break it out of that
14 document.
15           MR. TRAUB: I didn't want to
16           leave a question unanswered.
17     Q     How is a closing in 2004 being
18 paid a year later?
19     A     How is what being paid, how is the
20 bill being paid you mean?
21     Q     The consulting fee for the
22 closing.
23     A     Let's see when it closed.
24 Statement says March of 2004

Dawley

227

1 anticipated closing, all right. What's the
2 question?
3     Q     How does it wind up being paid a
4 year later the actual consulting fee.
5     A     'Cause we didn't get billed until
6 June of 2005.
7     Q     A year later?
8     A     A year later.
9     Q     Under Gagas and Gapp should an
10 auditor be owed thousands of dollars by the
11 accountant by the business that's auditing or
12 should it not be in that position?
13           MR. TRAUB: Objection to the
14           form.
15           MR. KELLY: Objection to the
16           form.
17           MR. TRAUB: That calls for a
18           legal conclusion.
19           MR. KELLY: Objection to
20           form and just for the record Gapp
21           is G-A-P-P.
22           MR. HAYWOODE: Calls for an
23           auditor's opinion.
24           MR. TRAUB: You're asking

Dawley

228

1 him if something under a rule
2 complies or not. That is a legal
3 opinion.
4     Q     Let me go back to this document
5 Plaintiff's 17.
6           Who put that charge on this
7 financial statement?
8           MR. TRAUB: What charge?
9           MR. HAYWOODE: The
10           consulting charge.
11           MR. TRAUB: Can you show us
12           what consulting charge you're
13           referring to? I think that was
14           the earlier question.
15     A     This is an invoice dated 6/9/2005
16 for $22,000.00 for, let's see, special
17 consulting regarding refinancing transaction,
18 new mortgage, pay off of existing debt, budget
19 June 30th, surplus cash, limited partners
20 request, property tax arrear and other
21 matters. So it's not just a refinancing. It
22 doesn't appear to be. Looks like it's several
23 other items as well.
24     Q     It's billed to a year later?

Dawley

229

2      A      Well, not necessarily.
3              It depends on when they did the
4  work on these other items. June 30th surplus
5  cash, you know, would that be a year ago or is
6  that the current year and they are doing
7  budgets that would be for a future year so I
8  don't know when they did that. There is
9  nothing to indicate when it took place so I
10  don't know.
11             MR. HAYWOODE: Mark this
12             please as Plaintiff's 18. It is
13             Number 9 from February 3rd.
14             (A document was marked as
15             Plaintiff's Exhibit 18, for
16             identification as of this
17             date.)
18      Q      Now, Number 18 speaks to some sort
19  of an overage, is that correct?
20      A      That's correct.
21      Q      What is happening there if you
22  know.
23             MR. KELLY: Objection to
24             form.
25      A      What happened was that the amount

LEX REPORTING SERVICE
800-608-6085

---

Dawley

230

2  that was paid on the management fee each month
3  was incorrect.
4      Q      How was it incorrect, sir?
5      A      It was more than it should have
6  been.
7      Q      How much more?
8      A      I think totally it ended up -- I
9  have to remember. Forty grand, thirty-five
10  grand. It took over -- it was for several
11  years, like for two or three years.
12      Q      What were the years in question?
13      A      I don't recall.
14      Q      Does the document show any
15  indication?
16      A      Looks like three, four, and five.
17      Q      Now, was this something that
18  Marks, Paneth & Shron picked up or was it
19  something that DHCR picked up?
20      A      Marks, Paneth & Shron.
21      Q      You have an independent
22  recollection of that?
23      A      Yes.
24      Q      When they picked it up did it come
25  to the attention of the DHCR?

LEX REPORTING SERVICE
800-608-6085

---

Dawley

231

2              MR. KELLY: Objection to
3              form.
4      A      This is Church Home. It wouldn't
5  have went to DHCR.
6      Q      Would it have gone to HUD?
7      A      Yes.
8      Q      Did it come to HUD's attention at
9  any time this overpayment?
10      A      Yes, it did.
11      Q      What if anything did they do?
12      A      They wanted verification that it
13  was re-paid and cancelled checks, which were
14  provided.
15      Q      Now, say that the overpayment over
16  the three year period would be $35,000.00
17  approximately and the calculations performed
18  by Marks, Paneth & Shron show what amount of
19  overpayment on that document?
20      A      Let's see 2004 looks like -- 2004
21  looks like it was 16,753 and 2005 11,169. So
22  what's that, 27,000?
23      Q      The amount of money paid I suppose
24  to settle this overpayment was how much?
25      A      Whatever the overage was. If this

LEX REPORTING SERVICE
800-608-6085

---

Dawley

232

2  was 27,000 or 28,000 that's what was paid
3  back.
4              MR. KELLY: Let me also say
5              for the record that looks like a
6              photocopy of that cut off the
7              last three inches.
8              THE WITNESS: 03 the numbers
9              appear to be cut off.
10             MR. HAYWOODE: I withdraw my
11             questions as to Plaintiff's 18.
12             Now, recently we served a
13             notice to produce inquiring into
14             the payment allocations of the
15             investments represented by Dalton
16             and we inquired into the other
17             investments owned by the Seavey's
18             which are serviced by Dalton and
19             in response to that discovery
20             request we received this document
21             which I am marking this as
22             Plaintiff's Exhibit 19.
23             (A statement pertaining to
24             Church Home, Logan Plaza and
25             Charles Hill was marked

LEX REPORTING SERVICE
800-608-6085

Dawley

233

as Plaintiff's Exhibit 19,
for identification, as of
this date.)

MR. TRAUB: I am going to
object to your categorization of
this document. This document was
not produced in response to your
request for other partnerships
and housing projects managed by
Dalton. In fact I --

MR. HAYWOODE: Let me
correct that statement.

We at first requested that
the statement of all the
developments managed by Dalton by
discovery and that was not
provided. That was objected to.

MR. TRAUB: Exactly.

MR. HAYWOODE: We then asked
for a statement concerning the
payroll allocation issue. We
then requested a statement of the
investments that were represented
by Dalton again by way of the

Dawley

234

discovery request and we received
Plaintiff' 19, which shows Church
Home, Logan Plaza and Charles
Hill. Fifth and 106th Street is
not on that list.

Q    My question is was there a reason
that Fifth and 106th Street was cut out of the
production?

MR. KELLY: Objection to
form.

MR. TRAUB: Objection to
form.

A    **Fifth and 106th Street does not
get front-line allocation.**

MR. HAYWOODE: Now, in the
original pleading let's call this
Plaintiffs 20.

(The order to show cause was
marked as Plaintiff's
Exhibit 20, for
identification, as of this
date.)

MR. TRAUB: When you say the
original pleading?

Dawley

235

MR. HAYWOODE: The order to
show cause.

Plaintiff's 20 is a more
fullsome sheet, which seems to
reflect investments that were
cropped off from Plaintiff's
Exhibit 19.

MR. TRAUB: There are
different dates. I just want to
point out that 19 and 20 are two
different dates. One is
September 06 and one is October
of 06.

Q    Well, is there a reason that with
the second submission only the three
investments were provided, whereas in the
first submission all of the investments
including Lakeview were provided, is there a
reason that was?

MR. TRAUB: I am going to
object to the form and not allow
the witness to answer.

Q    Is there a reason that it was
altered in that manner before its production

Dawley

236

to us?

MR. TRAUB: I am going to
instruct the witness not to
answer, calls for a legal
conclusion.

MR. HAYWOODE: The reason
why this was cropped off is a
legal conclusion?

MR. TRAUB: Absolutely, Mel.
This was done -- I don't
know where you got this from.
You told just told me this came
from your order to show cause so
this wasn't part of discovery
production. This being
Plaintiff's Exhibit 20.

Plaintiff's Exhibit 19,
which is September 2006, was
produced during discovery.
Number one, there is nothing to
show that there was anything that
was cut off, but number 2, as
I've stated in my objections to
your discovery and to your

Dawley

237

requests numerous times, only the
four partnerships that are at
issue in this litigation are
relevant to this litigation and
discovery. With respect to
confidential and privileged
information as to partnerships
that your client is not a partner
in is not relevant to this
litigation.

MR. KELLY: I object to
form.

Q    Isn't it a fact that the first
document ways given by you, Mr. Dawley, to
Sandra Griffiths when they were in the process
of going to Dalton to get these?

MR. TRAUB: Before
litigation was commenced?

MR. HAYWOODE: Yes.

A    Yes.

They wanted to know -- they didn't
understand how front-line was done, so they
picked a month or I picked a month I don't
recall. We picked a month and I provided them

LEX REPORTING SERVICE
800-608-6085

---

Dawley

238

with everything that's done in the month in
order to produce the front-line allocation and
I am sure that's where this form came from was
from that production and they were welcome to
look at those. That also gave them the
information of what everybody's salary was.
It gave them the information on who everybody
was. It gave them the information on what
people were allocated and how much was
allocated from every person. They were also
given the information on how much the payroll
taxes were, medical expenses and other items
that were included in these line items for the
front line allocation determination.

Q    They requested personnel reports
on each of the persons at the central office.

Was that given to them?

A    No.

Q    Did you tell them that or did
Phyllis Seavey tell them if you want that
you're going to have to sue us?

MR. TRAUB: Objection to the
form.

A    I don't remember what she told

LEX REPORTING SERVICE
800-608-6085

---

Dawley

239

you, but I told them I wouldn't produce it.

Q    It never came to your attention
that she said to them if you want that you're
going to have to sue us?

A    No, but I told them I wouldn't
give it to them.

Q    The plaintiffs are concerned with
the large number of investments that Marks,
Paneth & Shron represent here on behalf of the
Seavey's and I believe there is some private
buildings that they represent and the
plaintiff's concern is that the large amount
of monies being paid to Marks, Paneth & Shron
and the fact that it provides personal
services to individuals of the Seavey family
might jaundice their judgment in performing
the audits of these books. It was by reason
of that, that we asked for discovery as to all
of the buildings.

Did anyone tell you at our second
request not to give us copies of the full
sheet, but only provide the three buildings?

MR. TRAUB: Objection to
form.

LEX REPORTING SERVICE
800-608-6085

---

Dawley

240

I am not going to allow you
to answer. That would ask for
the invocation of the
attorney/client work privilege.

MR. KELLY: I am going to
object too for several reasons,
but since this is not going to be
answered I won't go into details.

Q    Did any non-attorney tell you not
to provide the full sheet the second time we
requested, but to truncate it and to provide
only the three investments?

MR. TRAUB: Again objection
to form.

If they do so it would have
been at the instructions of
counsel.

MR. HAYWOODE: I object to
that bit of speculation.

MR. TRAUB: That is nice,
Mel, but I am not allowing him to
answer.

