ROBERT W. SEAVEY

500 FIFTH AVENUE
NEW YORK, N.Y. 10036

354-6363

June 16, 1976

Mr. Robert Carmel
50 Sutton Place
New York, N.Y. 10022

RE: Sale & Purchase of Interest in
Distributions, Profits And Losses
of Limited Partnership known as
Fifth And 106th St. Associates

Dear Bob:

This letter confirms and fully records our agreement made last November with respect to the sale and assignment to you of certain of my Partnership Interests in the above-captioned Limited Partnership.

We have agreed as follows:

1. Delivered to you herewith and made part hereof is:

   a) Xerox copy of a contract dated the 9th day of August 1974 captioned "Amended Agreement of Limited Partnership of Fifth And 106th St. Associates" ("LPA"). We have each initialed each page thereof as well as each page of a duplicate xerox copy of said LPA and which duplicate xerox copy I will keep along with my copy of this letter agreement. I represent that said agreement has not been rescinded, modified, altered or changed in any way and is in full force and effect.

   b) Xerox copy of letter agreement concerning the LPA described in paragraph "a" above and which letter agreement is between John L. Edmonds and myself and

ROBERT W. SEAVEY

Mr. Robert Carmel                    2.                              6/16/76

    dated of even date herewith ("Seavey-Edmonds Agreement") whereby Edmonds has sold and assigned to me certain of his Partnership Interests in the Limited Partnership described above. We have each initialed each page thereof as well as an additional xerox copy which duplicate xerox copy I shall retain along with my copy of this letter agreement.

    2.   a)  Paragraph "8(b)" of the LPA states as follows:

    All distributions, subject to the provisions of subparagraph "7(e)", by the Partnership shall be allocated among the Partners in accordance with the Schedule annexed hereto and as follows:

    Managing General Partners  -  15%

    Limited Partners  -  85%

    b)  Paragraph "8(d)" of the LPA states as follows:

    For purposes of this Agreement and for Federal, state and local income tax purposes, the profits and losses (including gains and losses from sale of the property) shall be allocated among the Partners as follows:

    Managing General Partners  -  15%

    Limited Partners  -  85%

    3.  In accordance with the LPA and the Seavey-Edmonds Agreement, I am presently entitled to or charged with 49/60 of all distributions (excepting I am presently entitled to 29/60 of the fees described in paragraph "7(e)" of the LPA) allocated to the Managing General Partners and to 49/60 of all profits and losses allocated to the Managing General Partners.



ROBERT W. SEAVEY

Mr. Robert Carmel                           3.                            6/16/76

    4.    a)   For the sum of One Hundred Eighty-Nine Thousand ($189,000.) Dollars to be paid by you to me, I hereby sell and assign to you 40/60 of all distributions (excepting fees pursuant to paragraph "7(e)" of the LPA) allocated to the Managing General Partners pursuant to the LPA. Further, we agree that 40/60 of all profits and losses allocated to the Managing General Partners pursuant to the LPA and for Federal, state and local income tax purposes (including gains and losses from sale of the property) shall hereafter be allocated to you.

    b)   The aforesaid purchase price of $189,000. shall be paid to me by you as follows:

| | |
|---|---|
| $70,000. | - Upon the execution hereof. |
| $50,000. | - On or before January 5, 1977 |
| $37,000. | - On or before January 5, 1978 |
| $32,000. | - On or before January 5, 1979 |

The last three (3) payments of said purchase price shall be secured by a Promissory Note and a Security Interest in the distributions, profits and losses hereby sold and purchased.

    5.   As between you and me, I will at all times remain the legal and record owner of all the Partnership Interests hereby sold and assigned to you. I alone will have the full and exclusive right and power with respect to the above-described Limited Partnership to deal with any and all matters directly or indirectly concerning same; and to the extent I am now liable and responsible, I shall continue to be liable and responsible for all matters accruing out of or connected with my Managing General Partner's status in said Partnership. However, notwithstanding the foregoing, you will be entitled to receive from me (but not from the Partnership or its other Partners) 40/60 of <s>all distributions</s> (excluding fees pursuant to paragraph "7(e)" of the LPA) allocated to the Managing General Partners and 40/60 of all profits and losses which were it not for this agreement would be allocated to the Managing General Partners. In this regard I represent that the Managing General Partners are and shall be entitled to <u>15% of the profits and losses of the Partnership</u> and that the LPA shall not be amended so as to reduce the Managing General Partners' share of the profits and losses.

