8306 6-6-2

AMENDED AND RESTATED CERTIFICATE

OF

LIMITED PARTNERSHIP

OF

CHARLES H. HOUSING ASSOCIATES

---

THE INTERESTS IN CHARLES H. HOUSING ASSOCIATES HAVE NOT BEEN
REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER
THE SECURITIES OR "BLUE SKY" LAWS OF CERTAIN STATES. THE INTERESTS
MAY NOT BE RESOLD UNLESS (A) THEY ARE SUBSEQUENTLY REGISTERED UNDER
SUCH ACT OR ANY APPLICABLE STATE SECURITIES OR "BLUE SKY" LAWS, OR
(B) UNLESS EXEMPTIONS FROM ANY SUCH REGISTRATION ARE AVAILABLE.
ADDITIONAL RESTRICTIONS ON TRANSFERABILITY ARE CONTAINED IN ARTICLE
XI OF THIS AGREEMENT.

---

DEFENDANT'S EXHIBIT
11 IO
DM 4-17-09

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | GENERAL | 7 |
| ARTICLE III | PARTNERS: CAPITAL | 9 |
| ARTICLE IV | OBLIGATIONS OF LIMITED PARTNERS | 11 |
| ARTICLE V | CERTAIN PROVISIONS REQUIRED BY HUD, FHA OR PHFL | 14 |
| ARTICLE VI | RIGHTS, POWERS AND OBLIGATIONS OF THE GENERAL PARTNERS AND LIMITATIONS THEREON | 20 |
| ARTICLE VII | PAYMENTS TO GENERAL PARTNERS | 25 |
| ARTICLE VIII | ACCOUNTING, REPORTS, BOOKS, BANK ACCOUNTS, AND FISCAL YEAR | 25 |
| ARTICLE IX | MANAGEMENT AGENT AND SUPERVISION | 26 |
| ARTICLE X | PROFITS, LOSSES AND DISTRIBUTIONS | 28 |
| ARTICLE XI | TRANSFER OF LIMITED PARTNER INTERESTS | 33 |
| ARTICLE XII | WITHDRAWAL OF A GENERAL PARTNER; NEW GENERAL PARTNERS | 34 |
| ARTICLE XIII | DISSOLUTION AND TERMINATION OF THE PARTNERSHIP | 39 |
| ARTICLE XIV | MISCELLANEOUS | 40 |
| Schedule A | Partners' Capital Contributions and Interest |  |
| Exhibit A | Promissory Note |  |
| Exhibit B | Form of Notice to Investor Limited Partner |  |
| Exhibit C | Addendum to Agreement of Limited Partnership |  |

(9/18/84)
(C-10/NY)

## CHARLES H. HOUSING ASSOCIATES

### AMENDED AND RESTATED AGREEMENT AND CERTIFICATE OF LIMITED PARTNERSHIP

AMENDED AND RESTATED AGREEMENT AND CERTIFICATE OF LIMITED PARTNERSHIP, dated as of August 1, 1984, among JOHN L. EDMONDS and AVENEL CORPORATION, as General Partners (the "General Partners"); MURRAY HABER, as the Original Limited Partner (the "Original Limited Partner"); M. MELNICK & CO., INC., as the Special Limited Partner (the "Special Limited Partner"); and CHARLES HILL TOWER ASSOCIATES as the Investor Limited Partner (the "Investor Limited Partner").

### W I T N E S S E T H :

WHEREAS, the parties hereto do, under and by virtue of the laws of the State of New York, associate themselves as partners to form a limited partnership as a Redevelopment Company under Section 103(2)(2) of Article 5 of the New York State Private Housing Finance Law for the purpose of providing accommodations for families in need of housing; and

WHEREAS, the parties hereto desire to enter into this Amended and Restated Agreement and Certificate of Limited Partnership, to provide for, among other things, the acquisition, construction and operation of a 102-unit apartment complex to be located at West 111th Street and Frederick Douglas Boulevard in the City of New York, New York, as a moderate and low income housing project with rental assistance provided by the United States Department of Housing and Urban Development; and

WHEREAS, a Certificate of Limited Partnership, dated as of April 23, 1984, was filed with the County Clerk of New York County, State of New York, on June 12, 1984, and, in connection therewith, the parties thereto also executed an Agreement of Limited Partnership, dated as of April 23, 1984, and the parties hereto hereby desire to amend such Certificate of Limited Partnership and Agreement of Limited Partnership to provide, among other things, for the continuation of the Partnership, the Withdrawal of Murray Haber as Limited Partner, the admission of Charles Hill Tower Associates as the Investor Limited Partner and the reallocation of profits and losses, Cash Flow and other proceeds;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

### ARTICLE I

### DEFINITIONS

Whenever used in this Agreement, the following terms shall have the meanings respectively assigned to them in this Article I.

- 1 -

"Accountants" means such firm of certified public accountants as may be engaged by the General Partners, with the Consent of the Limited Partners, which firm shall initially be Saverin, DiVittorio & Company.

"Affiliated Person" or "Affiliate" means any (i) General Partner; (ii) Limited Partner; (iii) member of the Immediate Family of any General Partner or Limited Partner; (iv) general or limited partner of any General or Limited Partner which is a partnership; (v) legal representative, successor or assignee of any person referred to in the preceding clause (iv); (vi) trustee of a trust for the benefit of any Person referred to in the preceding clauses (i) through (iv); (vii) entity of which a majority of the voting interest is owned, directly or indirectly, by or under common ownership with any one or more of the Persons referred to in the preceding clauses (i) through (iv); (viii) Person who owns 15% of the common stock of any corporate General or Limited Partner (or of any corporate partner of a General or Limited Partner which is a partnership); or (ix) Person who is an officer, director, trustee, employee, stockholder (15% or more) or partner of any Entity or Person referred to in the preceding clauses (i), (vii) and (viii).

"Agreement" means this Amended and Restated Agreement and Certificate of Limited Partnership as set forth herein and as amended from time to time.

"Annual Distribution" means the maximum amount of cash which HUD, HPD and/or FHA will permit to be distributed to the Partners for any fiscal year under the terms of the FHA Regulatory Agreement and pursuant to the PHFL, computed, as to each Partner, from the initial date upon which monies were paid or property delivered in consideration for the Partnership interest of each Partner, if the period for which a distribution is made is a complete fiscal year. If the annual distribution is for a period which is less than a fiscal year, then Annual Distribution means the pro rata portion of the amount determined in accordance with the foregoing sentence which such period bears to an entire fiscal year.

"Assignee" means a Person to whom a limited partnership Interest has been assigned, in accordance with the terms of this Agreement and the Uniform Act.

"Building Loan Agreement" means the FHA form of Building Loan Agreement executed by the Partnership and the Lender at Initial Closing.

"Capital Account" means, when used in respect of any Partner, an account (a) credited with the amount of such Partner's paid-in Capital Contributions, and (b) credited or charged, as the case may be, with such Partner's share of income, gains, losses, deductions, credits and distributions, in all cases kept in accordance with Federal income tax principles.

"Capital Contribution" means the total amount of cash contributed or agreed to be contributed to the Partnership by each Partner in accordance with Schedule A attached hereto and Sections 4.1 and 4.6 hereof. Any reference in this Agreement to the Capital Contribution of a then Partner shall include a Capital Contribution previously made by any prior Partner in respect of such Partnership Interest of such then Partner. Any reference in this Agreement to paid-in Capital Contributions means the amount of Capital Contributions actually paid-in to the Partnership.

- 2 -

"Cash Flow" is defined in Section 10.2.B.

"Certificate" means the Agreement and Certificate of Limited Partnership establishing the Partnership as a limited partnership, and as it may be amended, as approved in accordance with Article 5 of the PHFL and filed in accordance with the Uniform Act.

"Class Contribution" means the aggregate Capital Contributions of all the members of a particular class of Partner (i.e., of the Investor Limited Partner, the Special Limited Partner(s) or the General Partners).

"Code" means the Internal Revenue Code of 1954, as amended, or any successor statute.

"Commitments" means the Loan Commitments and the Section 8 Commitment.

"Completion" or "Completed" means substantial completion of the D.U.'s on the Property as evidenced by temporary or permanent certificates of occupancy for all of the D.U.'s.

