of Partnership Interests within six months after the commencement of such offering or upon its completion, whichever occurs first.

8.4    Progress Reports.   The Partnership shall arrange for reports to be provided quarterly to the Partners as to the status of the Property until at least December 31, 1990 and thereafter at least semi-annually.

8.5    Other Reports.   The Partnership shall from time to time submit to the Partners such other written reports of the operations of the Partnership as may be deemed appropriate by the Managing General Partner.   The Partnership shall provide an estimate of tax losses and cash distributions to the Partners by November 15 of each year.

8.6    Tax Returns and Tax Treatment.   The Managing General Partner shall, for each fiscal year, file on behalf of the Partnership, a United States Partnership Return of Income within the time prescribed by law for such filing, and in such return shall, to the fullest extent possible, deduct all costs currently as expenses for income tax purposes.   The Managing General Partner shall also file on behalf of the Partnership such other tax returns and other documents from time to time as may be required by any State of the United States of America or any foreign jurisdiction.   All tax returns shall be prepared by the Accountants.   The Managing General Partner shall use his best efforts to send a copy of such tax return or of Form K-1 to each Partner on or before March 15th after the end of each fiscal year, and in any event such copy shall be sent on or before April 1 after the end of each fiscal year.   The determination of the Managing General Partner with respect to the treatment of any item or its allocation for Federal, state or local tax purposes shall be binding upon all of the Partners so long as such determination will not be inconsistent with any express term hereof.   The Managing General Partner shall select the methods of calculating depreciation and any other methods of accounting for the Partnership most favorable for the Limited Partners.

8.7    HUD and Lender Access to Records.   For as long as a Mortgage is held by the Lender and/or held or insured by FHA or HUD, HUD, FHA and the Lender shall have complete and unrestricted access to all books, papers and records of the Partnership.

8.8    Payment of Expenses.   In addition to the Partnership's obligation to pay any costs in connection with the preparation and delivery of the reports and returns referred to in this Article VIII, the Partnership shall also pay any costs, fees and expenses reasonably incurred by the Investor Limited Partner in connection with the preparation of any reports, returns or tax forms required to be prepared and/or delivered to the partners thereof under the provisions of Article VI of the Agreement and Certificate of Limited Partnership of the Investor Limited Partner.

ARTICLE IX

MANAGEMENT AGENT AND SUPERVISION

9.1    Initial Management Agent.   The General Partners shall have the responsibility for managing the Property at all times in a manner in all respects satisfactory to HUD and FHA, and for retaining a Management Agent, which may, but shall not be required to, be an Affiliated Person, to perform the day-to-day services of managing the Project.   The Partners agree that the initial Management Agent shall

- 26 -

be Dalton Management Company, Inc. The Partnership shall enter into a management contract, satisfactory in form and substance, with such Management Agent, and any successor or replacement thereto, in the discretion of the General Partners. Subject to applicable FHA and HUD regulations, the management contract may provide for payment of a fee or fees thereunder, but which shall not exceed, as to the initial Management Agent or any subsequent Management Agent, the following:

A.    An annual basic management fee equal to the maximum HUD or HPD permitted percentage management fee for the Project, payable monthly out of rents collected.

B.    For services in managing the Property until Completion of the D.U.'s, leasing up the D.U.'s and satisfying all FHA and HUD management paper work until Completion, a fee equal to the "Supplemental Management Fund" approved by FHA and budgeted for the Project of $10,100, plus a Lease-Up Fee to be payable solely out of Capital Contributions and not out of Cash Flow of $100,000. The Partnership is authorized to pay such Supplemental Management Fund and the Lease-Up Fee during the period that the services for which they are to be paid are performed. It is anticipated that payment of the Supplemental Management Fund fee will be made in 1985, and that the Lease-Up Fee will be paid $25,000 during 1985 and $75,000 during 1986. If the Partnership does not have sufficient capital to make a payment of the Lease-Up Fee on any due date thereof, payment of such sum shall be deferred, and shall be paid, without interest, at the time the Partnership receives sufficient funds to pay such fee.

9.2    Replacement under Certain Circumstances. The terms of the agreement with the Management Agent (the "Management Agreement") shall provide that, in the event that (a) FHA, the Supervising Agency, the Lender or HUD shall require or request a change of Management Agent; (b) a material default shall exist under any material Project Document which is caused by the acts or omissions of the Management Agent, which default, after notice and reasonable oportunity to cure, is not cured and would directly result in the cancellation of the Section 8 Commitment or HAP Contract or in the commencement of proceedings to foreclose the Mortgage; (c) a General Partner which is an Affiliate of the Management Agent shall have been removed as a General Partner pursuant to Section 12.8; or (d) the Management Agent shall have violated the Management Agreement in any material respect or engaged in an act of willful misconduct, gross negligence or malfeasance, then, in any such event, subject to the approval of HUD, FHA, the Supervising Agency and the Lender, if required, the Investor Limited Partner shall have the right to direct the General Partners to, and they shall, terminate the agreement with the Management Agent and enter into an agreement upon substantially similar terms and conditions with a replacement Management Agent which may be designated by the Investor Limited Partner (which may be an Affiliate of the Investor Limited Partner or of any of its Partners) or, if not, by the General Partners to manage the Project. If the Management Agreement is a HUD, FHA or other agency standard form that does not provide for such replacement rights, then the General Partners shall cause the Partnership to execute a supplemental agreement with the Management Agent which shall provide such rights and the further agreement of the Management Agent to take any necessary actions under the Management Agreement to effect its replacement if any such circumstances shall occur. Any replacement Management Agent may be an Affiliate of a General Partner, unless the General Partner with which it is affiliated is also an Affiliate of the replaced Management Agent.

9.3    Supervisory Management Fee.    The General Partners shall have responsibility for taking particular care to supervise the Management Agent during the initial rent-up period and the early years of Partnership operations.    For such services, the General Partners shall be entitled to receive an annual, supervisory management fee of $45,000 per year commencing in 1984 through and including 1990, which fee shall be payable solely out of 50% of Partnership Cash Flow to the extent the Project meets the following operational goals:    (a) In 1984, the Project remains at or ahead of its construction schedule; (b) in 1985, the Project achieves at least 70% occupancy by qualified tenants; (c) in 1986, the Project achieves at least 85% occupancy; and (d) in 1987 and thereafter through and including 1990, the Project averages at least 90% occupancy each year.    Any unpaid portion of such fee to the extent earned shall accumulate and be payable out of subsequent Cash Flow through 1990, after which any unpaid portion will no longer be a Partnership obligation.    However, for Federal income tax purposes, the Partnership intends to deduct such fee only as paid.

## ARTICLE X

### PROFITS, LOSSES AND DISTRIBUTIONS

10.1    Profits and Losses.

A.    For accounting and tax purposes, profits and losses for each fiscal year, other than those arising from (i) the sale or other disposition of all or substantially all the assets of the Partnership or (ii) any other transaction the proceeds of which are not included in Cash Flow under generally accepted accounting principles, shall be allocated, whether or not any Partner may have a deficit Capital Account, 98% to the Investor Limited Partner, .1% to the Special Limited Partner (until its Withdrawal) and 1.9% to the General Partners (2% after Withdrawal of the Special Limited Partner).

B.    All income, gain, loss, deduction or credit or item thereof, arising from (i) the sale or other disposition of all or substantially all the assets of the Partnership or (ii) any other transaction the proceeds of which are not included as income in Cash Flow shall be allocated among the Partners as follows:

1.    As to Profits:

First, to the Partners, an amount of such profits equal to the amount, if any, by which (a) the aggregate losses and distributions charged prior thereto to their Capital Accounts exceed (b) the sum of the aggregate profits credited prior thereto to their Capital Accounts and their paid-in Capital Contributions.

Second, any remaining profits will be allocated among the Partners in proportion to the amounts distributable to them pursuant to Clauses Fifth, Sixth, Seventh and Ninth of Section 10.2.C(2).

2.    As to Losses:

First, to the Partners, the amount of losses arising from the transaction up to the amount by which previous profits allocated to them plus the amount of their paid-in Capital Contributions exceed the sum of (i) previous losses allocated to them and distributions made to them charged prior

- 28 -

thereto to their Capital Accounts, and (ii) the amount of any cash distributions or their pro rata shares of the Partnership's basis in any property received or to be received as a consequence of the transaction in question.

