**Cameron, Griffiths & Pryce, CPAs, LLC**
739 Utica Avenue, Brooklyn, New York, 11203

Phone: 718-467-8535                                                                 Fax: 718-953-8323

Logan Plaza Associates,
Fifth and 106th Street Associates (Lakeview),
Charles H Hill Housing,
Church Home Associates

To Mr. John Edmonds Esq:

In planning and performing our audit of the financial statements of the above partnerships for the year ended December 31, 2006 (on which we issued no opinion), we developed the following recommendations concerning certain matters related to the Management Company's internal control and certain observations and recommendations on other accounting, administrative, and operating matters. Our comments are presented in Exhibit I.

This report is intended solely for the information and use of management, and others within the organization and is not intended to be and should not be used by anyone other than these specified parties.

We will be pleased to discuss these comments with you and, if desired, to assist you in implementing any of the suggestions.

*Cameron, Griffiths & Pryce*
12/12/2007


DEFENDANT'S EXHIBIT 15  am 4-21-09

DRAFT

Exhibit I

### 1. Accounts Payable (Logan Plaza Associates)

*Observation:* During our testing of accounts payable we noted that $181,000 was listed in general Ledger and disclosed in the audited financial statement as amount owing to Dalton Management.

*Background:* Our testing of the $181,000 in accounts payable provide us evidence which was further corroborated by John Edmond and Phyllis Seavey confirming that this was indeed due to the partners.

*Recommendation:* The management company should ensure that proper accounting records are kept. The auditor should verify that amounts listed in the accounts payable schedule are actually due to the listed vendors. The $181,000 attributed to Dalton Management Company should be reclassified to the appropriate account to ensure that future remittances are made to the appropriate vendor.

*Management Response:*

2. ~~Not used~~

### 3. Management Fees (Church Home Associates)

*Observation:* During our testing of 2006 management fees of Church Home Associates, we noted that monthly management fees were overcharged by $1,396 which accumulated to $11,169 in the current year. In addition to these amounts, we observed that 2004 and 2005 overcharges totaled $39,088. Management reported $33,506 which was incorrectly used, along with the $11,169 from 2006, to offset the 2006 management fee of $121,795 which was disbursed. This amount should have been $85,000.00. We also noted that in addition to those fees, Dalton Management paid itself fees they called "Overages" totaling $64,052 for the three years 2006, 2005 and 2004. This Overage is not supported by the management contract.

*Background:* According to the contract between the Management Company and Church Home Associates, the monthly management fee is $7,084. Management had been paying themselves $8,480 over a period of years. In addition, the management company had been paying themselves an annual "Overage" which in 2006, 2005 and 2004 equal to $25,056, $22,250 and $16,746 respectively. In an attempt to address the over payments, the management company set up a receivable for the $44,675.00 which was credited to the current year's expense. This resulted in a partial reimbursement and an understatement of

DRAFT

current year management fee. In addition, to understating expense and overstating income in the current year this incorrect transaction has the added risk of creating additional charge through catch payment in the future years.

*Recommendation:* Management fees should be paid according to contract. Fees overcharged in prior years must be credited to prior year earnings and not used to reduce current year's expense. Make additional reimbursement of approximately $69,634.00 for payments in excess of what is permitted by the management contract.
*Management response:*

## 4. Audit Fee (Church Home Associates)

*Observation:* During our testing of audit fee we noted that $39,769 was disbursed, in addition, $2,000 was accrued making a total of $41,769 for audit services. However, the 2006 audited financial statements reported $24,000 for these services (We were not provided a copy of 2006 engagement letter). Audit expense for 2006 exceeded the contracted amount by $17,769 plus $2,000 accrued to be paid in subsequent period.

*Background:* We are not in receipt of the engagement letter even though we have requested a copy. The chief Operating officer of Dalton Management Company suggests that we ask the auditors. However in our testing of audit fees, we noted that Dalton disbursed $39,769 and accrued and additional $2,000 for audit expenses, while the financial statement disclosed $24,000.00. Seventeen thousand Dollars ($17,769) were reclassified from audit fees to professional fee and were not disclosed in the audit Fees Schedule of the financial statement.

*Recommendation:* The management company should ensure that payments are for services performed and are within contracted amount.

## 5. Salaries and office expense: (Logan Plaza)

*Observation:* Our testing 2006 expenses revealed that Dalton management charged Logan Plaza Associates approximately $46,611 for office salaries and other central office expenses contrary to the management contract.

*Background:* The management agreement states that "all of the agents' home office bookkeeping, clerical, payroll, and other management payroll and overhead expenses ( including but not limited to cost office supplies and equipment, postage, transportation for managerial personnel and telephone services) will be borne by the agent out of its own funds and will not be treated as project expenses. (para 16 sec. I) Dalton management allocates a portion of its central office costs such as wages, computer, telephone, office travel, medical and payroll taxes to the Logan Plaza contrary to the management contract. The amount paid in 2006 as a result of this allocation is $46,611.

3

DRAFT

*Recommendation:* Management Company should charge expenses as permitted by contract. Management must review the account to determine the amount that was disbursed in years prior to 2006 and make repayment.

*Management response:*

### 6. Audit Fee (Lakeview)

*Observation:* During our testing of 2006 audit fees, we noted that $108,585 was disbursed. In addition, $8,539 was accrued making a total of $117,067 for audit services. However, the engagement letter for 2004 and the 2005 and 2006 audited financial statements reported $34,155 for these services (We were not provided a copy of the 2005 and 2006 engagement letter). Audit expense for 2006 exceeded the contracted amount by $74,370 plus $8,539 accrued to be paid in subsequent period.

