ELECTRONICALLY FILED VIA ECF

Scott E. Mollen
M. Darren Traub
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
212.592.1400
*Attorneys for Defendants Robert W. Seavey,
Phyllis M. Seavey, Avery B. Seavey, Nealle B.
Seavey, Ronald Dawley, Dalton Management
Company, LLC, and the Seavey Organization*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

JOHN L. EDMONDS, individually and as a managing general partner of Fifth and 106th Street Housing Company, Inc., Logan Plaza Associates, LP, Charles H. Associates a/k/a Charles H. Hill Associates, LP and as a limited partner of Church Home Associates, LP,

               Plaintiffs,

-against-

ROBERT W. SEAVEY, individually and as a general partner of Fifth and 106th Street Housing Company, Inc., Logan Plaza Associates, LP, Charles H. Associates a/k/a Charles H. Hill Associates, LP and as a limited partner of Church Home Associates, LP, et al.,

               Defendants.

------------------------------------------------------------------------ x

Index No.: 08 CIV 5646-HB

**REPLY DECLARATION OF SCOTT E. MOLLEN IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Scott E. Mollen, an attorney admitted to practice before the courts of the State of New York, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

      1.     I am a member with the law firm Herrick, Feinstein LLP, attorneys for defendants Robert W. Seavey, Phyllis M. Seavey, Avery B. Seavey, Nealle B. Seavey, Ronald Dawley, Dalton Management Company, LLC, and the Seavey Organization (collectively, "the Seavey Defendants") in the above-captioned action. As such, I have personal knowledge of the matters set forth herein and submit this declaration in further support of Defendants' motion for summary judgment.

2. As set forth in Defendants' moving pleadings, Plaintiff John Edmonds ("Plaintiff" or "Edmonds") admits that he does not have *any* evidence to support his Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. [Defs. Memo. at 14-23.]

3. Similarly, although Edmonds alleges various state law claims for breach of contract, breach of duty of good faith and fair dealing, unjust enrichment, conversion, breach of fiduciary duty, and accounting, each of Defendants' complained of acts were performed in accordance with applicable government regulations and the Partnerships' written agreements. Therefore, Defendants are entitled to an award of summary judgment dismissing Edmonds' Complaint in its entirety with prejudice. [Defs. Memo. at 27-32.]

4. In response to Defendants' motion, Edmonds has submitted three declarations: Orley Cameron, John L. Edmonds, and M. Douglas Haywoode. Each of those declarations are more notable for what they do not say, than for what they do. Indeed, *not one* of the declarations cites to or constitutes evidence to support the allegations alleged in Plaintiff's Complaint.

5. Simply put, Edmonds has not demonstrated any disputed material facts, much less proven that he has any basis for his allegations. To the contrary, in their depositions, Edmonds and his "witnesses" admitted that there is no basis for Edmonds' claims.

**The Cameron Declaration**

6. Mr. Cameron is an accountant whose audit report is the supposed basis for Plaintiff's Complaint. As discussed in Defendants' moving papers, Mr. Cameron's accounting firm, Cameron, Griffiths & Pryce ("CG&P") is a three-person accounting firm that was formed solely for the purpose of conducting the review of the Partnerships' books and records. [SOF ¶ 47.] In fact, CG&P has no clients other than Edmonds and the only project that CG&P has ever performed is the review of the Partnerships' books and records. [SOF ¶ 48.] None of CG&P's accountants have had prior experience in representing an owner, manager, or investor in connection with an audit of a Mitchell-Llama multi-family housing development that is regulated by DHCR, HDC, or HPD.

7. Although Plaintiff's sole basis for filing this federal action is his RICO claim, which is based on the allegation that Defendants' mailed false and fraudulent monthly financial statements to him, Mr. Cameron does not claim that the monthly financial statements were false or misleading. In fact, Mr. Cameron does not even discuss the monthly financial statements or their content.

8. Instead, Mr. Cameron's declaration sets forth his educational and certification credentials. But he does not dispute that CG&P does not have experience in auditing government-regulated, multi-family housing developments. Moreover, he does not dispute that CG&P was formed solely for the purpose of conducting the review of the Partnerships' books and records.

9. Further, although Mr. Cameron now claims that he was "unable to make any finding as to what happened to significantly large sums of monies," he does not claim to have discovered any missing monies that Defendants' received or any misappropriated funds that

3

should have gone to Mr. Edmonds. [Cameron Dec. ¶ 7.] Indeed, Mr. Cameron does not claim that he has seen any money that is missing or unaccounted for from the Partnerships. Rather, as he admitted in his deposition, he has not seen any evidence that money is missing or misappropriated. [Defs. Memo. pp. 17-20.] Moreover, Mr. Cameron does not allege that Mr. Edmonds is due any additional money from Defendants.

