**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**JOHN L. EDMONDS,**                                 :
                                                     :
                **Plaintiff,**          :          **08 Civ. 5646 (HB)**
                                                     :
        **-against-**                  :          **OPINION & ORDER**
                                                     :
**ROBERT W. SEAVEY, et al.,**                        :
                                                     :
              **Defendants.**        :
-----------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

Before the Court is a motion by defendant Marks Paneth & Shron ("MP&S") for an award of sanctions under Rule 11 of the Federal Rules of Civil Procedure against counsel for Plaintiff John L. Edmonds ("Plaintiff" or "Edmonds"). For the reasons set forth below, MP&S's motion is granted to the extent discussed in this opinion.

## I.  FACTUAL BACKGROUND

The facts underlying this matter were discussed at length in the Court's Opinion and Order, dated September 15, 2009, which granted summary judgment to all defendants on Plaintiff's RICO claims and dismissed the remaining state causes of action for lack of subject matter jurisdiction (the "September 15 Order") and familiarity therewith is presumed. *See Edmonds v. Seavey*, No. 08 Civ. 5645 (HB), 2009 WL 2949757 (S.D.N.Y. Sept. 15, 2009). The facts are repeated here only to the extent they are relevant to MP&S's instant motion for Rule 11 sanctions.

Plaintiff brought this lawsuit alleging primarily RICO violations, along with various other state causes of action, based on his premise that certain partnerships in which he had a financial stake had allegedly engaged in a scheme to defraud him and deprive him of his share as a partner. Plaintiff has been a partner in the four partnerships, each of which owns and operates a low- or middle-income residential real estate development, since approximately 1973. The partnerships are managed by Dalton Management, which maintains the partnerships' books and records and retains MP&S to provide accounting and auditing services. The keystone of Plaintiff's complaint in this matter was his belief that Dalton was misappropriating the partnerships' funds by using partnership proceeds to pay its own employees and by entering into below-market contracts with vendors, among other things. Consequently, Plaintiff based his RICO allegations on allegations

1

that financial statements that he received from Dalton were fraudulent, and thus allegedly formed the basis of RICO predicate acts of mail and wire fraud.

In March 2007, Plaintiff retained the accounting firm Cameron, Griffiths & Pryce ("CG&P") to review the partnerships' books and records and to uncover proof of fraud to support an anticipated RICO lawsuit. After CG&P spent approximately six months examining Dalton's books and records, the firm submitted its only written report that summarized its conclusions and recommendations to Edmonds. Although the report notes some issues with Dalton's accounting methodology, the report nowhere states that any of the financial statements contained any false or misleading financial information. Indeed, the report focused exclusively on Dalton's books and records, and made no findings as to MP&S whatsoever.

Undeterred, Plaintiff went ahead and filed his 47-page complaint that alleged multiple violations of RICO, common law fraud, and deceptive trade practices. As noted, the RICO predicate acts were alleged to consist of mail and wire fraud; however, the complaint did not identify any item that was mailed or wired or any false representation that was made to Plaintiff by MP&S or any other defendant. As this court previously found, "the record in this case is absolutely devoid of any evidence of fraud whatsoever, and instead is replete with devastating admissions by Edmonds's own auditors . . . and Edmonds himself that there is, in fact, no evidence of fraud." *Edmonds*, 2009 WL 2949757 at *4; *see also id.* at *6 ("[B]ased on the undisputed facts, Edmonds has been unable to unearth any evidence to support the allegations of his alleged predicate acts.").

## II.  DISCUSSION

MP&S now moves this Court to impose sanctions in the form of attorneys' fees and expenses based on its argument that the allegations put forward in Plaintiff's complaint, as well as Edmonds's affidavit filed in support of an order to show cause at the outset of the litigation, lacked any evidentiary support when filed and to continue to espouse the views set forth therein is sanctionable.[1]  Moreover, MP&S argues that to the extent Plaintiff's complaint seeks to base his RICO claims on allegations of accounting irregularities, or even professional negligence or

---

[1] MP&S is not entirely clear as to whether they seek to impose sanctions against Edmonds personally or against his counsel or both. They state simply that "[a]s the signor of both the Verified Complaint and the affidavit, Mr. Edmonds is personally liable for any violations of Rule 11 . . . [and] plaintiff's counsel is equally liable for these violations because he signed and filed the Verified complaint and he has repeatedly submitted Mr. Edmonds['s] Affidavit to this court."