MR. KELLY: I am going to
object as well, but since this is

LEX REPORTING SERVICE
800-608-6085

Dawley

241

2  not going to be answered I am not
3  going to go in detail on my
4  objection.
   Q    Is it not a fact that Plaintiff's
7  19 is a cropped and purposely abridged version
   of Plaintiff's 20?
8      MR. TRAUB:  Again objection
9  to the form.
10      The documents speak for
11  themselves.
12      MR. KELLY:  I am objecting
13  as well.
14      MR. TRAUB:  We are already
15  went over, as I pointed out at
16  the beginning, they are
17  completely two different months.
18  As I pointed out in my earlier
19  statement, Plaintiff's 19 is
20  September of 06 and Plaintiff's
21  20 is October of 06.  They are
22  different documents.
23  Q    Would the statement of October
24  20th of 06, have listed the other building
25  along with those three?

LEX REPORTING SERVICE
800-608-6085

Dawley

242

2      MR. TRAUB:  Objection to the
3  form.
4  A    October 20th of 06 shows all the
5  buildings.  September of 06 only shows the
6  three buildings and the allocation of
7  front-line to each one.
8      MR. TRAUB:  Are you asking
9  for the software this is printed
10  from.
11  Q    In September of 2006 would this
12  document have shown the other building in
13  question?
14      MR. TRAUB:  Objection to
15  form.
16      This was printed from a
17  software and so are you asking if
18  the software has more
19  information?
20      MR. HAYWOODE:  I am asking
21  if there is any way if they
22  truncated or cut off the rest of
   this document.
      MR. TRAUB:  In other words,
25  did they only print a portion of

LEX REPORTING SERVICE
800-608-6085

Dawley

243

2  the software?
3      MR. HAYWOODE:  Yes.
4      MR. TRAUB:  I am going to
5  object to the form.  The document
6  speaks for itself as does my
7  objections that were given in
8  response to your document
9  request.
10      MR. HAYWOODE:  Are you
11  directing the witness not to
12  answer?
13      MR. TRAUB:  I direct the
14  witness not to answer on the
15  grounds of attorney/client work
16  product.
17      MR. HAYWOODE:  Assuming that
18  an attorney told him to do it.
19      MR. TRAUB:  Including
20  someone at the direction of an
21  attorney told him to do it.  In
22  fact, knowing that someone at the
23  direction of an attorney told him
24  to do that.
25      MR. HAYWOODE:  I think you

LEX REPORTING SERVICE
800-608-6085

Dawley

244

2  argued yourself into that box.
3      MR. TRAUB:  It is not a box.
4  I stand by my objection.
5      MR. EDMONDS:  Can I put two
6  or three questions to him?
7      MR. TRAUB:  I do recognize
8  you're a member of the Bar.  In
9  this matter you're not a counsel
10  of record.  If you have three
11  questions I ask that your counsel
12  be given that, but I am not going
13  to allow a non-counsel of record
14  to --
15      MR. EDMONDS:  Plaintiff does
16  not have the right to inquire of
17  a witness?
18      MR. TRAUB:  Unless you can
19  show me why you would, I am not
20  going to allow it, but if you
21  have questions I ask you to write
22  them down and give them to your
23  counsel.
24      MR. EDMONDS:  I desire to.
25      MR. HAYWOODE:  Why don't we

LEX REPORTING SERVICE
800-608-6085

Dawley

245

2      let him ask it and then you can
3      object to it.
4         MR. TRAUB: I don't get why
5      you can't just ask it if they are
6      written down. I would be more
7      comfortable.
8         MR. EDMONDS: They are not
9      written down. The introduction
10     is. It is only because I want to
11     introduce these questions in this
12     fashion, but it would seem to me
13     that as a plaintiff I have a
14     right to examine this witness.
15        MR. TRAUB: You just did for
16     the last seven, eight hours
17     through your attorney.
18        MR. HAYWOODE: Well, now he
19     did this before. Let's let him
20     put the questions and you object
21     to that.
22        MR. TRAUB: I recognize he
23     did it before, but not with my
24     client. It was Mr. Jennings and
25     his counsel allowed it.

Dawley

246

2        MR. EDMONDS: You're going
3     to direct the witness not to
4     answer the question?
5        MR. TRAUB: I am not
6     actually going to allow you to
7     ask them.
8        MR. EDMONDS: You're not
9     going to ask prevent me from
10     asking him?
11       MR. HAYWOODE: I am going to
12     ask Mr. Edmonds to say to me what
13     his questions are, let him say it
14     out loud so we get it right.
15       MR. TRAUB: My other issue
16     is tag-teaming of getting a
17     deposition. You're entitled to
18     one interrogatory. As the
19     counsel of record you have been
20     doing it since 10:30 this
21     morning, so I don't see the need
22     to all of a sudden to allow the
23     plaintiff to ask questions, but
24     if you want to ask the questions
25     and then you can repeat them

Dawley

247

2      seems silly, but that's fine.
3         MR. KELLY: I object.
4         MR. EDMONDS: What is the
5      total dollars in the
6      non-distributable reserve account
7      of Fifth and 106th Street
8      Associates?
9    Q    What is the total dollars in the
10   non-distributable reserve account of Fifth and
11   106th Street Associates?
12        MR. TRAUB: Objection to
13     form.
14        THE WITNESS: As of when?
15        MR. EDMONDS: As of now.
16   Q    As of now.
17   A    **Now, as of now today in all**
18 **reserve accounts nonrestricted there is**
19 **probably around 800,000.00.**
20        MR. EDMONDS: Does your
21     record reflect, the amount that
22     was delivered as a reserve
23     account to Dalton Management as
24     of the time that they assumed
25     management for each of the

Dawley

248

2      projects?
3   Q    Does your record reflect, the
4   amount that was delivered as a reserve account
5   to Dalton Management as of the time that they
6   assumed management for each of the projects?
7        MR. TRAUB: This is a little
8     confusing.
9        I ask that we take a break
10     and your client can tell you the
11     questions he has. We are near
12     the end. It's 5:00.
13        MR. EDMONDS: This isn't
14     working.
15   A    **Do you have to ask it again what**
16 **are we doing?**
17        **Every reserve account that was**
18 **turned over to us by the prior management**
19 **company was put into accounts required by DHCR**
20 **so some of the reserve accounts are not under**
21 **our control. They are controlled by DHCR.**
22 **You have to request the money from them. You**
23 **have to have proof of your expenditure; for**
24 **example, real estate taxes and provide that**
25 **support to DHCR. They review it. They**

Dawley

249

1
2  approve it.  They countersign the check, which
3  has to be signed by one of the general
4  partners, so it takes two signatures and then
5  they -- that money flows into operating and
6  from operating sometimes it goes to the taxes,
7  sometimes it goes to -- direct to depending
8  upon which reserve account it comes out.
9      Q    What is the total amount of
10  reserves that were in DHCR and held by the
11  corporation when Dalton took over
12  approximately?
13              MR. TRAUB:  Objection.
14          It's a compound question.
15      A    I couldn't begin to tell you.
16  That is way too long ago.  That was in 2000
17  and I don't recall.
18              MR. HAYWOODE:  I will call
19          for the production of that
20          information.
21              MR. EDMONDS:  One further
22          question.
23              Are the reserve accounts
24          under Dalton's control invested
25          and reinvested?

LEX REPORTING SERVICE
800-608-6085

Dawley

250

2      Q    Are the reserve accounts that
3  Dalton controls as opposed to DHCR invested
4  and reinvested by Dalton or --
5      A    Well, we have --
6              MR. TRAUB:  Objection to the
7          form.
8      A    We have one account with Chase,
9  which is invested and Farm Credit notes and
10  money markets and the other account an excess
11  income account that's invested in money
12  markets.  No, excuse me -- yeah, it's money.
13  Markets.  The other accounts are held and
14  controlled by DHCR and invested by them.
15              MR. EDMONDS:  On behalf of
16          the partnership, is that correct?
17              THE WITNESS:  That's
18          correct.
19              MR. EDMONDS:  No further
20          questions.
21      Q    Is it fair to say that from your
22  testimony and from the use of the adjusted
23  journal entries, is it fair to say that the
24  role of Marks, Paneth & Shron in this matter
25  is more the role of the accountant than it is

LEX REPORTING SERVICE
800-608-6085

Dawley

251

1
2  the role of an auditor?
3              MR. KELLY:  Objection to
4          form.
5              Asked and answered.
6              MR. TRAUB:  Objection to
7          form.
8              MR. KELLY:  Objection for
9          form?
10              THE WITNESS:  Can I answer
11          it?
12              MR. TRAUB:  No.
13      Q    Do you consider Marks, Paneth and
14  Shron to be the auditors?
15              MR. TRAUB:  You mean Mr.
16          Dawley?
17      Q    I am sorry, to be the accountant
18  with regard to these matters?
19              MR. TRAUB:  Objection to
20          form and asked and answered.
21              MR. KELLY:  Objection to
22          form.
23      A    You said that I assume that they
24  are the accountant or the auditors?
25      Q    Do you consider that their role is

LEX REPORTING SERVICE
800-608-6085

Dawley

252

1
2  such that you consider them to be the
3  accountant rather than the auditors?
4      A    No.
5              MR. HAYWOODE:  I ask that
6          you mark this document as
7          Plaintiff's Exhibit 21.
8              (A letter dated November 25,
9          2008 was marked as
10          Plaintiff's Exhibit 21, for
11          identification, as of this
12          date.)
13      Q    It's a letter dated November 25,
14  2008.
15          Did you write that letter?
16      A    Yes.
17      Q    Would you read the letter, who is
18  the letter sent to?
19      A    John Edmonds with reference to
20  Logan Plaza.  It's dated November the 21, 2008
21  and it refers to his letter dated November the
22  17, 2008 and it reads, in that your statements
23  and numbers appear to have no relationship to
24  the books and records of Logan Plaza as I know
25  them, I am referring your letter of Logan to

LEX REPORTING SERVICE
800-608-6085

Dawley

253

2  the accounting firm of Marks, Paneth & Shron
3  LLP, i.e. Bill Jennings and request that we
4  have your accountant contact them for
5  explanation.
6      Q    You wrote that letter?
7      A    Yes.
8      Q    You signed that letter?
9      A    Yes.
10     Q    You said in that letter that
11 Marks, Paneth & Shron is the accountant?
12             MR. TRAUB:  Objection.
13             MR. KELLY:  Objection to the
14         form.
15             MR. TRAUB:  Objection to
16         form.
17             Misstates the letter.
18     A    It says --
19     Q    You said in that letter --
20     A    Accounting.
21     Q    Marks, Paneth and Shron was the
22 accounting firm for the corporation, is that
23 correct, you said that?
24     A    Yes.
25             MR. HAYWOODE:  No further