ROBERT W. SEAVEY

Mr. Robert Carmel                  4.                  6/16/76

     6. All distributions and allocations of profits and losses shall be made and adjusted as at and from January 1, 1976.

     7. Nothing herein contained is intended to give nor shall give you any right or impose upon you any obligation with respect to the right and obligation to purchase the Glick General Partner's Interest as said right and obligation is described in paragraph "12" of the LPA.

     8. You shall have no rights or obligations other than those expressly provided for herein or granted or imposed by law. Specifically, you have not become a General Partner of the said Limited Partnership, nor do you have any liability for (i) any obligations or indebtedness that I may have as a General Partner of the said Limited Partnership, or (ii) any debts or obligations of the said Limited Partnership.

     9. You are not permitted to transfer all or any part of the interests purchased herein without my prior written approval (which I will not unreasonably withhold) excepting that I hereby permit you to transfer all or any part of the interest purchased hereby to any member of your immediate family or their descendants, or to a trust for the benefit of one or more of such persons and/or to a charity or organization which is exempt from payment of income taxes pursuant to Section 501(c)(3) of the Internal Revenue Code (or its successors section).

     10. I further represent to you as follows:

        a) The said Limited Partnership is the beneficial owner of a UDC financed housing project located at 106th Street, New York, New York.

        b) No foreclosure or similar action has been commenced or threatened by the UDC or any other governmental agency as of the date hereof.

        c) The first $717,996 of losses which are referred to in Paragraph 8(h) of the LPA were realized by the said Limited Partnership prior to 1976 and accordingly the share of the profits and losses of the Managing General Partners for the years 1976 and following will be 15%.

d) In the event of the happening of any of the events referred to in Paragraph 9(j) of the LPA within a period of two (2) years from the date of the granting of the temporary certificate of occupancy, then I will reacquire the interest you have acquired hereunder on the terms set forth in Paragraph 9(j).

e) In the event that the Managing General Partners' share of the income or distributions of the said Limited Partnership is assigned to a successor Managing General Partner pursuant to Paragraph 13(e) or 13(h)(i) of the of the LPA so that the effect of such assignment is to deprive you of the interest you have acquired hereunder within six (6) years of the date hereof, then I shall indemnify you for your loss but not in excess of the sums actually paid to me on the purchase price above stated. Further, in the event the loss to you is initiated pursuant to Paragraph 13(h)(i) of the LPA, this representation only includes a takeover by UDC pursuant to Section 4.2(b)(ii) of the Equity and Regulatory Agreement of the Project.

11. All words and terms utilized in this agreement shall have the same meaning as in the LPA.

12. This agreement shall be binding upon and inure to the benefit of both of us and/or our personal representatives, successors and assigns.

13. The laws of the State of New York shall govern the construction of and the interests, rights and duties of the parties to this agreement.

14. This contract contains the entire agreement between the parties and may not be changed, modified or terminated orally, but only by agreement in writing executed by all of the parties hereto.

If the foregoing fully expresses our agreement with respect to your purchase of the Partnership Interests above

ROBERT W. SEAVEY

Mr. Robert Carmel                                6.                                    6/16/76

described, would you kindly sign in the space provided below. Your signature when affixed hereto shall make this document a formal and binding contract between us.

Sincerely,

*[signature]*

ROBERT W. SEAVEY

AGREED:

*[signature]*

ROBERT CARMEL

STATE OF NEW YORK )
: ss.
COUNTRY OF NEW YORK)

On the 16th day of June, 1976, before me personally came ROBERT CARMEL, to me known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same.

*Jeanne M. Mare*

JEANNE M. MARE
Notary Public, State of New York
No. 41-7712350 Queens County
Commission Expires March 30, 1978

STATE OF NEW YORK )
: ss.
COUNTRY OF NEW YORK)

On the 17th day of June, 1976, before me personally came ROBERT W. SEAVEY, to me known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same.

BARRY S. SCHWARTZ
Notary Public, State of New York
No. 30-4623971
Qualified in Nassau County
Commission Expires March 30, 1978