"Consent" shall mean or require, as the context requires, the prior written approval of Limited Partners owning at least fifty-one percent (51%) of the aggregate Partnership Interest of all Limited Partners, except where a different percentage is specifically provided herein. For purposes of this definition and the determination of whether the Consent of the Limited Partners shall have been given where required by this Agreement, the General Partners, if they shall at any time become Special Limited Partners, shall not be deemed to be Limited Partners, and their Partnership Interest held in their capacities as Special Limited Partners shall not be included in the determination of the aggregate Partnership Interest of all Limited Partners.

"Development Agreement" means the Development Agreement between the Partnership and the General Partners.

"D.U." means a dwelling unit in the Property.

"Entity" means any general partnership, limited partnership, corporation, joint venture, trust, business trust, cooperative or association.

"FHA" means the Federal Housing Administration of HUD.

"FHA Regulatory Agreement" means the FHA form of Regulatory Agreement executed by the Partnership at Initial Closing.

"Final Closing" means the later of the date on which the Mortgage Loan is converted into the Permanent Loan and Final Endorsement.

"Final Endorsement" means the date on which final endorsement of the Note and Mortgage for FHA mortgage insurance is obtained from FHA.

"General Partner" or "General Partners" means, whether in the singular or the plural, those persons designated as General Partners in Schedule A or any and all

Persons who become a successor General Partner as provided herein, in such Person's capacity as a General Partner of the Partnership.

"General Partner Development Loan" means a loan made by a General Partner in accordance with Section 6.3.A hereof and which is repayable as provided therein and in Article X.

"General Partner Operating Loan" means a loan made by a General Partner during the Guaranty Period pursuant to the terms of the Repurchase and Guaranty Agreement and which is repayable as provided therein and in Article X hereof.

"Gross Contract Rents" means the HUD approved contract rents for all of the D.U.'s, together with any personal benefit or utility allowance with respect thereto, as such rents and allowance may be adjusted from time to time.

"Guaranty Period" means the period commencing with the Completion of the Project and ending thirty-six (36) months after such commencement.

"HAP Contract" means the Housing Assistance Payments Contract, to be executed by HPD on completion of the D.U.'s in accordance therewith, and further refers to the annual contributions contract between HPD and HUD relating to the Housing Assistance Payments Contract.

"HPD" means the Department of Housing Preservation and Development of the City of New York.

"HUD" means the United States Department of Housing and Urban Development, and any entity under its control, including FHA.

"Immediate Family" means, with respect to any Person, his spouse, children including adopted children, parents, parents-in-law, descendents, nephews, nieces, brothers, sisters, brothers-in-law and sisters-in-law, as well as inter vivos trusts created for the benefit of any of the foregoing.

"Improvements" means the proposed construction of the Project, which will contain 102 D.U.'s on Completion thereof.

"Initial Annual Distribution Date" means the first date (Final Closing or prior thereto) from which Cash Flow is determined, under applicable HUD, FHA and PHFL regulations, for purposes of permitting Annual Distributions to the Partners.

"Initial Closing" means the date on which the Partnership delivered the Mortgage, the Note, the Building Loan Agreement, and the FHA Regulatory Agreement.

"Interest" or "Partnership Interest" shall refer, generally, to the Interests in the Partnership respectively assigned to each class of the Partners, and as among the members of each such class, the interest of each Partner in the Partnership according to his Sharing Ratio.

"Investor Limited Partner" means Charles Hill Tower Associates, a New York limited partnership, in its capacity as the Investor Limited Partner of the Partnership, and any successor thereto.

- 4 -

"Investor Partnership Agreement" means the Agreement and Certificate of Limited Partnership of Charles Hill Tower Associates.

"Land" means the parcel of land located at West 111th Street and Frederick Douglas Boulevard in the City of New York, New York, which real property has been acquired by the Partnership.

"Lender" means NYCHDC in connection with the making of the Mortgage Loan.

"Limited Partner" or "Limited Partners" means any or all of those Persons designated as such in Schedule A attached hereto as the Investor Limited Partner or the Special Limited Partner(s), from time to time, including any Person who becomes a Substitute Limited Partner as provided herein in each such Person's capacity as a Limited Partner of the Partnership.

"Loan Commitments" means the commitment of the Lender to make the Mortgage Loan, and including the Building Loan Agreement, the Note, the Mortgage, the FHA Regulatory Agreement and any other instrument delivered to, or required by, the Lender, HPD or FHA in connection therewith and with the commitment of FHA to insure the Mortgage Loan.

"Management Agent" means the Person chosen to manage the Project from time to time in accordance with Article IX hereof.

"Managing General Partner" means John L. Edmonds in his capacity as Managing General Partner of the Partnership.

"Mortgage" or "Mortgage Loan" means the loan to the Partnership made by the Lender evidenced by a note (the "Note") secured by a first mortgage on the Property, to provide funds for the acquisition, development and construction of the Property and, where the context permits, any note, financing statement, security agreement, loan agreement or other instrument in connection with the Mortgage which is binding on the Partnership; and, in case the Mortgage is replaced by any subsequent mortgage or mortgages, the term shall refer to any such subsequent mortgage or mortgages.

"Note" means the note or successor note executed in connection with the Mortgage at Initial Closing.

"NYCHDC" means the New York City Housing Development Corporation, a not-for-profit corporation organized under the laws of the State of New York.

"Offering Termination Date" means the earlier to occur of (i) the date on which all of the Partnership Interests have been sold and (ii) October 31, 1984 (as such date may be extended by the General Partners (with the consent of E.F. Hutton & Company Inc.) to not later than December 31, 1984).

"Operating Deficit" shall mean whenever, for any specified period of time, the collected gross rental revenues from the Property (together with other funds available to the Partnership, if any, but excluding the proceeds of Capital Contributions, General Partner Operating Loans or any other loans) are insufficient to meet the ordinary operating expenses of the Property, including, without limitation, payments of principal and interest due on the Mortgage (except in the event of and to the extent of any

moratorium by the Lender), any necessary repairs and replacements and the funding of any reserves, but not including repayment of any previous General Partner Operating Loans, any other loans by Partners, Pledged Equity or distributions of Cash Flow to the Partners.

"Original Limited Partner" means the Person designated as such in the first paragraph of this Agreement.

"Other Than Cash Flow" means cash available for distribution from any source other than Cash Flow.

"Partner" or "Partners" means any or all those Persons who hereafter become a General Partner or a Limited Partner, including a Substitute Limited Partner.

"Partnership" means the limited partnership heretofore organized as Charles H. Housing Associates, pursuant to the Certificate and continued pursuant hereto, and as the same may from time to time be constituted, amended and, if necessary, re-constituted.

"Partnership Administration Agreement" means the Partnership Administration Agreement between the Partnership and the General Partners.

"Permanent Loan" means the Mortgage Loan commencing as of Final Closing.

"Person" means any individual or Entity, and the heirs, executors, administrators, successors and assigns of such person where the context so permits.

"PHFL" means Article 5 of the Private Housing Finance Law of the State of New York.

"Pledged Equity" means the aggregate amount of any payments made or fees pledged by the General Partners or their Affiliates at Initial Closing to satisfy FHA's or the Lender's closing requirements at Initial Closing.

"Project" or "Property" means the Improvements to be constructed and developed on the Land.

"Project Documents" means the Commitments, the Note, the Mortgage, the Building Loan Agreement, the FHA Regulatory Agreement, the Tax Abatement Agreement, the HAP Contract and any and all instruments and documents executed or delivered in connection with the foregoing, including but not limited to the construction and architect's agreements.

"Repurchase and Guaranty Agreement" means the Repurchase and Guaranty Agreement, entered into among the General Partners, the Partnership, the Investor Limited Partner and Robert W. Seavey.

"Section 8 Commitment" means the "Agreement to Enter into the Housing Assistance Payment Contract" between HPD and the Partnership.

"Sharing Ratio" means, with respect to a Limited Partner of any class of Limited Partner, his Limited Partner Interest divided by the aggregate Interests of all of the

- 6 -

Limited Partners of that class of Limited Partner as set forth on Schedule A, and, with respect to the General Partners, their Sharing Ratios are obtained in the same manner as that of the Limited Partners, unless this Agreement specifically requires a different Sharing Ratio with respect to any class of Partner for a particular kind of distribution.

"Special Limited Partner" means M. Melnick & Co., Inc. and any successor thereto and shall further have the meaning set forth in Section 12.2 hereof.

"State" means the State of New York.

"Substitute Limited Partner" shall have the meaning set forth in Article XI of this Agreement and the Uniform Act.

"Supervising Agency" means HPD.