Second, any remaining losses will be allocated among the Partners in proportion to the amounts distributable to them pursuant to Clauses Fifth, Sixth, Seventh and Ninth of Section 10.2.C(2).

If less than the entire amount of a distribution arising from a transaction shall have been distributed to the Partners as of the date of an allocation, then for purposes of the foregoing allocation there shall be charged or deemed to be charged to the Capital Accounts of the Partners an amount equal to the proportionate share of the anticipated distribution.

C.    The terms "profits" and "losses" as used in this Agreement mean taxable income and losses as determined in accordance with the accounting methods utilized by the Partnership for Federal income tax purposes.

10.2    Distributions.

A.    Cash Flow.    Subject to the provisions of Section 5.7 hereof and applicable HUD and FHA regulations, Cash Flow for each fiscal year or portion thereof available for distribution to the Partners under such HUD and FHA regulations, the PHFL and the other provisions of this Agreement, and, after any repayment, first, of any General Partner Operating Loans and, then, other payments to be made out of Cash Flow pursuant to this Agreement or any agreement referred to herein, shall be distributed, annually or more frequently at the option of the General Partners, according to the Sharing Ratios within each class of Partner, 98% to the Investor Limited Partner, .1% to the Special Limited Partner (until its Withdrawal) and 1.9% to the General Partners (2% after Withdrawal of the Special Limited Partner).

B.    Definition of Cash Flow.    For all purposes of this Agreement the term "Cash Flow" shall mean the net earnings of the Partnership (before payment of any fees to Partners or their Affiliates which are payable out of Cash Flow) determined on the accrual method of accounting, from the Initial Annual Distribution Date, and subject to applicable FHA or HUD requirements, the other provisions of this Agreement and to the following:

1.    Any profit arising from the sale or other disposition of all or substantially all of the assets as well as proceeds from any refinancing of assets shall not be included in net earnings in determining Cash Flow.

2.    Depreciation of buildings, improvements and personal property and other non-cash items shall be added to net earnings.

3.    Cash outlays for Mortgage and other debt amortization, including repayment of loans from Partners, shall be deducted from net earnings.

4.    Cash outlays for capital expenditures shall be eliminated from the calculation of net earnings unless paid by cash withdrawal from a reserve.

5.    Deposits to any replacement reserves required by FHA, HUD or the

- 29 -

Lender, as well as deposits to other reserve accounts established by the General Partners to provide for working capital needs or other contingencies of the Partnership, shall be deducted from net earnings.

6.    To the extent that any gain or loss from any eminent domain taking, damage or destruction by fire or other casualty, whether insured or uninsured, or other disposition, of all or part of the assets is included in determining net earnings, such items (except rental interruption insurance proceeds) shall be eliminated from the calculation of net earnings in order to determine Cash Flow, notwithstanding that all casualty insurance premiums shall be treated as deductions from net earnings.

C.    Distribution of Other Than Cash Flow.  (1) The General Partners have advanced certain funds on behalf of the Partnership to meet all or a portion of the following expenses for which proceeds will be available under the Mortgage Loan from the Lender:  organizational expenses, certain financing fees, and certain "other fees" (as so described by HUD).   Upon receipt by the Partnership of such of the Mortgage Loan proceeds which are specifically identified in the Project Documents as relating to the aforementioned items of expense, the Partnership shall distribute such funds to the General Partners as reimbursement (without interest) in respect of (and to the extent of) such advances.

(2)    Prior to dissolution, and subject to applicable FHA or HUD regulations and the provisions of the PHFL, if the General Partners determine from time to time that there is available for distribution to the Partners cash from any source Other Than Cash Flow (such as from a sale, or refinancing, or condemnation or insurance proceeds not used for repair or restoration), such cash shall be distributed as follows:

First, to discharge (to the extent required by any lender or creditor) debts and obligations of the Partnership (excluding outstanding loans from Partners and payment of any Pledged Equity by the Partners or their Affiliates).

Second, to fund reserves which the General Partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership.

Third, to repay any outstanding loans by Partners or their Affiliates, including General Partner Operating Loans (but excluding General Partner Development Loans) and to pay any Pledged Equity.

Fourth, to the extent that the allocation of profits and losses made pursuant to Section 10.1 hereof has not brought the Capital Accounts of all the Partners to zero, to the Partners with positive Capital Accounts, an amount in proportion to the positive balances in such Capital Accounts until all such Partners' Capital Accounts are zero.

Fifth, to the Investor Limited Partner, an amount equal to $2,510,000 less any prior cash distributions pursuant to this Section 10.2.C(2) other than pursuant to Clause Third hereof, provided that, if the amount of the paid-in cash Capital Contributions of the Investor Limited Partner at the date of determination of any distribution pursuant to this Clause Fifth is greater or less than $1,982,768, the amount of the aggregate distributions pursuant to this Clause Fifth will be

- 30 -

increased or decreased, as the case may be, by an amount equal to the difference between (i) $1,982,768 and (ii) the amount of such paid-in Capital Contributions.

Sixth, to the Special Limited Partner (until its Withdrawal), the amount of its paid-in Capital Contribution, less prior cash distributions pursuant to this Section 10.2.C(2) other than pursuant to Clause Third hereof.

Seventh, to the General Partners, the amount of their paid-in Capital Contributions, less prior cash distributions pursuant to this Section 10.2.C(2) other than pursuant to Clauses Third and Eighth hereof.

Eighth, to repay to the General Partners the amount of any outstanding General Partner Development Loans.

Ninth, the balance thereof, if any, 50.51% to the Investor Limited Partner, .1% to the Special Limited Partner (until its Withdrawal) and 49.39% to the General Partners (49.49%, after Withdrawal of the Special Limited Partner).

D.    Distributions Upon Dissolution. Subject to the Uniform Act and applicable FHA and HUD regulations and the provisions of the PHFL, upon dissolution, after payment of, or adequate provision for, the debts and obligations of the Partnership, including outstanding loans from Partners, the remaining assets of the Partnership (or the proceeds of sales or other dispositions in liquidation of the assets of the Partnership as may be determined by the remaining or surviving General Partners) shall be distributed to the Partners in accordance with their Capital Accounts as they shall be adjusted for the allocation of profits and losses under Section 10.1 hereof upon any sale or transfer of assets in connection with the liquidation. If any assets of the Partnership are to be distributed in kind, such assets shall be distributed on the basis of the fair market value thereof and any Partner entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Partners so entitled. Any difference between the fair market value and the amount at which such assets are carried on the books of the Partnership shall be recorded as a Partnership profit or loss, as the case may be.

10.3   General Principles Regarding Allocations.

A.    Distributive Shares. For purposes of Subchapter K of the Code, the distributive shares for any fiscal year of the Partners in each item of Partnership taxable income, gain, loss, deduction or credit shall be in the same proportions as their respective shares of items allocated under Section 10.1.A and 10.1.B hereof. Each Partner shall share in distributions of Cash Flow and Other Than Cash Flow in accordance with Section 10.2 from the first day of the calendar month during which said Partner or transferee Partner was admitted to the Partnership, unless the Federal income tax laws or regulations shall require another commencement date. Where a distribution of an asset is made in the manner provided in Section 734 of the Code or where a transfer of a Partnership Interest permitted by this Agreement is made in the manner provided in Section 743 of the Code, the General Partners may, in their discretion, file on behalf of the Partnership, upon any Partner's request, an election under Section 754 of such Code in accordance with the procedures set forth in the applicable Treasury Regulations. The accounting costs incurred by the Partnership shall be borne by the Partner requesting that such election be made.

B.    Charges and Credits to Capital Accounts.    All profits, losses and distributions shared by the Partners shall be credited or charged, as the case may be, to their Capital Accounts.  If there shall be more than one Investor Limited Partner or Special Limited Partner at any time, then all profits, losses and distributions allocable to the members of that class of Limited Partners shall be shared by them in accordance with their respective Sharing Ratios.  Each Partner shall share in the profits, losses and distributions only from the first day of the calendar month during which said Partner was admitted to the Partnership, which shall be the month of his execution of the Agreement, unless the Federal income tax laws or regulations shall require another commencement date.