*Background:* The engagement letter, which described services to be provided and the fees for those services, list the audit fees not to exceed $34,155. Services to be provided include the preparation of the tax return. The engagement letter also stipulates that additional services require prior DHCR approval. We noted that the disbursement of $108,000 included a $25,000 invoice for tax analysis dated in 2004 and another for $15,000 for "various services" dated in 2002. These amounts were not accrued in the financial statements as required by general accepted accounting principles. Furthermore, these amounts were reclassified from audit fees to management consulting and were not disclosed in the Fees Schedule of the financial statements.

*Recommendation:* The management company should ensure that payments are for services performed and within contracted amount. Services not pay for in the year provided must be accrued in the financial statement, and therefore, expense in the year of service.

*Management response:*

### 7. Audit Fee (Logan Plaza Associates)

*Observation:* During our testing of audit fee we noted that $36,694 was disbursed, in addition, $2,000 was accrued making a total of $38,694 for audit services. However, the 2006 auditors' final adjusting entries reported $24,000 for these services (We were not provided a copy of 2006 engagement letter) Audit expense for 2006 exceeded the contracted amount by $12,694 plus $2,000 accrued to be paid in subsequent period.

*Background:* We are not in receipt of the engagement letter even though we have requested a copy. The chief Operating officer of Dalton Management Company suggested that we ask the auditors. However in our testing of audit fees, we noted that Dalton

4

DRAFT

disbursed $36,693 and accrued and additional $2,000 for audit expenses, while the auditors' final adjusting journal entries disclosed $24,000.00. Four thousand of the $36,694 was reversed for 2005 audit. Ten thousand Dollars ($10,694) were reclassified from audit fees to management consulting and were not disclosed in the Audit Fees Schedule of the financial statement.

*Recommendation:* The management company should ensure that payments are for services performed and are within contracted amount.

*Management response:*

## 8. Audit Fee (Charles Hill Housing)

*Observation:* During our testing of audit fee we noted that $36,616 was disbursed, in addition, $2,000 was accrued making a total of $38,616 for audit services. However, the 2006 auditors' final adjusting journal entries listed $24,000 for these services (We were not provided a copy of 2006 engagement letter) Audit expense for 2006 exceeded the contracted amount by $14,616 plus $2,000 accrued to be paid in subsequent period.

*Background:* We are not in receipt of the engagement letter even though we have requested a copy. The Chief Operating Officer of Dalton Management Company suggested that we ask the auditors. However in our testing of audit fees, we noted that Dalton disbursed $36,616 and accrued and additional $2,000 for audit expenses, while the auditors' final adjusting journal entries disclosed $24,000.00. Fourteen thousand Dollars ($14,616) were reclassified from audit fees to management consulting and were not disclosed in the Audit Fees Schedule of the financial statements.

*Recommendation:* The management company should ensure that payments are for services performed and are within contracted amount.

## 9. Accounting System

*Observation:* During our audit, of the four Housing Developments, we observed that the internal accounting control system lacks reliability. In addition, adjusting journal entries for income and expenses are lumped in the distribution account rather than in the individual account. This has the effect of distorting the actual balances in the accounts.

*Background:* Generally accepted accounting principles require any accounting system to record accounting transactions according to their natural classification – that is, assets, liabilities, capital, income, and expenses. At the end of the accounting period, the income and expenses accounts are closed out to the capitol account. This process besides facilitating year to year comparison, allows for the review of completeness.

DRAFT

We observed that Dalton management records income and expense accruals and adjusting journal entries in lump sum to the distribution account. For example, Lakeview's general ledger reported legal fees of $104,182, but the auditors adjusting entries reported legal fees of $141,050. The difference of $36,586 is not classified in the general ledger, but instead is netted with other items and is booked in the Partners' Distribution. Another example is the charge of $219,467 to Water and Sewer as recorded on the auditors' adjusting journal statement, but the general ledger Water and Sewer account reported $0.00. As in the first example, this amount is netted with other amounts and recorded as distribution.

When the transactions are recorded in this manner, the account balances are distorted, and are therefore not subject to review and testing.

*Recommendation:* Income and expense transaction must be booked in their appropriate account. This will allow for completeness, transparency and proper audit testing.

## 10. General Ledger

*Observation:* In our audit of the four housing developments, we observed that the accounting system lacks reliability, unable to generate trial balance, and has excessive journal entries.

*Background:* The minimum that any basic accounting system software provides is a summary of accounting transactions called the trial balance. The trail balance is a basic tool that is useful to both management and accountants, enabling efficient and effective assessment of whether the company's transactions are in balance. According to the Chief Operating Officer, the accounting software cannot produce annual trial balance. Also, an effective accounting system requires very few adjusting journal entries. Journal entries are used to adjust math error; adjust entries made to incorrect accounts or to record non-cash items such as depreciation, or allowances for bad debt. Dalton Management, for example recorded cash received of $166,250 from the escrow reserve agent incorrectly as miscellaneous income instead of crediting the reserve account. (Charles Housing) Another example, is a debit of $965,975 in the distribution account. (Logan Plaza).

Dalton Management takes no responsibility for these excessive journal entries recorded for each partnership. When asked to explain, we were told that their Auditor made those entries and will have to explain them. The Chief Operating Officer further elaborated that the reason we cannot trace the journal entries to the general ledgers is that he booked them against the distribution accounts. There is no indication on the journal entries that Dalton Management approved any of these journal entries made by their auditor.

*Recommendation:* Dalton Management should analyze transactions carefully before making entries and each journal entry must be properly documented and supported.