10. Instead, Mr. Cameron simply claims that some of the journal entries in the Partnerships' books and records appear confusing to him and/or that he disagrees with the way some of the entries were categorized. However, with respect to those entries, he does not claim that the amounts are wrong or that any entries are inaccurate. For example, although Mr. Cameron asserts that an invoice for $15,000 that was accrued in 2002 was paid in 2006 [Cameron Dec. ¶ 8], he does not claim that the amount of the invoice was incorrect, not due, or was not properly paid. And, most important, Mr. Cameron does not argue, nor could he, that the money should have been paid to Mr. Edmonds or that Mr. Edmonds was prejudiced or somehow damaged by the payment of the invoice in 2006.

11. Indeed, in his deposition, Mr. Cameron admitted under oath that the numbers and calculations in the Partnership journal entries, even the ones with which he disagrees with the way they are categorized, are accurate and that the supporting documentation matches the amounts contained in the books and ledgers. [Cameron Dep. 121:17-123:11.]

12. Accordingly, Mr. Cameron's declaration does not have any relevance to the claims at issue.

**The Edmonds Declaration**

13.     Similarly, in his declaration, Mr. Edmonds does not cite to any evidence to support his claims, much less claim to have any such evidence.

14.     Instead, Mr. Edmonds attempts to "contest," "protest," and "deny" the background facts set forth in Defendants' Rule 56.1 statement. However, the facts set forth in Defendants' Rule 56.1 statement are supported by cites to written documents and sworn deposition testimony, including that of Mr. Edmonds himself. In contrast, Mr. Edmonds does not offer any support for his protests and denials and does not explain why he is now contradicting his prior sworn testimony.

15.     For example, even though Mr. Edmonds signed written agreements acknowledging that he transferred a portion of his interest in Lakeview to Robert Carmel, Mr. Edmonds now contests his transfer. [Edmonds Decl. ¶ 5.] Although he claims that documents produced in discovery "constituted clear prior inconsistent statements directly contradicting the positions asserted by the defendants in this case," Mr. Edmonds fails to identify, much less produce, those documents and does not expand on how or why the documents are contradictory. [*Id.* ¶ 6.]

16.     Similarly, without explanation, Mr. Edmonds protests the amount and type of his interests in Logan Plaza, Charles, and Church Home, which are set forth in those entities' written partnership agreements. [*Id.* ¶ 9.] Mr. Edmonds does not state why he believes those written documents are inaccurate.

17.     Other times, Mr. Edmonds claims that he "believes" that Dalton is paid in excess of $500,000 to $1,000,000 per year for its management services. [*Id.* ¶ 16.] Again, Mr.

Edmonds fails to set forth any reason or basis for his belief, much less cites to supporting evidence.

18. By way of further example, Mr. Edmonds claims that there are "sweet heart" contracts between "certain partnerships and certain Seavey-controlled entities." [*Id.* ¶ 26.] Again, not only does Mr. Edmonds fail to explain what constitutes a "sweet heart" contract, but also fails to reveal the source of his belief. Indeed, when cross-examined about this claim during his deposition, Mr. Edmonds refused to disclose his so-called source. [Edmonds Dep. 213:9-217:20.]

19. Further, Mr. Edmonds claims that he has been told by his accountants that Dalton is "carrying" $181,000 of prior bills on the books as being payable to Dalton. [Edmonds Decl. ¶ 27.] However, in his deposition, with respect to that entry, Mr. Edmonds admitted and acknowledged that he has been aware of the entry and has discussed it on several occasions with the Seavey Defendants. [Edmonds Dep. 104:8-109:25.] Thus, there is no fraud. The Seavey Defendants are not claiming and have never claimed ownership of that amount and it remains openly on Logan Plaza's books.

20. Mr. Edmonds, without citing any basis or evidence, further claims "substantial monies are removed from the properties by the Seavey enterprises." [Edmonds Decl. ¶ 38.] However, during his deposition, Mr. Edmonds admitted that he does not have any evidence to support his claim. [Edmonds Dep. 210; 6-8, 13-20, 24-25; 211; 2-10.] Similarly, Mr. Edmonds' accountants, CG&P, also admitted that they have not seen any evidence that the Seavey Defendants have removed or received any such money. [Cameron Dep. 97; 19-25; 98; 2-4, 18-21, 25; 99; 2-3; 101; 8-22, 24-25; 102; 2-12; Pryce Dep. 43; 23-25; 44; 2- 4; 44; 15-20.]

21. Mr. Edmonds also "denies true financial statements and meaningful documents reflecting the expense of the development were provided to him." [Edmonds Decl. ¶ 40.] However, under examination at his deposition, Edmonds admitted that he has not seen any evidence to show that the monthly financial documents are inaccurate. [Edmonds Dep. 214; 14-22.]

22. Mr. Edmonds spends the remainder of his deposition arguing that Marks Paneth & Shron, not Dalton, act as the accountants for the Partnerships. Defendants have proven this allegation to be untrue and Mr. Edmonds cites to no evidence to show otherwise. However, even assuming *arguendo* that this allegation were true, Mr. Edmonds has not claimed, much less shown, how he was damaged by a respected, full-service accounting firm reviewing the Partnerships' books.