accounting malpractice, there is no basis for RICO jurisprudence to expand the RICO predicate

acts to such conduct.  Finally, MP&S contends that, at bottom, Plaintiff filed this action for the

improper purpose of abusing MP&S and to recover money he believed he was owed as a partner,

and not for any injury cognizable under RICO.  I am inclined to agree.[2]

## A.    Rule 11 Standard

Rule 11 provides that every attorney who affixes his or her signature to a pleading, motion

or other paper to a court certifies that:

> to the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances: (1) it is not being
> presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation; (2) the
> claims, defenses, and other legal contentions are warranted by existing
> law or by a nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law; [and] (3) the factual
> contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for
> further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).[3]  Thus, Rule 11 establishes "a means by which litigants certify to the court,

by signature, that any papers filed are well-founded."  *Business Guides, Inc. v. Chromatic

Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991).  If the certification required under Rule 11(b)

is violated, courts are authorized to impose appropriate sanctions against the signor.  *See* Fed. R.

Civ. P. 11(c).  The advisory committee notes make clear that it is also a violation of Rule 11 to

continue to espouse a position that is "no longer tenable."  Fed. R. Civ. P. 11, advisory committee

notes for 1993 amendments.[4]

---

[2] MP&S also argues that Edmonds's claim against it for deceptive trade practices under New York General Business
Law § 349 is sanctionable because that statute is "inapplicable to the present dispute."  Because I agree with MP&S
that the RICO claims in this case are sufficient in themselves to support a finding of Rule 11 violation, I need not
squarely address this issue.  However, it is worth noting, as other courts previously have recognized, that there is
certainly a difference between a losing argument and a sanctionable one. *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d
Cir.1990), *cert. denied*, 498 U.S. 1028 (1991) ("[N]ot all unsuccessful arguments are frivolous or warrant sanctions.").

[3] "To constitute a frivolous legal position for purposes of Rule 11 sanctions, it must be clear that there is no chance of
success." *Edmee v. Coxsackie Correctional Facility*, 09-Civ-3940 (BMC), 09-Civ-3939 (BMC), 2009 U.S. Dist.
LEXIS 95654, at *9 (E.D.N.Y. Oct. 14, 2009) (quoting *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir.
1992)) (alterations omitted).

[4] Indeed, the advisory committee notes further make clear that "a litigant's obligations with respect to the contents of
[court] papers are not measured solely as of the time they are filed or submitted to the court, but include reaffirming to
the court and advocating positions contained in those pleadings and motions after learning that they cease to have any
merit." *Id.*

The purpose of Rule 11 is to "deter baseless filings in district court . . . and streamline the administration and procedure of the federal courts." *Cooter & Gell v. Martmarx Corp.*, 496 U.S. 384, 393 (1990). Accordingly, Rule 11 imposes on each person who signs a court document "an affirmative duty . . . to conduct a reasonable inquiry into the viability of a pleading" before signing it. *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990). To determine whether an attorney's inquiry was reasonable under the circumstances, courts must use an objective test of reasonableness. *Id.* The objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 11 advisory committee's note. While doubts as to the viability of a signed pleading are to be resolved in favor of the signor, if it is clear that the action was "destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law," Rule 11 sanctions are appropriate. *See O'Malley*, 896 F.2d at 706 (citing *Norris v. Grosvenor Marketing, Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986)).

As numerous courts in this Circuit have recognized, Rule 11 is particularly significant in the civil RICO context "because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." *Hoatson v. New York Archdiocese*, 05 Civ. 10467 (PAC), 2007 U.S. Dist. LEXIS 9406, at *31 (S.D.N.Y. Feb. 8, 2007) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)). That is, civil RICO is considered "unusually potent weapon," often referred to as the "litigation equivalent of a thermonuclear device." *See, e.g.*, *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007); *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003); *Katzman*, 167 F.R.D. at 655 (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). Thus, "[c]ourts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous." *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 02 Civ. 2561 (KMW) (GWG), 2003 U.S. Dist. LEXIS 16908, at *37 (S.D.N.Y. Sept. 26, 2003); *see also, e.g.*, *O'Malley*, 896 F.2d at 709; *Katzman*, 167 F.R.D. at 660; *McLoughlin v. Altman*, 1995 U.S. Dist. LEXIS 12330 (S.D.N.Y. Oct. 31, 1995); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y. 1993).