LEX REPORTING SERVICE
800-608-6085

---

Dawley

254

2      questions.
3  EXAMINATION BY
4  MR. KELLY:
5      Q    Good afternoon Mr. Dawley.  There
6  was lots of questions about adjusting journal
7  entires.  I'd just like to ask you a few more.
8             What is your understanding of an
9  adjusting journal entry?
10             MR. HAYWOODE:  Objection.
11             Calls for a legal opinion.
12     A    It's an entry that makes a journal
13 entry to the books and records to change the
14 balance.
15     Q    When you get a suggestion for an
16 adjusted journal entry from the auditor, do
17 you go back and change the entry in the books
18 of the general ledger for that transaction?
19     A    No.
20     Q    What do you do instead?
21     A    I take the balance sheet items,
22 which is assets, liabilities and equity.  I
23 take the final audited balance sheet items,
24 assets, liabilities and equity.  I make one
25 journal entry to bring those balances into

LEX REPORTING SERVICE
800-608-6085

---

Dawley

255

2  line, so that the audit shows that.  So that
3  my beginning balance on the next year, which
4  is January 1st, will reflect only the balance
5  sheet items that I need to start with.
6      Q    The original entries remain on the
7  general ledger, correct?
8      A    Yes, everything stays there.
9      Q    So anyone reviewing that general
10 ledger, would be able to see exactly what
11 money was paid to what vendor at any
12 particular time?
13     A    Yes.
14             MR. TRAUB:  Objection to
15         form.
16     A    Yes.
17     Q    When you make that adjusting
18 journal entry that one time, is that a
19 separate entry on the general ledger such that
20 someone reviewing it for that period would see
21 that entry?
22     A    Yes, I have complete back up.
23 Everything is coded, labeled and there is a
24 sheet at the very end that prints out what was
25 actually posted in the BJ Murray software

LEX REPORTING SERVICE
800-608-6085

---

Dawley

256

2  program.
3      Q    So when you get the suggested
4  journal entries from the auditor in this case,
5  Marks, Paneth & Shron, are you the individual
6  that makes the entry on to the general ledger?
7      A    Yes.
8      Q    So you physically have the papers
9  in review in front of you and review each
10 entry as you make it?
11     A    Right.
12     Q    So if you see an entry that you
13 disagree with, or you're don't understand or
14 it's just plain wrong, you will question it
15 with Marks, Paneth & Shron or whoever you feel
16 needs to be questioned, is that correct?
17     A    Yes.
18     Q    Now, I'd like to talk about the
19 bookkeeping that's done at Dalton Management.
20             Who receives the invoice for
21 expenses on behalf of Dalton Management?
22     A    The invoices come in.  They go to
23 your accounts payable clerk.  She sorts them
24 by building.  The managers from the building
25 come in each week.  They review those

LEX REPORTING SERVICE
800-608-6085

Dawley

257

1  invoices.  They approve the ones that they
2  feel are correct.  They are then entered into
3  the books as a payable and then at a later
4  date with funds available they are paid.
5       Q       Who enters them into the books as
6  a payable?
7       A       Veronica Mackenzie.
8       Q       She is not associated with Marks,
9  Paneth whatsoever?
10      A       No, she is not.
11      Q       Who prepares the checks to pay
12 these invoices after they have been approved?
13      A       The payroll clerk.  The payable
14 clerk, Veronica Mackenize.
15      Q       Does Marks, Paneth & Shron have
16 any input as to whether invoices are approved
17 or paid?
18      A       No.
19      Q       Tell me about how revenue is
20 received by Dalton Management on behalf of the
21 building?
22      A       Revenues come in two ways.  We
23 send out rent bills.  Some tenants return a
24 check along with their bill.  It goes directly

Dawley

258

1  to the bank and a lock box.  Alonzo Rodgers on
2  a daily basis logs in, brings up the
3  information and posts it, which automatically
4  posts to the individual's account, because
5  it's already coded and then sometimes the
6  tenants don't include a payment voucher so
7  that it can't be coded by the bank.  So it
8  comes back to us in an overnight packet where
9  he then goes through those checks, put them in
10 and scans them in and then posts them.
11      Q       Who sends out the rent bills?
12      A       Dalton Management.
13      Q       Does Marks, Paneth & Shron have
14 any role in sending out the rent bills?
15      A       No.
16      Q       You mentioned Alonzo Rodgers
17 involved in this process?
18      A       Yes.
19      Q       Is he involved with Marks, Paneth
20 whatsoever?
21      A       No.
22      Q       Is any of the employees you
23 mentioned earlier in your testimony, the six
24 or so affiliated with Marks, Paneth & Shron

Dawley

259

1  whatsoever?
2            MR. TRAUB:  Objection to
3            form.
4       A       No.
5       Q       Who receives the bank statements
6  on behalf of Dalton Management and the
7  building it manages?
8       A       I do.
9            I open them, 'cause they come in
10 sealed and the bank reconciliationis and
11 then they are filed.
12      Q       Who decided the accounting
13 procedures used at Dalton management?
14      A       I mostly did.
15      Q       Now, I am going to switch topics
16 and ask you about the work that Marks, Paneth
17 & Shron was involved in.
18            You had testified earlier that
19 Marks, Paneth & Shron provides audit services
20 to various of the buildings managed by Dalton
21 Management, is that correct?
22      A       Yes.
23      Q       Do you recall what other services,
24 other than audit services, Marks, Paneth &

Dawley

260

1  Shron provided to any of these entities?
2       A       They do the tax returns,
3  partnership tax return.  They do the -- well,
4  they help us with the rent increases.  They
5  help us with the RPIE, which is an annual
6  requirement.  They help us with the
7  certiaries, which is required to do in order
8  to keep the real estate taxes down and I know
9  that they look at some of the tax consequences
10 of doing certain things, i.e. the $180,000.
11      Q       With respect to the tax returns,
12 do you know if any of the entities had ever
13 been audited by any taxing authority?
14      A       Yes.
15      Q       What do you recall about that?
16      A       Umm, I believe Lakeview was
17 audited and that wasn't too long ago.  Before
18 that I don't think we had any audits.
19      Q       Do you know what tax periods were
20 audited in connection with Lakeview?
21      A       I don't recall.
22      Q       Do you know what the finding of
23 the audit was in connection with Lakeview?
24      A       No change.

Dawley

261

2  Q    So what do you understand no
3  change to mean?
4     A    No change is that there was no
5  changes to the tax return.
6         MR. HAYWOODE:  Objection to
7     what he understands it to mean.
8         MR. TRAUB:  You can answer.
9     A    When you get a no change from the
10  internal revenue that means that the tax
11  return that you filed will not be changed, so
12  there will be no additional income or expense
13  to the K-1 or changes to the K-1's.
14    Q    Is it fair to say that the IRS
15  examined the tax returns and concluded that
16  there was nothing incorrect to change?
17        MR. HAYWOODE:  Objection.
18        There is no indication that
19     the IRS examined every facet of
20     the return they may have sampled
21     like the auditors do.
22        MR. TRAUB:  Mr. Haywoode,
23     you yourself know that for the
24     last several years that Federal
25     rules allow for objections, but

LEX REPORTING SERVICE
800-608-6085

Dawley

262

2  there is no speaking objections.
3         MR. HAYWOODE:  But you
4     didn't listen to me.
5         MR. TRAUB:  I listened to
6     you.
7         MR. HAYWOODE:  So I returned
8     the favor.
9         I am shorter than your
10     objections.  It's an objection to
11     form.
12        MR. TRAUB:  Thank you.
13    A    They didn't find anything.  I
14  don't remember exactly what you asked, I am
15  sorry.
16    Q    I asked is it fair to say that the
17  after the IRS reviewed the returns, they found
18  that there was no mistakes or other things
19  that needed to be corrected?
20    A    There was nothing there to find so
21  they didn't find anything.
22    Q    With regard to the increase paid
23  my Cameron Pryce & Griffiths, with regard to
24  the increase how many times would you say they
25  came to the offices of Dalton Management to

LEX REPORTING SERVICE
800-608-6085

Dawley

263

2  inspect the books and records?
3     A    I am guessing maybe forty times.
4     Q    In any of those forty times, did
5  you refuse to provide them access to documents
6  other than what you testified about the
7  personal records?
8     A    No.
9     Q    In any of those forty times did
10  they ask to look at documents and were you
11  unable to locate such documents?
12    A    Yes.
13    Q    Do you recall the specific
14  instance?
15    A    The mortgages.
16    Q    Do you recall any other specific
17  instances?
18    A    No, just the mortgages was the big
19  item.
20    Q    In talking about your experience
21  at your prior positions you worked at Hudson
22  River Management.
23    A    That's correct.
24    Q    What is your position there?
25    A    I was the controller and also the

LEX REPORTING SERVICE
800-608-6085

Dawley

264

2  chief operating officer.
3     Q    What duties did you have at that
4  position?
5     A    The same as I did here only more
6  so, because there was only two of us taking
7  care of 2,000 tenants.
8     Q    Prior to that you indicated you
9  worked at an asbestos removal company?
10    A    Yes.
11    Q    What were your duties there?
12    A    Controller.
13    Q    What did being controller entail
14  at that company?
15    A    Trying to get them out of a mess.
16  They were over extended.  Basically what I
17  have done prior to, for like fifteen years,
18  was work out for real estate companies?
19    Q    Would it be fair to say for the
20  last twenty-five years or so you've been a
21  controller or chief operating officer for
22  various entities?
23    A    Yes.
24        MR. KELLY:  I have no
25     further questions.

LEX REPORTING SERVICE
800-608-6085

Dawley

265

1
2 FURTHER EXAMINATION BY
3 MR. HAYWOODE:
4      Q      Is it fair to say that Dalton
management, earns about $500,000.00 a year as
manager of the buildings that it functions in
7 for the Seavey's?
8              MR. TRAUB:  Objection to
9          form.
10             You mean the four buildings
11          at issue here?
12     Q      I am sorry, for the four buildings
13 here in excess of $510,000.00?
14     A      Let's see, that is pretty close,
15 about 55.
16     Q      In terms of your maintenance of
17 accounting records and what not, is it fair to
18 say that most of the requests were made of
19 you, indicating Dalton, were referred to
20 Marks, Paneth & Shron for an answer?
21             MR. TRAUB:  Objection to
22          form.
23     Q      Is that fair to say?
24             MR. KELLY:  Objection to
25          form.