"Tax Abatement Agreement" means the agreement concerning tax abatement between the City of New York, New York, and the Partnership, including any amendments or modifications thereof, with respect to the Project.

"Uniform Act" means the Uniform Limited Partnership Act as adopted and amended from time to time by the State and any successor statute governing the operation of limited partnerships.

"Withdrawal" (including the verb form "Withdraw" and the adjective forms "Withdrawing" and "Withdrawn") means as to a General Partner, the occurrence of death, legal disability, bankruptcy, dissolution or voluntary or involuntary withdrawal from the Partnership for any reason. Involuntary withdrawal shall occur in the event of bankruptcy or whenever a General Partner may no longer continue as a General Partner by reason of death or legal disability, and voluntary withdrawal shall occur whenever a General Partner shall for any other reason cease to be a General Partner. Bankruptcy shall be deemed to have occurred whenever a General Partner shall be adjudicated a bankrupt, declared insolvent or shall execute an assignment for the benefit of creditors, or shall file a voluntary petition in bankruptcy, or shall become subject to the control of a receiver and such receivership proceedings shall not be dismissed within 90 days of the receiver's appointment.

## ARTICLE II

### GENERAL

2.1    **Partnership Name.**    The name of the Partnership shall continue to be Charles H. Housing Associates.

2.2    **Principal Office.**    The principal office of the Partnership shall be located at c/o John L. Edmonds, 60 East 86th Street, New York, New York 10028. The General Partners may maintain such other offices on behalf of the Partnership in the State or elsewhere as they may from time to time deem advisable. The principal office of the Partnership may be changed from time to time by the General Partners, in which event written notice thereof shall be given to the Limited Partner(s), FHA, HUD and HPD, and the Certificate will be amended accordingly.

- 7 -

2.3    Term.  The term of the Partnership shall continue in full force and effect until the dissolution and termination of the Partnership pursuant to Article XIII hereof.

2.4    Character of the Business; Purpose.  The purpose for which the Partnership is formed and the business and objects to be carried on and promoted by it are to acquire one or more areas under a plan or plans, and to contract, own, maintain, operate, sell and convey projects pursuant to the terms and provisions of Article 5 of the PHFL.

This Redevelopment Company has been organized to serve a public purpose and it shall be and remain subject to the supervision and control of the Supervising Agency except as provided in Article 5 of the PHFL, so long as such Article remains applicable to any project of this Redevelopment Company; and all real and personal property acquired by this Redevelopment Company and all structures erected by this Redevelopment Company shall be deemed to be acquired or created for the promotion of the purposes of such Article.

The specific business and purpose of the Partnership is investment in real property and the provision of housing through the acquisition, holding, construction, rehabilitiation, development, operation, improvement, leasing, sale or other dealings in the Property, and in connection therewith, subject to and in accordance with applicable HUD and FHA regulations and the Uniform Act, to make and perform contracts and other undertakings, including expressly and without limitation any contracts with the City of New York and/or instrumentality thereof, which may be desirable or necessary to comply with the requirements of the PHFL and of the Supervising Agency, and to engage in any and all activities and transactions as may be necessary or advisable in connection therewith, including, but not limited to, the purchase, transfer, mortgage, pledge and exercise of all other rights, powers, privileges and other incidences of ownership with respect to the Property and to borrow or raise money and to carry on any and all activities related to any of the foregoing.  So long as the Mortgage is held or insured by FHA, the Partnership will be subject to the supervision and control of FHA.

2.5    Certain Express Powers.  Subject to the requirements, limitations and restrictions set forth in this Agreement, the laws of the State (specifically including Article 5 of the PHFL), HUD Regulations and the FHA Regulatory Agreement, the Partnership shall have all rights, powers and privileges permitted by law, including, without limitation, the following express powers:

a.    To construct, rehabilitate, operate, maintain and improve and to buy, own, sell, convey, assign, mortgage or lease any real estate and any personal property necessary to the operation of the Property.

b.    To borrow money and issue evidence of indebtedness in furtherance of any or all of the objects of its business; to secure the same by mortgage, pledge or other liens.

c.    The purpose of the Partnership is from time to time to do any one or more of the things and acts set forth, but it is expressly understood that any and all purposes and powers of the Partnership shall be subject to the limitations set forth in the Uniform Act.

d.    To obtain, or aid in obtaining, from the Federal Government any insurance or guarantee or commitment therefor, as to, or for the payment or repayment of interest or principal, or both, or any part thereof, of any loan or other extension of credit in connection with the development, ownership or operation of the Property, or any instrument evidencing or securing the same, obtained or to be obtained or entered into by it; and to enter into any agreement, contract or any other instrument whatsoever with respect to any such insurance or guarantee.

2.6    Certificate and Other Instruments.    As soon after the execution of this Agreement as is practicable, the General Partners shall file this Agreement or a separate amended Certificate of Limited Partnership and, if required, an amended Further Certificate and Agreement of Limited Partnership, with both the New York County Clerk in accordance with the Uniform Act and the Supervising Agency in accordance with Sections 103 and 104 of Article 5 of the PHFL, and shall execute such other documents and instruments and shall take all such other actions as may be deemed by the General Partners to be necessary or appropriate to effectuate and permit the continuation of the Partnership under the laws of the State.    The General Partners shall from time to time take appropriate action, including the preparation and filing of such amendments to the Certificate of Limited Partnership under the laws of the State, to enable the Partnership to do business in the State.    The Limited Partners shall execute such documents and instruments and take such other action as may be necessary to enable the General Partners to fulfill their responsibilities under this Section.    The power of attorney granted in Section 14.2 may be exercised by the General Partners to accomplish the foregoing.

# ARTICLE III

## PARTNERS: CAPITAL

3.1    General Partners; Contributions.    The General Partners of the Partnership are John L. Edmonds and Avenel Corporation.    Their business addresses as well as their Capital Contributions are set forth in Schedule A hereof.

3.2    Withdrawal of Original Limited Partners; Special Limited Partner.    Murray Haber, in his capacity as the Original Limited Partner, hereby Withdraws from the Partnership and authorizes the General Partners to exercise the power of attorney granted in Section 14.2 to effectuate his Withdrawal as Original Limited Partner and the admission of the Investor Limited Partner in acordance with this Agreement.    M. Melnick & Co., Inc. in its capacity as Special Limited Partner shall Withdraw as the Special Limited Partner at or about Final Closing, and hereby authorizes the General Partners to exercise the power of attorney granted in Section 14.2 to effectuate its Withdrawal as a Special Limited Partner.    The Capital Contribution of the Special Limited Partner is set forth in Schedule A hereto.    From and after the execution hereof, the Special Limited Partner(s) and Investor Limited Partner(s) shall be the Limited Partners designated as the Limited Partners on Schedule A hereto and their successors and assigns.

3.3    Investor Limited Partner.    The Investor Limited Partner of the Partnership is Charles Hill Tower Associates.    The Capital Contribution of the Investor Limited Partner is set forth in Schedule A hereto.

- 9 -

The Investor Limited Partner hereby agrees to be bound by the terms of this Agreement and to cooperate with the General Partners to the extent necessary to satisfy any requirements of HUD, HPD or any other Lender set forth in the Project Documents. The Investor Limited Partner acknowledges and agrees that HUD, HPD and any other Lender may exercise a prior right of approval of its admission to the Partnership and the admission of its limited partners to the Investor Limited Partner's partnership.

3.4    Capital Accounts; No Interest; Withdrawal.

A.    The capital of the Partnership shall be the aggregate amount of cash and other property (if any) contributed and agreed to be contributed by the General Partners and Limited Partners, as set forth in Schedule A and in Section 4.1, as the same shall be amended from time to time in accordance with this Agreement. A Capital Account shall be established and maintained for each Partner on the Partnership's books. The original Capital Account of each Partner is the amount of his paid-in Capital Contribution. No interest shall be paid on any Capital Contribution.

B.    No Limited Partner shall have the right to demand a return of his Capital Contribution, except as otherwise provided herein. Moreover, the General Partners shall not be personally liable for the return of the Capital Contributions of any Limited Partner, or any portion thereof, it being expressly understood that any such return shall be made solely from Partnership assets, nor shall the General Partners be required to pay to the Partnership or any Limited Partner any deficit in any Limited Partner's Capital Account upon dissolution or otherwise. No Limited Partner shall have the right to demand or receive property other than cash for his Partnership Interest.