C.    Minimum Gain Chargeback.  Notwithstanding the allocations of Profit and Losses set forth in this Article X, if required by the Code or the regulations thereunder to sustain the overall allocation of Partnership income, loss and distributions to the Partners for tax purposes, the General Partners are authorized to reallocate a portion of such Profits and Losses attributable to the nonrecourse Mortgage under the following circumstances and in accordance with the following requirements:

1.    If at any time (a) the principal amount of the Mortgage (as adjusted from time to time by any reduction in the principal amount thereof) exceeds the adjusted basis for tax purposes of Partnership Property securing such Mortgage (hereinafter such excess is referred to as the "Minimum Gain"); and

(b)    it appears that the allocation of Losses (or other item of deduction reducing the Capital Accounts of those Partners to which such item is allocated) will cause such Minimum Gain to exceed the sum over the aggregate deficit Capital Account balances of the Partners or any of them (hereinafter such excess aggregate deficit balances over Minimum Gain is referred to as the "Excess Deficit Balance"); then

the General Partners shall be authorized, in their sole discretion, to reallocate, in whole or in part, Partnership Losses (or other item of deduction) giving rise to such Excess Deficit Balance to the General Partners or to the Limited Partners; provided that any Partner or Partners to whom such Losses are so reallocated shall, by virtue of such reallocation, be obligated to restore the amount of such Excess Deficit Balance to the Partnership through, among other things, the reallocation of income, gain, loss and deduction to the Partners in a manner which will reduce and eliminate such Excess Deficit Balance as rapidly as possible, including a special allocation of gain or income in the amount, and at the time of any reduction in the principal amount of the Mortgage to those Partners proportionately to whom Losses resulting in the Excess Deficit Balance were made until such Excess Deficit Balance has been eliminated.

2.    For purposes of computing the sum of the Partners' deficit Capital Account balances under this Section 10.3.C, if any property (including cash) is held by the Partnership at the end of the Partnership taxable year and there is a reasonable expectation that such property will be distributed to a Partner (other than in liquidation of the Partnership) prior to a corresponding increase in such Partner's Capital Account, such property shall be treated as having been distributed to such Partner on the last day of such taxable year.  For purposes of determining the amount of Minimum Gain under this Section 10.3.C from time to time, the cost of any capital improvement to be made to the Property securing the Mortgage shall be added to the adjusted basis thereof and the amount of any principal payments with respect to such Mortgage shall

reduce the outstanding amount thereof, provided that there is a reasonable expectation that the improvements or payments will reduce such Minimum Gain in any year.

10.4   Minimum Distribution to General Partners. Notwithstanding anything herein to the contrary, in no event shall there be allocated or distributed to the General Partners under paragraphs A and B of Section 10.1 and paragraphs A, C and D of Section 10.2 less than 1% of the aggregate of the profits and losses allocated or distributions made to all Partners hereunder.   In the event that there is to be no allocation of profits or losses or distributions to the General Partners hereunder or if the amount of profits or losses or distributions allocable to the General Partners hereunder shall not equal 1% of the aggregate amount allocable to Partners without giving effect to this provision, then the amounts otherwise allocable to the Limited Partners hereunder shall be reduced in order to assure the General Partners of such 1% share.

10.5   Recapture of Special Allocations. Notwithstanding anything to the contrary contained elsewhere in this Agreement, if any gain arises from the sale or other disposition of any Partnership asset which shall be treated as ordinary income under the depreciation or investment credit recapture provisions of the Code, then the full extent of such gain shall be allocated to the Partners on the basis that the Partnership deductions for depreciation or investment credit giving rise to such recapture were actually allocated.   In the event that subsequently enacted provisions of or relating to the Code result in other recapture income to the Partnership, no allocation of such recapture income shall be made to any Partner who has not received the benefit of those items giving rise to such other recapture income.

10.6   Adjustment of Shares of Profits, Losses and Distributions.   If and during such time as the Partnership shall have Limited Partners (including any Substitute Limited Partners) with aggregate agreed-to Capital Contributions of less than the dollar amount set forth in Section 4.1 (after adjustment for any increase or decrease thereof in accordance with the other provisions of this Agreement), the General Partners shall, for the purposes of this Article X, be deemed to be Limited Partners with a paid-in Capital Contribution equal to the excess of said dollar amount over the agreed-to Capital Contribution of the Limited Partners (but shall not be required to make any additional Capital Contributions to the Partnership), and shall receive additional profits, losses, credits and distributions on account thereof.

ARTICLE XI

TRANSFER OF LIMITED PARTNER INTERESTS

11.1   Restrictions on Transfers. In addition to the provisions of Article V hereof, except in the event of the death or incompetence of any Limited Partner, as provided in Section 11.2 below, the Limited Partners shall have no right to assign, transfer, pledge or hypothecate all or any part of their Interest in the Partnership except with the permission of the General Partners, the giving or withholding of which is exclusively within the General Partners' discretion, and provided further that:

A.   No sale, exchange or transfer of any Interest as a Limited Partner in the Partnership may be made if the Interest sought to be sold or exchanged would, in the opinion of counsel to the Partnership, result in the termination of the Partnership under

22

Section 708 or any other Section of the Code, deprive the Partnership of eligibility for taxation as a Partnership under Subchapter K of the Code, or violate any applicable Federal or state securities laws.

B.      In no event shall all or any part of a Limited Partner's interest in the Partnership be assigned or transferred to a minor (other than to a member of a Limited Partner's Immediate Family by reason of death) or to an incompetent or any person not lawfully empowered to own such interest.

C.      The General Partners may require as a condition of the sale, transfer, exchange, or other disposition of any interest in the Partnership that the transferor assume all costs incurred by the Partnership in connection therewith, including, but not limited to, legal fees and the cost of preparation, filing and publishing of any amendment to the Certificate of Limited Partnership if necessary or desirable in connection therewith.    The General Partners shall also require that the transferee execute, acknowledge and deliver to the General Partners such instruments in form and substance satisfactory to the General Partners as the General Partners shall deem necessary or desirable to effectuate such admission and to confirm the agreement of the transferee to be bound by all of the terms and provisions of this Agreement, as the same may have been amended from time to time and then in force, and the Project Documents to the Partnership.    Further, the General Partners may require that the transferor furnish an opinion of counsel that the proposed transfer complies with applicable Federal or state securities laws.    Any sale, exchange, or other transfer in contravention of any of the provisions of this Section 11.1 shall be void and ineffectual and shall not bind or be recognized by the Partnership.

11.2    Designation Effective Upon Death.    A Limited Partner may, by written instrument, designate any Person or Persons to become the Assignee of all his interest as a Limited Partner immediately upon his death or his being adjudged an incompetent. Such Assignee or Assignees, if they shall be living, shall become such immediately upon the death or incompetence of such Limited Partner, without the requirement of any action on the part of the legal representative of the assignor Limited Partner, and such legal representatives and the estate of such deceased Limited Partner shall have no interest whatsoever in the Partnership.    Any such designation may be revoked from time to time and a new designation made and so filed with the General Partners.    The Partnership need not recognize such designated Assignee until (i) it is duly notified in writing of the death or incompetence of the assignor Limited Partner, and (ii) in the case of death, the Partnership is furnished with an opinion of counsel satisfactory to counsel to the Partnership to the effect that such designation is valid under the applicable laws of descent and distribution and governing testamentary dispositions.

11.3    Bankruptcy of a Limited Partner.    In the event of the bankruptcy of a Limited Partner, the Partnership shall not be terminated.    If the Limited Partner's trustee in bankruptcy or other legal representative shall execute such documents, in form reasonably satisfactory to the General Partners, assigning to the trustee or legal representative such Partnership Interest, then such trustee or legal representative shall be deemed a Limited Partner hereunder, subject, nevertheless, to the other provisions of this Agreement.    Any assignment from such trustee in bankruptcy or legal representative shall be subject to the provisions of this Agreement.

11.4    Substituted Limited Partners; Admission.    No Limited Partner shall have any right to substitute an assignee as a Limited Partner in his place without the prior written permission of the General Partners, the giving or withholding of which shall

be within their exclusive discretion. Any such permission by the General Partners shall be binding and conclusive without the consent or approval of any Limited Partner. The consent of the General Partners to an assignment of a Limited Partner Interest under Section 11.1 shall not, in and of itself, constitute permission under this Section 11.4. Any Substituted Limited Partner shall, as a condition of receiving any interest in the Partnership property, agree to be bound, to the same extent as the other Limited Partners, by the Project Documents and other documents required in connection therewith, and by the provisions of this Agreement.