23. Accordingly, Mr. Edmonds' declaration does not support his claims. Moreover, Mr. Edmonds does not dispute the Seavey Defendants' counterclaim.

**The Haywoode Declaration**

24. Finally, Plaintiff relies on the declaration of Mr. Haywoode, Plaintiff's attorney in which Mr. Haywoode simply parrots his earlier declarations submitted in support of Plaintiff's motion to extend discovery and motion to reconsider the sanctions order issued by Magistrate Judge Francis — both of which were already considered and denied by this Court.[1] Indeed, this is made clear in paragraph 49 of Mr. Haywoode's declaration when he refers to paragraph 4 of M. Darren Traub's "declaration" and "motion papers," which appears to be a reference to the Seavey Defendants' pleadings submitted in opposition to Plaintiff's motion to extend the discovery period in this action.

---

[1] It should be noted that although Magistrate Judge Francis ordered Mr. Haywoode to pay the sum of $3,099 on June 5, 2009 and Judge Baer affirmed that order on July 20, 2009 and ordered Mr. Haywoode to pay the sanctions amount "forthwith," Defendants have still not received any payment from him.

25. Although Defendants will not waste the Court's time in again responding to each of the allegations raised in these moot motions, it appears that Mr. Haywoode is, yet again, seeking an extension of the discovery period, despite the fact that discovery has been on-going in this action for more than *nine months*, in addition to the *six months* of discovery that Plaintiff undertook even before this action was commenced by having reviewed and audited the Partnerships' books and records.

26. Now that discovery has ended and the time has come for Plaintiff to prove his claims, Plaintiff recognizes — indeed, he has admitted — that even though he and his accounting firm have reviewed thousands upon thousands of pages of books, records, bank statements, and other documents, he does not have even a single document to support any of his claims, much less the underlying RICO claim that forms the basis for Federal jurisdiction for this action. Accordingly, Plaintiff seeks to extend the discovery period in the hopes that Plaintiff will discover something — anything — to support his claim. Plaintiff, apparently, is unwilling to acknowledge that he has nothing to support his claims because Defendants have not committed any wrongdoing.

27. Almost a year before this action was filed, Plaintiff and his admittedly inexperienced accountants were at Dalton's office for almost six months. During that time, they were given unfettered access to the Partnerships' books and records for inspection, review, and photocopying.

28. Thereafter, on July 11, 2008, Plaintiff filed this action and sought a temporary restraining order, which was denied. However, the Court ordered that discovery was to commence immediately, which it did. Moreover, each time Plaintiff granted the Seavey

8

Defendants an adjournment or extension to file an answer, Plaintiff's grant was premised on the condition that discovery deadlines and time frames would not be affected.

29.     During discovery, Plaintiff served three requests for production of documents on the Seavey Defendants, which were answered and documents produced timely pursuant to Federal Rule 34. In fact, Plaintiff's first request for documents sought each of the items that CG&P alleged had not been produced during their audit. Defendants timely and fully responded to each of the requests and have not withheld any of documents from Plaintiff. Accordingly, Plaintiff's contention that documents were withheld during CG&P's review is not only incorrect, it is also a moot point — Plaintiff has Defendants' responsive documents.

30.     Mr. Haywoode, without explanation, also alleges "[t]he excessive absences of the lead attorney for Dalton Management and the extremely limited flow of discovery information provided by Defendants has resulted in a circumstance in which literally less than 10% of the information Plaintiff inquired into has been produced." Again, Mr. Haywoode fails to identify what information he believes that Plaintiff has not received or what discovery was not timely produced. The fact is that Defendants timely and fully complied with and responded to Plaintiff's various discovery requests and deposition notices.

31.     The real purpose of Mr. Haywoode's declaration is finally revealed in paragraph 78 wherein he again requests a 120-day extension to conduct additional audits of the Partnerships' books and records for the years 1999 through 2005. Additionally, despite not having even a scintilla of evidence of wrongdoing by the Seavey Defendants, much less of missing or unaccounted for money, Plaintiff now wants to audit other partnerships for which Dalton provides management services even though Plaintiff is not a member or partner in those entities.

32. Simply put, Plaintiff is abusing this federal civil litigation and seeking to use the discovery process to conduct a fishing expedition and harass the defendants by holding a $500,000,000.00 baseless and frivolous RICO lawsuit over their heads. But enough is enough. The time has come for Plaintiff to prove his claims and, as he admits, he cannot.

For these reasons, Defendants respectfully reiterate their request that Court grant summary judgment in their favor on each of Plaintiffs' claims and on the Seavey Defendants' cross-claim.

Dated:   New York, New York
         July 30, 2009

                                        /s/ Scott E. Mollen
                                        Scott E. Mollen