**B.      Analysis**

   *1. Violation of Rule 11*

In this case, not only did Plaintiff's complaint fail to identify any specific instances of mail or wire fraud, but it also failed to make any specific allegations of wrongdoing by MP&S other than what could be described, at best, as accounting malpractice.[5]  Even giving Plaintiff the benefit of the doubt that, based on an investigation that was reasonable under the circumstances, he believed that further discovery would bear out his claims, no facts ever materialized despite the substantial discovery that took place in this case.  Thus, to continue to propound his RICO claim based on allegations of mail and wire fraud, after six months of pre-action discovery and more than nine months of post-complaint discovery where no facts to support such a finding came to life, was to continue to hold a view that was "no longer tenable" and thus was a violation of Rule 11.  Moreover, there is evidence that not only were Plaintiff's claims against MP&S frivolous, but that they were "presented for [an] improper purpose," *i.e.*, to send MP&S's "heads spinning" at having to defend against a $500 million RICO action.  *See* Deposition of John L. Edmonds ("Edmonds Dep.") at 241-42.  Under these circumstances, there can be no doubt but that sanctions are warranted.  *See, e.g.*, *Hoatson*, 2007 U.S. Dist. LEXIS 9406 at *33-34 (granting Rule 11 sanction where plaintiff's complaint was "barren of a single specific mailing or wire transmission by any defendant"); *Katzman*, 167 F.R.D. at 660 (granting Rule 11 sanctions where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success").

In opposition to the instant motion, Plaintiff does little more than reiterate the very same arguments he put forth unsuccessfully in opposition to summary judgment, with unsupported facts lined with rhetorical flourishes.  In his twenty-one page brief, Plaintiff does nothing to refute the indisputable facts that MP&S raises, and that this Court acknowledged at the summary judgment phase, that show that there was and is no support in the factual record to support any of Plaintiff's allegations, especially inasmuch as they relate to MP&S.  Thus, Plaintiff "does not explain, as required by Rule 11, why the legal claims asserted in the complaint had 'any chance of success under the existing precedents' or how there was any 'reasonable argument . . . to extend, modify or reverse the law as it stands.'"  *Dangerfield*, 2003 U.S. Dist. LEXIS 16908 at *33 (quoting *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985), *cert. denied*, 484 U.S.

---

[5] Of course, it is beyond peradventure that accounting irregularities and professional negligence are not among the predicate acts listed in the RICO statute, and thus cannot form the basis of a RICO action.  *See* 18 U.S.C. § 1961(1).

918 (1987)).  Indeed, sanctions are particularly appropriate in this case because Plaintiff's case rose or fell on the complete absence of any evidence to support his allegations of RICO predicate acts.  *See id.* at *36 ("If the only deficiencies involved the substantive RICO claims, as opposed to the predicate acts, [plaintiff] would have a much stronger argument.  Here, however, the lack of a predicate act for the racketeering activity . . . makes the claim patently frivolous."); *see also O'Malley*, 896 F.2d at 709 ("Few courts have hesitated very long over the problem relevant to this case: what is or is not a predicate act of racketeering activity.  Mere lack of clarity in the general state of some areas of RICO law cannot shield every baseless RICO claim from rule 11 sanctions.").[6]

### 2. *Appropriate Sanction*

The Court has significant discretion to determine what sanction, if any, is appropriate for a particular violation of Rule 11.  *See* Rule 11 advisory committee note.  However, "any such decision must be made with restraint," *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 23, 334 (2d Cir. 1999) (citation omitted), and should "be limited to what is sufficient to deter repetition of such conduct," Fed. R. Civ. P. 11(c)(2).  *See also Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1996) (explaining that the purpose of Rule 11 is to deter, not to reimburse).

Here, MP&S moves for monetary sanctions in the form of attorneys' fees and expenses.  Although monetary sanctions are the most common form of sanctions, a broad range of sanctions are available under Rule 11.  *See, e.g.*, *Colida v. Nokia, Inc.*, No. 2009-1326, 2009 WL 3172724, at *3 (Fed. Cir. Oct. 6, 2009) (affirming district court's imposition of injunction against future litigation as Rule 11 sanction); *Safir v. United States Lines Inc.*, 792 F.2d 19, 23 (2d Cir. 1986) (same); *Lipin v. Hunt*, 573 F. Supp. 2d 836, 844-45 (S.D.N.Y. 2008) (imposing injunction against future litigation as Rule 11 sanction); *In re Rezulin Prods. Liab. Litig. (MDL No. 1348)*, No. 00 CIv. 2843 LAK, 2005 WL 626866, at *2 (S.D.N.Y. Mar. 17, 2005) (issuing formal reprimand as Rule 11 sanction); *Dangerfield*, 2003 U.S. Dist. LEXIS 16908 at *40 (imposing formal