LEX REPORTING SERVICE
800-608-6085

Dawley

266

2     Q      Most of the requests for
3 documentation was forwarded to Marks, Paneth &
4 Shron?
5     A      They spent days in our office
6 requesting information.  One of the very items
7 that you have as an Exhibit, which was the
8 front-line expenditure information was given
9 freely.  We provided everything that we had
10 there whenever they asked for it.
11             Some things I couldn't find,
12 because I didn't have the mortgage.  I didn't
13 have -- there were closing binders.  I didn't
14 have access to them.
15     Q      What percentage of these requests
16 were referred to Marks, Paneth & Shron?
17             MR. TRAUB:  Objection to
18          form.
19     A      I don't have a clue what
20 percentage.  Out of all the information that
21 they asked for very small.
22     Q      If I said to you that Mr. William
Jennings had testified that it is the habit of
24 not only Dalton, but all management companies
25 to refer all those questions to Marks, Paneth

LEX REPORTING SERVICE
800-608-6085

Dawley

267

1
2 & Shron for the building that they control
3 that they relate to would that sound to you be
4 a statement of truth or would it sound to be a
5 statement of exaggeration?
6              MR. TRAUB:  Objection to
7          form.
8              MR. KELLY:  Objection to
9          form.
10     A      I don't know what other companies
11 do with Bill Jennings.  I know that I am doing
12 exactly the same thing for Dalton that I did
13 for River Rental in their 2000 units.  I kept
14 books on a cash basis and they put them on an
15 accrual basis at the end of the year and
16 produced a financial statement.  They did the
17 tax returns.  That's -- you know, that's been
18 the procedure.
19     Q      Is it not a fact that the
20 accounting cover that's provided to Dalton by
21 Mark Paneth and Shron, enabling it and
22 abetting it, makes it possible for Dalton to
23 take in $500,000.00 a year when the total
24 accounting obligation is being placed on
25 Marks, Paneth & Shron?

LEX REPORTING SERVICE
800-608-6085

Dawley

268

1
2              MR. TRAUB:  Objection to
3          form.
4              Isn't it a fact.
5              That question is so
6          convoluted I am not going to
7          allow you to answer it.
8              MR. KELLY:  I am going to
9          object to the form as well.
10     Q      Aren't they making it possible for
11 Dalton to collect $500,000.00, by virtue of
12 their total covering of every conceivable
13 angle of the tax and accounting
14 responsibilities that Dalton has?
15             MR. TRAUB:  Same objection.
16          Question is so convoluted
17          and compound I am not going to
18          allow you to answer.
19             MR. HAYWOODE:  Obviously,
20          counsel.
21     Q      Do you understand the question,
22 sir?
23             MR. TRAUB:  It's got twenty
24          something angles.
25             MR. HAYWOODE:  Here we go

LEX REPORTING SERVICE
800-608-6085

Dawley

269

2 with speeches to the record.

3   Q   Do you understand the question?

4   A   I was told by counsel not to

5 answer.

6           MR. TRAUB: If you want to

7   break your question down to

8   individual pieces.

9           MR. HAYWOODE: No further

10   questions.

11 FURTHER EXAMINATION BY

12 MR. KELLY:

13   Q   In any of the inquiries you've

14 had of Marks, Paneth & Shron, have you ever

15 found them to be unresponsive to your

16 inquiries?

17   A   No.

18   Q   Have you ever had any problem with

19 what Marks, Paneth & Shron has done with any

20 of these entities?

21   A   No.

22   Q   Have you had any reason to doubt

23 that Marks, Paneth & Shron has been

24 forthcoming, with all the information that was

25 ever asked of them in connection with the

LEX REPORTING SERVICE
800-608-6085

---

Dawley

270

2 Dalton management entities?

3   A   No.

4           MR. KELLY: Thank you.

5           No further questions.

6 FURTHER EXAMINATION BY

7 MR. HAYWOODE:

8   Q   Has anyone at Marks, Paneth &

9 Shron ever described Dalton's operation as

10 being deficient and suggested that the

11 Dalton's operation is a lazy one? Has anyone

12 ever suggested that?

13           MR. TRAUB: Again objection

14   to form.

15           Again it's compound.

16   Q   I will break that one down.

17           Did anyone ever say that Dalton's

18 performance, in terms of the accounting

19 operation, is deficient to you?

20   A   No.

21   Q   Did they ever say that the Dalton

22 management's performance is a lazy one, that

23 they refer to questions to us because they

24 don't want to answer them themselves; anyone

25 ever say that to you?

LEX REPORTING SERVICE
800-608-6085

---

Dawley

271

2   A   No.

3           MR. HAYWOODE: That is it.

4           MR. TRAUB: Thank you.

5           -o0o-

6           (Whereupon, the deposition

7   of Ronald Dawley was concluded at

8   5:30 p.m.)

9

           _____

           R O N A L D   D A W L E Y

10

11

Subscribed and sworn to

12 before me this _____ day

of _____, 2009

13

           _____

14 NOTARY PUBLIC

15

16

17

18

19

20

21

22

23

24

25

LEX REPORTING SERVICE
800-608-6085

---

272

2           I N D E X

3

4 WITNESS          EXAMINATION BY          PAGE

5 R. Dawley        Mr. Haywoode          5,265

                                          270

6

7           Mr. Kelly          254,

                                          269

8

9           E X H I B I T S

10 PLAINTIFF'S                              PAGE

11  1   A letter dated May 16th          61

12  2   A five page list of adjusting
        journal entries          78

13

     3   A communication from Cameron, Pryce

14       & Griffiths to Dalton c/o of
         N. Seavey          91

15

     4   A response to questions posed in

16       Exhibit 3          104

17  5   A Logan Plaza Associates document 132

18  6   The entire housing agreement of

19       1/13/2000 with Logan Plaza
         Associates          156

20  7   A retainer agreement for auditing

21       services from Marks, Paneth &
         Shron          164

22  8   Two sets of requests          169

23  9   A copy of the general ledger

         expense sheet          191

24

25  10   One page of journal entries for
         the fiscal year ending 12/31/06   192

LEX REPORTING SERVICE
800-608-6085

273

(Index continued)

### EXHIBITS

| PLAINTIFF'S | | PAGE |
|---|---|---|
| 11 | An annual financial statements | 198 |
| 12 | Invoice #103442 | 207 |
| 13 | A document showing a check being paid for $5,000.00 | 208 |
| 14 | 2006 financial statement | 215 |
| 15 | A mortgage closing | 222 |
| 16 | A billing invoice | 222 |
| 17 | A Gray Stone Fanny May settlement | 224 |
| 18 | A document pertaining to an overage | 229 |
| 19 | A statement pertaining to Church Home, Logan Plaza and Charles Hill | 232 |
| 20 | The order to show cause | 234 |
| 21 | A letter dated 11/25/08 | 252 |

### REQUESTS FOR PRODUCTION

| DESCRIPTION | PAGE |
|---|---|
| Any documentation regarding whether the $15,000.00 from 2001 was billed in total again in 2006 | 218 |
| What is the total amount of reserves that were in HCR and held by the corporation when Dalton took over approximately | 249 |

---

274

(Index continued)

### INSERTS

| DESCRIPTION | PAGE |
|---|---|
| Whether any other Seavey buildings are operating without a security contract | 174 |

---

275

### C E R T I F I C A T E

I, ANGELA TORREGROSSA, a shorthand reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness(es) whose testimony is hereinbefore set forth was duly sworn by me, and the foregoing transcript is a true record of the testimony given by such witness(es).

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

_____

ANGELA TORREGROSSA

---

276

### ERRATA SHEET

The following are my corrections to the attached transcript:

| PAGE | LINE | SHOULD READ |
|---|---|---|
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |
| ---- | * ---- | ------------------------------- |

1

| # |
|---|

#103442 [1] - 273:6

| $ |
|---|

$1,000.00 [2] - 224:11, 225:15
$10,000.00 [3] - 130:7, 130:8, 216:25
$100,000.00 [2] - 142:24, 170:23
$100,368.00 [1] - 170:20
$108,000.00 [13] - 127:24, 128:16, 129:3, 129:4, 130:19, 131:4, 193:11, 196:3, 200:16, 201:11, 201:15, 206:18, 209:7
$108,525.45 [1] - 191:23
$12,476.00 [1] - 176:5
$12,476.03 [2] - 174:7, 174:8
$125,000.00 [1] - 208:5
$140,000.00 [1] - 11:12
$15,000 [1] - 222:5
$15,000.00 [6] - 208:16, 208:25, 216:11, 219:24, 222:8, 273:22
$180,000 [12] - 34:19, 38:9, 39:17, 60:6, 133:23, 142:5, 143:3, 143:18, 167:4, 190:22, 212:14, 260:11
$180,000.00 [9] - 27:14, 28:2, 29:23, 32:24, 34:14, 39:7, 59:15, 61:23, 133:20
$181,000.00 [6] - 137:16, 141:25, 151:7, 166:19, 167:12, 168:5
$181,927.02 [1] - 133:17
$22,000.00 [5] - 224:12, 224:18, 225:22, 226:12, 228:17
$23,000.00 [2] - 216:23, 224:11

$23,022.00 [1] - 225:13
$23,899.00 [2] - 219:15, 219:18
$24,000.00 [2] - 196:25, 216:23
$29,000 [1] - 188:13
$29,915.16 [1] - 187:4
$3,811.00 [1] - 225:10
$32,588.00 [1] - 225:9
$32,999 [1] - 219:19
$322,000.00 [1] - 197:3
$34,000.00 [14] - 127:13, 128:17, 131:17, 190:19, 195:6, 196:16, 200:17, 201:17, 201:20, 203:6, 203:8, 206:17, 212:15, 216:24
$34,155.00 [1] - 199:15
$35,000.00 [1] - 231:16
$370,000.00 [1] - 101:6
$372,020.00 [1] - 79:15
$4,000,000,000.00 [4] - 62:22, 72:13, 74:7, 74:10
$4,205.00 [1] - 178:6
$44.00 [1] - 157:20
$5,000.00 [3] - 129:9, 129:23, 273:8
$500,000.00 [3] - 265:5, 267:23, 268:11
$500.00 [3] - 126:18, 126:20, 126:23
$510,000.00 [1] - 265:13
$59,000.00 [1] - 217:4
$59,977.00 [1] - 219:19
$7,555.00 [1] - 225:12
$82,000.00 [10] - 194:4, 196:13, 197:14, 197:18, 200:6, 200:25, 201:16, 202:7, 204:15, 207:6
$82,900.00 [1] - 217:3
$82,909.00 [2] - 193:21, 194:10
$9,000 [1] - 176:6
$9,084.60 [1] - 174:9
$90,000.00 [2] - 139:8, 143:23

' ' '