3.5    Approval of Limited Partners. FHA, HUD or the Supervising Agency may require the approval of the admission of each of the Limited Partners and, in the case of the Investor Limited Partner, the approval of each of its limited partners. In such event, the General Partners will endeavor to obtain such approval promptly. If FHA, HUD or the Supervising Agency should at any time prior to Final Closing disapprove the participation of any Limited Partner, then such disapproved Limited Partner shall, effective as of the date of such disapproval or such earlier date as may be prescribed by FHA, HUD or the Supervising Agency, cease to be a Limited Partner, and his interest as a Limited Partner shall be purchased by the General Partners for a purchase price equal to the amount of his paid-in Capital Contributions, less the aggregate amount of cash theretofore distributed to such Limited Partner pursuant to Article X. Upon the receipt of such payment, the Interest as a Limited Partner of each such Limited Partner shall terminate, and such Limited Partner shall have no further obligation to pay any subsequent installments of his Capital Contributions. Further, if the Limited Partner so disapproved shall be the Investor Limited Partner, then the General Partners shall also repay the amount of any payments received by them under the Repurchase and Guaranty Agreement. Finally, if any such disapproved Person shall be a limited partner of the Investor Limited Partner, then the General Partners shall pay to the Investor Limited Partner, which in turn shall be required under the Investor Partnership Agreement to purchase the interest of such Person, a sum equal to (a) the Investor Limited Partner's paid-in Capital Contribution, less the sum of (i) prior cash distributions pursuant to Article X, plus (ii) the amount of any payments received by the General Partners under the Repurchase and Guaranty Agreement, multiplied by (b) a fraction constituting the "Sharing Ratio" (as such term is defined in the Investor Partnership Agreement) of said Person in his capacity as a limited partner of the Investor Limited

- 10 -

Partner. Notwithstanding any other provision of this Agreement, if a provision of this Agreement calls for the consent or approval of the Supervising Agency or HUD and such consent or approval is not required pursuant to the Supervising Agency or HUD regulations or administrative policy, then such consent or approval shall not be required by this Agreement.

## ARTICLE IV

### OBLIGATIONS OF LIMITED PARTNERS

4.1    Limited Partners' Capital Contributions.

A.    The Special Limited Partner has made Capital Contributions in cash in the aggregate amount of $10.00 to the Partnership prior to the date hereof.

B.    The Investor Limited Partner shall make Capital Contributions in an aggregate amount of $1,982,768, payable in installments (the "Installments") as follows:

(1)    $151,482 (the "First Installment"), payable at Initial Closing.

(2)    $125,000 (the "Second Installment"), payable on October 22, 1984.

(3)    $ 48,000 (the "Third Installment"), payable on the later of (i) August 21, 1985 and (ii) issuance of temporary or permanent certificates of occupancy for 100% of the D.U.'s.

(4)    $327,696 (the "Fourth Installment"), payable on the latest of (i) February 15, 1986, (ii) execution of the HAP Contract as to all of the D.U.'s, (iii) achievement of an occupancy rate of not less than 95% of the D.U.'s under signed leases by tenants who qualify under the HAP Contract, (iv) Final Closing and (v) six months after the Third Installment shall have become due.

(5)    $412,000 (the "Fifth Installment"), payable on the later of (i) February 15, 1987, and (ii) one year after the Fourth Installment shall have become due.

(5)    $332,072 (the "Sixth Installment"), payable on the later of (i) February 15, 1988 and (ii) one year after the Fifth Installment shall have become due.

(6)    $287,518 (the "Seventh Installment"), payable on the later of (i) February 15, 1989 and (ii) one year after the Sixth Installment shall have become due.

(7)    $299,000 (the "Eighth Installment") payable on the later of (i) August 15, 1989 and (ii) six months after the Seventh Installment shall have become due.

The Investor Limited Partner will deliver its promissory note in the form of Exhibit A hereto, representing its obligation to pay the deferred Installments. Notwithstanding the foregoing, at no time will the Investor Limited Partner be required to pay more than one Installment in any calendar year. If a delay in satisfaction of the conditions to payment of any Installment would otherwise result in the payment of two Installments within one calendar year pursuant to the foregoing conditions, then

payment of the second of such Installments, and any subsequent Installments to the extent necessary, shall automatically be delayed until January 15 of the next subsequent calendar year(s) to assure such result. Further, with respect to the Fourth Installment, if Final Closing shall not have occurred on or before September 1, 1988, then the General Partners shall be required to offer to purchase the Interest of the Investor Limited Partner in the Partnership for the price determined pursuant to the Repurchase and Guaranty Agreement or, if they decline to do so, the Investor Limited Partner shall have no further obligation to make Capital Contributions with respect to the Fourth Installment and any subsequent Installments. If, however, the offer to purchase is made, but the Investor Limited Partner declines to sell its Interest, then payment of that Installment and all subsequent Installments will continue to be deferred until all conditions to such respective payments are satisfied.

C.    It shall be a further condition to the payment of each Installment after the First Installment that the General Partners shall give such Investor Limited Partner at least 21 days' advance written notice of the due date of the Installment, in the form of notice annexed hereto as Exhibit B, including (but not limited to) certification that no material default exists under this Agreement and the Project Documents and that the conditions to payment of all prior Installments continue to be satisfied at such date.

D.    In addition to the other conditions to, and rights to withhold, payment of Installments of Capital Contributions, if at any time the Partnership or the General Partners shall owe, pursuant to Section 5.6.B or otherwise, to the general partners of the Investor Limited Partner or any of their affiliates any sum then payable out of the proceeds to the Partnership or the General Partners of an Installment of Capital Contributions then otherwise payable by the Investor Limited Partner, then the Investor Limited Partner shall have the right to withhold from the Partnership that portion of such Installment necessary to pay any such fee(s) or sum(s) with interest thereon from the date originally due computed at the rate of 15% per annum, and, in lieu thereof, directly to pay such sum to the general partners of the Investor Limited Partner and/or such affiliate(s) to whom such payment is due. In such event, any payments so made by the Investor Limited Partner shall reduce the amount of such Installment to be paid to the Partnership and, as a result, the amount of the required aggregate Capital Contribution of the Investor Limited Partner, dollar-for-dollar; provided that the Capital Account of the Investor Limited Partner shall nevertheless be credited with the amount of any such direct payments as though such sums had first been paid into the Partnership as Capital Contributions.

4.2    Treatment of Other Advances. If any Limited Partner shall advance funds to the Partnership other than the amount of his Capital Contribution, the amount of such advance shall not be considered a Capital Contribution of such Limited Partner, but shall be deemed a loan to the Partnership by such Limited Partner, to be repaid upon such terms as may be agreed upon by the General Partners and the Limited Partner making the loan. Any loan by a Limited Partner to the Partnership shall be subject to the provisions of the Uniform Act with respect thereto.

4.3    Defaults.

A.    If the Investor Limited Partner shall fail to pay all or any part of any Installment of its Capital Contribution to the Partnership set forth in Section 4.1 hereof when due in accordance with the provisions thereof as a result of the default under

the provisions of the Investor Partnership Agreement by one or more of its limited partners, then neither the Investor Limited Partner nor the general partners thereof shall have any personal liability to the Partnership on account of such default. In the event such default persists for more than 60 days from the due date of such Installment, then the Investor Limited Partner hereby grants and assigns to any or all of the General Partners all of its rights to commence all appropriate legal remedies to compel payment by any such defaulting limited partner of any unpaid capital contribution due and owing to the Investor Limited Partner, including recovery of costs and legal fees, and to pursue such remedies for as long thereafter as they may deem appropriate to compel payment; provided, however, that if on that date 60 days after default the Investor Limited Partner is itself diligently taking appropriate action to obtain payment by any such defaulting limited partner, the General Partners thereof shall have any defer commencement of all such legal remedies for a period of 30 additional days. The Investor Limited Partner hereby agrees to take the actions to obtain from any defaulting limited partner of the Investor Limited Partner any such payment pursuant to this Section 4.3.A.

B.     If the Investor Limited Partner shall fail to pay all or part of that portion of the First Installment of its Capital Contributions set forth in Section 4.1.A(1) when due in accordance with the provisions thereof, then neither the Investor Limited Partner nor the general partners thereof shall have any personal liability to the Partnership on account of such default. In the event that such default is not cured within 60 days from the due date of such Installment, then the General Partners shall thereafter have the right to cause the Investor Limited Partner to withdraw as a Limited Partner. Upon such withdrawal, the Investor Limited Partner shall have no further rights or obligations under this Agreement.