Upon the admission of a Substituted Limited Partner, Schedule A shall be amended to reflect the name and address of such Substituted Limited Partner and to eliminate the name and address of the assigning Limited Partner, and an amendment to the Certificate reflecting such admission shall be filed in accordance with the Uniform Act. Each Substitute Limited Partner shall execute such instrument or instruments as shall be required by the General Partners to signify his agreement to be bound by all the provisions of this Agreement and shall pay reasonable legal fees and filing costs in connection with his substitution as a Limited Partner. No consent or approval of any of the Limited Partners (other than the transferor and transferee Limited Partners) shall be required and the power of attorney granted in Section 14.2 may be exercised by the General Partners to accomplish the foregoing.

11.5   Assignees.   In the event of the death or incapacity of any Limited Partner who has not filed a valid designation under Section 11.2, his legal representatives shall have the same status as an assignee of the Limited Partner unless and until the General Partners shall permit such legal representatives to become a Substituted Limited Partner on the same terms and conditions as herein provided for assignees generally. The death of a Limited Partner shall not dissolve the Partnership.

Any person who becomes an assignee of a Limited Partner pursuant to a valid assignment satisfying the conditions of this Article XI and who does not become a Substitute Limited Partner in accordance with Section 11.4 shall have the right to receive the same share of profits, losses and distributions of the Partnership to which the assigning Limited Partner would have been entitled if no such assignment had been made by such Limited Partner.

Any Limited Partner who shall assign all of his Interest in the Partnership shall cease to be a Limited Partner of the Partnership, and shall no longer have any rights or privileges of a Limited Partner except that, unless and until the assignee of such Limited Partner is admitted to the Partnership as a Substitute Limited Partner in accordance with Section 11.4, said assigning Limited Partner shall retain the statutory rights and be subject to the statutory obligations of an assignor Limited Partner under the Uniform Act.

The obligations of any assigning Limited Partner to make Capital Contributions to the Partnership hereunder shall be extinguished only by and to the extent of the aggregate amount of Capital Contributions made to the Partnership by such assigning Limited Partner or on his behalf by his assignee.

In the event any assignment of a Limited Partner's Interest as a Limited Partner shall be made, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument making such assignment. Such instrument must evidence the written acceptance of the assignee to all the terms and provisions of this Agreement.

- 35 -

If such an instrument is not so filed, the Partnership need not recognize any such assignment for any purpose.

An assignee of a Limited Partner's Interest as a Limited Partner who does not become a Substitute Limited Partner as provided aforesaid and who desires to make a further assignment of his Interest shall be subject to all the provisions of this Article XI to the same extent and in the same manner as any Limited Partner desiring to make an assignment of his Interest.

All references in this Article XI to an "assignee" or "assignees" shall be deemed to refer to assignee(s) pursuant to valid assignment(s) satisfying the conditions of this Article XI. No purported assignee pursuant to a purported assignment which is invalid hereunder shall acquire any rights in the Partnership (including, without limitation, any rights to profits, losses or distributions hereunder).

## ARTICLE XII

## WITHDRAWAL OF A GENERAL PARTNER; NEW GENERAL PARTNERS

12.1  Voluntary Withdrawal.  In addition to the provisions of the Uniform Act and applicable HUD, HPD and FHA regulations, for the first 20 years after Final Closing, a General Partner may not Withdraw voluntarily from the Partnership or sell, assign, pledge, encumber or otherwise dispose of his Interest in the Partnership, without the Consent of the Limited Partners.

In the event of a voluntary Withdrawal of a General Partner or the sale, assignment or other disposition of a General Partner's Interest, in violation of this Section 12.1, such General Partner's Interest in the Partnership shall immediately and automatically terminate and such General Partner shall have no further right to participate in the Partnership or to manage its operations or to receive any future allocations or distributions of profits, losses, Cash Flow or other funds or assets of the Partnership, except that it shall be entitled to be repaid any outstanding General Partner Operating Loans, General Partner Development Loans or other loans it has made to the Partnership at such times as they would otherwise become payable and to receive any fees which it has earned at such times as they shall become payable. The foregoing sentence shall not be construed to limit the remedies of the Limited Partners to those specifically enumerated.

Notwithstanding the foregoing, any such General Partner shall be and remain liable, subject to this Agreement, for all obligations and liabilities incurred by it as a General Partner before such Withdrawal, sale, assignment or other disposition of his Interest shall have become effective.

12.2  Involuntary General Partner Withdrawal.  Upon the involuntary Withdrawal of a General Partner, the Partnership Interest of such General Partner shall to and vest in the heirs, legatees, or trustee in bankruptcy or other legal representatives of such General Partner, as a "Special Limited Partner" interest only.  Said Special Limited Partner shall be entitled to receive and shall be charged with any and all allocations and distributions which such General Partner would have been entitled to if he had not Withdrawn from the Partnership, but shall not be entitled to participate in

the management of the Partnership business or to participate in any action of the Partnership or to share in any allocation or distribution to the Limited Partners.

12.3   Effect of Withdrawal.   Upon the occurrence of an event giving rise to the Withdrawal of a General Partner, the Partnership shall be terminated unless either (i) at least one remaining General Partner within 45 days or (ii) 75% in interest (or such greater percentage in interest as may be required by the Uniform Act) of the Partners within 90 days of notice of such event shall elect to continue the business of the Partnership.   The Withdrawing General Partner shall give written notice of the event giving rise to the Withdrawal to all Partners.   The Withdrawal of such General Partner shall not be deemed to be effective until the earlier of (a) the expiration of 90 days from the day on which such notice shall have been mailed to the other Partners and (b) the date of the admission of a successor General Partner, if any.

12.4   Successor General Partner.   Upon the occurrence of an event giving rise to the Withdrawal of a General Partner and there is then no other General Partner, or, if there then is one or more other General Partners, at least one remaining General Partner does not elect to continue the business of the Partnership pursuant to Section 12.3, then, and in any such event, the Partners may elect to continue the business of the Partnership as provided in Section 12.3 and may select a successor General Partner for the Partnership.   Such proposed General Partner must not be below the age of majority in the State or theretofore have been adjudged incompetent and, if a corporation, must meet all the net worth requirements of the Internal Revenue Service applicable to general partners of limited partnerships to the satisfaction of counsel to the Partnership.   Such proposed General Partner shall, with the written approval of all Partners, become a successor substituted General Partner.   The Limited Partners shall also obtain any approvals of the successor General Partner required by HUD, FHA or otherwise by law.   Any such substituted General Partner need not be a Limited Partner. Such substitute General Partner shall serve as General Partner subject to all terms and conditions to which the Withdrawn General Partner was subject, and in no event shall he have any greater interest or rights in the Partnership than the Withdrawn General Partner, such interest to come from the interest of the Withdrawn General Partner.

12.5   Additional General Partners.   In addition to the foregoing, with the unanimous approval or ratification of the specific act by the other Partners (or such lesser percentage in Interest, but not below 51%, as may be permitted under the Uniform Act), and subject to the provisions of the Uniform Act and applicable HUD, FHA and HPD regulations, additional General Partner(s) may be admitted to the Partnership by the existing General Partner(s) at any time with such share of the General Partner Interest as shall be agreed upon between said existing General Partner(s) and the additional General Partner.   Any incoming General Partner shall as a condition of receiving any interest in the Partnership property agree to be bound by the Project Documents and any other documents required in connection therewith to the same extent and on the same terms as any other General Partners.

12.6   Amendment of Schedule and Certificate.   Upon the admission of a new General Partner, Schedule A shall be amended to reflect such admission and an amendment to the Certificate, also reflecting such admission, shall be filed as required by the Uniform Act.

12.7   Survival of Liabilities.   It is expressly understood that no assignment or sale of an interest in the Partnership, including, but without limitation, assignment by

- 37 -

a General Partner of its interest in the Partnership, even if it results in the substitution of the assignee or vendee as a Limited Partner herein, shall release the assignor or vendor from those liabilities to the Partnership which survive each assignment or sale as a matter of law, such as those set forth in the Uniform Act.