---

[6] It should be noted that, although MP&S is the only defendant that moved for Rule 11 sanctions, this conclusion applies equally to Plaintiff's allegations as to all defendants.  However, even if that were not the case, the fact that MP&S is the sole moving party would not prevent a finding that Rule 11 had been violated.  That is, "[e]ven if a claim is well-grounded against some of the parties, sanctions may be appropriate for the filing of a blunderbuss complaint that names others who merely happen to have some slight relationship to a party."  William W. Schwarzer, *Sanctions Under the New Federal Rule 11 – A Closer Look*, 104 F.R.D. 181, 189 (1985) (citing *Miller v. Schweickart*, 413 F. Supp. 1059, 1061 (S.D.N.Y. 1976)).

admonishment as Rule 11 sanction); *Curran v. Price*, 150 F.R.D. 85, 87 (D. Md. 1993) (imposing "blackboard" method of remedial education, requiring counsel "to copy out, legibly, in his own handwriting, and within 30 days . . . the text of" relevant treatise sections); *Nault's Automobile Sales, Inc. v. American Honda Motor Co., Inc.*, 148 F.R.D. 25, 37 (D.N.H. 1993) (requiring sanctioned attorney to write formal apology letter to opposing counsel); *Bleckner v. General Accident Ins. Co. of Am.*, 713 F. Supp. 642, 653 (requiring counsel to undertake representation of a *pro se* plaintiff *pro bono*); *see also Banco de Ponce v. Buxbaum*, 90 Civ. 3644 (SWK), 1992 U.S. Dist. LEXIS 15730, at *68-74 (S.D.N.Y. Oct. 14, 1992) (discussing wide variety of available sanctions and the "small but growing body of reported decisions reflect[ing] the creative approaches taken by a number of judges in fashioning Rule 11 sanctions").  Indeed, courts have recognized that in certain circumstances, monetary sanctions will not serve the ultimate end of Rule 11 to deter sanctionable conduct, even where substantial sanctions nonetheless are warranted. *See Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 506 (E.D.N.Y. 1998).

In this case, Plaintiff (or, more appropriately, plaintiff's counsel's) continued reliance on RICO to prosecute what is clearly a private wrong alleged against his former partners and their accounting firm, exhibits a fundamental lack of familiarity with, or misunderstanding of, the civil RICO statute and the grounds for such an action.  In addition, it is not at all clear that monetary sanctions would be an effective relief or be of any deterrent value, as Plaintiff's counsel has been previously sanctioned for discovery violations, but the Court was advised some months after those sanctions were imposed and affirmed that they had not been paid.  Accordingly, I find that the most appropriate sanction – and the sanction most likely to redress the true injured party, the judicial system, *see Banco de Ponce*, 1992 U.S. Dist. LEXIS 15730 at *73-74 – is to require Plaintiff's counsel to attend mandatory continuing legal education in the relevant subject area. There is substantial support for mandatory continuing legal education as a sanction under Rule 11. *See, e.g.*, *Baltazar v. Atlantic City Med. Ctr.*, 137 Fed. Appx. 482, 490 (3d Cir. 2005); *Gaboury v. Town of Roxbury*, No. 98-CV-1753, 1999 WL 244829, at *5 (N.D.N.Y. Apr. 19, 1999); *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 437 (S.D.N.Y. 1995); *Banco de Ponce*, 1992 U.S. Dist. LEXIS 15730 at *75-78; *Versailles Realty Co. v. Manufacturers Hanover Trust Co.*, No. 86 Civ. 3082 (WK), 1990 WL 176727, at *1 (S.D.N.Y. Nov. 9, 1990); *Stevens v. Brockton*, 676 F. Supp. 26, 27 (D. Mass. 1987).

Accordingly, I order that Plaintiff's counsel shall attend eight hours of continuing legal education on the subjects of (1) civil RICO and (2) federal civil practice and procedure, within one year of this decision, and that no later than December 1, 2010, he shall file a certification – by affidavit or otherwise – of proof of his attendance. This continuing legal education shall not count towards and shall be in excess of that required to be completed by members of the New York State Bar.

### III. CONCLUSION

For the foregoing reasons, MP&S's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure is GRANTED to the extent discussed in this opinion. Plaintiff's counsel shall remit a certification of attendance and completion of the educational programs required herein within one year of the date of this opinion. As noted in this Court's September 15, 2009 Opinion, this action remained open after the grant of summary judgment in favor of all defendants exclusively for the purpose of resolving the instant motion. Accordingly, the Clerk of this Court is directed to close this motion (Docket No. 82), to enter judgment in accordance with the September 15, 2009 Opinion (Docket No. 95) and to close this case and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**December ___, 2009**

_____
U.S.D.J.

8