'97 [1] - 220:24
'98 [1] - 220:24

| 0 |
|---|

03 [1] - 232:8
06 [7] - 235:13, 235:14, 241:20, 241:21, 241:24, 242:4, 242:5

| 1 |
|---|

1 [11] - 26:11, 61:8, 61:11, 61:15, 90:22, 90:24, 91:5, 92:13, 92:15, 94:15, 272:11
1/13/2000 [1] - 272:18
1/17/2000 [1] - 220:8
1/2/2000 [1] - 156:14
1/25/2000 [1] - 220:7
10 [10] - 104:21, 192:13, 192:17, 192:21, 194:12, 194:16, 194:19, 195:14, 200:24, 272:24
100 [1] - 85:24
10010 [1] - 5:14
10016 [1] - 3:11
103442 [4] - 207:8, 207:23, 208:9, 208:25
104 [1] - 272:16
105 [1] - 18:10
10604 [1] - 3:17
106th [19] - 12:18, 13:18, 72:2, 125:11, 154:21, 157:18, 164:16, 165:16, 167:3, 167:13, 167:20, 197:10, 210:13, 215:23, 234:5, 234:8, 234:14, 247:7, 247:11
106TH [2] - 1:4, 1:10
108 [1] - 216:22
10:30 [1] - 246:20
10:45 [1] - 1:24
10th [4] - 25:9, 110:23, 111:7, 112:17
11 [3] - 198:16, 198:19, 273:5
11,169 [1] - 231:21

11/25/08 [1] - 273:17
11/6/2000 [1] - 220:7
11225 [1] - 3:6
11th [3] - 105:7, 105:13, 106:4
12 [8] - 169:6, 180:2, 180:6, 207:25, 220:4, 220:13, 222:7, 273:6
12/31/06 [1] - 272:25
12/31/2006 [2] - 192:16, 192:25
13 [5] - 79:13, 79:16, 208:14, 208:18, 273:7
13-B [4] - 159:12, 162:9, 162:10, 164:7
132 [1] - 272:17
14 [3] - 215:16, 215:19, 273:9
15 [7] - 222:24, 223:3, 223:18, 224:6, 225:2, 225:7, 273:10
156 [1] - 272:19
15th [3] - 25:10, 105:25, 106:5
16 [5] - 24:9, 222:24, 223:4, 224:7, 273:11
16,753 [1] - 231:21
164 [1] - 272:21
169 [1] - 272:22
16th [3] - 61:12, 61:13, 272:11
17 [7] - 221:25, 223:24, 224:3, 226:13, 228:6, 252:22, 273:12
174 [1] - 274:6
175 [1] - 10:2
18 [5] - 229:12, 229:15, 229:18, 232:11, 273:13
181,927.02 [1] - 136:17
19 [9] - 232:22, 233:2, 234:3, 235:8, 235:11, 236:18, 241:6, 241:19, 273:14
191 [1] - 272:23
192 [1] - 272:25
1967 [4] - 17:13, 43:6, 65:16, 65:19
198 [1] - 273:5
1997 [3] - 135:4
1998 [3] - 135:5, 135:6
1999 [3] - 6:16, 6:18, 220:24
1st [3] - 89:19, 89:24, 255:4

2

2 [11] - 3:11, 26:16, 78:16, 78:20, 80:17, 104:6, 165:23, 197:5, 224:23, 236:23, 272:12
2,000 [1] - 264:7
20 [8] - 234:18, 234:21, 235:4, 235:11, 236:17, 241:7, 241:21, 273:16
2000 [10] - 20:11, 20:18, 20:21, 21:2, 27:18, 134:22, 156:9, 158:25, 249:16, 267:13
20005 [1] - 224:10
20007 [1] - 88:19
2001 [6] - 198:4, 202:12, 216:12, 217:7, 218:21, 273:22
2002 [2] - 207:9, 207:13
2002/2003 [1] - 218:6
2003 [1] - 198:4
2004 [12] - 165:5, 165:8, 197:3, 198:4, 224:13, 225:17, 226:4, 226:18, 226:25, 231:20
2005 [6] - 165:9, 224:9, 225:17, 226:5, 227:7, 231:21
2006 [37] - 63:2, 76:9, 83:19, 127:6, 127:25, 128:16, 129:3, 130:12, 130:18, 131:5, 132:16, 132:22, 165:20, 170:20, 176:5, 190:18, 191:20, 196:4, 199:9, 201:11, 202:20, 203:8, 204:21, 208:5, 215:14, 215:20, 216:12, 218:7, 218:22, 219:25, 220:5, 220:12, 223:22, 236:19, 242:11, 273:9, 273:22
2007 [3] - 21:11, 24:9, 104:21
2008 [6] - 25:7, 104:8, 252:9, 252:14,

252:20, 252:22
2009 [2] - 1:23, 271:12
207 [1] - 273:6
208 [1] - 273:8
20th [3] - 25:7, 241:24, 242:4
21 [4] - 252:7, 252:10, 252:20, 273:17
215 [1] - 273:9
218 [1] - 273:22
21st [1] - 10:5
22 [1] - 80:7
221 [1] - 49:12
222 [2] - 273:10, 273:11
224 [1] - 273:12
229 [1] - 273:13
23 [2] - 219:17
232 [1] - 273:15
234 [1] - 273:16
24 [1] - 1:23
249 [1] - 273:24
24th [1] - 220:14
25 [4] - 209:8, 219:18, 252:8, 252:13
252 [1] - 273:17
254 [1] - 272:6
26 [1] - 198:24
269 [1] - 272:7
27 [1] - 198:24
27,000 [2] - 231:22, 232:2
270 [1] - 272:5
28,000 [1] - 232:2
2800 [2] - 7:18
28th [3] - 6:25, 7:2, 207:8

## 3

3 [19] - 3:17, 79:16, 79:17, 80:19, 80:20, 91:4, 91:10, 92:23, 93:12, 94:14, 104:7, 104:11, 104:18, 104:22, 105:15, 156:9, 223:21, 272:13, 272:16
30 [1] - 224:13
303 [1] - 10:5
30th [2] - 228:20, 229:4
31 [1] - 165:4
32BJ [1] - 162:2
34 [2] - 6:22, 209:9
3rd [4] - 91:6, 169:7, 191:5, 229:13

## 4

4 [9] - 80:21, 80:22, 92:23, 93:14, 104:9, 104:13, 106:3, 191:4, 272:15
40 [1] - 12:6
401 [1] - 5:13
45 [1] - 12:4
48 [2] - 56:18, 56:20
4th [1] - 3:17

## 5

5 [22] - 27:12, 28:25, 30:2, 80:23, 81:2, 81:4, 111:12, 112:25, 132:8, 132:11, 132:15, 133:12, 156:23, 159:11, 161:5, 161:14, 162:7, 162:15, 163:24, 164:6, 182:10, 272:17
5,265 [1] - 272:5
50 [6] - 30:17, 37:21, 38:15, 59:2, 141:8
50,000 [1] - 221:14
50/50 [5] - 34:25, 37:9, 38:11, 141:5, 152:17
500 [2] - 1:22, 67:19
55 [1] - 265:15
5:00 [1] - 248:12
5:30 [1] - 271:8

## 6

6 [8] - 81:5, 81:6, 93:2, 154:24, 156:6, 156:11, 156:15, 156:18, 272:18
6/9/2005 [1] - 228:16
60 [2] - 11:15, 12:2
61 [1] - 272:11
6204 [2] - 193:22, 193:23
6220 [1] - 193:21
6530 [1] - 170:21

## 7

7 [7] - 93:3, 164:13, 164:18, 164:23, 222:23, 223:18, 272:20

## 71

71 [1] - 3:5
71923 [1] - 1:25
78 [1] - 272:12

## 8

8 [21] - 93:5, 154:22, 156:19, 156:22, 156:24, 157:5, 162:15, 163:24, 169:9, 169:12, 179:25, 182:5, 185:6, 194:20, 194:22, 194:24, 194:25, 219:16, 222:23, 223:21, 272:22
80 [1] - 11:24
800,000.00 [1] - 247:19
83 [2] - 209:7, 216:22

## 9

9 [8] - 191:9, 191:13, 195:23, 195:25, 224:9, 224:10, 229:13, 272:23
90,000.00 [1] - 37:18
90th [1] - 10:2
91 [1] - 272:14

## A

A&S [2] - 140:24, 142:2
a.m [1] - 1:24
a/k/a [1] - 1:5
abetting [1] - 267:22
able [13] - 22:18, 25:20, 26:9, 62:23, 75:23, 90:2, 92:6, 92:9, 92:11, 94:13, 112:13, 222:10, 255:10
above-entitled [1] - 2:3
Abraham [1] - 139:11
abridged [1] - 241:6
Absolutely [2] - 49:8, 236:10
acceptable [3] - 158:5, 159:14, 213:13
acceptance [1] - 82:21
accepted [2] - 201:4, 214:7

access [7] - 8:11, 8:12, 23:19, 121:7, 121:8, 263:5, 266:14
accommodate [1] - 68:8
accordance [2] - 43:13, 49:12
according [2] - 137:12, 206:8
account [39] - 25:13, 25:14, 88:4, 88:5, 88:14, 88:24, 89:11, 89:13, 89:15, 89:16, 90:15, 90:18, 101:2, 103:11, 107:19, 113:8, 115:5, 118:24, 118:25, 153:3, 160:14, 170:20, 193:21, 193:22, 193:23, 197:5, 204:24, 223:13, 247:6, 247:10, 247:23, 248:4, 248:17, 249:8, 250:8, 250:10, 250:11, 258:5
accountant [40] - 23:24, 28:23, 29:21, 42:19, 42:20, 43:2, 63:13, 63:16, 76:4, 94:2, 96:20, 97:6, 97:14, 97:22, 99:3, 100:6, 101:16, 102:20, 107:10, 107:12, 107:15, 107:18, 107:22, 108:14, 108:24, 109:8, 109:11, 112:13, 139:11, 140:3, 144:22, 163:19, 227:12, 250:25, 251:17, 251:24, 252:3, 253:4, 253:11
accountant's [1] - 108:18
accountants [1] - 222:15
accounting [49] - 15:20, 16:2, 16:16, 31:22, 33:13, 33:25, 41:9, 43:14, 43:22, 44:11, 44:16, 62:17, 65:4, 65:15, 65:18, 98:15, 98:16, 98:19, 98:23, 99:18, 99:22, 100:7, 100:10, 100:20, 100:22, 111:2, 112:12,

140:14, 142:14, 142:15, 144:15, 193:10, 194:11, 196:18, 199:14, 204:6, 206:6, 216:24, 221:21, 224:7, 253:2, 253:22, 259:13, 265:17, 267:20, 267:24, 268:13, 270:18
Accounting [1] - 253:20
accounts [43] - 11:5, 23:2, 27:12, 66:18, 71:3, 71:7, 71:8, 73:21, 83:24, 84:21, 84:24, 85:10, 85:13, 87:11, 87:25, 89:21, 90:6, 92:24, 93:6, 94:4, 94:8, 94:10, 108:22, 111:12, 111:19, 112:2, 112:25, 117:10, 117:22, 118:24, 119:20, 121:2, 159:25, 217:15, 217:19, 219:22, 247:18, 248:19, 248:20, 249:23, 250:2, 250:13, 256:23
accrual [37] - 73:9, 73:17, 74:6, 85:19, 87:8, 92:25, 93:3, 93:21, 94:3, 94:5, 94:17, 95:9, 95:11, 103:2, 103:5, 111:3, 111:15, 111:17, 112:12, 112:15, 113:6, 113:19, 115:16, 122:11, 122:18, 122:20, 123:3, 123:18, 204:23, 209:21, 217:21, 219:5, 220:2, 220:3, 225:15, 267:15
accruals [3] - 72:23, 123:5, 144:23
accrued [17] - 93:2, 94:10, 114:8, 188:2, 202:5, 202:11, 202:22, 204:6, 204:9, 205:9, 217:8, 217:23, 218:5, 218:20, 222:16, 223:9, 223:14
accumulated [4] - 81:18, 93:4, 122:2,