C.     The General Partners are hereby granted an irrevocable power of attorney to execute any and all documents on behalf of the Partners and the Partnership and to file any such documents as may be required to effectuate the provisions of this Section 4.3.

4.4     Liability of Limited Partners. No Limited Partner (except one who is also a General Partner, and then only in his capacity as a General Partner) shall be liable for any debts, liabilities, contracts or obligations of the Partnership, unless he takes part in the management or control of the business of the Partnership within the meaning of the Uniform Act. A Limited Partner shall be liable to make payments of his agreed-to Capital Contribution, as and when due as provided in this Agreement, and, subject to the provisions of the Uniform Act, no Limited Partner shall be required to make any further Capital Contributions or lend any funds to the Partnership.

4.5     Legal Opinions.

A.     Immediately upon the execution of this Agreement and subject to the recordation of an amendment to the Certificate to admit the Investor Limited Partner to the Partnership, the Partnership will receive opinions of counsel and special tax counsel to the Partnership substantially to the effect that:

(1)     Subject to satisfaction of filing and publication requirements (if any), the Partnership is a duly organized and validly existing limited partnership under the Uniform Act;

13

(2)    This Agreement is valid and enforceable in accordance with its terms;

(3)    The Investor Limited Partner has been duly admitted as the Investor Limited Partner of the Partnership;

(4)    Assuming it acts in accordance with the Partnership Agreement, the Investor Limited Partner will have limited liability under the Uniform Act;

(5)    Avenel Corporation has been duly organized and is validly existing as a corporation in good standing under the laws of the State of New York with corporate power and authority to own property and conduct its business;

(6)    The Partnership has good and marketable title to the Improvements, subject only to such exceptions as are set forth in a title insurance policy delivered to HPD, none of which exceptions will materially affect the value or operation of the Project for its contemplated use;

(7)    The Partnership will be classified as a partnership for Federal income tax purposes;

(8)    The Mortgage Loan is nonrecourse to the Partnership or any Partner thereof; and

(9)    The "at risk" rules of Code Section 465(c)(3)(D) more likely than not will not apply to the activities of the Partnership.

4.6    Adjustment of Capital Contributions.  If at Final Closing the principal amount of the Permanent Loan as certified by HUD or HPD is in an amount:

(1)    more than 2% greater than $7,475,400, then the aggregate amount of the Investor Limited Partner Capital Contributions shall be increased by a percentage equal to (a) the percentage by which such sum at Final Closing exceeds $7,475,400, multiplied by (b) 99%; or

(2)    more than 2% less than $7,475,400, then the aggregate amount of the Investor Limited Partner Capital Contributions shall be decreased by a percentage equal to (a) the percentage by which such sum at Final Closing is less than $7,475,400, multiplied by (b) 99%;

provided that in no event shall the amount of any such increase or decrease exceed $250,000.  The amount of any such increase or decrease shall be allocated among the remaining unpaid Investor Limited Partner Installments of Capital Contributions (the "Remaining Payments") in the same proportions as each such Remaining Payment bears to the aggregate amount of all such Remaining Payments immediately prior to such adjustment.

- 14 -

## ARTICLE V

### CERTAIN PROVISIONS REQUIRED BY HUD, FHA OR PHFL

5.1    **Authorization to Execute Documents.**    Without otherwise limiting the rights or authority of the General Partners under Article VI hereof, the General Partners are specifically authorized to execute all documents required by HUD, FHA or the Supervising Agency in connection with the financing of the Improvements or the availability of Federal subsidies for operation of the Property, and subject to all other provisions of this Agreement, the General Partners shall use their best efforts to keep such documents in full force and effect. Further, the General Partners are hereby authorized to amend this Agreement without the Consent of the Limited Partners (a) to effectuate any amendments required by HUD, FHA, the Lender or the Supervising Agency, or (b) as may be required to comply with the laws of the State; provided that such amendments do not otherwise conflict with any other provision of this Agreement and will have no material adverse effect on any Limited Partner, and the Limited Partners are deemed to have given their "Consent of the Limited Partners" to any such amendments. The General Partners agree to notify the Limited Partners of any action taken pursuant to this Section 5.1 within 10 days after the taking of any such action.

5.2    **Binding Effect.**    The Partners shall be bound by the terms of the Mortgage and FHA Regulatory Agreement and all other Mortgage Loan documents required in connection therewith. Any incoming Partner shall, as a condition of receiving any interest in the Partnership Property, agree to be bound by the terms of this Agreement, the Mortgage and the FHA Regulatory Agreement and any other documents required in connection therewith to the same extent and on the same terms as the other Partners. Upon any dissolution of the Partnership, or any transfer of the Property subject to the Mortgage, no title or right to the possession and control of the Property and no right to collect the rents therefrom shall pass to any Person who is not, or does not become, bound by the FHA Regulatory Agreement in a manner satisfactory to FHA and HUD. The FHA Regulatory Agreement shall be binding upon and shall govern the rights and obligations of all the Partners, their heirs, executors, administrators, legal representatives, successors and assigns, as long as an outstanding mortgage is insured by HUD/FHA.

5.3    **Certain Restrictions.**

A.    No real property of the Partnership shall be sold, transferred, encumbered or assigned except under and pursuant to HUD, FHA and HPD regulations, so long as such regulations apply to the Project, and so long as the PHFL shall remain applicable to any project of this Redevelopment Company, the real property of this Redevelopment Company shall not be sold, transferred or assigned except as permitted by the PHFL.

B.    The Partnership shall be regulated as to all sales including sales of Partnership Interests, charges, capital structure, rents, tenant occupancy, method of operation and rate of return by FHA and HPD and pursuant to HUD, FHA and HPD regulations, so long as such regulations apply to the Project.

C.    On Completion of the Improvements, the Partnership shall arrange for management of the Project in accordance with applicable State law and HUD and HPD requirements.

~ 15 ~

D.    The plans and specifications for the Improvements, the Project's buildings and equipment, all books, records, documents and contracts shall at all times be maintained in reasonable condition for proper audit and shall be subject to inspection and examination at all reasonable times by HUD, FHA and HPD. At the request of HUD, FHA and HPD or their duly authorized agents, the Partnership shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operations, condition of the property, status of the Mortgage and any other data with respect to the Partnership or the Project which may be requested.

5.4    Certain FHA Requirements. For as long as any Partnership property is subject to a Mortgage insured by the FHA/HUD:

A.    Each of the provisions of this Agreement shall be subject to, and the General Partners covenant to act in accordance with, the FHA Regulatory Agreement, Building Loan Agreement and any FHA insured Note and Mortgage, in so far as such agreements and documents are in full force and effect, but in no event shall any Partner be personally liable for violating this covenant.

B.    The FHA Regulatory Agreement and Building Loan Agreement and FHA insured Note and Mortgage shall be binding upon and shall govern the rights and obligations of the Partners, their heirs, executors, administrators and assigns.

C.    Upon any dissolution of the Partnership or any transfer of the Property, no title or right to the possession and control of the Property and no right to collect the rent therefrom shall pass to any Person who is not, or does not become, bound by the FHA Regulatory Agreement and other FHA or HUD documents in a manner satisfactory to FHA or HUD.

D.    No amendment to this Agreement which would affect the rights of FHA or HUD under any of the documents referred to above shall become effective without the prior written consent of FHA or HUD (as the case may be).

E.    Any conveyance or transfer of title to all or any portion of the Property required or permitted under this Agreement shall in all respects be subject to all conditions, approvals and other requirements and regulations of FHA and HUD applicable thereto.

F.    Any other provision of this Agreement to the contrary notwithstanding, so long as any Property of the Partnership is encumbered by a Mortgage insured by HUD/FHA, the Partnership shall not be voluntarily dissolved without the prior written consent of HUD/FHA.

G.    Any other provisions of this Agreement to the contrary notwithstanding, so long as the Property of the Partnership is encumbered by a Mortgage insured by HUD/FHA and is subject to a Regulatory Agreement with HUD/FHA, the Partnership shall not make, receive or retain any distribution of assets or any income of any kind of the Project except as provided pursuant to paragraph 8(e) of the FHA Regulatory Agreement.

H.    Any other provisions of this Agreement to the contrary notwithstanding, so long as the Partnership is subject to the FHA Regulatory Agreement, the provisions

- 16 -

of the FHA Regulatory Agreement shall control with respect to any inconsistencies between the said FHA Regulatory Agreement and this Agreement.