12.8    Involuntary Withdrawal Upon Vote of Limited Partners.  Limited Partners representing at least 51% of the Limited Partners' Capital Contributions shall have the right to remove any General Partner upon the occurrence of the following events:

(1)    If (a) any action to foreclose the Mortgage is commenced, which is not terminated or withdrawn, or a binding agreement to terminate or withdraw such action has not been entered into by the holder of the Mortgage, within ninety (90) days thereof, or (b) any material default occurs under any material Project Document due to an action or failure to act by a General Partner, which default, after notice and reasonable opportunity to cure, is not cured and would directly result in the cancellation of the Section 8 Commitment or HAP Contract or in the commencement of proceedings to foreclose the Mortgage.

(2)    An act of willful misconduct, gross negligence or malfeasance by any such General Partner.

(3)    If a General Partner fails to make a General Partner Development Loan under Section 6.3.A or a General Partner Operating Loan pursuant to the Repurchase and Guaranty Agreement within ten (10) days after the notice from said Limited Partners referred to below.

(4)    If a General Partner defaults in an obligation to purchase the Partnership Interest of the Investor Limited Partner pursuant to the Repurchase and Guaranty Agreement.

If the Limited Partners elect to remove any General Partner, they shall send written notice (by registered or certified mail) of such election to all General Partners setting forth the event causing such action to be taken, and further specifying a date not less than ten nor more than 90 days thereafter as of which any General Partner so removed shall be deemed to have involuntarily Withdrawn as a General Partner and shall retain his economic interest under Articles VII and X by becoming a Special Limited Partner of the Partnership.  The rights of the Limited Partners hereunder shall not be exclusive and shall be in addition to any other rights the Limited Partners may have herein and under applicable law.

Prior to the taking of action to remove the General Partner, the Limited Partners seeking to replace the General Partner under this Section 12.8 shall obtain an advisory opinion of counsel satisfactory to Limited Partners representing 51% of the Limited Partner Capital Contribution as to whether (i) the exercise of such rights would have the effect of subjecting the Limited Partners to unlimited liability as General Partners and (ii) the Partnership would then continue to be treated as a "partnership" for tax purposes and not as an "association" taxable as a corporation.  If such advisory opinion does not conclude that the Limited Partners would not be subject to unlimited liability and/or that the Partnership would be treated as a partnership, they shall nevertheless have the right to remove the General Partner, but only after they shall have given all of the Limited Partners a copy of such opinion and the right to rescind their concurrence in such action for a period of at least 15 days.  Upon or contemporaneously with the

– 33 –

successful taking of action to remove a General Partner pursuant to this Section 12.8, if there shall be no other General Partners at such time, then the Limited Partners shall elect a successor General Partner pursuant to the terms of Section 12.4.

Upon the occurrence of such event, such last Withdrawing General Partner and any other previously Withdrawn General Partners who shall at such time be Special Limited Partners shall be required to transfer or assign such equal percentages of their respective Interests in the Partnership under Article X as shall be necessary to obtain a successor General Partner.   Notwithstanding the foregoing, neither such last Withdrawing General Partner nor any such Special Limited Partner shall be required to transfer or assign more than one-half of his Interest under Article X to such successor General Partner unless such successor General Partner would as a result hold less than a 1% interest in profits, losses and Cash Flow distributions from normal operations, in which event the last Withdrawing General Partner and such Special Limited Partners shall assign such additional portion of their Interest in those items only as shall be necessary to provide the successor General Partner with a 1% Interest therein.   The Limited Partners shall use their best efforts exercised in good faith to find a suitable successor General Partner willing to so serve in exchange for as small an Interest in the Partnership as possible.  If a disagreement shall arise between the last Withdrawing General Partner and such Special Limited Partners, on the one hand, and the Limited Partners and such successor General Partner, on the other hand, as to whether the Limited Partners have fulfilled their duty hereunder in good faith to the Withdrawing General Partner and such Special Limited Partners, then each of the two groups shall, within 15 days, select an arbitrator who shall be a member of the American Arbitration Association located in New York City, and the two arbitrators so selected shall select a third arbitrator also located in New York City, to determine whether such duty has been carried out in good faith and, if not, the appropriate Partnership Interest to be given to the successor General Partner and by whom, and all the Partners hereby agree to be bound by any such determination.  If either party fails to select an arbitrator within the period hereinabove provided for, then the sole arbitrator selected by the other party shall make such determination, which shall be binding on all parties.

## ARTICLE XIII

### DISSOLUTION AND TERMINATION OF THE PARTNERSHIP

13.1   Events Which Cause a Dissolution.  The Partnership shall continue in full force and effect until December 31, 2034, except that the Partnership shall be dissolved prior thereto subject to the requirements of the PHFL upon the happening of any of the following events:

A.    An election to dissolve the Partnership made in writing by the General Partners, with the Consent of the Limited Partners; or

B.    The Withdrawal of a General Partner and the Partnership is not continued in accordance with Article XII; or

C.    Any event which shall make it unlawful for the existence of the Partnership to be continued; or

- 39 -

D.   The sale or other disposition of all or substantially all of the assets of the Partnership.

13.2   Actions of General Partners Upon Dissolution.   Upon dissolution of the Partnership, the General Partners (or legal representatives thereof) shall cause the cancellation of the Certificate, liquidate the Partnership assets and apply and distribute the proceeds thereof in accordance with Section 10.2.D.  Notwithstanding the foregoing, if the liquidating General Partner(s) shall determine that an immediate sale of part or all of the Partnership's assets would cause undue loss to the Partners, the liquidating General Partner(s) may, in order to avoid such loss, either defer liquidation of, and withhold from distribution for a reasonable time, any assets of the Partnership except those necessary to satisfy the Partnership debts and obligations or distribute the assets to the Partners in kind.   Any distribution of assets in kind shall be distributed on the basis of the fair market value thereof and any Partner entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Partners so entitled.  Any differences between the fair market value and the amount at which such assets are carried on the books of the Partnership shall be recorded as a Partnership profit or loss, as the case may be.   The fair market value of such assets shall be determined by an appraiser to be selected by the General Partners.

13.3   No Goodwill Value.  At no time during continuation of the Partnership shall any value ever be placed on the Partnership name, or the right to its use, or to the goodwill appertaining to the Partnership or its business, either as between the Partners or for the purpose of determining any distributive interest of any Partner nor shall the legal representatives of any Partner have any right to claim any such value. In the event of a termination and dissolution of the Partnership as provided in this Agreement, neither the Partnership name, nor the right to its use, nor the said goodwill, if any, shall be considered as an asset of the Partnership, and no valuation shall be put thereon for the purpose of liquidation or distribution, or for any other purpose whatsoever; nor shall any value ever be placed thereon as between the remaining or surviving Partners and the legal representatives of the estate of any deceased or bankrupt Partner.


ARTICLE XIV

MISCELLANEOUS

14.1   Law Governing.  This Agreement shall be governed by and construed in accordance with the laws of the State.

14.2   Power of Attorney.  Each Partner hereby irrevocably constitutes each general partner of any General Partner which is a limited partnership, each General Partner who is an individual and each of the President, Vice-President and Secretary of any corporate General Partner his true and lawful attorney-in-fact for him and agent to effectuate, with full power and authority to act in his name, place and stead in effectuating and requisite to carrying out the intention and purposes of the Partnership and this Agreement, including, but not limited to, the execution, acknowledgment, swearing to, delivering, filing and recording of all Certificates and amendments thereto, documents, conveyances, leases, contracts, loan documents and/or counterparts thereof, the execution and filing of appropriate documents with HUD, FHA, HPD and the Lender, and all other documents which the General Partners deem necessary or reasonably appropriate:

- 40 -

(a)    To qualify or continue the Partnership as a limited partnership;

(b)    To reflect a modification of the Partnership or an amendment of this Agreement and/or the Certificate (including any amendment which increases the amount of the Capital Contributions in accordance with Section 4.6), subject to obtaining the Consent of the Limited Partners where required under Section 14.13;

(c)    To accomplish the purposes and carry out the powers of the Partnership as set forth in this Agreement;

(d)    To reflect the dissolution and termination of the Partnership; or

(e)    To effect transfers, admissions, withdrawals, and substitutions of Partners as specifically provided under the terms of this Agreement.

No person shall take any action as an attorney-in-fact for any Limited Partner which would in any way increase the liability or reduce the rights of said Limited Partner beyond the liability or rights expressly set forth in this Agreement.