2

LEX REPORTING SERVICE
800-608-6085

202:6
accumulation [1] - 70:21
acquiesced [1] - 151:23
acquiescing [1] - 214:14
acquired [1] - 34:16
acting [1] - 97:14
action [5] - 2:3, 60:8, 174:15, 190:12, 275:16
activity [4] - 67:9, 87:8, 122:7, 203:22
acts [1] - 166:4
actual [6] - 86:21, 174:9, 180:10, 205:12, 227:5
actuality [5] - 73:14, 86:6, 90:5, 153:20, 190:21
ad [1] - 151:15
ADAM [1] - 3:22
add [4] - 79:24, 79:25, 102:6, 102:7
added [1] - 111:24
addition [3] - 129:9, 158:14, 193:19
additional [7] - 16:11, 16:12, 183:12, 186:13, 186:19, 186:22, 261:12
address [1] - 5:11
addressed [3] - 105:20, 221:2, 226:5
adjourned [1] - 132:3
adjust [6] - 75:7, 75:8, 83:23, 84:25, 87:16, 93:20
adjusted [8] - 75:12, 88:9, 89:17, 112:14, 187:21, 219:8, 250:22, 254:16
adjusting [8] - 25:13, 78:11, 78:18, 193:5, 254:6, 254:9, 255:17, 272:12
Adjustment [1] - 219:16
adjustment [14] - 80:10, 80:13, 80:15, 93:2, 94:6, 110:25, 111:2, 192:4, 194:3, 196:5, 209:9, 217:5, 219:16, 219:17
adjustments [42] - 71:5, 73:23, 74:3, 76:3, 76:15, 79:6, 79:7, 79:23, 80:8, 81:8, 81:12, 81:15,

81:17, 81:19, 81:25, 83:19, 84:13, 85:4, 85:8, 86:18, 86:20, 87:6, 87:7, 87:21, 101:10, 101:23, 102:16, 103:4, 108:11, 111:21, 113:6, 201:4, 209:5, 212:13, 213:5, 213:23, 216:20, 217:13, 217:14, 219:16, 220:2, 220:3
administer [1] - 4:18
admission [1] - 51:6
admit [1] - 223:23
advertised [1] - 172:10
advice [3] - 59:7, 134:9, 134:15
advise [2] - 163:22
advised [2] - 47:3, 58:21
advisement [5] - 173:6, 173:20, 181:11, 186:3, 218:25
affairs [2] - 5:16, 109:18
affidavit [1] - 25:5
affiliated [1] - 258:25
afternoon [1] - 254:5
agencies [6] - 125:9, 158:6, 159:6, 168:16, 199:23, 212:8
agency [3] - 160:14, 168:6, 171:20
agent [3] - 19:3, 107:17, 159:19
agents [4] - 63:18, 64:15, 155:3, 155:9
ago [12] - 31:4, 33:10, 46:12, 50:13, 59:11, 59:14, 67:24, 96:18, 249:16, 260:18
agree [7] - 84:25, 108:16, 111:20, 144:14, 144:21, 207:13, 212:12
agreed [1] - 152:14
AGREED [3] - 4:4, 4:11, 4:16
agreement [40] - 26:19, 30:15, 30:20, 30:24, 83:25, 84:21, 125:24, 141:3, 141:7, 143:15, 143:16, 144:9, 144:10, 152:19,

154:18, 154:25, 155:3, 155:16, 155:20, 155:21, 156:8, 156:13, 157:13, 159:10, 162:13, 164:2, 164:5, 164:14, 164:19, 165:7, 165:9, 165:19, 167:15, 167:19, 167:20, 168:3, 213:24, 213:25, 272:18, 272:20
ahead [8] - 27:3, 27:11, 28:20, 31:22, 55:7, 126:14, 222:10, 224:22
allegation [1] - 177:6
allege [1] - 176:22
allocate [1] - 158:12
allocated [2] - 238:10, 238:11
allocation [5] - 233:22, 234:15, 238:3, 238:15, 242:6
allocations [1] - 232:14
allow [11] - 142:16, 147:6, 235:22, 240:2, 244:13, 244:20, 246:6, 246:22, 261:25, 268:7, 268:18
allowance [1] - 93:5
allowed [7] - 22:22, 145:19, 148:5, 157:19, 157:21, 158:11, 245:25
allowing [1] - 240:22
almost [4] - 33:9, 110:23, 169:18, 170:13
alone [1] - 101:3
Alonzo [6] - 10:17, 12:3, 117:23, 169:21, 258:2, 258:17
ALSO [1] - 3:21
altered [1] - 235:25
alternative [4] - 28:20, 34:23, 37:4, 59:7
ambiguous [2] - 15:10, 15:15
amortization [4] - 72:22, 79:9, 93:4, 95:16
amount [43] - 35:4, 36:25, 37:8, 37:15, 38:2, 60:19, 72:14, 79:21, 102:10,

113:10, 114:15, 115:6, 120:3, 125:10, 125:14, 128:2, 129:22, 137:16, 139:2, 139:4, 187:4, 187:13, 187:19, 188:13, 199:7, 200:15, 203:18, 205:8, 208:11, 209:4, 217:5, 219:14, 219:23, 223:9, 229:25, 231:18, 231:23, 239:13, 247:21, 248:4, 249:9, 273:23
amounts [3] - 125:5, 191:19, 203:2
analysis [4] - 196:20, 197:24, 198:3, 198:8
AND [16] - 1:4, 1:4, 1:6, 1:9, 1:10, 1:11, 1:12, 1:13, 1:13, 1:14, 1:15, 1:16, 1:16, 4:4, 4:10, 4:15
ANGELA [2] - 275:5, 275:21
Angela [1] - 2:5
angle [1] - 268:13
angles [1] - 268:24
annual [4] - 198:17, 198:25, 260:6, 273:5
answer [90] - 11:11, 11:20, 15:7, 20:6, 34:7, 39:21, 42:5, 44:3, 44:19, 48:5, 49:2, 49:6, 49:15, 49:17, 49:24, 50:11, 51:3, 51:10, 51:19, 51:22, 51:25, 53:8, 53:12, 53:14, 53:22, 54:2, 54:10, 54:13, 54:22, 54:24, 55:10, 55:23, 57:4, 57:13, 57:15, 57:20, 58:4, 60:16, 73:17, 77:7, 77:12, 77:13, 77:16, 87:4, 95:4, 98:2, 103:18, 103:21, 105:24, 139:23, 141:18, 143:10, 145:4, 146:13, 146:14, 147:6, 148:8, 149:6, 150:9, 157:12, 160:25, 174:22, 174:25, 175:23, 176:7, 202:25, 205:16, 207:19, 211:21, 214:24, 214:25,

215:5, 215:6, 215:8, 217:6, 218:19, 235:23, 236:5, 240:3, 240:23, 243:12, 243:14, 246:4, 251:10, 261:8, 265:20, 268:7, 268:18, 269:5, 270:24
answered [19] - 15:12, 33:5, 48:11, 84:17, 84:19, 131:7, 131:10, 138:7, 138:11, 138:21, 141:16, 145:11, 145:13, 148:2, 148:6, 240:9, 241:2, 251:5, 251:20
answering [3] - 77:19, 163:10, 211:23
anthropology [1] - 197:15
anticipated [1] - 227:2
anticipating [1] - 114:18
appear [8] - 106:11, 183:13, 184:3, 201:23, 201:24, 228:23, 232:9, 252:23
appeared [2] - 144:8, 183:4
appearing [1] - 226:12
application [2] - 129:7, 184:23
applies [1] - 157:15
apply [3] - 19:8, 157:17, 167:23
applying [1] - 31:15
appreciate [2] - 98:8, 141:17
appreciation [1] - 101:7
approached [4] - 21:10, 31:24, 32:6, 176:7
appropriate [6] - 15:4, 19:9, 45:21, 119:24, 145:24, 183:10
approval [2] - 129:24, 130:9, 130:11
approve [3] - 95:23, 96:11, 97:10, 125:19, 249:2, 257:2
approved [5] - 96:3, 129:18, 172:10, 257:13, 257:17
approves [1] - 96:8
April [1] - 135:5
area [6] - 7:8, 7:15,

3

7:24, 7:25, 15:20,
23:5
argue [4] - 145:15,
146:9, 147:12, 163:4
argued [1] - 244:2
arguing [1] - 53:19
arise [1] - 151:22
arrear [1] - 228:21
Art [1] - 16:13
Arts [1] - 17:12
AS [8] - 1:4, 1:6, 1:9,
1:11, 1:12, 1:13,
1:15, 1:16
asbestos [3] - 17:9,
17:14, 264:9
aside [1] - 117:20
assert [1] - 224:10
assets [3] - 89:15,
254:22, 254:24
assign [1] - 7:19
assistant [2] - 10:15,
160:2
associated [2] -
13:16, 257:9
associates [1] - 22:5
Associates [23] - 9:23,
10:3, 12:13, 12:14,
12:15, 12:16, 12:17,
12:18, 132:15,
154:21, 156:10,
165:16, 167:4,
167:21, 215:23,
247:8, 247:11,
272:17, 272:19
ASSOCIATES [11] -
1:5, 1:6, 1:6, 1:10,
1:11, 1:11, 1:12,
1:14, 1:14
assume [7] - 89:8,
120:11, 134:22,
183:19, 225:2,
225:7, 251:23
assumed [2] - 247:24,
248:6
Assumes [1] - 42:2
assumes [4] - 42:15,
44:4, 44:8, 45:2
assuming [4] - 20:3,
102:6, 191:2, 221:20
Assuming [1] - 243:17
attached [2] - 76:17,
276:5
attend [1] - 224:20
attention [25] - 92:3,
116:22, 117:5,
133:11, 133:18,
134:8, 135:23,
154:25, 157:6,
165:23, 166:19,
169:16, 174:5,