5.5.  Certain Declarations of Redevelopment Company and General Partners.

A.    Notwithstanding anything in Article XIII hereof to the contrary, upon the dissolution of this Redevelopment Company pursuant to the provisions of subdivision 1 of Section 123 of Article 5 of the PHFL, the Property may be conveyed in fee as provided in said subdivision.

B.    Any mortgage indebtedness, income debenture certificates and capital of this Redevelopment Company may be retired if, as and when there shall be funds available for amortization purposes in the treasury of this Redevelopment Company.

C.    In the event of a violation by this Redevelopment Company of a provision of this Agreement or of law or any rules and regulations promulgated pursuant to the provisions of Article 5 of the PHFL, the Supervising Agency may, by written notice, as provided by such Article, advise the Partners of this Redevelopment Company of its desire to remove any or all of the existing General Partners or to appoint a manager or managers of the Partnership who shall exclusively exercise all of the powers of such General Partners for the duration of the appointment of such manager or managers. In the event that this Redevelopment Company fails to comply with the requirements of the Supervising Agency within thirty days from date of mailing of said written notice, the Supervising Agency may, with the written approval of any mortgagee and without further notice to this Redevelopment Company or to its Partners remove such General Partners or appoint such manager or managers who shall exclusively exercise all of the powers of such General Partners.  Managers so appointed need not meet qualifications which may be prescribed by this Agreement, or other rules or regulations of this Redevelopment Company. In the absence of fraud or bad faith, managers so appointed shall not be personally liable for debts, obligations or liabilities of this Redevelopment Company. Managers so appointed shall serve only for a period coexistent with the duration of such violation or until the Supervising Agency is assured, in a manner satisfactory to it, against violations of a similar nature. Officers or employees of the Supervising Agency who are appointed as such managers shall serve in such capacity without compensation.

D.    All General Partners who are individuals hereby declare and represent that they are of full age, are citizens of the United States and residents of New York State. All General Partners which are corporations hereby declare and represent that they are either incorporated under the laws of New York State or are foreign corporations duly authorized to do business in the State of New York.

E.    Subject to applicable HUD and FHA Regulations, after providing for all expenses, taxes and assessments, there shall be paid annually out of the earnings of the Partnership, a sum for interest on and amortization of any mortgage indebtedness and depreciation charges if, when and to the extent deemed necessary by the Supervising Agency, plus a distribution to the Partners, not exceeding six per centum of the total of the Capital of the Partnership; the obligation in respect of such payments shall be cumulative, and any deficiency in interest, amortization, depreciation and distribution in any year shall be paid either from any cash surplus derived from earnings remaining in the treasury of the Partnership in excess of the amount necessary to provide such cumulative annual sums or from the first available earnings in subsequent years; and any cash surplus derived from earnings remaining in the treasury of the Partnership in

- 17 -

excess of the amount necessary to provide such cumulative annual sums upon the dissolution of the Partnership be paid to the City of New York.

F.    Annexed hereto as Exhibit C is an addendum (the "Addendum") adopted as part of this Agreement which is incorporated herein by reference with the same effect as if it were fully set forth herein. Anything in this Agreement to the contrary notwithstanding, the provisions of the Addendum and of this Section 5.5.F shall be deemed controlling in the event of a conflict between the Addendum or this Section 5.5.F and any other provision of this Agreement. The provisions of the Addendum and this Section 5.5.F shall apply until the expiration or termination (the "Termination Date") of the tax exemption granted to the Project by the Board of Estimate of the City of New York; provided, however, that the dissolution controls presently contained in Section 123 of Article 5 of the PHFL shall remain in effect subsequent to the Termination Date if dissolution of the Partnership occurs after the Termination Date.

5.6    Loans.

A.    All Partnership borrowings shall be subject to the terms of this Agreement and applicable FHA, Lender, HPD and HUD regulations. To the extent borrowings are permitted, they may be made from any source, including Partners and Affiliated Persons. Except as may be otherwise specifically set forth herein, if any Partner shall lend any monies to the Partnership, such loan shall be unsecured and the amount of any such loan shall not be an increase of his Capital Contribution nor affect in any way his share of the profits, losses or distributions of the Partnership.

B.    At or prior to Initial Closing, a letter of credit for working capital in the amount of $149,508, a letter of credit for the construction interest differential escrow fund in the amount of $39,993.50 and a letter of credit for off-site improvements in the amount of $64,000 were delivered to the General Partners by the general partners of the Investor Limited Partnership, which letters of credit shall be kept in force until released, in whole or in part, with the permission of HUD and the Lender. In the event that such letters of credit (or other letters of credit or other security hereinafter furnished or guaranteed by the general partners of the Investor Limited Partnership) shall be drawn down in whole or in part during the time they are in effect pursuant to the terms of the Mortgage or HUD or FHA regulations, then any such sums which have been drawn down thereunder shall be repaid by a reduction in the next Installment of Capital Contributions to be received by the Partnership after the date on which such sums were drawn down; the amount of such reduction shall be the amount by which such letters of credit are drawn down together with interest thereon computed at the General Partners' actual borrowing rate, but not to exceed 1% per annum above the Chemical Bank, New York, New York, prime rate from the date on which such letters of credit were drawn down. In such event, any payments so made by the Investor Limited Partner shall reduce the amount of such Installment to be paid to the Partnership and, as a result, the amount of the required aggregate Capital Contribution of the Investor Limited Partner, dollar-for-dollar; provided that the Capital Account of the Investor Limited Partner shall nevertheless be credited with the amount of any such direct payments as though such sums had first been paid into the Partnership as Capital Contributions. Alternatively, such Capital Contribution may be paid as otherwise required by Section 4.1, in which event the Partnership shall repay to the general partners of the Investor Limited Partner the amount of such draw downs and interest. Notwithstanding the foregoing, in the event that the General Partners shall be in default

- 18 -

of any of their obligations under this Agreement or there shall be any bankruptcy of the Partnership or foreclosure or abandonment of the Project or any other event shall occur which relieves or postpones indefinitely the obligation of the Investor Limited Partner to make any Installment of its Capital Contributions, then the General Partners shall nevertheless remain personally liable to the Investor Limited Partner and its general partners for the repayment upon demand of any sums drawn down on such letters of credit together with any accrued, unpaid interest at the General Partners' actual borrowing rate, but not to exceed 1% per annum above the Chemical Bank, New York, New York prime rate thereon.

C.    At or prior to Initial Closing, the General Partners advanced to the Partnership, or on behalf of the Partnership, certain sums to satisfy HUD's equity requirements at Initial Closing. At or prior to Final Closing, the General Partners may be required by the Lender, FHA or HUD to fund, or to lend funds to the Partnership in order that the Partnership can fund, certain escrow accounts, including escrow accounts for mortgage insurance premiums, insurance, payments of real estate taxes and reserve for replacements, established under the Mortgage or the FHA Regulatory Agreement on behalf of the Partnership. Any and all of the above sums previously advanced or to be advanced by the General Partners shall be deemed interim loans under Section 6.3.A and shall be repaid as provided therein. Such interim loans shall bear interest at the same rates for the same periods (unless sooner repaid) as set forth in the Development Agreement. Notwithstanding the foregoing, to the extent that any cash escrows are released by the Lender or HUD to the Partnership, such sums shall be repaid to the General Partners, together with any interest earned thereon, in lieu of their being repaid as interim loans.

D.    Any loans made pursuant to this Section 5.6 shall be unsecured, shall be subject to any applicable FHA and HUD rules and regulations, and may be repaid to the General Partners to the extent that funds are available therefor as provided in Section 6.3.A.

5.7    Limitation on Return. By execution of the Agreement, each Partner shall be deemed to have agreed for himself, his heirs, successors or assignees, that their Interest in this Partnership shall be subject to a limitation that return upon their respective Interests shall not exceed the maximum percentage per annum return permitted by FHA, HUD or HPD of the amount invested for such Interest except that where such returns have not been paid in any previous year or years of operation, a return may be paid to make up such deficiency to such Partner or Partners, his or their heirs, successors or assignees, but such payment shall be without interest and may only be paid out of surplus earned in any year or years succeeding such deficiency. In no event shall any Annual Distribution exceed the amount permitted by HUD, FHA or HPD or, so long as the Partnership is subject to the PHFL, as determined under Article 5 of the PHFL.