The power of attorney granted herein shall be deemed to be a power coupled with an interest in recognition of the fact that each of the Partners under this Agreement will be relying upon the power of the grantee thereof to act as contemplated by this Agreement in such filing and other action by them on behalf of the Partnership. The foregoing power of attorney shall be irrevocable and shall survive the assignment by any Partner of the whole or any part of his Interest hereunder, shall be binding on any assignee or vendee of a Partnership Interest hereunder or any portion thereof, including any assignee or vendee of only the distribution rights relating thereto, and shall survive the death, incompetence or legal disability of any Partner.

14.3    Counterparts.  This Agreement may be signed in any number of counter-parts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Agreement.  The production of any executed counterpart of this Agreement shall be sufficient for all purposes without producing or accounting for any other counterpart thereof.

14.4    Partners Independently Bound.  The General Partners and each Limited Partner shall become bound by this Agreement immediately upon their execution hereof, and independently of the execution hereof by any other Limited Partner, but the execution hereof by any Limited Partner shall not bind the Partnership until such action shall have been accepted by the General Partners.

14.5    Separability of Provisions.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.  If for any reason any provision or provisions of this Agreement would subject the Limited Partners to any personal liability for the obligations of the Partnership under the laws of the State as the same may now or hereafter exist, such provision or provisions shall be deemed void and of no effect.  If the issue of whether such personal liability shall arise under any such provision in connection with the exercise of a voting right granted in this Agreement to the Partners or the Limited Partners, then,

before such provision shall be deemed void and of no effect, the Limited Partners shall obtain an advisory opinion of counsel in accordance with the procedure set forth in Section 12.8. If such opinion does not conclude that the exercise of the right discussed would not subject them to personal liability, they shall nevertheless be permitted to exercise the right so granted, but only upon the concurrence thereafter of the same percentage in Interest of Partners as are required to exercise the subject right.

14.6    Notice.  The address of each Partner for all purposes shall be as set forth in Schedule A or such other address as any of the Partners may designate upon notice, in the case of a General Partner, given to all other Partners, and, in the case of a Limited Partner, given to the General Partners, in accordance with the procedure set forth in this Section 14.6.  Any notice, demand or request required or permitted shall be made in writing and shall be deemed given or made when delivered, when mailed if by certified mail or when received if by regular mail, to such Partner at such address.

14.7    Computation of Time.  In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall be included, and it shall thereafter run until the last day of the designated period of time, unless it is a Saturday, Sunday or a legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday or legal holiday.

14.8    Titles and Captions.  All article, section or paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the context of this Agreement.

14.9    Pronouns and Plurals.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

14.10   Entire Agreement.  This Agreement contains the entire understanding between and among the parties and supersedes any prior understandings and agreements between and among them respecting the subject matter of this Agreement.

14.11   Agreement Binding.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

14.12   Parties in Interest.  Nothing herein shall be construed to be to the benefit of any third party, nor is it intended that any provisions shall be for the benefit of any third party and no third party shall rely on any provisions hereof other than Section 6.1 as same pertains to the powers of the General Partners to take action on behalf of the Partnership.

14.13   Amendments; Other Actions.

A.    In addition to the requirements set forth in Section 5.1, this Agreement may not be amended or modified except by the General Partners (1) for the purpose of making technical corrections or (2) with the Consent of the Limited Partners provided, however, that 90% in interest (or such greater percentage as may be required under the Uniform Act) of the Limited Partners must give their consent in writing to any amendment which would (i) extend the term of the Partnership as set forth in Section 13.1 hereof, (ii) amend this Section 14.13, (iii) otherwise increase the liability of the

Limited Partners or reduce the guarantees and/or obligations of the General Partners to the Partnership and/or Limited Partners, (iv) increase the amount of Capital Contributions payable, (v) change the date of payment of any of their Installments of Capital Constributions, or (vi) change the Limited Partners' distribution or allocation of any item of income, loss, deduction, credit, Cash Flow or Other Than Cash Flow; provided that, the Consent of the Limited Partners shall be required to amend this Agreement for the purpose of providing that the allocation of profits, losses and distributions to the Partners pursuant to Article X shall be sustained for Federal income tax purposes. In no event shall this Agreement or the Certificate be amended without the prior written approval of HPD, HUD and FHA, if required.

     B.    Notwithstanding any other provision of this Agreement no action may be taken under the Agreement unless such action is taken in compliance with the provisions of the Uniform Act.

    IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written.

GENERAL PARTNERS:

John L. Edmonds

AVENEL CORPORATION

By: _____
President

Attest:

SPECIAL LIMITED PARTNER:

M. MELNICK & CO., INC.

By: _____
Michael Melnick
Vice President

ORIGINAL LIMITED PARTNER:

Murray Haber

- 43 -

STATE OF NEW YORK    )
COUNTY OF _New York_   ) ss.:
                 )

       On this _31_ day of _October_ , in the year 19_84_, before me, personally came JOHN L. EDMONDS, *to me known and known to me to be the person described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

      \* residing at 187-20 Grand Central Pkwy.,
         Jamaica, NY 11432

                                      Notary Public

                                    HOWARD J. LEVITZ
                             Notary Public, State of New York
                            No. 60-2336170
                            Qualified in Westchester County
                            Certificate filed in New York Co.
                            Commission expires March 30, 19_86_

STATE OF NEW YORK    )
COUNTY OF _New York_   ) ss.:

       On this _31_ day of _October_ , in the year 19 _84_ , before me, the undersigned, a Notary Public of said State, duly commissioned and sworn, personally appeared JOHN L. EDMONDS,* known to me to be the President of Avenel Corporation, the corporation that executed the within instrument, and acknowledged to me that the said corporation executed the same.

      \* residing at 187-20 Grand Central Pkwy, Jamaica, NY
                          11432

(SEAL)                                    Notary Public

                                  HOWARD J. LEVITZ
                            Notary Public, State of New York
                            No. 60-2336170
                            Qualified in Westchester County
                            Certificate filed in New York County
                            Commission expires March 30, 19_86_

STATE OF NEW YORK    )
COUNTY OF _New York_   ) ss.:

       On this _31_ day of _October_ , in the year 19_84_, before me, personally came MURRAY HABER,* to me known and known to me to be the person described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

      \* residing at 101 W. 55th street, NY, NY 10019

(SEAL)                                      Notary Public

                                  HOWARD J. LEVITZ
                            Notary Public, State of New York
                            No. 60-2335170
                            Qualified in Westchester County
                            Certificate filed in New York County
                            Commission expires March 30, 19_86_

STATE OF NEW YORK  )
COUNTY OF _henyo_  ) ss.:

    On this _31_ day of _Octobe_, in the year 19 _84_, before me, the
undersigned, a Notary Public of said State, duly commissioned and sworn, personally
appeared MICHAEL MELNICK,* known to me to be the Vice President of M. Melnick
& Co., Inc., the corporation that executed the within instrument, and acknowledged to
me that the said corporation executed the same.

    * residing at 225 Willow Ave., Bronx, NY 10454

(SEAL)

                                      Notary Public

                                HOWARD J. LEVITZ
                   Notary Public, State of New York
                        No. 09-2336170
                  Qualified in Westchester County
               Certificate filed in New York County
              Commission expires March 30, 19__85

CHARLES H. HOUSING ASSOCIATES

## LIMITED PARTNER SIGNATURE PAGE AND POWER OF ATTORNEY

The undersigned hereby executes the Amended and Restated Agreement and Certificate of Limited Partnership (the "Agreement") of Charles H. Housing Associates, a New York limited partnership (the "Partnership"), and hereby agrees to all of the terms and provisions thereof. The undersigned hereby appoints each general partner of any General Partner which is a limited partnership, each General Partner who is an individual and the Chairman of the Board, the President, each Vice President and the Secretary of any corporate General Partner of the Partnership, his true and lawful attorney-in-fact and agent, with all the powers and authority as set forth in the Agreement, including without limitation, in his name, place, and stead to make, execute, sign, acknowledge, swear to, deliver, and file the Agreement and any Certificate with respect thereto and all amendments to the Agreement or any such Certificate. The undersigned hereby joins and executes said Agreement and any such Certificate and hereby authorizes the General Partners to attach this signature page thereto. The power of attorney hereby granted shall be deemed to be coupled with an interest, shall be irrevocable, and shall survive the death or legal disability of the undersigned.