176:17, 176:24,
177:10, 177:24,
178:11, 179:4,
179:8, 187:10,
191:12, 230:25,
231:8, 239:3
Attorney [1] - 3:4
attorney [6] - 41:14,
240:10, 243:18,
243:21, 243:23,
245:17
attorney's [1] - 147:5
attorney/client [3] -
174:19, 240:5,
243:15
attorneys [2] - 4:5,
10:24
Attorneys [3] - 3:10,
3:16
audit [40] - 21:12,
21:20, 23:11, 69:14,
69:17, 69:24, 69:25,
71:14, 71:19, 71:21,
87:9, 88:9, 95:5,
95:7, 97:11, 98:17,
98:20, 100:12,
114:3, 119:5, 119:6,
129:5, 136:5, 170:8,
192:2, 195:16,
201:21, 201:22,
201:23, 209:8,
210:9, 213:25,
214:2, 216:23,
220:8, 220:11,
255:2, 259:20,
259:25, 260:24
audited [10] - 110:16,
111:13, 126:25,
157:24, 159:5,
212:5, 254:23,
260:14, 260:18,
260:21
auditing [11] - 98:23,
99:18, 99:21, 127:7,
164:14, 164:20,
194:13, 194:18,
204:7, 227:12,
272:20
auditor [20] - 76:2,
100:8, 107:25,
108:4, 108:6,
108:15, 108:18,
109:17, 109:19,
109:22, 116:3,
125:23, 125:25,
129:10, 140:4,
214:6, 227:11,
251:2, 254:16, 256:4
auditor's [5] - 119:7,
119:17, 205:21,

210:22, 227:24
Auditors [2] - 1:18,
110:12
auditors [13] - 118:5,
120:9, 124:13,
127:4, 190:20,
201:7, 205:22,
206:2, 210:12,
251:14, 251:24,
252:3, 261:21
audits [3] - 210:20,
239:18, 260:19
August [1] - 207:8
authority [4] - 118:5,
162:5, 162:10,
260:14
authorized [1] - 4:18
automatically [1] -
258:4
available [9] - 23:12,
67:20, 119:10,
119:19, 121:14,
183:16, 202:21,
202:23, 257:5
Avenue [3] - 3:11,
5:13, 6:22
AVERY [1] - 1:13
Avery [5] - 13:22,
31:9, 32:5, 32:18,
183:15
aware [8] - 20:23,
29:6, 29:7, 30:22,
60:6, 143:18,
203:17, 205:15

## B

Bachelor [1] - 17:12
Bachelors [2] - 16:10,
16:13
backup [1] - 29:22
backwards [1] -
202:11
badgering [2] - 146:2,
150:8
Baer [17] - 50:15,
50:16, 50:24, 52:11,
58:9, 58:12, 174:16,
175:14, 178:22,
179:6, 180:19,
181:5, 181:9, 185:9,
185:12, 185:17,
186:7
Baer's [2] - 184:14,
186:16
balance [56] - 27:22,
64:19, 64:20, 64:24,
65:2, 65:6, 65:13,
65:23, 66:17, 66:23,

67:3, 67:4, 68:9,
68:12, 68:16, 69:4,
69:7, 69:15, 69:21,
69:25, 70:6, 70:11,
73:20, 73:22, 73:24,
74:2, 75:7, 75:8,
75:13, 75:24, 76:20,
83:24, 84:20, 84:24,
85:13, 87:14, 87:17,
88:11, 88:25, 89:14,
89:16, 89:20, 95:8,
117:9, 213:24,
216:20, 219:8,
219:18, 222:16,
225:12, 254:14,
254:21, 254:23,
255:3, 255:4
balances [12] - 67:12,
69:6, 70:20, 74:22,
83:24, 84:3, 87:15,
87:16, 89:17,
109:24, 110:3,
254:25
bank [6] - 11:3, 22:23,
258:2, 258:8, 259:6,
259:11
Bar [1] - 244:8
base [1] - 189:17
baseball [2] - 35:10,
35:11
based [3] - 108:9,
206:3, 210:20
basic [1] - 23:10
basis [42] - 25:11,
46:4, 72:19, 73:2,
73:10, 73:16, 73:17,
85:18, 85:19, 86:3,
87:5, 87:8, 87:9,
90:16, 90:19, 92:19,
94:17, 95:9, 97:9,
101:8, 111:15,
111:18, 113:5,
121:23, 122:8,
122:11, 122:18,
122:19, 122:20,
123:3, 123:12,
123:16, 123:22,
124:19, 124:21,
126:21, 204:2,
217:21, 258:3,
267:14, 267:15
bear [1] - 24:15
bears [1] - 207:8
becomes [1] - 28:18
Bedford [2] - 18:2,
18:4
began [2] - 20:17,
88:19
begin [4] - 121:3,
130:25, 188:18,

249:15
beginning [6] - 27:22,
85:12, 88:10, 95:8,
241:16, 255:3
behalf [5] - 239:10,
250:15, 256:21,
257:21, 259:7
below [1] - 225:13
benefits [1] - 159:20
best [2] - 49:18,
187:18
Bethune [1] - 12:16
better [1] - 67:25
Better [1] - 141:19
between [15] - 4:5,
8:8, 30:15, 38:11,
50:5, 62:22, 65:5,
72:14, 88:18, 98:22,
143:16, 162:15,
169:19, 185:13,
214:4
Between [2] - 170:10,
210:6
bid [2] - 172:7, 172:9
big [1] - 263:18
Bill [19] - 24:23, 46:2,
46:6, 46:8, 46:16,
46:20, 46:23, 47:12,
47:22, 48:2, 48:8,
48:20, 56:7, 58:21,
58:24, 137:10,
137:14, 253:3,
267:11
bill [11] - 19:4, 64:16,
123:6, 174:7, 174:9,
207:11, 220:5,
221:11, 224:11,
226:21, 257:25
Bill's [1] - 60:18
billed [7] - 123:6,
218:21, 221:21,
225:9, 227:6,
228:25, 273:22
billing [7] - 222:3,
222:5, 222:15,
223:2, 224:7,
224:23, 273:11
billings [2] - 22:24,
220:25
bills [4] - 64:17,
257:24, 258:12,
258:15
binders [1] - 266:13
bit [1] - 240:20
BJ [7] - 65:8, 67:7,
67:17, 68:6, 72:18,
123:21, 255:25
blanket [1] - 103:6
blood [1] - 275:16
Bloomingdales [2] -

139:12, 140:24
**Bob** [1] - 183:15
**bona** [1] - 220:15
**bonus** [1] - 126:18
**booked** [2] - 213:13, 213:22
**bookkeeping** [3] - 155:4, 159:24, 256:19
**books** [97] - 19:10, 19:14, 19:19, 21:4, 21:8, 22:2, 22:8, 27:24, 28:14, 28:16, 28:21, 29:17, 30:8, 30:12, 32:25, 33:10, 35:2, 36:25, 37:16, 38:3, 42:11, 45:16, 46:11, 59:4, 59:10, 60:20, 60:21, 60:24, 61:24, 62:23, 63:21, 63:25, 66:19, 71:2, 71:12, 71:14, 71:19, 72:10, 72:19, 73:2, 73:15, 74:5, 74:14, 74:20, 75:4, 75:6, 81:22, 83:22, 84:4, 84:9, 84:12, 85:8, 85:12, 86:21, 86:22, 86:23, 87:5, 87:7, 88:7, 88:8, 88:13, 89:19, 90:17, 92:24, 93:21, 94:3, 94:4, 102:25, 107:20, 108:8, 110:13, 111:14, 112:6, 113:5, 122:11, 126:6, 130:18, 131:3, 138:24, 139:14, 143:21, 143:22, 152:15, 159:2, 187:20, 188:13, 213:24, 222:2, 239:18, 252:24, 254:13, 254:17, 257:4, 257:6, 263:2, 267:14
**born** [2] - 153:14, 155:9
**Boston** [2] - 33:21, 198:13
**bought** [1] - 68:6
**bound** [1] - 166:22
**box** [3] - 244:2, 244:3, 258:2
**boxes** [1] - 185:15
**brackets** [8] - 180:7, 180:12, 180:15, 181:18, 182:11, 184:10, 184:13, 185:7

**Brandon** [1] - 17:18
**Break** [1] - 214:20
**break** [10] - 124:23, 128:13, 214:20, 215:9, 215:11, 216:3, 226:14, 248:9, 269:7, 270:16
**breakdown** [1] - 68:5
**briefly** [1] - 166:18
**bring** [1] - 254:25
**brings** [1] - 258:3
**broken** [1] - 111:16
**broker** [1] - 182:21
**brokers** [2] - 176:21, 182:13
**Brooklyn** [1] - 3:6
**Brothers** [2] - 7:12, 7:14
**brought** [2] - 46:13, 177:24
**budget** [1] - 228:19
**budgets** [1] - 229:7
**building** [18] - 160:23, 161:23, 161:25, 162:3, 163:2, 171:3, 171:4, 171:16, 172:16, 176:16, 177:22, 241:24, 242:12, 256:24, 257:22, 259:8, 267:2
**buildings** [15] - 12:8, 14:10, 83:6, 100:21, 172:21, 239:12, 239:20, 239:23, 242:5, 242:6, 259:21, 265:6, 265:10, 265:12, 274:6
**burden** [1] - 173:14
**business** [1] - 227:12
**buy** [1] - 172:17
**BY** [9] - 3:6, 3:12, 3:18, 5:6, 254:3, 265:2, 269:11, 270:6, 272:4

## C

**c/o** [2] - 91:23, 272:14
**calculable** [1] - 125:13
**calculated** [1] - 159:8
**Calculation** [1] - 157:22
**calculation** [3] - 119:23, 154:19, 157:15
**calculations** [2] - 158:5, 231:17
**calendar** [1] - 192:24

**CAMERON** [1] - 3:21
**Cameron** [35] - 21:11, 21:18, 22:5, 28:23, 62:13, 62:20, 65:23, 67:10, 70:10, 72:8, 75:17, 76:23, 77:4, 88:19, 91:8, 91:23, 106:8, 108:25, 110:22, 112:17, 113:22, 115:24, 116:23, 117:16, 117:20, 118:14, 119:14, 120:12, 169:19, 174:10, 178:20, 187:5, 221:21, 262:23, 272:13
**Cameron's** [1] - 65:6
**cancelled** [4] - 22:24, 178:8, 178:17, 231:13
**capacity** [3] - 6:17, 17:21, 71:16
**capital** [14] - 25:13, 38:21, 87:24, 88:5, 88:14, 88:24, 89:11, 89:13, 89:15, 89:16, 90:5, 90:15, 90:18, 103:11
**Caption** [1] - 1:21
**caption** [1] - 196:18
**captions** [1] - 196:17
**Cardinal's** [1] - 141:23
**Care** [1] - 91:25
**care** [8] - 47:9, 107:20, 123:4, 123:5, 143:20, 144:4, 187:16, 264:7
**carried** [3] - 27:23, 28:13, 34:15
**carry** [2] - 38:5, 139:14
**case** [7] - 24:11, 58:9, 108:23, 116:18, 118:13, 120:4, 256:4
**cases** [1] - 10:24
**cash** [39] - 38:10, 38:20, 47:6, 72:19, 73:2, 73:16, 85:18, 86:3, 87:5, 90:16, 90:19, 92:25, 93:3, 93:21, 94:5, 95:9, 103:2, 103:5, 111:3, 111:18, 112:12, 112:14, 113:5, 121:23, 122:8, 122:19, 123:2, 123:12, 123:14, 123:16, 123:22, 124:21, 144:24,