- 19 -

## ARTICLE VI

### RIGHTS, POWERS AND OBLIGATIONS
### OF GENERAL PARTNERS AND LIMITATIONS THEREON

6.1     Exercise of Management.

A.     The over-all management and control of the business and affairs of the Partnership shall be vested in the General Partners and, subject to the specific limitations and restrictions set forth in this Article VI, as well as Article V, and the provisions of the Uniform Act, the General Partners, in extension of and not in limitation of the powers given by law, shall have full, exclusive, and complete charge of the management of the business of the Partnership in accordance with its purpose stated in Section 2.4 hereof, shall make all decisions affecting Partnership affairs in their sole discretion and shall have full power and authority to do any and all other acts or things necessary, proper, convenient or advisable to effectuate the purposes of the Partnership, including, without limitation, to borrow or lend money, to make, deliver or accept any commercial paper, to execute any mortgage note, bond or lease, to transfer any property for or on behalf of the Partnership and execute any deed, deed of trust, bill of sale, lease, contract of sale or other commitment to convey or encumber the assets of the Partnership. Except as limited by Section 6.1.B hereof, each General Partner shall have full authority to bind the Partnership, and no person dealing with the Partnership shall be required to investigate the authority of any General Partner to take any such action. Notwithstanding the foregoing, however, the responsibility of the General Partners with respect to the day-to-day management of the Project shall include the duty to employ, supervise and direct the Management Agent (which may be an Affiliate). No Limited Partner, as such, shall take part in the management or control of the business of the Partnership or have authority to bind the Partnership.

B.     The General Partners shall act by unanimous assent, except where otherwise specified herein. Any General Partner, to the extent of its authorization, may from time to time by an instrument in writing delegate all or any of its powers or duties hereunder to another General Partner. Such writing shall fully authorize such other General Partner to act alone without requirement of any other act or signature of the delegating General Partner, to take any action of any type and to do anything and everything which the delegating General Partner may be authorized to take or do hereunder except insofar as said delegation may be limited to certain acts or activities; provided, however, that any such delegation shall not relieve the delegating General Partner of its obligations or liabilities under this Agreement. In this connection, Avenel Corporation hereby delegates John L. Edmonds as Managing General Partner to exercise all powers on behalf of the General Partners with respect to the day-to-day management of the Partnership and all transactions undertaken in the ordinary course of the Partnership's business. The foregoing delegation may be repealed by written notice from Avenel Corporation, delivered to John L. Edmonds, and shall automatically be repealed upon the death, bankruptcy or incapacity of the Managing General Partner. Written notice of any such repeal shall immediately be delivered to each Limited Partner.

C.     A designated Partner shall represent the Partnership in any negotiation, judicial or administrative hearing or proceeding in connection with any Partnership tax audit or appeal and otherwise to fulfill the obligations of the "tax matters partner" as contemplated by Section 6221 et seq. of the Code, including the entry into such administrative adjustments or settlements with respect to the treatment of any

- 20 -

partnership item for tax purposes as such Partner, in the good faith exercise of its discretion, shall deem necessary and/or appropriate (in such capacity, such Partner shall be referred to as the "Tax Matters Partner"). The Tax Matters Partner shall incur no personal liability to the Partnership or to the Partners thereof in such capacity as a result of any adjustment or determination under such proceedings or otherwise for the exercise of its powers and duties hereunder so long as it shall exercise such powers in good faith, and the indemnification set forth in Section 6.7 hereof shall extend to the Tax Matters Partner for acts taken in good faith hereunder. John L. Edmonds is hereby designated the Tax Matters Partner; provided, however, that at any time, the General Partners may designate any General Partner to be the Tax Matters Partner, with all of the rights, powers and obligations set forth herein.

6.2    General Duties and Obligations of the General Partners; Reimbursement. The General Partners shall act at all times in good faith in the performance of their obligations hereunder. The General Partners shall manage the Partnership affairs in a prudent and businesslike manner, and in accordance with good practices in the industry. Except as to funds provided pursuant to Sections 5.5 and 6.3 hereof, the General Partners shall be entitled to current reimbursement out of Partnership assets, including Capital Contributions, for all costs and expenses actually incurred by the General Partners acting in behalf of the Partnership or incurred by reason of being the General Partners of the Partnership, or otherwise incurred in connection with the Property.

6.3    Specific Obligations of General Partners.

A.    General Partner Development Loans. After Initial Closing, to the extent that the proceeds of the Mortgage, Limited Partner Capital Contributions, Pledged Equity and the revenues of the Partnership are insufficient to cover the cost of development of the Improvements and operation of the Partnership until Completion (a "Development Deficit"), the General Partners shall be required to make General Partner Development Loans to the Partnership to meet such deficiencies; provided that, to the extent that the General Partners can fund any such Development Deficits by deferring receipt by them of certain of their fees payable under the Development Agreement, the General Partners may defer receipt of all or part of such fees, in lieu of making any such General Partner Development Loan, and any such deferred fee shall be treated for all purposes, including repayment pursuant to this Section and Section 10.2.C(2), as though it were a General Partner Development Loan. Outstanding General Partner Development Loans shall be repaid either out of the available Cash Flow of the Project for the period prior to Final Closing, unless prohibited or limited by HUD or FHA, or in accordance with Section 10.2.C(2) hereof. An interim loan made by the General Partners (i) for which the funds for repayment are available out of a later Mortgage advance, (ii) which has been made in order to fund an escrow or other requirement of HUD and which HUD permits to be repaid out of Project revenues or (iii) which has been made in order to pay a Partnership expense other than any fee payable to a General Partner and for which the funds for repayment are available out of Limited Partner Capital Contributions, shall be repaid from such sources and shall not be deemed to be a General Partner Development Loan. Notwithstanding the foregoing, the General Partners shall only make an interim loan (as distinguished from a General Partner Development Loan), if, at the time when such loan is to be made, the General Partners determine in good faith that the anticipated result of characterizing such loan as an interim loan will not be to defer the creation of a cash deficiency with respect to the Project until such time as such deficiency would be characterized under the Repurchase

- 21 -

and Guaranty Agreement as an "Operating Deficit," and not as a "Development Deficit" as defined herein.

B.    Impracticability. Notwithstanding the provisions of paragraph A above, the General Partners, acting by unanimous consent, shall have the right permanently to discontinue construction of the Improvements in the event of the occurrence of circumstances or events beyond the control of the General Partners or the general contractor for the construction of the Improvements (including, but not limited to, supervening requirements of a governmental body) which circumstances or events cannot be overcome by the expenditure of additional funds upon the drawing down of the contractor's bond or the making of General Partner Development Loans in an amount not to exceed $500,000 and which, in the exclusive opinion of the General Partners, render the completion of such construction impracticable. If the General Partners shall so discontinue construction of the Improvements, they shall immediately notify the Investor Limited Partner, and the Partnership (or the General Partners at their option) shall thereupon purchase from the Investor Limited Partner, and the Investor Limited Partner shall sell, its Interest in the Partnership within 90 days of such notification for an amount determined under the Repurchase and Guaranty Agreement. Upon purchasing such Interest, the General Partners shall become the Substitute Investor Limited Partner to the extent of the interest so purchased. Upon such purchase, no Limited Partner nor the general partners or any limited partner of the Investor Limited Partnership shall have any further recourse against, or liability to, the Partnership or the General Partners.

6.4    Certain Restrictions on Authority of General Partner.

A.    Acts in Violation of Law or Regulations. No General Partner shall have authority to perform any act in violation of any applicable laws or regulations, or any agreement between the Partnership and HUD, FHA, the Supervising Agency or the Lender, or to take any action which under the Uniform Act or this Agreement requires the consent of some or all of the Limited Partners without such consent.

B.    Construction Financing. The Partnership, with approval of HUD and FHA, may increase or decrease the Mortgage before Final Closing in the discretion of the General Partners, and may secure the same by the Mortgage(s). Subject to all other provisions of this Agreement, the General Partners are specifically authorized to execute and deliver such documents as they deem necessary in connection with the development and financing of the Property.

C.    Refinancing of Mortgage Loans or Sale of Property. The Partnership may not refinance the Mortgage or sell, lease, exchange or otherwise transfer, convey or encumber all or substantially all the assets of the Partnership without (i) receipt of any required approvals of HUD, FHA, the Supervising Agency or the Lender and (ii) the Consent of the Limited Partners. Notwithstanding the foregoing, at no time may the Partnership engage in a cooperative conversion of the Project or sell the individual units in such conversion or in a condominium offering without the Consent of the Limited Partners.