WITNESS the execution hereof by the undersigned, as the Investor Limited Partner of the Partnership and individually.

Dated: Oct 31 , 1984

CHARLES HILL TOWER ASSOCIATES,
a New York limited partnership

By:    Wilder Richman Corporation,
       General Partner

By: _____
              President

Address:

555 Madison Avenue
New York, NY  10022

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF New York   )

On this 31 day of October , in the year 1984, before me, the undersigned, a Notary Public of said State, duly commissioned and sworn, personally appeared RICHARD P. RICHMAN* known to me to be the President of Wilder Richman Corporation, the corporation that executed the within instrument, and acknowledged to me that the said corporation executed the same.

* residing at 25 E. 86th St, NY, NY 10028

(SEAL)

_____
        Notary Public

HOWARD J. LEVITZ
Notary Public, State of New York
No. 60-2338170
Qualified in Westchester County
Certificate filed in New York County
Commission expires March 30, 19 85

- 46 -

## SCHEDULE A

| | Capital Contribution | Interest in Operations | Interest in Capital Transactions |
|---|---|---|---|
| **GENERAL PARTNERS** | | | |
| John L. Edmonds<br>60 East 86th Street<br>New York, NY  10028 | $ 100.00 | 1.0% | 24.745% |
| Avenel Corporation<br>60 East 86th Street<br>New York, NY  10028 | $ 100.00 | 1.0% | 24.745% |
| | $ 200.00 | 2.0% | 49.490% |
| **LIMITED PARTNERS** | | | |
| **SPECIAL LIMITED PARTNER:** | | | |
| M. Melnick & Co., Inc. | $ 10.00 | .1%* | .1%* |
| **INVESTOR LIMITED PARTNER** | | | |
| Charles Hill<br>  Tower Associates<br>c/o Wilder Richman Corporation<br>555 Madison Avenue<br>New York, NY  10022 | $1,982,768.00 | 98% | 50.51% |

---

\*     Until it Withdraws, the Special Limited Partner will have a .1% interest in the Partnership after which its interest will be automatically transferred to the General Partners, without any further amendment to this Agreement. The General Partners' interests as set forth here reflect such Withdrawal.

- 47 -

EXHIBIT A

<u>PROMISSORY NOTE</u>

$1,831,286                                    _____, 1984

FOR VALUE RECEIVED, the undersigned ("Maker") promises to pay to Charles H. Housing Associates, a New York limited partnership (the "Partnership"), or order, the principal sum of $1,831,286, representing the purchase of the Investor Limited Partnership Interest in the Partnership, without interest. Principal shall be payable in lawful money of the United States of America at 60 East 86th Street, New York, New York 10028, or at such other place as the holder hereof may designate in writing. Principal shall be paid in the following amounts and at the following times:

(a)    $125,000 (the "First Installment"), payable on October 22, 1984.

(b)    $ 48,000 (the "Second Installment"), payable on the later of (i) August 21, 1985 and (ii) issuance of temporary or permanent certificates of occupancy for 100% of the D.U.'s.

(c)    $327,696 (the "Third Installment"), payable on the latest of (i) February 15, 1986, (ii) execution of the HAP Contract as to all of the D.U.'s, (iii) achievement of an occupancy rate of not less than 95% of the D.U.'s under signed leases by tenants who qualify under the HAP Contract, (iv) Final Closing and (v) six months after the Second Installment shall have become due.

(d)    $412,000 (the "Fourth Installment"), payable on the later of (i) February 15, 1987, and (ii) one year after the Third Installment shall have become due.

(e)    $332,072 (the "Fifth Installment"), payable on the later of (i) February 15, 1988 and (ii) one year after the Fourth Installment shall have become due.

(f)    $287,518 (the "Sixth Installment"), payable on the later of (i) February 15, 1989 and (ii) one year after the Fifth Installment shall have become due.

(g)    $299,000 (the "Seventh Installment") payable on the later of (i) August 15, 1989 and (ii) six months after the Sixth Installment shall have become due.

1.    This Note shall be subject to the terms of the Agreement and Certificate of Limited Partnership, dated as of August 1, 1984 (the "Partnership Agreement"), of Charles H. Housing Associates, including the provisions of Sections 4.1 and 4.6 of said Partnership Agreement relating to the adjustment of the amount of the above installments of this Note under certain limited circumstances therein set forth. All terms not defined herein shall have the meanings set forth in the Partnership Agreement.

2.     If Maker shall fail to pay all or any part of any Installment due under this Note to the Partnership when due as a result of the default under the provisions of the Investor Partnership Agreement by one or more of its limited partners, then neither Maker nor the general partners thereof shall have any personal liability to the Partnership on account of such default. However, the General Partners of the Partnership shall have the rights and remedies provided in Section 4.3 of the Partnership Agreement to recover against any such defaulting Limited Partner of Maker.

3.     Maker agrees to pay all costs of collection of any amounts due hereunder when incurred, including, without limitation, attorneys' fees and expenses. Such costs shall be added to the balance of principal then due. Maker, for itself and its, successors and assigns, hereby waives presentment, demand, notice, and protest and any defense by reason of an extension of time for payment or other indulgences. Failure of the holder hereof to assert any right herein shall not be deemed to be a waiver thereof.

4.     This Note may be transferred or assigned to any bank issuing letters of credit for the benefit of the Partnership, or to the General Partners as security for the obligations of the Partnership to any such General Partner, in any such case without notice being required to be delivered to Maker. In the event of any other transfer or assignment of this Note, the transferee or assignee or its designee will promptly after such transfer or assignment give written notice thereof to Maker.

5.     This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of such change or termination is sought. This Note shall be governed by and construed and enforced in accordance with the laws of the State of New York.

EXECUTED as a sealed instrument as of the date first above written.

CHARLES HILL TOWER ASSOCIATES

By:   Wilder Richman Corporation, General Partner

By:_____
                        President

– 49 –

EXHIBIT B

NOTICE TO INVESTOR LIMITED PARTNER ---- ---- --- INSTALLMENT NO. ---- ----- ---

C E R T I F I C A T E

Your payment as the Investor Limited Partner of Charles H. Housing Associates, ("the Partnership") of Installment _____ under the Charles H. Housing Associates Amended and Restated Agreement and Certificate of Limited Partnership (the "Partnership Agreement") is due and payable on _____ in accordance with the Partnership Agreement. The General Partners hereby certify that all of the conditions for payment of Installment _____ have been satisfied (except with regard to the mere passage of time) and that all of the following preconditions, representations, warranties and agreements are true and correct or have been satisfied:

(1)    The Partnership is a duly organized limited partnership validly existing under the laws of the State of New York and has complied with all filing requirements necessary for the protection of its limited partners.

(2)    Construction of the Project will be completed (and, after Final Closing, will have been completed) in substantial conformity with the Project Documents as amended from time to time, unless any nonconformity will not have any materially adverse effect on the operations of the Partnership. (For the purposes of this subparagraph (2), construction shall be deemed "completed" upon receipt by the Partnership of temporary or permanent certificates of occupancy with respect to all of the dwelling units of the Project.)

(3)    All payments and expenses required to be made or incurred in order to complete construction of the Improvements in substantial conformity with Project Documents and to achieve Final Closing will be paid or provided by or for the account of the Partnership utilizing only (a) the funds available from the Permanent Mortgage, (b) the capital contributions of the Partnership, (c) net income, if any, earned by the Project from apartment rents and all other sources prior to Final Closing and (d) loans of the General Partners (or any guarantor) made pursuant to their obligation to complete construction, unless their payment from any other source will not have any materially adverse effect on the operations of the Partnership.

(4)    No material default of the Partnership or of the General Partners has been declared and is continuing under any of the Project Documents or the Partnership Agreement and the same are in full force and effect, provided, however, that in the event the Partnership has entered into any modification agreement with the holder of the Permanent Mortgage or Note, this covenant shall apply to the terms of such modification agreement where applicable. Further, the conditions to payment of all prior Installments continue to be satisfied.

(5)    No Partner has any personal liability with respect to the payment of the debt evidenced by the Permanent Loan.