187:8, 195:19, 204:2, 228:20, 229:5, 267:14
**categories** [5] - 221:13, 221:14, 221:17, 221:19, 222:9
**categorization** [1] - 233:6
**categorizations** [1] - 221:2
**categorizing** [1] - 14:4
**category** [5] - 160:3, 161:15, 194:5, 203:23, 222:11
**caught** [1] - 126:19
**CENTRAL** [1] - 1:4
**central** [4] - 154:2, 157:10, 161:16, 238:17
**certain** [6] - 25:11, 86:17, 134:9, 158:10, 173:18, 260:11
**certainly** [2] - 54:19, 137:11
**certiaries** [1] - 260:8
**certification** [1] - 4:7
**certify** [2] - 275:8, 275:14
**chance** [1] - 198:7
**Chancellery** [1] - 3:5
**change** [9] - 84:5, 84:8, 87:10, 102:25, 103:5, 103:6, 210:25, 211:9, 212:14, 254:13, 254:17, 260:25, 261:3, 261:4, 261:9, 261:16
**changed** [7] - 35:3, 95:12, 95:15, 165:19, 187:21, 219:18, 261:11
**changes** [14] - 74:3, 82:10, 82:14, 82:18, 82:22, 83:6, 96:4, 96:9, 101:2, 102:20, 108:19, 214:6, 261:5, 261:13
**characterization** [2] - 37:12, 212:13
**characterize** [3] - 55:21, 135:7, 135:9
**charge** [8] - 157:19, 157:21, 221:18, 222:13, 228:7, 228:9, 228:11, 228:13
**charged** [3] - 153:25,

154:20
**charges** [2] - 220:6, 220:13
**Charles** [9] - 12:14, 13:18, 20:21, 126:25, 157:16, 171:5, 232:25, 234:4, 273:15
**CHARLES** [4] - 1:5, 1:6, 1:11
**Chase** [1] - 250:8
**check** [14] - 39:5, 49:16, 126:7, 126:8, 126:9, 159:2, 172:25, 178:17, 203:16, 208:15, 208:25, 249:2, 257:25, 273:7
**checks** [12] - 22:24, 64:11, 113:16, 115:11, 121:8, 121:9, 176:21, 178:8, 203:17, 231:13, 257:12, 258:10
**CHIEF** [1] - 1:16
**chief** [7] - 6:13, 6:19, 20:25, 96:13, 96:15, 264:2, 264:21
**chose** [2] - 120:25, 123:21
**Church** [10] - 12:13, 13:17, 126:25, 157:16, 171:6, 197:4, 231:4, 232:24, 234:3, 273:15
**CHURCH** [3] - 1:6, 1:12, 1:14
**circumstance** [1] - 153:21
**circumstances** [1] - 153:23
**city** [1] - 65:10
**claim** [8] - 29:4, 142:5, 142:17, 143:3, 143:6, 151:9, 176:4, 178:5
**claims** [1] - 220:16
**clarification** [1] - 77:24
**clarified** [1] - 77:13
**clarify** [7] - 15:11, 77:2, 77:21, 78:3, 170:3, 180:9, 215:8
**clarifying** [1] - 15:6
**classification** [4] - 121:5, 199:14, 201:25, 206:4
**classifications** [1] -

187:17
classified [3] - 119:24,
139:4, 200:24
classify [2] - 139:5,
207:3
cleaning [1] - 5:24
clear [4] - 53:22,
77:22, 78:5, 145:25
clearer [1] - 66:15
clearly [2] - 52:12,
166:15
clerical [2] - 155:4,
159:24
clerk [5] - 11:5, 160:2,
256:23, 257:14,
257:15
client - 237:9,
245:24, 248:10
client's [1] - 221:25
clients [4] - 67:19,
183:3, 183:13,
185:14
close [1] - 265:14
closed [3] - 8:22, 9:3,
226:24
closing [13] - 23:18,
26:23, 187:14,
197:2, 222:25,
223:19, 224:12,
226:4, 226:18,
226:23, 227:2,
266:13, 273:10
clue [1] - 266:19
code [2] - 208:8, 208:9
coded [3] - 255:23,
258:6, 258:8
codes [1] - 208:6
Cohen [1] - 7:12
COHEN [1] - 7:14
collect [3] - 19:4,
64:15, 268:11
collected [1] - 140:7
colloquy [1] - 146:23
column [1] - 135:24
comb [1] - 127:3
combination [1] -
144:3
comfortable [1] -
245:7
coming [11] - 18:8,
28:3, 31:12, 102:7,
116:18, 122:25,
178:7, 181:24,
189:16, 207:13,
213:5
commenced [1] -
237:19
comment [1] - 45:2
commentary [1] -
108:19

commenting [1] -
66:11
comments [4] - 182:8,
182:18, 195:5,
210:16
Committee [3] - 61:3,
61:19, 61:22
common [2] - 8:2,
163:21
communicate [1] -
82:20
communicated [2] -
47:11, 81:16
communication [11] -
25:8, 25:16, 90:21,
91:7, 91:13, 91:22,
111:6, 116:23,
166:12, 214:4,
272:13
communicative [1] -
82:8
companies [18] -
18:24, 22:3, 29:3,
29:7, 63:13, 63:17,
63:19, 63:21, 65:9,
68:2, 68:3, 123:11,
158:8, 172:22,
223:14, 264:18,
266:24, 267:10
company [32] - 16:17,
16:19, 17:9, 17:14,
18:2, 28:5, 28:8,
34:16, 38:6, 65:9,
66:24, 67:9, 72:21,
73:15, 74:4, 125:7,
126:21, 143:19,
144:5, 153:15,
165:11, 166:6,
166:12, 166:17,
171:9, 171:19,
171:21, 177:23,
248:19, 264:9,
264:14
COMPANY [6] - 1:5,
1:13, 1:15, 1:16,
1:17, 1:17
company's [2] -
18:16, 18:17
compare [2] - 193:8,
193:11
compared [1] - 72:11
compensated [2] -
117:12, 117:14
compensation [4] -
159:20, 160:10,
160:19, 174:6
compile [2] - 121:15,
121:21
complete [4] - 26:25,
69:17, 124:4, 255:22

completely [1] -
241:17
completing [2] -
31:19, 69:16
compliance [3] - 10:9,
117:25, 159:25
complies [1] - 228:3
comply [3] - 25:20,
26:10, 84:12
composed [1] -
124:13
compound [3] -
249:14, 268:17,
270:15
conceivable [1] -
268:12
concern [2] - 183:23,
239:13
concerned [3] - 76:9,
167:6, 239:8
concerning [11] -
5:16, 103:20,
135:17, 166:8,
166:13, 170:19,
174:6, 175:15,
176:18, 177:22,
233:21
conclude [2] - 136:6,
136:11, 203:6
concluded [2] -
261:15, 271:7
conclusion [17] -
41:13, 41:16, 41:24,
42:14, 42:18, 42:23,
42:24, 43:19,
140:13, 140:15,
142:10, 142:14,
142:21, 162:23,
227:19, 236:6, 236:9
conducted [1] -
169:20
confidential [1] -
237:7
confused [1] - 197:6
confusing [1] - 248:8
confusion [1] - 205:2
congruent [1] - 85:20,
122:12, 123:19
Connecticut [1] - 18:4
connection [3] -
260:21, 260:24,
269:25
connects [1] - 8:20
consciousness [1] -
137:21
consent [5] - 52:2,
212:16, 212:22,
212:24, 213:4
consequence [1] -
60:21

consequences [2] -
58:25, 260:10
consider [10] - 35:7,
36:16, 36:22, 43:12,
44:10, 44:15,
161:20, 251:13,
251:25, 252:2
consideration [1] -
180:21
considered [3] -
121:4, 140:25,
160:18
consistent [4] - 177:7,
177:21, 182:15,
182:23
consonant [1] -
122:21
constantly [1] -
120:22
constitute [1] - 181:14
construction [1] -
129:18
consultant [2] -
131:19, 194:11,
197:18, 200:7,
219:9, 219:13,
219:14, 225:15
consultation [1] -
223:19
consulted [1] - 226:4
consulting [7] -
193:24, 217:3,
226:22, 227:5,
228:11, 228:13,
228:18
contact [2] - 24:6,
253:4
contacted [2] - 21:18,
68:2
contained [1] - 193:12
contains [2] - 180:3,
180:6
contend [2] - 185:18,
186:17
continually [1] - 126:3
continue [1] - 37:16
continued [6] - 1:21,
60:24, 159:3, 159:8,
273:2, 274:2
contract [22] - 124:25,
125:5, 125:18,
127:7, 128:2, 128:8,
128:9, 128:16,
129:17, 153:10,
153:12, 162:2,
162:3, 170:19,
170:22, 171:11,
171:14, 171:17,
172:11, 172:15,
172:19, 274:6

contracts [4] - 125:15,
129:8, 129:22,
172:23
control [4] - 166:10,
248:21, 249:24,
267:2
controlled [2] -
248:21, 250:14
Controller [1] - 264:12
controller [6] - 10:15,
17:23, 160:2,
263:25, 264:13,
264:21
controls [1] - 250:3
conversation [3] -
56:13, 60:2, 175:25
conversations [1] -
174:23
conversion [1] - 95:11
convert [1] - 111:2,
123:22, 209:21
converted [3] - 95:9,
113:18, 122:20
converting [1] -
122:24
convey [1] - 121:24
conveyance [1] -
133:6
conveyed [3] - 59:21,
95:20, 132:25
convoluted [2] -
268:6, 268:16
Cooper [1] - 12:15
coordinates [1] -
10:23
copies [6] - 109:15,
110:10, 110:14,
113:20, 166:7,
239:22
copy [8] - 27:8, 85:3,
85:6, 191:6, 191:14,
199:21, 203:20,
272:23
Corporation [2] -
164:17, 210:14
corporation [4] -
188:22, 249:11,
253:22, 273:24
corporations [2] -
19:11, 19:20
correct [114] - 9:7,
13:14, 13:19, 13:25,
29:24, 35:17, 37:22,
43:3, 43:7, 47:14,
54:3, 56:20, 58:23,
59:9, 60:3, 60:4,
60:9, 63:22, 64:2,
65:4, 65:16, 71:4,
71:7, 71:8, 72:20,
73:3, 73:4, 73:10,

6