D.    Salaries to Partners. No Partner shall receive any salary or drawings for services rendered on behalf of the Partnership in his capacity as a Partner except as provided in Articles IX or X hereof or in the Repurchase and Guaranty Agreement, the Development Agreement and the Partnership Administration Agreement. No

provision of this paragraph is intended, however, to prohibit the payment of fees to a Partner or his Affiliate(s) for services rendered on behalf of the Partnership other than in his capacity as a Partner.

6.5　Activities of Partners. It is understood that the General Partners are and will be engaged in other interests and occupations unrelated to the Partnership, and the General Partners shall be required to devote only such of their time as they in their sole discretion may deem necessary to the affairs of the Partnership. Any Partner may engage and have an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, the ownership, financing, leasing, operating, management or development of real property and whether or not such real property is in competition with the Property, and neither the Partnership nor any other Partners shall have any rights by virtue of this Agreement in and to such independent ventures or the income or profits derived therefrom, regardless of the location of such real property or whether such business opportunity was made available or was presented to such Partner as a direct or indirect result of his connection with the Partnership or the Property.

6.6　Dealing with Affiliated Persons. Subject to the restrictions contained elsewhere in this Agreement and the Uniform Act, the General Partners may, for, in the name and on behalf of, the Partnership, enter into agreements or contracts, including employment of any Affiliated Person (in an independent capacity as distinguished from his or its capacity, if any, as a Partner) to undertake and carry out the business of the Partnership as if such Affiliated Person were an independent contractor; and the General Partners may obligate the Partnership to pay reasonable compensation for and on account of any such services; provided that the General Partners may not enter into an agreement to employ any Affiliated Person as a real estate broker in connection with the sale of all or part of the Property. No contract or other transaction between the Partnership and any other partnership or corporation and no act of the Partnership shall in any way be affected or invalidated by the fact that any of the Partners of the Partnership are pecuniarily or otherwise interested in, or are the directors or officers of such other corporation or partners of such other association; or any Partner individually, or any firm of which a Partner may be a member, may be a party to, or may be pecuniarily interested in, any contract or transaction of the Partnership, provided the fact that he or such firm is so interested shall be disclosed or shall have been known to the other Partner or Partners hereof and provided that the contract or other transaction between the Partnership and any other partnership, corporation or person shall conform to the laws of the State.

6.7　Indemnification of General Partners. The Partnership will indemnify and hold harmless the General Partners and their successors and assigns from any claim, loss, expense, liability, action or damage resulting from any act or omission performed or omitted by them pursuant to the authority granted by this Agreement, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable fees and expenses of attorneys engaged by the General Partners in defense of such act or omission), upon a final determination of such liability, but the General Partners shall not be entitled to be indemnified or held harmless due to, or arising from, their fraud, bad faith, gross negligence or their material breach of any material agreement herein contained. Any indemnity under this Section 6.7 shall be provided out of and to the extent of Partnership assets only, and no Limited Partner shall have any personal liability on account thereof.

6.8    **Liability of General Partners to Limited Partners.** The General Partners shall have no liability or obligation to the Limited Partners or the Partnership for any decision made or action taken in connection with the discharge of their duties hereunder, if such decision or action is made or taken in good faith, irrespective of whether the same may be reasonably prudent or whether bad judgment was exercised in connection therewith. Moreover, the General Partners shall not be liable to the Limited Partners because of the disallowance or adjustment by any taxing authority of any deduction or credits in the Partnership returns of income, nor shall they be responsible for the costs of any such audit or appeals therefrom. The General Partners shall not be liable to the Partnership for any negative amount in their Capital Account providing all obligations of the Partnership have been paid (other than those to which Partnership properties may be subject), and provided same shall not have arisen out of their borrowing money from the Partnership, any such borrowing being prohibited unless specifically authorized by this Agreement. Notwithstanding the foregoing, the General Partners shall indemnify and save harmless the Partnership and the Limited Partners from and against any claim, loss, expense, liability, action or damage, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable fees and expenses of counsel) due to or arising out of their fraud, bad faith, gross negligence or their material breach of any material agreement herein contained.

6.9    **Pledge or Assignment of Installments.** The General Partners, on behalf of the Partnership (and subject to the approval of any regulatory agencies and the Lender, if required), may pledge or assign the proceeds of the Installments of the Capital Contributions of Limited Partners, (i) to the Lender as security for any indebtedness of the Partnership to the Lender; or (ii) to the General Partners as security for any obligations of the Partnership to the General Partners or to the General Partners' designee(s).

6.10    **Meetings.** Meetings of the Partners may be called to obtain information concerning the Partnership by at least 25% in interest of Limited Partners who are unaffiliated (except by virtue of being Limited Partners) with the Partnership, any General Partner or any of their Affiliates. A list of names and addresses of all Limited Partners shall be maintained as part of the books and records of the Partnership and shall be made available upon request to any Limited Partner or his representative at his cost. Upon receipt of a request for an informational meeting from the Limited Partners either in person or by registered mail, the General Partners shall provide the Partners, within ten days after receipt of said request, notice of a meeting and the purpose of such meeting to be held on a date not less than 15 nor more than 60 days after receipt of said request, at a time and place within the State convenient of access to the Limited Partners.

6.11    **Tax Status of the Partnership.** The General Partners shall use their best efforts to assure that the Partnership shall be, and maintain its status as, a "partnership" for Federal income tax purposes at all times. If, at any time during the term of this Agreement, the General Partners shall be unable to obtain an opinion of counsel to the Partnership to the effect that the Partnership is a "partnership" for Federal income tax purposes due to their insufficient net worth, then the General Partners shall, within 30 days after they determine that such state of facts exists, admit an additional General Partner who shall, in the opinion of counsel to the Partnership, satisfy said net worth requirement. Any such additional General Partner shall be admitted to the Partnership upon the satisfaction of all of the conditions of Section 12.5, except that, for purposes of this Section 6.11, the Limited Partners, by executing this Agreement, hereby

- 24 -

unanimously consent to, affirm and ratify the admission of such additional General Partner to the extent permitted by law.

6.12  Authority to Enter into Agreements Pursuant to the PHFL.  The General Partners are hereby authorized to enter into agreements with the City of New York and the Supervising Agency in order to comply with the PHFL, including the Tax Abatement Agreement.

## ARTICLE VII

### PAYMENTS TO GENERAL PARTNERS

7.1.  Payment of Fees.  The General Partners shall not be entitled to any fees or payments which are prohibited by HUD and/or the laws of the State.

## ARTICLE VIII

### ACCOUNTING, REPORTS, BOOKS, BANK ACCOUNTS, AND FISCAL YEAR

8.1  Bank Accounts.  The funds of the Partnership shall be deposited in one or more banks permitted by HUD, HPD and the Lender and selected by the General Partners in the name of the Partnership.  Funds not belonging to the Partnership shall not be commingled with the funds of the Partnership, nor shall the Partnership funds be used except for the business of the Partnership.  Withdrawals therefrom shall require the signature of only those individuals authorized by the General Partners and their agents.

8.2  Books of Account; Fiscal Year.  Complete and accurate books of account, in which shall be entered, fully and accurately, each and every transaction of the Partnership, shall be kept by the General Partners.  The books shall be kept on an accrual basis of accounting, and the fiscal year of the Partnership shall be the calendar year.  All the books of account of the Partnership, together with an executed copy of the Certificate of Limited Partnership and copies of such other instruments as the General Partners may execute hereunder, including amendments thereto, shall at all times be kept at the principal office of the Managing General Partner, and shall be available during normal business hours for inspection or, at the expense of the Limited Partner, audit by any Limited Partner or his duly authorized representative.  At all times, the books and accounts of the Partnership shall be kept, and reports shall be filed, in the manner prescribed by HUD and/or HPD and the laws of the State.

8.3  Financial Reports; Accountants.  The Partnership shall deliver to all Partners, each fiscal year and in any event by June 30 after the end of each such fiscal year, financial reports of the Partnership including balance sheet, profit and loss statement, and statements of allocation to the Partners' capital accounts of their distributive shares of income, gains, losses, deductions and credits in accordance with Article X hereof.  The annual statements shall be certified by the Accountants appointed by the Partnership.  In addition to the foregoing, the Limited Partners shall, to the extent required by the law of any state in which these interests are offered or sold, receive a detailed written statement of the application of the proceeds of the offering