– 50 –

(6)    There is no material violation by the Partnership or the General Partners of any zoning, environmental or similar regulation applicable to the Project, which violation may have a material, adverse effect on construction, operation or use of the Project; all building and other applicable permits necessary as of the date this representation is given to permit the construction of the Project have been obtained; and the Partnership has complied in all material respects with all applicable municipal and other laws, ordinances, and regulations relating to such construction and use of the Project.

(7)    The Partnership owns the fee simple interest in the Improvements and the Property, subject to no material liens (except those with respect to which an adequate bond or other financial security has been issued), charges or encumbrances other than those which are created or permitted by the Project Documents, as noted or excepted in the title policy for the Project furnished at Initial Closing, or operation or use of the Project.

(8)    (a)    No bankruptcy has occurred with respect to any General Partner.

-or-

(b)    No General Partner who is a General Partner at the date of this Certificate is a bankrupt, and the General Partners have a combined net worth during the Guaranty Period (as defined in the Repurchase and Guaranty Agreement) of at least $1,000,000 and thereafter of at least $500,000.

All terms not defined herein shall have the meanings set forth in the Partnership Agreement.

CHARLES H. HOUSING ASSOCIATES

By: _____
        John L. Edmonds,
        Managing General Partner

Date:

- 51 -

Exhibit C

CERTIFICATE OF REDEVELOPMENT

COMPANY OF    CHARLES H. HOUSING ASSOCIATES

A LIMITED PARTNERSHIP

The parties hereto, desiring to form a redevelopment company as a limited partnership pursuant to Section 103(2)(2) of the Private Housing Finance Law of the State of New York, do hereby declare and certify as follows:

1.   The name of the proposed redevelopment company is CHARLES H. HOUSING ASSOCIATES    (the "Redevelopment Company").

2.   The purposes for which the Redevelopment Company is formed are to acquire the area in the County of New York,    known by street address as  West 111th to 112th Street, East Side of Frederick Douglass Boulevard (Eighth Avenue),

under a plan; and to construct, rehabilitate, own, maintain, operate, sell and convey a project known as Charles Hill/ Towers pursuant to the terms and provisions of Article V of the Private Housing Finance Law of the State of New York ("Article V").

3.   The principal business office of the Redevelopment Company will be at  c/o John Edmonds, 60 East 86 Street,    Borough of Manhattan, City, County and State of New York.

4.   The term of existence of the Redevelopment Company shall be until  (see below) *    , unless the Redevelopment Company is dissolved at an earlier date pursuant to the terms of the Certificate of Formation of Limited Partnership of  Charles H. Housing Associates,

filed in the office of the Clerk of the County of New York on  June 12, 1984,

* the date on which the tax exemption granted to the project by the Board of Estimate of the City of New York expires or terminates,

as the same may be from time to time amended, but in no event shall the term of existence of the Redevelopment Company be less than 20 years.

5.    So long as Article V shall remain applicable to any project of the Redevelopment Company, the real property of the Redevelopment Company shall not be sold, transferred or assigned, except as permitted by the terms and provisions of Article V.

6.    The Redevelopment Company has been organized to serve a public purpose; except as provided in Article V, the Redevelopment Company shall be and remain subject to the supervision and control of the New York City Department of Housing Preservation and Development (the "Supervising Agency") so long as Article V remains applicable to any project of the Redevelopment Company; and all real and personal property acquired by the Redevelopment Company and all structures erected by it, shall be deemed to be acquired or created for the promotion of the purposes of Article V.

7.    Upon the dissolution of the Redevelopment Company pursuant to the provisions of subdivision one of Section 123 of the Private Housing Finance Law, the property of the Redevelopment Company may be conveyed in fee as provided in said subdivision.

8.    Mortgage indebtedness and capital of the Redevelopment Company may be retired if, as and when there shall be funds available for amortization purposes in its treasury.

9.    In the event of a violation by the Redevelopment Company of a provision of this certificate or of law or any rules and regulations promulgated pursuant to the provision of Article V, the Supervising Agency may, by written notice, as provided by Article V, advise the partners of

the Redevelopment Company of its desire to appoint a manager or managers of the Redevelopment Company who shall exclusively exercise all of the powers of the partners thereof for the duration of the appointment of such manager or managers. In the event that the Redevelopment Company fails to comply with the requirements of the Supervising Agency within thirty days from the date of mailing of said written notice, the Supervising Agency may, with the written approval of any mortgagee and without further notice to the Redevelopment Company or to its partners, appoint such manager or managers who shall exclusively exercise all of the powers of the partners of the Redevelopment Company. Managers so appointed need not meet qualifications which may be prescribed by the Limited Partnership Agreement of the Redevelopment Company. In the absence of fraud or bad faith, managers so appointed shall not be personally liable for debts, obligations or liabilities of the Redevelopment Company. Managers so appointed shall serve only for a period co-existent with the duration of such violation or until the Supervising Agency is assured, in a manner satisfactory to it, against violations of a similar nature. Officers or employees of the Supervising Agency who are appointed as such managers shall serve in such capacity without compensation.

10. After providing for all expenses, taxes and assessments, there shall be paid annually out of the earnings of the Redevelopment Company, a sum for interest on and amortization of any mortgage indebtedness and depreciation charges if, when and to the extent deemed necessary by the Supervising Agency, plus a distribution to the partners of the Redevelopment Company not exceeding six percentum of the total of the capital of the Redevelopment Company. The obligation in respect of such

payments shall be cumulative, and any deficiency in interest, amortization, depreciation and distribution in any year shall be paid either from any cash surplus derived from earnings remaining in the treasury of the Redevelopment Company in excess of the amount necessary to provide such cumulative annual sums or from the first available earnings in subsequent years. Any cash surplus derived from earnings remaining in the treasury of the Redevelopment Company in excess of the amount necessary to provide such cumulative annual sums shall upon the dissolution of the Redevelopment Company be paid into the general fund of the City of New York.

11.   The individual general partner of the Redevelopment Company is of full age, a citizen of the United States, and a resident of the State of New York (he resides at / 187-20 Grand Central Parkway, Queens , New York, New York).

12.   The corporate general partner of the Redevelopment Company is incorporated under the business corporation law of the State of New York.

IN WITNESS WHEREOF, this Certificate of Redevelopment Company has been duly executed on the 18th day of June , 1984.

GENERAL PARTNERS:

JOHN L. EDMONDS

AVENEL CORPORATION
By:
Robert W. Seavey

LIMITED PARTNERS:

MURRAY HEBER
M. MELNICK & CO., INC.

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

On the 18th day of June    , 1984, before me personally came JOHN L. EDMONDS, to me known, who being by me duly sworn, did depose and say that he resides at 187-20 Grand Central Parkway, Queens, New York; that he is the individual General Partner who executed the foregoing Certificate of Redevelopment Company; and he duly acknowledged to me that he executed the same.

                                          Notary Public

                                          JULIETTE ALLEN
                                          Notary Public, State of New York
                                          No. 31-4755036
                                          Qualified in New York County
                                          Commission Expires March 30, 1985

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

On the 18th day of June    , 1984, before me personally came ROBERT W. SEAVEY   , to me known, who being by me duly sworn, did depose and say that he resides at 425 East 58th Street, New York, N.Y.  10022                    ; that he is the President of AVENEL CORPORATION, the corporation which executed the foregoing Certificate of Redevelopment Company as a General Partner; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

                                          Notary Public

                                          JULIETTE ALLEN
                                          Notary Public, State of New York
                                          No. 31-4755036
                                          Qualified in New York County
                                          Commission Expires March 30, 1985

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

On the 18th day of June    , 1984, before me personally came MURRAY RABER    , to me known and known to me to be the individual described in and who executed the foregoing Certificate of Redevelopment Company as a Class A Limited Partner and as a General Partner, and he duly acknowledged to me that he executed the same.

                                          Notary Public

                                          JULIETTE ALLEN
                                          Notary Public, State of New York
                                          No. 31-4755036
                                          Qualified in New York County
                                          Commission Expires March 30, 1985

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

On the 12th day of June    , 1984, before me personally came MICHEL MELNICK    , to me known, who being by me duly sworn, did depose and say that he resides at 225 Willow Avenue, Bronx, New York 10454; that he is the Vice-Pres. of M. Melnick & Co., Inc. the corporation which executed the foregoing Certificate of Redevelopment Company as a Limited Partner; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

                                          Notary Public

                                          JULIETTE ALLEN
                                          Notary Public, State of New York
                                          No. 31-4755036